```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK


In re:                               :
                                         Docket #1:23-cv-08896-
 POOLOS,                             : GHW-HJR

                 Plaintiff,          :

   - against -                       :

 PARAMOUNT GLOBAL, et al.,           : New York, New York
                                       January 15, 2025
                 Defendants.         :

                                       DISCOVERY CONFERENCE
--------------------------------------- :


                      PROCEEDINGS BEFORE
               THE HONORABLE HENRY J RICARDO,
               UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:           VLADECK, RASKIN & CLARK, PC
                         BY:  JAMES BAGLEY, ESQ.
                              JEREMIAH IADEVAIA, ESQ.
                              BRANDON WHITE, ESQ.
                         111 Broadway, Suite 1505
                         New York, New York 10006

For Defendants:          DAVIS WRIGHT TREMAINE LLP
                         BY:  LYLE ZUCKERMAN, ESQ.
                              MICHAEL LYNCH, ESQ.
                         1251 Avenue of the Americas
                         New York, New York 10020




Transcription Service:  Carole Ludwig, *Transcription Services*
                        155 East Fourth Street #3C
                        New York, New York 10009
                        Email:  Transcription420@aol.com

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.
```

2

**INDEX**

**E X A M I N A T I O N S**

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---------|--------|-------|-----------|----------|
| None |  |  |  |  |

**E X H I B I T S**

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|-----|-----|-----------|
| None |  |  |  |  |

PROCEEDINGS                          3

HONORABLE HENRY J. RICARDO (THE COURT):   Good afternoon, everybody.  This is Judge Ricardo.  We're here for a discovery conference in Poolos vs. Paramount Global, which is 23-cv-8896.  As you heard, the conference is being recorded, so the parties can order a transcript if they wish.

Let's begin with appearances by counsel, starting with the plaintiff.

MR. JAMES BAGLEY:  Good afternoon, your Honor.  This is James Bagley for the plaintiffs.  I am joined by my colleagues, Jeremiah Iadevaia and Brandon White.

MR. LYLE ZUCKERMAN:  Good morning, your Honor, this is Lyle Zuckerman from Davis Wright Tremaine on behalf of defendants.  I'm here with my colleague, Michael Lynch, who will be primarily arguing the motion.

THE COURT:  Okay.  That's great.  Thank you.

Before we get into that, I'm anticipating ... and first of all, let me ask you, is there anyone else on the line?

I hear nothing.  I think at least on one of our prior conferences, there was a reporter on the line, which obviously, they have the right to be.  But I think it's just useful for the parties to know whether that's the case or not.

PROCEEDINGS                    4

Before we begin, I anticipate that I will at some point receive a motion to seal the transcript of this conference or at least to file a redacted version. I did have a question about the sealing and what needs to be sealed.  I think in either this motion or another ... it must have been this motion ... at least on one draft that I saw, there was a suggestion that the names of the healthcare providers in question be redacted.  I wasn't sure what the thinking was or whether it was grounds to seal just their names.  As I understand it, these folks have been designated as experts in the case and someday will testify at trial.  Does either side wish to address that question?

MR. BAGLEY:  Yes, your Honor.  James Bagley for the plaintiffs.  We don't believe that the names of her mental health providers need to be redacted.  We, of course, appreciate that defendants kind of took a broad view of what was potentially needing to be redacted, and so we don't mean to say that they did anything wrong in that way.  But just for the record, we don't believe that the names of the providers need to be redacted.

THE COURT:  Okay.  Thank you.  Do the defendants wish to address that?

MR. MICHAEL L. LYNCH:  This is Michael Lynch.

PROCEEDINGS                    5

I would agree with that assessment.

THE COURT:  All right, that's fine.  So we won't redact the names, but obviously, I understand to the extent we get into particulars concerning the plaintiff and the purposes of her seeking treatment and the specifics that were discussed, that might very well qualify for redaction.  And we might do some of that today.

So I gather this is a question about whether these authorizations need to go earlier than January 1, 2020.  Why don't I hear ... this is defendant's motion, so let me just hear briefly from the defendant on this.

MR. LYNCH:  Sure.  So yes, so defendant's document request numbers 57 and 58 essentially ask the plaintiff to sign two HIPPA authorizations which defendants could then obtain plaintiff's medical records directly from her therapists predating January 1, 2020. So defendants have been seeking these documents since at least late October 2024.  And while plaintiff originally expressed some willingness to provide defendants access to at least some of these records, the plaintiff has now refused to produce any of these records prior to January 1, 2020.

