

Jeremiah Iadevaia
(212) 403-7323
jiadevaia@vladeck.com

June 3, 2025

**VIA ECF**

The Honorable Henry J. Ricardo
United States Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007

Re:    <u>Poolos v. Paramount Global, et al.</u>, 23-Civ-8896 (GHW) (HJR)

Dear Judge Ricardo:

We represent Plaintiff Alexandra Poolos ("Poolos" or "Plaintiff") in this case against Paramount Global, CBS Broadcasting, Inc., and CBS News, Inc. (collectively, "CBS" or "Defendants"). We write to raise a discovery dispute concerning the deposition of Michael Roderick ("Roderick"). Specifically, while fact discovery in this matter ended on June 2, 2025, we write to request an order for the limited purpose of directing Roderick to reappear and answer questions that defense counsel  erroneously directed him not to answer .[1]

<u>Background</u>

Cassandra Vinograd, a former <u>60 Minutes</u> Associate Producer, made complaints of unlawful sexual harassment, retaliation for her protected discrimination complaints, and other misconduct during her employment.  On December 17, 2019, while she was still employed, Cassandra Vinograd ("Vinograd") filed a complaint (the "Complaint" or the "Vinograd Complaint") in New York State Supreme Court, New York County, asserting claims of gender discrimination and retaliation against CBS Broadcasting, Inc. (<u>See</u> Dkt. 50-2) (attaching Summons & Complaint, NYSCEF Doc. No. 1, <u>Vinograd v. CBS Broadcasting, Inc.</u>, Index No. 162157/2019 (Sup. Ct. N.Y. Cty. 2019)) In the Complaint, Vinograd makes several assertions, described in more detail below, concerning her communications with CBS executives and investigators in New York—including communications with Roderick and Benjamin Matos ("Matos"), then a Human Resources business partner. (<u>See</u> Dkt. 50-2 ¶ 34) In this action, this Court previously ordered CBS to produce documents sufficient to show complaints that Vinograd made against Gavhson and some of the emails Vinograd referenced in her Complaint. (Dkt. 128 at 2; Dkt. 136 at 25:3-25)

---

[1] Plaintiff tried on May 30, 2025 to call Chambers during the deposition pursuant to Your Honor's Individual Rule I.B and was instructed to raise the dispute via a letter filed on ECF. On June 1, 2025, Plaintiff received the rough transcript of the deposition.  On June 2, 2025, Plaintiff conducted two depositions in this matter.  Thereafter, Plaintiff promptly submitted this letter as directed.

Hon. Henry J. Ricardo
June 3, 2025
Page 2

<u>Roderick's Deposition</u>

During Roderick's deposition on May 30, 2025, CBS's counsel objected on privilege grounds and instructed Roderick not to answer numerous questions about Vinograd's Complaint. Specifically, CBS's counsel instructed Roderick not to answer questions about the communications described in, <u>inter alia</u>, paragraphs 35, 37, 41, 42, and 43 of the Vinograd Complaint and in the emails produced pursuant to the Court Order. (Dkt. 128 at 2)

- In paragraph 35 of the Complaint, Vinograd asserts that during a call with Roderick and Matos on September 30, 2019, they discussed the photo Gavshon sent her and Gavshon's text about his sister. (Dkt. 50-2 ¶ 35) Plaintiff's counsel asked whether it was true that those topics were discussed on the call. CBS objected on the basis of privilege and instructed the witness not to answer. (Ex. B, Rough Draft Transcript of the Deposition of Michael Roderick dated May 30, 2025 ("Tr.") at 198:2-20; 207:4-11)

- In paragraph 37 of the Complaint, Vinograd asserts that Roderick and Matos advised her to stay home and avoid the workplace; that they did not even suggest the possibility of suspending Gavshon; and that Roderick instructed her to text message Gavshon and tell him that she would be out sick the rest of the week. (Dkt. 50-2 ¶ 37) Plaintiff's counsel asked about the accuracy of each allegation. CBS objected on the basis of privilege and instructed the witness not to answer each question. (Ex. C, Tr. at 220:21-223:20)

- In paragraph 41 of the Complaint, Vinograd asserts that she spoke to Roderick and said she was eager to get back to work but was uncomfortable working directly with Gavshon. (Dkt. 50-2 ¶ 41) Plaintiff's counsel asked the witness whether that conversation happened as described in the filing. CBS objected on the basis of privilege and instructed the witness not to answer whether the second sentence of the paragraph was accurate. (Ex. D, Tr. at 233:7-233:20)

