**VLADECK, RASKIN & CLARK, P.C.**

JERA MAI IADEVAIA
(212) 403-7323
EMAIL: jiadevaia@vladeck.com

June 4, 2025

**VIA ECF**
The Honorable Henry J. Ricardo, United States Magistrate Judge

        Re:    <u>Alexandra Poolos v. Paramount Global, et al., 23-Civ-8896 (GHW)(HJR)</u>

Dear Judge Ricardo:

      We represent Plaintiff in this case against Defendants (collectively, "CBS"). We write pursuant to Your Honor's Rules to respectfully request an order reopening fact discovery[1] for the limited purpose of compelling CBS to provide a corporate designee under Fed. R. Civ. P. 30(b)(6) (the "30(b)(6) Deposition") to answer questions pursuant to the Court's April 7, 2025 Order and/or to otherwise respond to the information sought during that deposition. (Dkt. 171, the "April 7 Order").[2] Plaintiff's request should be granted because on June 2, 2025, CBS presented a 30(b)(6) witness unprepared to answer questions; directed its witness not to answer questions that plainly fell within the scope of the April 7 Order and Rule 30(b)(6); and failed to provide affidavits sufficient to respond to the topics identified in the April 7 Order.

<u>CBS's Witness Was Not Prepared to Answer Questions Identified by the Court's Order</u>

      The testimony makes clear that 30(b)(6) witness Balducci was unprepared to address the topics listed in this Court's Order and comply with the applicable rule, even under CBS's overly narrow interpretation of its obligations. The witness testified that her only preparation consisted of a one-hour meeting with counsel and a review of the affidavits produced in this matter. (Ex. D at 6:13-7:12) Also, Balducci's failure to properly prepare was apparent from her answers.

- As for Topic 1, whether there is any written guidance on how and when the ER team is deployed, Balducci's answer changed over time and was, initially inconsistent with the affidavit, including: "No. Nothing that I've seen that provides any specificity on how the [ER] team is deployed"; "Not that I've seen"; the "Viacom Global Business Practice statement" includes guidance on when and how the ER team will be deployed; asking for time to read the documents cited in an affidavit to figure out which one provides applicable

---

[1] CBS provided affidavits from witnesses on May 15 and 23, 2025 that purportedly addressed the 30(b)(6) topics. See Ex. A (Aff. of Senior Vice President, Employee Relations ("ER") and Investigations Jennifer Baker (the "Baker Aff.")); Ex. B (Aff. of Paramount Global Human Resources Vice President Renee Balducci ("Balducci") (the "Balducci Aff.")) On May 27, CBS stated that it believed that a 30(b)(6) deposition was not necessary, asserting that the affidavits satisfied the requirements of the April 7 Order. Plaintiff expressly disagreed. On May 29, 2025, Plaintiff sent an email to CBS identifying several 30(b)(6) topics that remained outstanding, including examples of specific areas that the affidavits did not address and that she intended to pursue during the deposition. (Ex. C) Plaintiff asked to meet and confer to resolve the issues before the deposition, but CBS did not respond. The deposition took place on June 2. Plaintiff received the rough transcript of the deposition on June 3 and filed this letter promptly thereafter.

[2] Relevant procedural history includes: On March 31, CBS filed a request for a protective order concerning the deposition of a corporate designee (Dkt. 151); on April 4, during oral argument, the Court discussed the topics identified in Plaintiff's 30(b)(6) notice (Dkt. 176); and on April 7, the Court issued the Order (Dkt. 171).

- guidance; identifying a training deck as supposedly providing the applicable guidance; and, following a break, clarifying her "confusing answer" and identifying the Proskauer training deck. (Ex. E at 20:6-11; 20:18-21; 22:22-24:7; 27:3-22)

- Balducci struggled to answer fundamental questions, including about the employment status of the Named Comparators. For example, Balducci was unaware as to whether Michael Gavshon ever worked for CBS; only after Plaintiff's counsel pointed Balducci to her own affidavit did she acknowledge that David Levine at some time worked for CBS (Ex. F at 30:13-32:19); as to whether Levine currently worked for CBS, she responded "I don't know. I – I've – I have – I've moved to a different division, so I can't answer that" (Ex. F at 40:12-16); and she incorrectly testified that Will Croxton is no longer working for CBS. (Ex. F at 40:17-41:8)

