# EXHIBIT TTT

CBS NEWS INC.

STAFF AGREEMENT

AGREEMENT made as of May 30, 2021, by and between CBS NEWS INC., 524 West 57th Street, New York, New York 10019 (herein called "CBS") and ALEXANDRA POOLOS, c/o Julian & Associates, 8417 Iroquois Road, Palos Park, Illinois 60464, Attention: Paul T. Julian, Esq. (herein called "Artist").

In consideration of the mutual covenants herein contained, the parties hereto have agreed and do agree as follows:

1. (a) CBS hereby engages Artist and Artist hereby agrees to perform artistic and professional services, as required by CBS, as a Staff Producer, and at CBS's option, on an irregular basis, as a Freelance Writer, and in related capacities, pursuant to the applicable provisions set forth herein, in connection with such audio and/or audiovisual programs, segments and/or other product (herein individually called a "program" and collectively called the "programs") as CBS may at any time and from time to time elect, it being understood that any writing services which shall be within the purview of any applicable collective bargaining agreement between CBS Broadcasting Inc. and the Writer's Guild of America (any such agreement and each agreement succeeding it during the term hereof, being herein collectively called the "WGA Agreement") shall be subject to the WGA Agreement. Artist shall perform such services as persons performing the above functions customarily perform, whether or not connected with programs and program series, and Artist's services shall include the creation and development of titles, ideas, methods, characters, characterizations, locales, incidents, formulas, names and themes (herein collectively called "properties") for programs and program series, and the creation and development of other uses for the properties.

(b) The programs may be broadcast on a sustaining basis and/or in whole or in part on a commercially sponsored basis by any method or combination of methods of commercial sponsorship, now or hereafter known, without limitation. The word "broadcast," as used in this Agreement, means broadcast, transmission and/or exhibition by means of television, radio and/or other audio and/or audiovisual media now known or hereafter developed and/or television, radio and/or other audio and/or audiovisual devices, methods and improvements, now known or hereafter developed, without limitation, including, but not limited to so called "booster" and "translator" stations and relay systems, as well as antenna systems which receive and retransmit or redistribute (with or without amplification) signals by wire or cable connection or otherwise to audiovisual and/or audio devices. The programs may be broadcast throughout the world over such broadcast facilities, and on behalf of such sponsor or sponsors, as CBS may from time to time select or authorize.

2. (a) The term of this Agreement shall commence as of May 30, 2021, and shall continue, unless sooner terminated, through and including May 25, 2024, each successive period of fifty-two (52) consecutive weeks during the term hereof being herein called a "Contract Year," and each successive period of twenty-six (26) consecutive weeks during the term hereof is herein called a "Cycle."

(b) CBS shall have the right to terminate this Agreement effective at the end of any Cycle by giving Artist at least eight (8) weeks prior notice to such effect. In addition to CBS's termination right set forth in the preceding sentence, if at any time any CBS News program series is cancelled or if at any time any unit within CBS is dissolved or substantially downsized as determined by CBS, CBS shall have the right to terminate this Agreement effective at any time by giving Artist at least four (4) weeks' prior notice to such effect. Should Artist, at CBS's election, remain employed by CBS following the expiration of the term of this Agreement, then, absent the parties entering into a new written employment agreement, Artist's status shall be as an "at-will" employee, and the terms and conditions of this Agreement shall continue in full force and effect throughout the period of such "at-will" employment, subject to the remainder of this subparagraph 2.(b). During any such period of "at-will" employment, Artist's compensation will be subject to review in accordance with CBS policy from time to time, but CBS shall be under no obligation to increase it. If CBS elects to change Artist's compensation during any such period of "at-will" employment, CBS will provide Artist with written notice of such change on or about the effective date thereof, and such notice may include changes to Artist's base compensation for purposes of calculating applicable employee benefits for which Artist may be eligible pursuant to paragraph 22 ("Benefit Base"). Absent any such notice from CBS, Artist's compensation and Benefit Base will remain as set forth in subdivision 3.(a)(iii) during any such period of "at-will" employment. Notwithstanding any contrary provision contained in this Agreement, CBS or Artist shall have the right to terminate Artist's employment effective as of the end of the term of this Agreement, or during any period of "at-will" employment thereafter, for any reason, and, in the case of termination by CBS, upon the greater of: (i) such minimum notice period required under then-applicable CBS policy; or (ii) such minimum notice period required under any collective bargaining agreement that applies to the services performed by Artist hereunder and to which CBS is a signatory; provided, however, that CBS reserves the right to pay Artist the applicable sum set forth in subparagraph 2.(c) in lieu of notice (i.e., instead of requiring Artist to work throughout the period of notice). Moreover, in the case of any such period of "at-will" employment: (x) the first two sentences of subparagraph 4.(e) shall not apply; and (y) the matching right of CBS described in subparagraph 4.(e) shall apply solely in the event Artist elects to terminate Artist's employment, and then solely during the one hundred eighty (180)-day period immediately following such termination by Artist.