So these records go ...

PROCEEDINGS                  6

THE COURT:  Right.  And what I want to know is why you need them.

MR. LYNCH:  So these records are critical, and they go directly to defendants' defense against the exorbitant amount of damages that the plaintiff is seeking for emotional distress damages.  You know, plaintiff was deposed yesterday in this case, and at her deposition when she was asked how much money she is seeking for emotional distress damages, the plaintiff responded "millions."

So I can get into a number of reasons why the records predating January 1, 2020, are directly relevant to this case, and we would argue, proportional to the needs of this case and the need for defendants to have a proper defense against a claim that is probably the largest amount in controversy in this case, and that is her claim for emotional distress damages.  And if the Court would want me to address those points, I can go into that now.

THE COURT:  The one that you mentioned in your letter brief that I'd like to just know a little bit more about is the reference to it being 2019 all over again.  I gather that reference was made in records that you do have that are from 2020 and later, and I'm

PROCEEDINGS                    7

further assuming that they're about an alternative stressor and that that's being compared to some source of stress from 2019.  But I feel like I don't fully understand it.  So maybe you can just tell me a little bit more about that.

MR. LYNCH:  Sure.  So the records from 2019 relate to the plaintiff's marriage counseling records. So the plaintiff in this case is going to claim that defendants' firing her caused her to nearly lose her marriage.  And that was made clear at the deposition yesterday.  You know, as we provided in defendants' letter motion, records post-dating her termination compare her more recent troubles in her relationship and with her husband to feeling like 2019 all over again, and it's 100% a repeat of 2019.  We don't know what happened in 2019 because we don't have those records. And defendants are ... it's clearly an alternative stressor that the plaintiff repeatedly brings up in more recent marriage counseling.  So we would claim that that is directly relevant to our defense to the emotional distress claim.

THE COURT:  Okay.  I think I understand that. Why don't I hear the plaintiff's side, and I'm hoping in what you say, hoping you can tell me if in fact the

PROCEEDINGS                    8

plaintiff is claiming that her marriage was damaged by defendants' actions.

MR. BAGLEY:  Yes, your Honor.  Nonexplicitly, I don't think we would necessarily put it that way, that she claims that her marriage was damaged by defendants' actions but more so that defendants' actions both contributed to additional mental health issues beyond what she already had and exacerbated certain preexisting ones.

So to get directly to the question of whatever the records from 2019 may or may not show, I still don't necessarily understand how that would be relevant to the question of whether defendants' actions in 2022 in some ways contributed to emotional distress for the plaintiff, because whatever happened in 2019, obviously her marriage has survived thus far and survived until 2022.  And so any distress, whether it was similar to that in 2019 or not, any stress on her marriage, the actual details of what occurred in 2019 would not be relevant to the question of whether defendants' actions in 2022 contributed to stress in her marriage.

I would also like to point out that at the deposition yesterday, defendants questioned plaintiff about her mental health history for at least an hour and

PROCEEDINGS                              9

a half, and we did not instruct the plaintiff not to answer any questions on the basis of the time period. Plaintiff, of course, maintains her objection that her mental health history pre-2020 is not relevant.  But questions were asked that went beyond 2020, and plaintiff answered them.

THE COURT:  Okay.  Do you know when she became a producer?  I have it in my notes that that was 2018, but I figured I ought to ask you in case it's a different date and I've got that wrong.

MR. BAGLEY:  Yes, your Honor, that's correct. I believe it was May 2018, although the promotion may not have taken effect until later that year.

THE COURT:  Okay, I got it.  So this is helpful.  And obviously, I have to try and balance some competing considerations here.  We've taken a look at the authorities that both sides have cited.  From a review of the cases, it seems like there aren't too many hard-and-fast rules here about what's the right period. It seems somewhat fact bound and discretionary.  There is at least some authority that suggests that when a plaintiff claims something greater than garden variety mental distress damages, that she opens up discovery to all providers from the beginning of the services.  While

PROCEEDINGS                10

I think there's some authority for that, I am sensitive to the concerns that the plaintiff has raised about proportionality and the fact that certainly a great deal of time and effort in discovery has been taken up by this, although I also hear the defendants that to the extent this is a major portion of the damages, that attention might be justified.