- In paragraph 42, Vinograd asserts, <u>inter alia</u>, that Roderick assured her that Gavshon would not be in the office during the alleged investigation. (Dkt. 50-2 ¶ 42) Plaintiff's counsel asked the witness whether he made such assurances to Vinograd. CBS objected on the basis of privilege and instructed the witness not to answer. (Ex. E, Tr. at 235:4-10)

- Vinograd asserts that Roderick and Matos told her that Jose Andino, HR from New York, would stop by her office shortly to speak to her but he never did. (Dkt. 50-2 ¶ 43) Plaintiff's counsel asked the witness whether that was accurate. Defendants objected on the basis of privilege and instructed the witness not to answer. (Ex. F, Tr. at 242:8-244:8)

- The emails produced pursuant to the Court Order are marked attorneys' eyes only. In order to minimize filings with heavy redactions, Plaintiff does not attach those emails, but will do so at the Court's direction. However, given that Plaintiff is

Hon. Henry J. Ricardo
June 3, 2025
Page 3

seeking to compel the witness to answer questions about those emails, relevant portions of the transcript are hereby attached. (See, e.g., Ex. G, Tr. at 226:7-232:16 ████████████████████████████████; 235:12-242:7 ████████████████████████████████)

CBS's Baseless Privilege Objections

CBS has asserted that Roderick's investigation into Vinograd's complaints against Gavshon is privileged because it was conducted at the direction of counsel and that this privilege extends to communications between Vinograd and the investigators. Without conceding any arguments, to the extent the investigation is privileged and to the extent that the privilege includes conversations with the complainant, CBS has waived the privilege as it relates to the information available in the publicly filed Complaint.

"[I]n order to demonstrate that a party has not waived the attorney-client privilege after public disclosure of allegedly privileged communication, "[a] party . . . must show, among other things, that it tried to remedy such disclosure immediately." Charlemagne v. Educ. All., Inc., No. 22-CV-1136 (VSB), 2022 WL 1421480, at *1 (S.D.N.Y. May 5, 2022); see also Fischman v. Mitsubishi Chem. Holdings Am., Inc., No. 18-CV-8188 (JMF), 2019 WL 3034866, at *3 (S.D.N.Y. July 11, 2019) ("A party seeking to show that inadvertent disclosure of privileged material did not waive the privilege must show, among other things, that it tried to remedy such disclosure immediately." (internal quotation marks omitted) (quoting Ceglia v. Zuckerberg, No. 10-CV-00569A(F), 2012 WL 1392965, at *8 (W.D.N.Y. Apr. 19, 2012))). Generally, to avoid waiver of the attorney-client privilege, the party seeking to protect the privilege must "request for the return or destruction of inadvertently produced privileged materials within days after learning of the disclosure." Fischman, 2019 WL 3034866, at *3 (internal quotations omitted) (emphasis in original). CBS has never sought to seal the information at issue or taken steps to remedy purported privileged disclosures in the Vinograd Complaint.

Vinograd filed her complaint over five years ago, and CBS never moved to seal the allegations containing purportedly privileged investigation. See Ophir v. Koneksa Health Inc., No. 23 CIV 9145 (DEH), 2024 WL 1892567, at *2 (S.D.N.Y. Apr. 30, 2024) (where defendants waited more than six months to assert privilege over allegations in the complaint, "[d]efendants' arguments regarding the lack of waiver are not persuasive"). Indeed, over a month after Vinograd filed her Complaint, CBS moved to dismiss and, in doing so, cited Vinograd's assertions, without making any request to seal. (See Ex. A, CBS Broadcasting Inc.'s Memorandum of Law in Support of Its Motion to Dismiss, NYSCEF Doc. No. 6, Vinograd v. CBS Broadcasting, Inc., Index No. 162157/2019 (Sup. Ct. N.Y. Cty. 2019) at 3)

For similar reasons, any privilege that attached to the communications reflected in the emails CBS produced has been waived. CBS did not object to the email production that this Court ordered on privilege grounds. The emails themselves are quoted verbatim in the Complaint. As set forth above, CBS never sought to seal those allegations

Hon. Henry J. Ricardo
June 3, 2025
Page 4

Accordingly, CBS has waived privilege as it relates to information referenced in the Vinograd Complaint, including the specific discussions in paragraphs 35, 37, 41, 42, and 43 and those referenced in the emails. See Fischman, 2019 WL 3034866, at *3 ("Where the delay can be measured in weeks or months, as here, courts routinely reject requests to put the proverbial genie back in the bottle.").