- The witness was initially unable to answer the question about the amount of severance paid to Named Comparator Michael Radutzky. (Ex. G at 45:19-47:3)

- Even though the April 7 Order requires CBS to describe efforts to locate complaints against the Named Comparators, Balducci was unsure if CBS had searched the Employee Relations database that contains documents reflecting complaints against its employees called "EthicsPoint." (Ex. F 33:20-34:17; see also Ex. H at 108:7-17; 109:18-112:13)

- In many instances, Balducci answered questions by reading from her affidavit that counsel plainly prepared. (See, e.g., Ex. F at 36:2-6; 38:24-39:2)

CBS's failure to provide a witness capable of answering these questions falls far short of its obligation to "make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the noticing party] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed . . . ." Tailored Lighting, Inc. v. Osram Sylvania Prods., Inc., 255 F.R.D. 340, 349 (W.D.N.Y. 2009) (citations omitted).

Topic 1: Written Guidance on the Deployment of Employee Relations

For Topic 1, the Baker Affidavit attaches and references a Proskauer training deck that purportedly provides "guidance on when and how the [ER] team will be deployed . . . referenced in the September 25, 2020 letter agreement with the [NY AG's Office]." (Ex. A at ¶ 6) However, the training materials do not even mention the ER team. (See id. at CBS 9278-9396)

Given the discrepancy between the Baker Affidavit and the training materials, Plaintiff asked Balducci questions concerning the purported policy, including, inter alia, what is the role of the ER team; who determines when ER is used; where guidance on when and how the ER team will be deployed is located; whether the NY AG's office reviewed CBS's guidance on when or how to deploy the ER team; and whether there was other written guidance outside of the Proskauer training materials. (Ex. E at 17:15-18:12, 25:2-14, 25:24-26:24, 28:4-29:11)

CBS's counsel instructed the witness not to answer the above questions. (Id.) In doing so, CBS adopted an exceptionally narrow reading of the April 7 Order, asserting that Plaintiff was permitted to ask only whether written guidance existed and nothing more. CBS's interpretation is not only unreasonable and nonsensical, but it also directly contradicts the Court's guidance during

oral argument.[3] Thus, CBS should be compelled to present a witness to answer questions concerning its policies for deploying the ER team.

Topic 2: Guidelines, Polices, or Procedures for Investigating Complaints

For Topic 2, in direct contravention of the April 7 Order, CBS directed the witness not to answer questions about whether there were any written guidelines, policies, or procedures outside of a specific training document CBS produced in this matter. (Ex. I at 30:5-11) Accordingly, CBS should be required to present a witness to answer this question.

Topic 6: Complaints Made Against Radutzky, Levine, Croxton, and Richman

For Topic 6, the Court did not specify that CBS could provide an affidavit in lieu of a 30(b)(6) witness, but CBS did so. The affidavit states that "the Company is not aware of any <u>non-privileged</u> documents sufficient to show complaints against Mr. Radutzky, Mr. Levine, Mr. Croxton, or Mr. Richman within the time frames established by the Court other than documents that have already been produced . . . ." (Ex. B at ¶ 38 (emphasis added))

Even if privileged, the fact that complaints were made against Plaintiff's male comparators is relevant to the claims in this matter. Plainly in violation of the April 7 Order, CBS directed the witness not to answer questions about whether any privileged documents were located. (Ex. F at 36:15-20; 37:19-38-4; 39:7-13; 40:3-10) Thus, Plaintiff asks that the witness be ordered to answer such questions and, if there are privileged documents, CBS should supplement their privilege log to include any such materials that it is withholding.

Topic 7: Whether the Named Comparators Received Severance

For Topic 7, CBS adopted a limited reading of the April 7 Order and directed its witness not to answer multiple questions about severance offered to the Named Comparators.

- CBS directed its witness not to answer basic questions about the severance offered to and received by Radutzky, including whether the buyout he accepted was a standard voluntary buyout agreement; whether it was offered to others; the criteria for those offered the buyout; and who made the decision to offer the buyout to Radutzky. (Ex. G at 53:6-54:9) Not only is this information relevant to her claim that CBS treated her male comparators better despite egregious misconduct, but it also is encompassed within the April 7 Order's requirement that a witness be available to testify about the material terms of severance.