(c) Notwithstanding anything contained in this Agreement to the contrary, in the event this Agreement is terminated by CBS for any reason other than as set forth in paragraph 9, CBS shall pay Artist the greater of: (i) the balance of the total weekly compensation due Artist, if any, through the termination date, which shall be calculated commencing from the date CBS no longer requires the performance of Artist's services hereunder; or (ii) severance in accordance with subparagraph 22.(c). If the amount set forth in subdivision 2.(c)(ii) is greater than the amount set forth in subdivision 2.(c)(i) but Artist fails to comply with CBS severance policy within a reasonable period as determined by CBS, then CBS shall pay Artist the amount set forth in subdivision 2.(c)(i) notwithstanding the foregoing sentence. If this Agreement terminates for any reason or expires according to its terms (unless Artist's term of employment continues beyond such expiration), in addition to Artist's vested benefits as set forth in the Personnel Policies, CBS shall pay Artist for any accrued, but unpaid, unused vacation, prorated in accordance with the Personnel Policies. Notwithstanding the foregoing, Artist shall not receive any severance or any other termination payment: (x) if CBS terminates this Agreement

pursuant to paragraph 9; or (y) as a consequence of any expiration of the term of this Agreement if Artist continues to be employed on an "at-will" basis thereafter (in which case, any severance obligations and entitlements arising upon CBS's termination of Artist's employment will be in accordance with subparagraph 22.(c)).

3. (a) 

(b) Artist's Basic Weekly Staff Salary shall be deemed to constitute payment of the following:

(i) In the event that Artist shall perform services as a writer, except those services referred to in subdivision 3.(b)(ii), which shall be subject to the terms of any WGA Agreement in effect with respect thereto at the time when such services are performed, all amounts which may become due to Artist for such services, computed on the basis of the minimum union scales prescribed for such services by such WGA Agreement;

(ii) In the event that Artist shall perform services as a writer for which Artist shall be entitled to foreign telecast or supplemental markets payments pursuant to the terms of any WGA Agreement in effect with respect thereto at the time when such services are performed, all amounts which may become due to Artist for such services, computed on the basis of the minimum union scales prescribed for such services by such WGA Agreement;

(iii) All other services which CBS shall require Artist to render under this Agreement.

(c) Artist's aggregate Basic Weekly Staff Salary during any Contract Year shall be deemed to be prepayment of all sums due Artist in such Contract Year for Artist's services as a writer pursuant to subdivision 3.(b)(i), and, if Artist's Basic Weekly Staff Salary for such services in any week in which such services are performed shall not exceed the aggregate of the amounts computed with respect to said week pursuant to subdivision 3.(b)(i) by at least a weekly sum (herein called the "offset amount") not exceeding the maximum amount permitted by the applicable WGA Agreement to be set aside for the purpose of offsetting foreign telecast and supplemental markets payments, plus Five Dollars ($5.00), then there shall be added to the Basic Weekly Staff Salary in such week such amount as may be necessary in order to make the total payment to Artist under this Agreement in respect of said week exceed by the offset amount plus Five Dollars ($5.00) said aggregate of the amounts computed pursuant to subdivision 3.(b)(i). At the end of any week in any Contract Year, the aggregate of the payments to Artist in respect of Artist's services pursuant to subdivision 3.(b)(i) from the beginning of such Contract Year to the end of said week shall in no event be less than the total of the minimum union scale amounts prescribed for such services by the applicable WGA Agreement which is in effect when such services are performed, plus the offset amount plus Five Dollars ($5.00) multiplied by the number of weeks to date in such Contract Year.