Recognizing that any line that I draw is arbitrary to some degree, it seems to me a sensible line to draw here is to go back to the beginning of 2018.  My rationale for doing that is as follows.  First, the plaintiff has designated these providers as expert witnesses.  I realize there'll be a separate expert disclosure phase, but if these providers are going to give opinion testimony that helps the plaintiff and that I presume attributes her mental anguish to the defendant, I accept defendants' point that they need some broader range of discovery as to what information is available about ... to those providers concerning the plaintiff's mental health because the defendants will need to cross-examine those experts.

I also have seen that there's a reference in the more recent mental health records to an alternative source of stress, troubles with the plaintiff's husband,

PROCEEDINGS                     11

and that in describing that, it was compared to some event in 2019 for which I gather defendants don't have documents.  It seems to me for purposes of obtaining an understanding of this post-2020 stress that's been compared to a similar stress in 2019, that discovery of the records in 2019 has become relevant.

And I've also factored in the fact that the plaintiff became a producer in 2018, and at least one of the cases that was cited suggested that discovery of mental health records should go back to the time when the plaintiff entered the position that the plaintiff presently occupied.

So again, recognizing there's a lot of subjectivity here and that any line that's drawn could be criticized by one side or the other, it seems to me a sensible result here is for these two providers to produce their records going back to the beginning of 2018.  At this point, I haven't heard a compelling reason to go back farther than that.  No doubt, there are stressors that predate them; but at some point ... at some point ... we have to draw a line and say we're just going too far back for the information to be relevant.

So that's where I am for today.  Are there

PROCEEDINGS                    12

questions or clarifications based on what I just said?

MR. LYNCH:  Your Honor, this is Michael Lynch. May I be heard quickly on the plaintiff's records with Dr. Jackson and specifically as it relates to her diagnosis for PTSD?

THE COURT:  Okay.  Was this ... I think you mentioned that's on page two of your letter.  So, sure.

MR. LYNCH:  So the plaintiff in this case is claiming that her termination from defendants caused a flareup or somewhat of a psychotic break that was related to her PTSD.  So the plaintiff in this case claims to have been raped, imprisoned and tortured in Belgrade, resulting in her PTSD diagnosis.  She has testified that Dr. Jackson, which she started seeing in late 2016, diagnosed her with PTSD before the records that we have.  Dr. Jackson's more recent records that we do have are replete with references to this trauma in Belgrade.

So it is critical for defendants to obtain these records when Dr. Jackson diagnosed her with PTSD, which will be, if this case does get to trial, will be the focus of plaintiff's emotional distress damages, how defendants' firing exacerbated her PTSD.  So we need the records of that diagnosis, as well as records from

PROCEEDINGS                    13

Dr. Jackson revealing whether plaintiff had any prior flareups or other preexisting psychotic breaks relating to this PTSD.  In addition, our medical expert needs these records in order to properly assess the plaintiff at her eventual forthcoming Rule 35 mental health examination.

THE COURT:  I gather you learned more about this Belgrade incident at the deposition?

MR. LYNCH:  That's correct, your Honor.

THE COURT:  Okay, so given that plaintiff didn't have a chance to address that in the letter, why don't I hear plaintiff's side of the point that's been made that suggests ... the argument that, I guess at least for Dr. Jackson, the records should go back farther than 2018 because that's when this PTSD diagnosis was made and that the PTSD is an important part of the case.  So why don't I hear the plaintiff's side?

MR. BAGLEY:  Your Honor, plaintiff testified yesterday that she was diagnosed with PTSD in the early 2000s by a different doctor who she ... she was not yet seeing Dr. Jackson.  So I'm not sure exactly where the basis for saying that Dr. Jackson diagnosed her before 2020 comes from.  But regardless, I believe the point is

PROCEEDINGS                    14

still the same, that any PTSD flareups that occurred post her termination are relevant and any that occurred prior are not relevant because plaintiff does not allege that she should receive damages for any emotional distress that occurred prior to her firing.  They already have ...

THE COURT:  Well ...

MR. BAGLEY:  Yes, go ahead.

THE COURT:  I'm sorry, I didn't mean to interrupt.  I was going to have a factual question, but if you were in the middle of a thought, I didn't mean to interrupt.

MR. BAGLEY:  Defendants already have records going two years prior to her termination and five years prior to today's date, which they can compare how frequent her PTSD symptoms were.  I don't necessarily agree that ... and getting your Honor's earlier comments back to 2018 now, so four years prior and seven years prior to today's date.  So I'm not sure how relevant an additional few years of records will be to that inquiry.