During the Roderick deposition, CBS proffered non-sensical arguments about the lack of waiver. CBS's counsel stated that the communications described in the Complaint were merely allegations, and that if the communications described were untrue, then no waiver of the privilege occurred. Of course, as Plaintiff's counsel argued, if the alleged statements were not made in the context of the privileged investigation, or, as defense counsel hypothesized, were not made at all, no privilege could have attached in the first place. (Ex. H, Tr. at 198:2-206:3)

Moreover, CBS's privilege assertion has been inconsistent, which further undermines any basis to prohibit Plaintiff's questioning. For example, CBS has not articulated, nor can it articulate, any distinction between the email communications described in the Complaint that it has produced and the phone communications described in the Complaint over which they claim privilege. Also, when Plaintiff's counsel asked the witness about the accuracy of Vinograd's assertions concerning the contents of a September 30, 2019 phone call, CBS claimed privilege and instructed the witness not to answer. (See supra, n. 3) Yet when Plaintiff's counsel later asked if the witness recalled anything about the same September 30, 2019 phone call not described in the investigation closure memorandum, CBS did not object. (Ex. I, Tr. at 250:25-251:5)

For the foregoing reasons, we respectfully request that Roderick be compelled to answer questions concerning communications described in the Vinograd Complaint.

Respectfully submitted,

*/s Jeremiah Iadevaia*

cc: All counsel of record (via ECF)

EXHIBIT A

Case 1:23-cv-08896-GHW-HJR    Document 180    Filed 06/03/25    Page 6 of 68

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------- x

CASSANDRA VINOGRAD,

                              Plaintiff,

       -against-

CBS BROADCASTING, INC.,

                         Defendant.

-------------------------------------------------------------- x

Index No. 162157/2019

**ORAL ARGUMENT REQUESTED**

## CBS BROADCASTING INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

Case 1:23-cv-08896-GHW-HJR    Document 180    Filed 06/03/25    Page 7 of 68

Since commencing work on July 1, 2019, Vinograd has always worked in the London Bureau, and until about September 30, 2019, she worked exclusively with Gavshon. (Compl. ¶¶ 2, 37, 60; Emp. Contract ¶ (2), 1.)

According to the Complaint, Gavshon's alleged conduct (which occurred while both Vinograd and Gavshon were in the U.K.) created a hostile work environment at the London Bureau. Vinograd contends that shortly after her hiring, she became aware that Gavshon "drank openly in the [London] office and out in the field," even becoming "belligerent or pass[ing] out drunk in her office," and that this conduct continued over the next two months in both London and Hungary. (Compl. ¶¶ 25-27, 62.) On September 26, 2019, while Vinograd was in London, she alleges that she was "shocked," "disgusted, uncomfortable and scared" upon receiving a text from Gavshon containing what appeared to be an old photo of Gavshon and friends urinating on smoldering coal. (*Id.* at ¶¶ 28-33.) About an hour later, Gavshon texted Vinograd to apologize for the text which he had intended to send to someone else. (*Id.* at ¶ 32.)

Gavshon's alleged conduct prompted Vinograd to report her concerns to CBS representatives in New York City on September 30, 2019, via email from London. (*Id.* at ¶ 34.) Later that day, she spoke with two New York City-based CBS representatives over the phone about her complaint, and they informed her that CBS would investigate her allegations. (*Id.* at ¶¶ 35-36.) Vinograd further claims that they instructed her to text Gavshon that she would be out sick so that she could avoid her London workplace while CBS investigated the matter. (*Id.* at ¶ 37.)

In early October 2019, while in London, Vinograd sent two emails to, and had two phone calls with, CBS representatives in New York City regarding her complaint and the investigation. (*Id.* at ¶¶ 39-44.) On October 7, 2019, CBS representatives in New York City emailed Vinograd

3

Case 1:23-cv-08896-GHW-HJR    Document 180    Filed 06/03/25    Page 8 of 68

Missouri forum selection clause in employment agreement where plaintiff, a single mother in Dutchess County, New York, could not show that clause should be set aside).

This Court should honor the parties' choice of exclusive forum and enforce the forum selection clause contained in Vinograd's Contract, and should dismiss Vinograd's Complaint pursuant to C.P.L.R. § 3211(a)(1) in favor of jurisdiction before the courts of England and Wales.

## <u>CONCLUSION</u>

For all the foregoing reasons, CBS Broadcasting Inc. respectfully prays that this Court dismiss Vinograd's Complaint in its entirety and with prejudice.

Dated: New York, New York
       January 21, 2020

Respectfully Submitted,

PROSKAUER ROSE LLP

By: <u>*s/ Keisha-Ann G. Gray*</u>
      Keisha-Ann G. Gray
Eleven Times Square
New York, New York 10036
(212) 969-3794 (phone)
(212) 969-2900 (fax)
kgray@proskauer.com

*Attorney for Defendant*
*CBS Broadcasting Inc.*

16

# EXHIBIT B

⬆

198

1              M. RODERICK

2      Q    Okay.  So starting on that first

3  sentence on paragraph 45, is it true that

4  Ms. Vinograd had a call with you and

5  Benjamin Matos on or about September 30th,

6  2019?