- CBS directed its witness not to answer questions about Named Comparator Ira Rosen ("Rosen"), including whether he ever worked for CBS; when his employment ended; his last day of active work; the meaning of "Pay or Play" as referenced in a personnel form related to his employment termination; whether Rosen received compensation from CBS after his last active day working; whether he was provided with "Severance information"

---

[3] Parties are permitted to ask foundational questions during a Rule 30(b)(6) deposition. See <u>Meyer Corp. U.S. v. Alfay Designs, Inc.</u>, 2012 WL 3536987, at *4 (E.D.N.Y. Aug. 13, 2012) ("the scope of questioning at the deposition is not defined by the notice of deposition—instead, Fed.R.Civ.P. 26(1) defines the scope of discovery unless otherwise ordered by the court.") (citations omitted). Indeed, this Court recognized Plaintiff would not be limited by the specific inquiries set forth in the Order. <u>See, e.g.</u>, Dkt. 176 at 68 ("I certainly was thinking that you would have the opportunity to confront the witness with these agreements with the AG's office and say: Did you do this? . . . Where is it? What is the document called?").

as indicated in the personnel form and why or why not (Ex. J); his base salary; and whether he received a "settlement payment." (Ex. G at 54:11-58:25) This information falls within the scope of the Order as it all relates to compensation paid to Rosen after CBS notified him that his employment was ending. Regardless of whether CBS called it severance, settlement, or something else, it appears that CBS continued to pay Rosen after his active employment ended and framed it as "Pay or Play." (Ex. J)

Even if the information set forth above concerning Rosen and Radutzky falls outside the Order, CBS should be required to provide it to Plaintiff, consistent with the Court's prior orders and the claims and defenses in this matter.

Topic 8: When CBS Wiped Plaintiff's Company-issued Phone

CBS erroneously relies on the Balducci Affidavit for Topic 8, which clearly fails to comply with the April 7 Order. The Balducci Affidavit fails to specify when CBS wiped the data from Plaintiff's company-issued phone. Instead, the affidavit includes conclusory assertions such as "it appears that [the phone] was reset expeditiously after Plaintiff provided her password, as in the ordinary course" and "there is no information to suggest that phone was wiped after the legal hold was issued." (Ex. B at ¶¶ 45, 47)

Given the failure to provide a date, Plaintiff asked the 30(b)(6) witness basic follow up questions in response to her assertions in affidavit, including: CBS's practices about returning company issued phones; who is responsible for deleting information; CBS's corporate policy referred to in emails attached to Balducci's affidavit (Ex. B); and whether CBS keeps records of when data from a returned phone has been deleted. Plaintiff also asked questions about resetting Plaintiff's phone, including the basis for Balducci's assertions that a legal hold was issued in this matter within 10 days of receiving a call from me about the case; the custodians of the legal hold; and the basis for saying that there is no information to suggest that Plaintiff's company-issued cell phone was wiped after the legal hold was issued. (Ex. K at 65:4-81:22) A CBS witness should be compelled to provide this information as CBS has failed to identify the date on which Plaintiff's company-issued phone was deleted. The questions at issue are necessary to help Plaintiff determine the validity of CBS's assertions about timing in the Balducci Affidavit.

Topic 11: Ms. V and Ms. G's Separation from CBS

For Topic 11, CBS asserted in the Balducci Affidavit that Ms. V and Ms. G voluntarily resigned. (Ex. B) CBS directed the witness not to answer questions about whether they had asserted claims against CBS during their employment; whether they entered into settlement agreements as part of their departures; and whether, as part of those deals, they received payments in exchange for a release of legal claims. (Ex. L at 82:9-85:18) Such questions fall within the scope of the April 7 Order. Specifically, the nature of Ms. V's and Ms. G's departures reasonably includes whether the purported voluntary resignations were pursuant to any agreement that included a release of legal claims in exchange for a settlement payment based on discrimination, harassment, or retaliation claims. Thus, CBS should be compelled to produce a witness to answer these questions.

\* \* \*

Accordingly, Plaintiff respectfully requests that fact discovery be reopened for the limited purpose of directing CBS to Comply with the Court's April 7 Order and/or otherwise provide the information described herein.

Respectfully submitted,
*/s Jeremiah Iadevaia*