(d) In the event that, in any week of any Contract Year, any amounts (in addition to Artist's Basic Weekly Staff Salary) shall become payable to Artist pursuant to subparagraph 3.(c), CBS shall have the right:

(i) To credit against such additional amounts all sums by which the amount of Artist's Basic Weekly Staff Salary less the offset amount and less the sum of Five Dollars ($5.00) in any previous weeks of such Contract Year shall have exceeded the minimum union scale compensation required to be paid to Artist in such weeks pursuant to any applicable collective bargaining agreement; and, if necessary,

(ii) To deduct an aggregate sum equal to the balance of such additional amounts from the amount by which Artist's Basic Weekly Staff Salary less the offset amount and less the sum of Five Dollars ($5.00) in any subsequent weeks of said Contract Year shall exceed the minimum union scale compensation required to be paid to Artist in such weeks pursuant to any applicable collective bargaining agreement.

The amount of any such excess may also be applied by CBS, to the maximum extent permitted by any applicable collective bargaining agreement, against minimum union scale compensation, if any, applicable to further uses which may at any time be made of programs in connection with which Artist shall have rendered services hereunder. If, at the end of any Contract Year, the aggregate of amounts to which Artist has become entitled pursuant to subdivision 3.(b)(ii) during such Contract Year shall exceed the aggregate of the offset amounts, CBS shall pay Artist such excess.

(e) No payment shall be made to Artist with respect to any broadcast, exhibition, use or exploitation of the programs, except as specified in this Agreement. Nothing herein contained shall be deemed to obligate CBS to use Artist's services hereunder or to

broadcast any program, and CBS shall have fully discharged its obligations hereunder by payment to Artist of any applicable compensation due Artist hereunder. In the event of Artist's death, CBS may make any payments, accrued and not yet paid as of the date of Artist's death, to Artist's legal representative or representatives.

(f)     If CBS makes advances to Artist in anticipation of expenses to be incurred by Artist in connection with company business hereunder, Artist will return or account for such advances as required by CBS, and if Artist fails to so return or account for such advances, CBS shall have the right to make deductions from Artist's Basic Weekly Staff Salary, in amounts not to exceed ten percent (10%) thereof, which deductions shall be applied toward unreturned and/or unaccounted advances. Artist shall have the right at any time upon notice to CBS by registered mail only to withdraw the authorization to make deductions from Artist's Basic Weekly Staff Salary in accordance herewith.

(g)     CBS's compliance with any enactment, rule, order or act of government or governmental instrumentality (whether federal, state or local) which in any way or at any time(s) limits or restricts the amount or rate of compensation which may be lawfully paid hereunder shall not constitute a breach hereof and Artist shall perform services hereunder at whatever compensation may then be lawful.

(h)     To the extent applicable, it is intended that the compensation arrangements under this Agreement be in full compliance with Section 409A of the Internal Revenue Code of 1986, as amended, and the rules and regulations promulgated thereunder ("Code Section 409A"). This Agreement shall be construed in a manner to give effect to such intention. In no event whatsoever (including but not limited to as a result of this subparagraph or otherwise) shall CBS be liable for any tax, interest or penalties that may be imposed on Artist under Code Section 409A. Neither CBS nor any of its affiliates shall have any obligation to indemnify or otherwise hold Artist harmless from any or all such taxes, interest or penalties, or liability for any damages related thereto. Artist acknowledges that Artist has been advised to obtain independent legal, tax or other counsel in connection with Code Section 409A.

(i)     If CBS assigns Artist to perform services in a WGA-covered writing capacity, CBS will give Artist credit, if and as required by the applicable WGA Agreement, on each program for which Artist performs such writing services; provided, however, that except as specifically provided in such WGA Agreement, the form, style, manner and placement of such credit shall be as CBS may, in its sole discretion, from time to time elect; and provided, further, that if the exigencies of time make the giving of such credit impracticable, failure to give such credit shall not constitute a breach of this Agreement.

4.     (a)     Artist's services shall be completely exclusive to CBS during the term of this Agreement, and during the term Artist will not perform services of any nature for or permit the use of Artist's name, likeness, voice or endorsement by any person, firm or corporation, or on Artist's own account, except with the prior written consent of CBS. Notwithstanding anything contained hereinabove, Artist shall have the right to write or lecture on an occasional basis, outside of the broadcast field; provided, however, that Artist shall not write or lecture in support of either side of a controversial issue without prior notification to CBS. Artist's writing or

lectures under this subparagraph shall not have the effect of breaking news stories that have not been previously submitted to CBS for broadcast. Nor shall Artist write or lecture on hard news stories, topics or subject matter to which Artist is or has been assigned by CBS or on the subject of radio or television without the prior consent of CBS; and provided, further, that such "outside" writing or lecturing services shall in no way interfere with the performance of Artist's services hereunder. In the event of any dispute or difference of opinion over any application of this paragraph, the views of CBS shall prevail.