THE COURT:  I wanted to ask a factual question, and I realize maybe all this information just came out of the deposition, and both sides may be trying to get a handle on it.  But I understand there was a PTSD

PROCEEDINGS                    15

diagnosis.  Was that related to this incident in Belgrade, or was it different; and when did these things occur?

MR. BAGLEY:  Yes.  The PTSD diagnosis was related to the incident in Belgrade, which occurred in 2000.

THE COURT:  Okay.  I understand what you're ... so PTSD related to the Belgrade incident in the year 2000.  I appreciate that clarification.

Let me hear if defendants agree that those are the facts as testified by Ms. Poolos or if you have different information.

MR. LYNCH:  So I agree to some of that.  So plaintiff's counsel is correct that the PTSD apparently resulted from this incident in Belgrade in 2000 or 2001 or so.  But we did ask plaintiff at her deposition about specifically what providers diagnosed her with PTSD.  So the plaintiff did have two therapists prior to Dr. Jackson and Dr. Olivo.  They're not the subject of this motion, but we did specifically ask for those two prior providers, and as Dr. Jackson, whether each of them diagnosed her with PTSD.  And for Dr. Jackson specifically, she stated that Dr. Jackson did diagnose her with PTSD.  So that would have been some time after

PROCEEDINGS                    16

the plaintiff started seeing her in late 2016.

And then quickly, I just want to add one other thing.  You know, at the last premotion conference that we were at, we were dealing with plaintiff's discovery requests where they were seeking documents dating back to the year 2000, and this Court limited the comparative discovery requests to January 1, 2016 to the present, and then January 1, 2015 to the present for one of the alleged comparators.  And I believe, you know, in the interest of fairness, if that would be an appropriate time frame for defendants' discovery requests.

THE COURT:  Okay.  No, I appreciate that, and I don't mind being reminded of my prior rulings.  It's good to try to be consistent where possible, although obviously, we are dealing with different situations. You know, part of ... well, I won't go over the reason for the comparator ruling; I'll just get myself in trouble if I do that.

My concern is that it's not so clear to me that even if ... it's not clear to me when Dr. Jackson's diagnosis was.  And Dr. Jackson wasn't even in the picture at the time of the Belgrade trauma.  That goes farther back, still.  So I think I'm going to stick to where I was earlier for Jackson and Olivo, which is

PROCEEDINGS                    17

beginning of 2018, based on the information I have before me now.  I recognize you will get additional information, and I'm sure you won't be shy about raising additional disputes if you have additional information that justifies that.  But based on what I've heard as of now, I'll stick with beginning of 2018 for Jackson and Olivo.

Okay ...

MR. LYNCH:  Your Honor, may I ask a point of clarification?

THE COURT:  Sure.

MR. LYNCH:  So because this is like a ...

THE COURT:  So who is this, so I know who's speaking for the record?

MR. LYNCH:  This is Michael Lynch for defendants.

THE COURT:  Right.  Thank you.

MR. LYNCH:  I just want to clarify whether defendants will have an opportunity to submit further briefing on this issue.  I think it would be helpful if defendants had the transcript of the plaintiff's deposition, because I believe that her testimony at her deposition will directly bear on your Honor's decision on this issue.

PROCEEDINGS                    18

THE COURT:  There won't be further briefing. This motion is decided and will be closed.  But it's without prejudice to you raising another motion if it's based on, you know, truly new evidence that wasn't available.  I don't want to hear the same argument again.  If I hear the same argument, you'll get the same ruling.  But I understand the deposition just took place, and if there's more information that can be brought to bear, then I'll consider it when raised.

MR. LYNCH:  Okay.  Thank you, your Honor.

THE COURT:  Okay.  Well, I thank the parties. And we are adjourned.  And I look forward to speaking to you next week about a reconsideration about the comparators.  But I just wanted to make sure I had everything fully briefed before addressing that.

(Whereupon, the matter is adjourned.)

19

C E R T I F I C A T E

I, Carole Ludwig, certify that the foregoing transcript of proceedings in the case of Poolos v. Paramount Global et al, Docket #23-cv-08896-GHW-HJR, was prepared using digital transcription software and is a true and accurate record of the proceedings.


Signature_____*Carole Ludwig*_____

Carole Ludwig

Date:    March 18, 2025