7      A    Just to clarify, it's item 35.

8  Yeah, not 45.  Oh, sorry.  Yeah, no,

9  don't, no worries.  So repeat the

10  question.

11      Q    Sure.  Did you have a phone call

12  with Ms. Vinograd and Mr. Matos on or

13  about September 30th, 2019?

14      A    I believe so.

15      Q    Okay.  And Ms. Vinograd alleges

16  that during that call you discussed the

17  photo and Gavshon's text about his sister.

18  Is that true?

19          MR. ZUCKERMAN:  Objection.

20      Instructing you not to answer.

21          MR. IADEVAIA:  I don't see, I don't,

22      I don't see how that could be privileged

23      if it's part of a public filing.

24          MR. ZUCKERMAN:  We've -- we've had

25      this debate, I think in -- in -- in -- in

⬆

                                                    199

1               M. RODERICK

2       court, so I'm not going to revisit the

3       ruling on this for sure.  And I don't know

4       what actions, if any, were taken to

5       preserve the privilege.  Just because

6       someone may have breached the privilege at

7       one point doesn't make it inappropriately

8       breached, the privilege doesn't make it

9       game for further breach forever.

10          MR. IADEVAIA:  Well, if CBS took no

11      steps to fix that purported breach, I

13        can't call Chambers directly anymore.  But

14        we were able through an intermediary to

15        notify the court that we had had a dispute

16        during a deposition.  The court asked that

17        we send a letter, so we will be sending a

18        letter later today, as soon as we can get

19        one out to the court.  I'm -- we've

20        obviously have a disagreement on this

21        issue.  We don't need to continue to go

22        back and forth on it in order to complete

23        as much as we can today.  But I am going

24        to ask my questions because I need my

25        record.  Obviously you can instruct the

⬆

207

1                    M. RODERICK

2        witness however you'd instruct him.

3    BY MR. IADEVAIA:

4        Q    Okay.  So the record, the

5    question I had asked is whether the

 6    allegations contained in paragraph 35

 7    accurately reflect the phone call that

 8    you, Mr. Matos and Ms. Vinograd had on or

 9    about September 30th, 2019?

10         MR. ZUCKERMAN:  Objection, privilege.

11      Do not answer the question.

12         THE WITNESS:  Okay.

13  BY MR. IADEVAIA:

14      Q    Paragraph 36.  Ms. Vinograd

15  alleges that you and Mr. Matos claim to

16  her that CBS's New York City office would

17  investigate Mr. Gavshon's conduct.  And my

18  question is -- is that accurate?

19         MR. ZUCKERMAN:  I -- I don't see that

20      as privilege.  You can answer that

21      question.

22         THE WITNESS:  I would say, I will say

23      that is not accurate.  What we told her is

24      that we would conduct an investigation of

25      her allegations guarding Mr. Gavshon.

# EXHIBIT C

22      A    Yes.

23      Q    Okay.  Did you join Mr. Matos

24  and participate by telephone in a call as

25  Mr. Andino describes here?

                                        220

1                    M. RODERICK

2      A    I don't recall.

3      Q    Do you remember whether it was

4  on October 11th, 2019 or any other day

5  having a meeting with by telephone with

6  Ms. Vinograd in which you discussed the

7  results of the investigation?

8      A    I don't recall.

9      Q    Going back to exhibit four,

10  please.  The lawsuit.  All right.  And if

11  you could take a look at page 15 of 29 in

12  paragraph 37.

13          Okay.  And if you could read

14  that paragraph please,

15          MR. ZUCKERMAN:  We can move it along.

16      I'm going to object to questions about

17      discussions during the course of the

18      investigation.

19  BY MR. IADEVAIA:

20      Q    I know, I Know.

21          In paragraph 37, Ms. Vinograd

22  alleges that Roderick and Matos

23  outrageously advise Cassie that if she was

24  uncomfortable working with Gavshon, she

25  should be the one to stay home and avoid

                                                221

1                  M. RODERICK

2  the workplace.

3          Do you see that text?

4      A    Yes.

5      Q    Okay.  Did you advise her to

6  stay home and avoid the workplace

7          MR. ZUCKERMAN:  If you're just trying

8          to build a record?  I've already given it

9          to you counselor.  I'm instructing the

10         witness not to answer any question about

11         that would reveal the investigatory

12         discussions.  The substance of the

13         investigation as opposed to what we have

14         all agreed is not privileged, which is the

15         initial complaint that comes in and the

16         conclusion of the investigation.  That's

17         my instruction.  You have it on the

18         record, you could take that to the court.