(b) Artist will not perform any services for any government agency, either domestic or foreign.

(c) Any and all newsworthy information obtained by Artist must be transmitted promptly to CBS and Artist will not make any such information available to any person, firm or corporation other than CBS without the prior specific approval of the President of CBS News Inc. or his/her designated representative.

(d) Artist acknowledges that Artist has been furnished copies of and/or online access (at totalrewards.viacomcbs.com) to CBS's company policies and guidelines, including the current CBS News Standards, as adopted by CBS News Inc. ("Standards"), the current ViacomCBS Global Business Practices Statement, as adopted by CBS News Inc. ("Business Practices Statement"), and the other companywide policies and guidelines available at totalrewards.viacomcbs.com >>ViacomCBS Employee Resource Center>>Company Policies>> (collectively, "Personnel Policies") any or all of which may be modified by CBS or its affiliated companies from time to time. Artist further acknowledges that Artist has read and fully understands all of the requirements thereof. Artist warrants that at all times during the term hereof, Artist shall perform Artist's services herein in full compliance with the Standards, Business Practices Statement and Personnel Policies and with any revisions thereof or additions thereto. For the avoidance of doubt, and as stated in the Standards, Artist must inform CBS of any activities that could be considered by CBS as a conflict of interest, any businesses in which Artist has a financial interest and any causes Artist actively represents.

(e) At CBS's request at any time or times during the term of this Agreement, Artist shall negotiate in good faith with CBS with respect to the terms and conditions for the continued performance of services by Artist subsequent to the expiration of the term on an exclusive basis through and including thirty-one (31) days before the expiration of this Agreement and on a non-exclusive basis for the remaining thirty (30) days of the term. For the avoidance of doubt, at no time through and including thirty-one (31) days before the expiration date of this Agreement shall Artist discuss, negotiate or enter into any agreement with any third party for the furnishing of Artist's services in any audio-only medium now known or hereafter developed (the "Medium") or any audiovisual medium now known or hereafter developed (also the "Medium") in the United States. Commencing thirty (30) days prior to the expiration of the term of this Agreement and continuing for a period of one hundred eighty (180) days after the term or for a period of one hundred eighty (180) days after cessation of Artist's employment with CBS, whichever occurs later (the "Matching Period"), Artist will not enter into any agreement with any third party with respect to Artist's services following the expiration of the term in any Medium in the United States unless CBS has first been given the opportunity for a period of

seven (7) business days to enter into an agreement with Artist with respect to such terms and conditions offered by such third party.  The terms and conditions of each aforesaid third party offer must be in writing, signed by Artist, signed by the prospective employer or user of Artist's services and submitted by Artist to CBS in each instance (the "Offer").  CBS shall be deemed to have accepted the Offer by acceptance of the terms and conditions therein readily reducible to a determinable sum of money.  If CBS does not accept the Offer and if Artist fails to enter into an agreement with such third party pursuant to the terms of the Offer, the terms hereof shall apply to any subsequent offer received by, made by or made to Artist during the Matching Period specified above.  For the purpose of this subparagraph, "services in the United States" shall include services performed within the United States, its territories and/or possessions and/or services performed in any other area of the world which are used over any Medium within the United States, its territories and/or possessions.  Artist acknowledges that Artist's services and rights and privileges granted to CBS pursuant to this subparagraph 4.(e) are special, unique, extraordinary and unusual in character, and the breach by Artist of any of the provisions contained in this subparagraph 4.(e) will cause CBS irreparable injury and damage.  In the event of any such breach by Artist, CBS will be entitled as a matter of right, and without further notice to Artist, to injunctive relief for a period which shall end one hundred eighty (180) days after such breach or one hundred eighty (180) days after the end of the term of this Agreement, whichever shall be later, and/or other equitable relief to enjoin and restrain such violation and/or to specifically enforce any of the provisions of this subparagraph 4.(e).  Neither the foregoing sentence nor the exercise of any of the rights set forth therein shall constitute a waiver by CBS of any rights or remedies to which CBS may be entitled at law or in equity.  Artist will not contract, offer or agree to contract or negotiate (formally or informally) with any third party concerning Artist's services or engage in any other conduct that is intended to or which has the effect of circumventing CBS's rights or that is intended to or has the effect of interfering with Artist's ability to satisfy all of Artist's responsibilities or obligations to CBS.