19         I don't think we have to waste time asking

20         questions.  You know, I'm going to object

21         to and, and frankly if -- if -- if we do

22         prevail and it's privileged, you're --

23         you're treading on thin ice asking

24         questions that are invasive of the

25         privilege.

```
 1                    M. RODERICK
 2         MR. IADEVAIA:  I -- I really don't
 3     appreciate the threat.  I'm not doing
 4     anything unethical.  We have a good faith
 5     dispute about whether this is privilege or
 6     not.  I don't, I can't even begin to
 7     understand the distinction between the
 8     emails that defendants were ordered to
 9     produce, which are communications during
10     this investigation and these that are
11     reflected in this document.  But in any
12     event, I've had judges say, you can only
13     ask the questions you specifically raised
14     during the deposition.  And I do not want
15     there to be a waiver argument that because
16     I didn't ask the question, I am prevented
17     from raising that issue or following up if
18     we were to prevail.
19 BY MR. IADEVAIA:
20     Q    Okay.  Ms. Vinograd asserts that
21 Roderick and Matos in paragraph 37 did not
22 even suggest the possibility of suspending
23 Gavshon pending the investigation.  And my
24 question is -- did you ever say to Ms.
25 Vinograd raise the possibility of Mr.
```

⬆

223

```
 1                    M. RODERICK

 2    Gavshon being placed on an administrative

 3    leave?

 4              MR. ZUCKERMAN:  Objection.  Attorney

 5         client privilege.  I'm instructing the

 6         witness not to answer.

 7    BY MR. IADEVAIA:

 8         Q    Okay.  Further, in 37, Ms.

 9    Vinograd alleges Roderick also

10    unbelievably instructed Ms. Vinograd to

11    text message Gavshon and tell him that she

12    would be out sick the rest of the week.

13    Do you see that text?

14         A    Yes.

15         Q    Okay.  Did you ask or suggest or

16    instruct Ms. Vinograd to text message Mr.

17    Gavshon and tell him that she, that Ms.

18    Vinograd would be out sick the rest of the
```

19    week?

20         MR. ZUCKERMAN:  Objection, privilege.

21    BY MR. IADEVAIA:

22         Q    Okay.  Okay.  If we look at, if

23    we can mark this document as exhibit six

24    seven, this will also be attorney's eyes

25    only.  Thank You.



EXHIBIT D

233

1                    M. RODERICK

2    court filing, which was December 17th,

3    2019, you had not replied to the email.

4    My question is -- is that accurate?

5         A    I don't recall.  Excuse me.  I

6    don't recall.

7         Q    Okay.  I know that's In

8    paragraph 41.  Ms. Vinograd alleges that

9    on October 4th, 2019, she spoke to you for

10   the third time in a matter of days about

11   Mr. Gavshon.  She repeated that she was

12   eager to get back to work but was

13   uncomfortable working directly with him.

14   My question is -- is that accurate that

15   that happened?

16             MR. ZUCKERMAN:  You can respond to

17        the -- whether the first sentence of

18        paragraph 41 is true and I'm directing you

19        not to answer with respect to the second

20        sentence.

21             THE WITNESS:  I don't recall.

22   BY MR. IADEVAIA:

23        Q    You don't recall if on October

EXHIBIT E

17      answer.

18           THE WITNESS:  I don't recall.

19  BY MR. IADEVAIA:

20      Q    Did Ms. Vinograd take any kind

21  of leave of absence after she filed her

22  complaint on September 30th?

23      A    I don't recall.

24      Q    And did Ms. Vinograd, after her

25  filing her complaint on September 30th,

⬆

                                        235

1                 M. RODERICK

2   work remotely for any period of time?

3       A    I don't recall.

4       Q    Paragraph 42 goes on to allege

5   that Roderick assured her that Gavshon

6   would not be in the office during the

7   alleged investigation.  My question is --

8   did you ever make that assurance or

9   representation to Ms. Vinograd?

10          MR. ZUCKERMAN:  Objection, privilege.

11  BY MR. IADEVAIA:

12      Q    Okay.  Why don't we just skip to

13  the email if we could do CBS 8 8 2 2

14  please.  This is going to be attorney's

15  eyes only Again.

16          We are up to nine.  Okay.

17          THE WITNESS:  Thank you.

EXHIBIT F



242

1                    M. RODERICK

8           MR. IADEVAIA:  Okay.  Okay.  If we

9      could go back to exhibit four.  That's it

10     for attorney's eyes only.