(f) Artist warrants and represents that Artist is and will remain at all times during the term hereof:  (i) a citizen or national of the United States; or (ii) an alien lawfully admitted in the United States for permanent residence; or (iii) an alien authorized by the United States Citizenship and Immigration Services to work in the United States.  Artist further warrants and represents that Artist has completed, executed and delivered to Form I-9, all in compliance with the Immigration Reform and Control Act of 1986.  Upon CBS's request, Artist shall submit to CBS, in accordance with CBS's instructions, any further documentation as CBS may deem necessary under applicable law to maintain Artist's lawful employment status under this Agreement.  Any breach of this subparagraph shall be deemed to be a material breach of this Agreement.

(g) Artist shall act at all times with due regard to public morals, conventions and CBS policies.  If Artist shall have committed or does commit any act, or if Artist shall have conducted or does conduct himself/herself in a manner, which shall be an offense involving moral turpitude under federal, state or local laws, or which might tend to bring Artist to public disrepute, contempt, scandal or ridicule, or which might tend to reflect unfavorably upon CBS, its sponsors, if any, or their advertising agencies, if any, or otherwise injure the success of the programs, any or all of which shall constitute a breach of this Agreement, then, without limiting any of CBS's other rights or remedies, CBS shall have the right to terminate this Agreement

immediately upon notice to Artist. CBS may provide such notice to Artist at any time following the date on which the commission of such act, or such conduct, shall have become known to CBS or publicly known or following completion of CBS's investigation of the conduct, whichever is later. During the period of any such investigation, CBS, at its option, shall have the right to suspend the performance of Artist's services without compensation to the maximum extent permitted by any applicable collective bargaining agreement between CBS and any labor union which has jurisdiction over the services to be performed by Artist hereunder, unless such provision shall be waived by such union.

5. Artist will devote Artist's best talents, efforts and abilities in connection with Artist's services hereunder and will attend all meetings, rehearsals and reasonable program conferences and publicity photographic sessions, as requested by CBS. Artist will perform services subject to the direction and control of CBS. Artist shall perform services at such place or places as CBS may from time to time request. Without limiting the generality of the foregoing, if CBS assigns Artist to perform services in a WGA-covered writing capacity, Artist will accept CBS's instructions in the preparation of the written materials, will prepare such materials along any lines that may be suggested by CBS and will rewrite and revise such materials if required by CBS subject to the provisions of the applicable WGA Agreement. For the avoidance of doubt, CBS shall have the right to make such revisions, deletions, abridgments or other changes in such written materials as CBS, in its sole discretion, may deem desirable.

6. Artist warrants that Artist has the right and power to enter into and fully perform this Agreement.

7. Artist warrants that all ideas, creations, literary, musical and artistic materials and intellectual properties (herein called "materials") furnished by Artist hereunder will be Artist's own and original creation, except for materials in the public domain, or materials which Artist is fully authorized to use, and that the materials and the use thereof will not violate any law or infringe upon or violate any rights of any person, firm or corporation.

8. Artist will at all times indemnify and hold harmless CBS, ViacomCBS Inc. and its direct and indirect subsidiaries, affiliates and parent and their respective officers, directors, employees and agents, the sponsors, if any, their advertising agencies, if any, any stations over which any program is broadcast and any licensee of CBS from and against any and all claims, damages, liabilities, costs and expenses, including legal expenses and reasonable counsel fees, arising out of (i) the use of any materials furnished by Artist hereunder, (ii) any acts done or words spoken by Artist in connection with the production, rehearsal or broadcast of any program, unless such acts or words shall have been requested or supplied by CBS, or (iii) any breach by Artist of any warranty or agreement made by Artist herein. CBS will at all times indemnify and hold harmless Artist from and against any and all claims, damages, liabilities, costs and expenses, including reasonable counsel fees, arising out of the use of any materials (including properties) or services in connection with the broadcast of any of the programs, other than materials furnished or services performed by Artist; provided, however, that Artist shall promptly notify CBS of any claim or litigation to which the indemnity set forth in this sentence applies; and provided, further, that at CBS's option, CBS may assume the defense of any such claim or litigation. If CBS assumes the defense of any such claim or litigation, CBS's

obligations with respect thereto shall be limited to paying the amount of any judgment, or settlement approved by CBS in connection therewith.