11          Look at paragraph 43, please.

12          Okay.  Ms. Vinograd alleges in

13     paragraph 43 that in response to the email

14     that we just went over dated October 10th,

15     2019, that Roderick and Matos responded by

16     telling her that Jose Andino HR from NYC

17     would be stopping by her office shortly to

18     speak with her to speak to her.

19          Do you see that text?

20     A    Yes.

21          MR. IADEVAIA:  Okay.  Is that

22     accurate?

23          MR. ZUCKERMAN:  Again, I -- I think

24     to the extent the question is whether Mr.

25     Roderick spoke or met with the plaintiff
⬆

                                        243

1               M. RODERICK

2     in this lawsuit at particular times Fair

3     game.  But again, this, the way this

4       allegation is written in the complainant

5       assumes the prior facts and those prior

6       facts or the subject of the privilege

7       dispute.  So if there's a different way to

8       answer to ask the question, that may be a

9       solution here, but if not, I'm objecting

10      on basis of privilege.

11  BY MR. IADEVAIA:

12     Q   Okay.  I understand that for the

13  question I just asked, the witness has

14  been directed not to answer.  I'll try a

15  different question, which is that -- Mr.

16  Roderick, did you tell Ms. Vinograd at any

17  point during the -- during your

18  investigation that Mr. Andino from HR

19  would come to her office?

20      MR. ZUCKERMAN:  Again, the -- the

21      fact of whether someone from the company

22      spoke to this person is not privileged,

23      but what they said to her is within the

24      scope of the privilege.

25      MR. IADEVAIA:  Okay.

244

1                        M. RODERICK

2              MR. ZUCKERMAN:  In our view.

3              MR. IADEVAIA:  In my -- right.  And

4        we obviously disagree, but, and I think my

5        question was that the substance of a

6        communication, so as I understand it, then

7        you're directing him not to answer?

8              MR. ZUCKERMAN:  Yes.

9    BY MR. IADEVAIA:

10        Q    Okay.  Okay.  In paragraph 44,

11   Ms. Vinograd alleges that on October 11th,

12   2019, Roderick told Cassie that HR

13   conducted an investigation and concluded

14   that Gavshon meant to send the photo to

15   his sister and that it was a mistake that

16   Cassie received it.

17             Do you see that text?

18        A    Yes.  Excuse me.

19        Q    Did you have a conversation with

20   Ms. Vinograd in which you said that HR had

21   concluded that Gavshon meant to send the

EXHIBIT G

226

```
1                    M. RODERICK

2    email.

3              Ms. Roderick, did Ms. Vinograd

4    send this email to you on or about October

5    2nd, 2019?

6         A    I don't recall.

7         Q    Why don't we mark this one,

8    exhibit eight, and again, this is

9    attorney's eyes only.

10             (Plaintiff Exhibit 8 was marked

11             for identification.)

12        A    Thank you.
```











230









17          THE REPORTER:  Okay.  Counsel, does

18      that end the attorney's eye only?

19  BY MR. IADEVAIA:

20      Q    It does.  Thank you.  Okay.

21  Going back to exhibit four, please.  And

22  turning to page 15 or 16 of 29 rather.

23  And in paragraph 40, Ms. Vinograd alleges

24  that in response to her email dated

25  October 2nd, 2019, as of the date of her

24    4th you spoke to Ms. Vinograd, is that --

25    is that right?

234

1                    M. RODERICK

2        A    Yes.

3        Q    Yeah, you don't recall.

4             Okay.

5             Okay.  If you look at paragraph

6    42, Ms. Vinograd alleges on October 8th,

7    2019, she returned to the office.

8             Do you see that text?

9        A    Yes.

10       Q    Is that accurate?

11       A    I don't recall.

12       Q    Whether it was on October 8th or

13   any other time.  Was there a date when Ms.

14   Vinograd returned to the office following

15   her complaint on September 30th?

16            MR. ZUCKERMAN:  Objection.  You can

10          MR. ZUCKERMAN:  Objection, privilege.

11  BY MR. IADEVAIA:

12      Q    Okay.  Why don't we just skip to

13  the email if we could do CBS 8 8 2 2

14  please.  This is going to be attorney's

15  eyes only Again.

16          We are up to nine.  Okay.

17          THE WITNESS:  Thank you.



237











240



         8            MR. IADEVAIA:  Okay.  Okay.  If we

         9    could go back to exhibit four.  That's it

        10    for attorney's eyes only.

11          Look at paragraph 43, please.

12          Okay.  Ms. Vinograd alleges in

13     paragraph 43 that in response to the email

14     that we just went over dated October 10th,

15     2019, that Roderick and Matos responded by

16     telling her that Jose Andino HR from NYC

17     would be stopping by her office shortly to

18     speak with her to speak to her.