       9.       If Artist at any time breaches any provision of this Agreement, or at any time is unable, fails, neglects or refuses to perform fully any one or more of Artist's obligations hereunder, or in the event of Artist's incapacity, CBS may, for any period of such breach, non-performance or incapacity: (i) reduce Artist's compensation hereunder pro rata; (ii) suspend the performance of Artist's services without compensation to the maximum extent permitted by any applicable collective bargaining agreement between CBS and any labor union which has jurisdiction over the services to be performed by Artist hereunder, unless such provision shall be waived by such union; and/or (iii), by so notifying Artist during or within a reasonable time after such period of breach, nonperformance or incapacity, terminate this Agreement effective forthwith.

       10.      CBS, any sponsor of a program, any such sponsor's advertising agency, any station scheduled to broadcast a program and any licensee of CBS each shall have the right and may grant to others the right to reproduce, print, publish or disseminate in any medium, Artist's name, portrait, picture, likeness and voice, and biographical material concerning Artist, as news or information, for the purposes of trade, or for advertising purposes, including but not limited to "institutional" advertising (i.e., advertising designed to create good will and prestige and not for the purpose of selling any specific product or service), and including but not limited to the advertising or promotion of the programs and, in connection therewith, the products or services of any sponsor thereof; provided, however, that no direct endorsement by Artist of any product or services shall be used without Artist's written consent. The rights granted in this paragraph shall continue for so long as CBS shall have the right to use or exploit any program in any manner.

       11.      (a)      As between Artist and CBS, all programs and all elements thereof and all "recordings," (as hereinafter defined) of the programs shall be the sole and exclusive property of CBS and may be used and exploited by CBS and its licensees in any manner and in any media whatsoever throughout the world in perpetuity (including, but not limited to, commercially sponsored network broadcasts thereof); provided, however, that no such recording shall be used in a manner prohibited by the provisions in effect at the time such recording is made of any applicable collective bargaining agreement between CBS and any labor union which has jurisdiction over the services to be performed by Artist hereunder, unless such provision shall be waived by such union. Artist hereby waives any provision which has been or may be waived by such union. All properties and materials created or developed by Artist pursuant to Artist's employment hereunder (whether alone or in conjunction with any other person), or which Artist may disclose to CBS during the term hereof shall be the sole and absolute property of CBS for any and all purposes whatsoever, and Artist agrees that Artist does not have, and will not claim to have, either under this Agreement or otherwise, any right, title or interest of any kind or nature whatsoever in or to such properties or materials.

             (b)      Any program may be produced for original broadcast in whole or in part on a live basis (which includes the making of recordings thereof by CBS for broadcast subsequent to live broadcast), or, as CBS may at any time or from time to time elect, may be

produced for original broadcast in whole or in part by means of recording.  The terms "recording" and "recordings," as used herein, shall mean and include any recording or recordings made (whether before, during or after a broadcast transmission) by tape, wire, film, disc or any other similar or dissimilar method of recording aural and/or visual portions of programs, whether now known or hereafter developed, including the photography of such programs on film in a manner similar to that used in the production of motion pictures.

      12.    Artist will cause appropriate mention of CBS and any of its sustaining or sponsored programs with which Artist may have become closely identified, in connection with the publication, during the term hereof or during the period of six (6) months thereafter, of any literary materials created or developed by Artist during or prior to the commencement of the term hereof.  The form of such mention shall be subject to CBS's reasonable prior approval.

      13.    CBS, the sponsors, if any, and their advertising agencies, if any, any stations over which the programs are broadcast and any licensee of CBS may open all correspondence intended for Artist which any of them receives and may answer or cause to be answered any correspondence relating to Artist's services in connection with the programs.  CBS will use its best efforts to forward unopened to Artist mail marked "Personal."

      14.    In connection with the production or preparation of any program or program matter which is intended for broadcast, Artist warrants and represents that Artist has not accepted or agreed to accept and will not accept or agree to accept, directly or indirectly, without first obtaining the approval of Program Practices personnel of CBS, any money, service or other valuable consideration for the inclusion of matter as part of such program or program matter.