19          Do you see that text?

20     A    Yes.

21          MR. IADEVAIA:  Okay.  Is that

22     accurate?

23          MR. ZUCKERMAN:  Again, I -- I think

24     to the extent the question is whether Mr.

25     Roderick spoke or met with the plaintiff
↟

243

1                 M. RODERICK

2     in this lawsuit at particular times Fair

3     game.  But again, this, the way this

EXHIBIT H

☗

198

1                  M. RODERICK

2      Q    Okay.  So starting on that first

3  sentence on paragraph 45, is it true that

4  Ms. Vinograd had a call with you and

5  Benjamin Matos on or about September 30th,

6  2019?

7      A    Just to clarify, it's item 35.

8  Yeah, not 45.  Oh, sorry.  Yeah, no,

9  don't, no worries.  So repeat the

10  question.

11      Q    Sure.  Did you have a phone call

12  with Ms. Vinograd and Mr. Matos on or

13  about September 30th, 2019?

14      A    I believe so.

15      Q    Okay.  And Ms. Vinograd alleges

16  that during that call you discussed the

17  photo and Gavshon's text about his sister.

18  Is that true?

19          MR. ZUCKERMAN:  Objection.

20     Instructing you not to answer.

21          MR. IADEVAIA:  I don't see, I don't,

22     I don't see how that could be privileged

23     if it's part of a public filing.

24          MR. ZUCKERMAN:  We've -- we've had

25     this debate, I think in -- in -- in -- in

^

199

1               M. RODERICK

2     court, so I'm not going to revisit the

3     ruling on this for sure.  And I don't know

4     what actions, if any, were taken to

5     preserve the privilege.  Just because

6     someone may have breached the privilege at

7     one point doesn't make it inappropriately

8     breached, the privilege doesn't make it

9     game for further breach forever.

10          MR. IADEVAIA:  Well, if CBS took no

11     steps to fix that purported breach, I

12    think it would be deemed waived.  I don't

13    think this issue has been covered in

14    court.  Is there something specific you're

15    referring to?

16        MR. ZUCKERMAN:  I just, I -- I -- I -

17    - I don't have a clear recollection of

18    obviously, what was said in court, but

19    we've been in court multiple times about

20    the investigations, including this

21    investigation.  This is a document that

22    you've had since the beginning of the

23    lawsuit.  If you wanted to raise an issue

24    about whether or not the Gavshon

25    investigation was -- was privileged or

⬆

                                        200

1                M. RODERICK

2    that privilege was waived, there was

3    plenty of opportunity for plaintiff to do

4    so.  I'm not going to waive it here.

```
5                MR. IADEVAIA:  All right.  Well,

6        look, I think we probably need to take a

7        break and try the court, because otherwise

8        we're just going to have to make a request

9        to bring back the witness.  I disagree

10       with the characterization.  I think in our

11       email communications about this, we were

12       clear that we believe that allegations

13       that were contained in the complaint by

14       Ms. Vinograd were not privileged.  And

15       even if they were, the privilege was

16       waived and no one did anything to address

17       that.

18               MR. ZUCKERMAN:  If -- if the

19       allegation in the complaint is utterly

20       untrue or didn't happen right then there,

21       there's no waiver.

22               MR. IADEVAIA:  Well, he did say the

23       call, ha I'm not sure I understand.  He

24       said the call happened?

25               MR. ZUCKERMAN:  A call happened.
```

201

```
1                    M. RODERICK

2      There's no question about that.  The fact

3      that a call happened is not privileged.

4      But if someone, if -- if the plaintiff in

5      this case Ms. Vinograd claims that she

6      said acts, and in fact she never said

7      acts, then there was no breach of the

8      privilege.

9          MR. IADEVAIA:  Well, but then there's

10     no privilege because there was nothing

11     that existed to claim privilege to, or

12     attached privilege to.

13         MR. ZUCKERMAN:  But asking the

14     witness to confirm whether or not X was

15     said, if it wasn't said, is asking him to

16     testify about the -- the substance of an

17     attorney-client privileged investigation.

18     My point is -- you, you, you don't have

19     enough information to know whether or not

20     there's a waiver.

21         MR. IADEVAIA:  Well, I have a

22     publicly filed lawsuit that --
```

23          MR. ZUCKERMAN:  It's an allegation by

24    one party.  Where's the answer?  Was it

25    denied?  Was the allegation denied?  Is

                                              202

1                    M. RODERICK

2     there deposition testimony to reflect

3     whether or not this was something that was

4     said in the course of the investigation?