      15.    (a)    In the event that because of:  act of God; inevitable accident; fire; lockout, strike or other labor dispute; riot or civil commotion; act of public enemy; enactment, rule, order or act of government or governmental instrumentality (whether federal, state, local or foreign); failure of technical facilities; failure or delay of transportation facilities; illness or incapacity of any important performer; or other cause of similar or different nature not reasonably within CBS's control, the normal broadcasting and/or program production of CBS is prevented or cancelled, CBS may suspend the performance of services by Artist during the continuation of such prevention or cancellation and Artist shall not be entitled to receive any compensation for the period of any such suspension.  No such suspension shall operate to extend the term of this Agreement.

      (b)    If, pursuant to subparagraph (a) of this paragraph, CBS suspends the performance of services by Artist and such suspension is continuing, Artist shall have the right to terminate this Agreement by so notifying CBS, upon any date at least eight (8) weeks after commencement of such suspension; provided, however, that any such termination notice shall be ineffective if, within one (1) week after receipt thereof, CBS discontinues such suspension.  Artist's termination right pursuant to this subparagraph shall not be applicable to any suspension resulting from an event caused by or participated in by Artist.

      16.    Artist represents that Artist is or will become and will remain, to the extent necessary to enable the performance of this Agreement, a member in good standing of all labor

unions or guilds, membership in which may be lawfully required for the performance of Artist's services hereunder.

17. A waiver by either party of any term or condition of this Agreement in any instance shall not be deemed or construed as a waiver of such term or condition for the future, or of any subsequent breach thereof. All remedies, rights, undertakings, obligations and agreements contained in this Agreement shall be cumulative and none of them shall be in limitation of any other remedy, right, undertaking, obligation or agreement of either party.

18. Except as otherwise specifically provided herein, all notices hereunder shall be in writing and shall be given by personal delivery, registered or certified mail, at the respective addresses hereinabove set forth, or such other address or addresses as may be designated by either party. Such notices shall be deemed given when mailed, except that notice of change of address shall be effective only from the date of its receipt.

19. This Agreement has been entered into in the State of New York, and the validity, interpretation and legal effect of this Agreement shall be governed by the laws of the State of New York applicable to contracts entered into and performed entirely within the State of New York, with respect to the determination of any claim, dispute or disagreement, which may arise out of the interpretation, performance or breach of this Agreement.

20. The invalidity or unenforceability of any provision of this Agreement shall in no way affect the validity or enforceability of any other provision of this Agreement.

21. CBS may assign its rights hereunder in whole or in part to any person, firm or corporation, and such rights may be assigned by any assignee thereof; provided, however, that no such assignment shall relieve CBS of any of its obligations hereunder.

22. (a) If Artist shall be entitled to participate in any pension plan for eligible employees of CBS or to receive any other employee benefit, Artist's regular weekly compensation for any week, for purposes of such pension plan or other benefit, shall be Artist's Basic Weekly Staff Salary, unless a different weekly Benefit Base is specified in paragraph 3. Nothing herein shall affect the right of CBS to terminate or modify any such pension plan or other benefit in whole or in part at any time.

(b) Notwithstanding anything to the contrary contained herein, the Benefit Base used for payments to the CBS pension plan shall not include any sums on which CBS is required, pursuant to any collective bargaining agreement, to make payments to the pension and welfare fund of any labor organization of which Artist is a member.

(c) Severance payments, if any, shall be in accordance with CBS policy as it may be in effect from time to time and all requirements thereof. Nothing herein shall affect the right of CBS to terminate or modify any severance plan in whole or in part at any time.

23. CBS shall not be required to make any payments to Artist in addition to Artist's compensation specified herein unless the aggregate of the minimum union rates payable to Artist

pursuant to any applicable collective bargaining agreement to which CBS is a party and which is in effect at the time of the performance of Artist's services hereunder, shall exceed Artist's applicable compensation hereunder, in which event CBS shall pay to Artist, in addition to such compensation, the amount of such excess. Any reference to "rate," "fee" or "compensation" contained in any such collective bargaining agreement shall be deemed for purposes of this Agreement to refer to the minimum rate, minimum fee or minimum compensation set forth in such collective bargaining agreement.

24. This Agreement contains the entire understanding of the parties hereto relating to the subject matter hereof and cannot be changed or terminated orally.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

Signed by

DocuSigned by:
*Alexandra Poolos*
—FD6A1F229625470...
ALEXANDRA POOLOS

Signed by

DocuSigned by:
*Josh Lukaris*
—601CE2BE252E49C...
on behalf of
CBS NEWS INC.

> Reviewed
> *BR*
> VIACOMCBS
> LAW