5     And is -- is there a -- a -- a evidence

6     that CBS waived the privilege?  Ms.

7     Vinograd can't waive the privilege for

8     CBS?

9          MR. IADEVAIA:  No.  But if CBS

10    believed that these communications were

11    privileged, it was incumbent upon them to

12    take steps to rectify the problem and

13    failure to do so for six years would

14    constitute waiver.

15         MR. ZUCKERMAN:  Well, this is an

16    argument that you all could have made in

17    the course of this case.  Going back, I

18    don't know how long we have been in court

19    more times on this case than on any case

20    I've had in 30 years of my career.  We

21    have repeatedly talked about the

22    privileged nature of the internal

23    investigations.  It was a motion about the

24    privileged nature of the internal

25    investigations.  If you wanted to raise a

♠

203

1                    M. RODERICK

2    waiver argument, that was the time to do

3    it.  And I'm certainly not going to

4    consent to litigating this issue on a

5    telephone call with the court at three

6    o'clock on Friday without having the

7    ability to brief it without having the

8    ability to consult with my client.

9          MR. IADEVAIA:  This is an issue that

10      we raised in emails.  We took a clear

11      position on it.  And so I -- we'd never

12      litigated no one has made any motions

13      about, about the scope of privilege or any

14      privilege related to this particular

15      investigation.  I am acknowledging without

16      waiver of any arguments that

17      communications, certain types of

18      communications are subject to privilege.

19      You have objected and directed the witness

20      not to answer a couple of questions.  I

21      have not pushed back on that.  But

22      something that isn't a public filing is

23      clearly, I mean, even if there was

24      privilege, it's waived.

25          MR. ZUCKERMAN:  We were directed by
^

1                      M. RODERICK

2        the court to produce certain emails in

3        connection with the Gavshon complaint,

4        which recognizes that other information

5        and documents are privileged.  That was

6        your time to raise this in that proceeding

7        before the court.  So even if you are

8        right, which you're not, you've waived

9        your ability to make that argument at this

10       point.  So I'm not, I don't need to

11       further, I don't think we need to further

12       debate it.  If you want to call the court,

13       that's your, that's your option.

14            MR. IADEVAIA:  We will call the court

15       because we have the witness here.  It

16       doesn't, it's not efficient to have to try

17       to bring back a witness.  And I don't

18       understand at all the argument that

19       because certain documents were ordered to

20       be produced, there was some implicit

21       finding of privilege.  I mean, that's not

22       how privilege works.  And it wasn't the

23       basis of any of the court's rulings

24       related to this particular investigation.

25       The basis of that ruling was

205

1                          M. RODERICK

2          considerations of relevance and

3          proportionality as we understand it.  So,

4          so we very much disagree with that and we

5          don't see how anybody could claim

6          privilege over information that is

7          publicly available.  So I will continue

8          and you can direct the witness not to

9          answer.

10              MR. ZUCKERMAN:  It's so for, it's not

11          information public, this is an allegation

12          by a plaintiff.  If it is untrue, if every

13          word in there is untrue by way of just

14          hyperbolic example, only then for you to

15          then, it's not a waiver of the privilege,

16          but for you to ask the witness whether

17          it's true is a waiver of the privilege

18          it's privileged.  And I really would

19          prefer you can do what you want, but I

```
20        would prefer now that you are on notice

21        that we're, we are -- we are making a

22        privilege objection that you not continue

23        to ask questions that would be invasive of

24        that privilege.  If you want to call the

25        judge, feel free to call the judge.
```
⬆

```
1                    M. RODERICK

2          MR. IADEVAIA:  Okay.  So why don't we

3      take a break and do that then.

4          THE REPORTER:  We're off the record.

5      Time now is 310.

6          (Off the record.)

7          THE REPORTER:  We are back on the

8      record.  Time now is 3 28.

9          MR. IADEVAIA:  Okay.  So for the

10     record, we called Chambers or we tried to

11     call chambers.  It's -- there must be new

12     security measures in place because you
```

13          can't call Chambers directly anymore.  But

14          we were able through an intermediary to

15          notify the court that we had had a dispute

16          during a deposition.  The court asked that

17          we send a letter, so we will be sending a

18          letter later today, as soon as we can get

19          one out to the court.  I'm -- we've

20          obviously have a disagreement on this

21          issue.  We don't need to continue to go

22          back and forth on it in order to complete

23          as much as we can today.  But I am going

24          to ask my questions because I need my

25          record.  Obviously you can instruct the

⬆

                                        207

1                    M. RODERICK

2          witness however you'd instruct him.

3   BY MR. IADEVAIA:

4          Q    Okay.  So the record, the

5   question I had asked is whether the

EXHIBIT I







251

