UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------------- x

ALEXANDRA POOLOS,                                    :
                                                     :
                               Plaintiff,            :        23-CV-08896 (GHW) (HJR)
                                                     :
              - against -                            :
                                                     :
PARAMOUNT GLOBAL, CBS                                :
BROADCASTING INC., and CBS NEWS INC.,                :
                                                     :
                               Defendants.           :
                                                     :
---------------------------------------------------------------------------- x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

DAVIS WRIGHT TREMAINE LLP

1251 Avenue of the Americas, 42nd Floor
New York, New York 10020
(212) 289-8230
*Attorneys for Defendants Paramount Global, CBS
Broadcasting Inc. and CBS News Inc.*

**TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION ................................................................................................... 1

THE UNDISPUTED AND CONCEDED FACTS ARE DISPOSITIVE ..................................... 2

ARGUMENT ........................................................................................................ 4

  I.    PLAINTIFF'S DISCRIMINATION CLAIMS FAIL AS A MATTER OF LAW ... 4

      A.    Plaintiff Fails to Raise an Inference of Gender Discrimination.................. 4

           i.    Plaintiff Admits She Was Terminated Because She Retaliated
                 Against Richards, Not Because of Richards' Bullying Complaints 4

           ii.   Plaintiff Cannot Identify Any Appropriate Comparators................ 4

           iii.  Plaintiff Fails to Rebut the Same Actor Inference .......................... 7

      B.    Plaintiff Has Failed to Raise a Triable Issue of Pretext Sufficient to
            Overcome Summary Judgment.................................................................. 7

           i.    The Attacks on Defendants' Explanations for
                 her Termination Are Meritless ......................................................... 7

           ii.   Plaintiff's "Failure to Follow Policy" Argument
                 Is Utterly Baseless............................................................................ 8

  II.   PLAINTIFF'S RETALIATION CLAIMS WERE NOT EXHAUSTED
        AND FAIL ON THEIR MERITS .......................................................... 10

  III.  PLAINTIFF'S BREACH OF CONTRACT AND WAGE DEDUCTION
        CLAIMS FAIL AS A MATTER OF LAW........................................................... 13

CONCLUSION.................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*AB ex rel. EF v. Rhinebeck Cent. Sch. Dist.*,
  361 F. Supp. 2d 312 (S.D.N.Y. 2005).......................................................................................13

*Abdul-Hakeem v. Parkinson*,
  523 F. App'x 19 (2d Cir. 2013) .................................................................................................5

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986).....................................................................................................................4

*Carr v. N.Y.C. Transit Auth.*,
  76 F.4th 172 (2d Cir. 2023) .....................................................................................................12

*Cowan v. City of Mount Vernon*,
  95 F. Supp. 3d 624 (S.D.N.Y. 2015).........................................................................................6

*Crawford v. Franklin Credit Mgmt. Corp.*,
  758 F.3d 473 (2d Cir. 2014)...............................................................................................1, 13

*Diggs v. Niagara Mohawk Power Corp.*,
  No. 14-CV-244 (N.D.N.Y. Apr. 14, 2016), *aff'd*, 691 F. App'x 41 (2d Cir. 2017) .................5

*Golden v. Merrill Lynch & Co.*,
  No. 06 Civ. 2970 (S.D.N.Y. Dec. 6, 2007)...............................................................................11

*Goldzweig v. Consol. Edison Co. of N.Y., Inc.*,
  No. 25-0089-CV (2d Cir. Jan. 5, 2026) .......................................................................4, 10, 11

*Grady v. Affiliated Cent., Inc.*,
  130 F.3d 553 (2d Cir. 1997)........................................................................................................7

*Herrnson v. Hoffman*,
  No. 19-CV-7110 (JPO) (S.D.N.Y. Mar. 27, 2023)....................................................................5

*Iqbal v. Teva Pharms. USA, Inc.*,
  No. 16 CV 3464 (S.D.N.Y. Dec. 28, 2017), *aff'd*, 753 F. App'x 50 (2d Cir. 2018) ...............14

*Johnson v. Summit Acquisitions, LLC*,
  No. 5:15-CV-1193 (N.D.N.Y. Mar. 29, 2019) .........................................................................12

*McPherson v. N.Y.C. Dep't of Educ.*,
  457 F.3d 211 (2d Cir. 2006).............................................................................................2, 8, 10

*Monahan v. New York City Dep't of Corr.*,
    214 F.3d 275 (2d Cir. 2000)...............................................................................................1

*Owens v. Centene Corp.*,
    No. 22-2765 (2d Cir. Sept. 14, 2023) ..............................................................................10

*Prosper v. Thomson Reuters Inc.*,
    No. 18-CV-2890 (S.D.N.Y. Mar. 2, 2022) .........................................................................6

*Risco v. McHugh*,
    868 F. Supp. 2d 75 (S.D.N.Y. 2012)..................................................................................1

*Rivera v. Pratt (Quality Carton), LLC*,
    No. 7:23 CV 8018 (S.D.N.Y. Feb. 6, 2026) .....................................................................13

*Robinson v. De Niro*,
    739 F. Supp. 3d 33 (S.D.N.Y. 2023)................................................................................12

*Rodriguez v. Long Island Am. Water, Inc.*,
    No. 12-cv-2970(JFB)(ARL) (E.D.N.Y. Sept. 26, 2014)....................................................5

*Ruiz v. County of Rockland*,
    609 F.3d 486 (2d Cir. 2010).............................................................................................4, 6

*USPS Bd. of Governors v. Aikens*,
    460 U.S. 711 (1983).........................................................................................................8

*White v. Pacifica Found.*,
    973 F. Supp. 2d 363 (S.D.N.Y. 2013)................................................................................7

**State Cases**

*Bennett v. Health Mgmt. Sys., Inc.*,
    92 A.D.3d 29 (1st Dep't 2011) .......................................................................................10

*Neu v. Amelia U.S. LLC*,
    226 A.D.3d 515 (1st Dep't 2024) ....................................................................................14

**Rules**

Rule 56.1 ..............................................................................................................................1

Rule 56.1(d) ........................................................................................................................1

**INTRODUCTION**

Despite its length, Plaintiff 's Opposition identifies no genuine dispute of material fact regarding why her employment was terminated and no evidence that gender discrimination or retaliation played any role in Defendants' decision. The undisputed record—much of which Plaintiff admits—shows that Defendants discharged her because she (i) retaliated against her subordinate, Collette Richards, for filing an HR complaint by calling Richards' former supervisor at CNN to denigrate Richards, and (ii) was untruthful and misleading during the investigation into that retaliatory conduct. Because Plaintiff's conduct violated multiple Company policies, she was not eligible for severance under her Staff Agreement.

Plaintiff has inundated the Court with paper, including a Rule 56.1 Counterstatement[1] exceeding 630 paragraphs and over 5,300 pages of exhibits. But volume is not evidence and none of it shows discrimination or retaliation against Plaintiff. Instead, Plaintiff relies on allegations that, as a matter of law, cannot salvage her claims: (a) inadmissible hearsay about an alleged historical "culture" at CBS drawn from press accounts and allegations predating her termination by years; (b) purported comparators who are not similarly situated in all material respects (some of whom were also terminated or left under different leadership); (c) a declaration that contradicts her deposition testimony and thus should be ignored (*see Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 482 (2d Cir. 2014) (Under the sham-affidavit doctrine, "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by

---

[1] As addressed in greater detail in Defendants' Response to Plaintiff's 56.1 Counterstatement, the Court should disregard Plaintiff's Counterstatement for failing to comply with Local Rule 56.1. "[A] party opposing a motion for summary judgment shall file a *short and concise* statement of the *material facts* in dispute accompanied by *citation to evidence which would be admissible*." *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000) (emphasis added). Plaintiff's Counterstatement includes 635 paragraphs purporting to introduce factual disputes that are immaterial to Defendants' motion and, for numerous paragraphs, Plaintiff either fails to cite to any record evidence, cites inadmissible evidence such as third party press reports, or the statement is unsupported by the record evidence to which Plaintiff cites, in direct contravention of Local Rule 56.1(d). *See Risco v. McHugh*, 868 F. Supp. 2d 75, 88 n.2 (S.D.N.Y. 2012) (collecting cases disregarding plaintiffs' 56.1 counterstatements).

omission or addition, contradicts the affiant's previous deposition testimony.")), and (d) attacks on the "fairness" of Defendants' investigation that, even if accepted, do not establish discriminatory intent. *See McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) (the question is "what '*motivated* the employer,'" not whether the underlying accusation was "factual[ly] valid[]") (citation omitted).

The evidence shows that former Executive Producer Bill Owens—who *promoted Plaintiff to Producer* in 2018—also terminated Plaintiff's employment shortly *after renewing her contract in May 2021*. Owens acted to protect Richards—a promising *female* journalist—from further retaliation. After her discharge, Plaintiff continued to disparage Richards, reinforcing the grounds for Owens' (correct) decision. Plaintiff's claim that Owens' decision was discriminatory or retaliatory turns reality on its head.

Plaintiff abandoned her untimely sexual harassment claim based on allegations predating 2017 by failing to address it in her Opposition. She now attempts to pivot to new retaliation theories never included in her EEOC charge or raised during discovery—which are both procedurally barred and meritless.

Finally, Plaintiff's breach of contract and New York Labor Law claims fail because Plaintiff admits Defendants denied her severance after determining that she breached the Staff Agreement by violating Company policies.

Summary judgment should be granted in full.

## THE UNDISPUTED AND CONCEDED FACTS ARE DISPOSITIVE

Plaintiff fails to manufacture any disputed issue of material fact. It remains undisputed that:

- Richards complained about Plaintiff's bullying and abusive behavior in December 2021 and sent a 14-page complaint to HR on December 30, 2021. (56.1 ¶¶ 51-57).

2

- Richards was not the first *60 Minutes* employee to complain about mistreatment by Plaintiff. (56.1 ¶¶ 26-27, 29, 31-33, 35-29, 75-76, 78).

- Plaintiff did not raise concerns about Richards' performance with her supervisors (Owens, Tanya Simon, and Leslie Stahl) until *after* learning of Richards' HR complaint. (56.1 ¶¶ 46-49).

- On January 5, 2022, Owens and Simon told Plaintiff about Richards' HR complaint. (56.1 ¶¶ 61-63).

- Later that evening, Plaintiff called Richards' former CNN supervisor, Scott Bronstein, and spoke negatively about Richards. (56.1 ¶¶ 66, 72, *see also* Ex. 1, Pl. Tr. 172:10-173:4).

- Bronstein took notes of the call, which he provided to Renee Balducci in the Company's HR department. (56.1 ¶¶ 67-71).

- The Company first learned of Plaintiff's call to Bronstein on January 7, 2022. (56.1 ¶¶ 83, 85).

- Balducci interviewed Plaintiff on January 8, 2022 (which Plaintiff secretly recorded). Plaintiff falsely claimed Bronstein had called her, and admitted telling Bronstein that "things have escalated," but falsely denied saying anything negative about Richards' performance. (56.1 ¶¶ 90, 95, 99, 101, 104; *see also* Ex. 26, at CBS 7992, CBS 8008-8009).

- The Company concluded that Plaintiff violated Company policies by engaging in retaliation and being untruthful during the investigation. (56.1 ¶¶ 107-111).

- The same decisionmaker—Owens— who promoted Plaintiff in May 2018 and renewed her contract in May 2021, later decided to terminate her employment on February 3, 2022, undermining any claim that gender discrimination played any role in the decision. (56.1 ¶¶ 8, 109, 113, 197).

- Plaintiff was replaced by another female Producer. (56.1 ¶ 115).

- After her termination, Plaintiff continued to viciously disparage Richards. (56.1 ¶¶ 116-124).

- Plaintiff abandoned her time-barred and meritless harassment claims regarding Shachar Bar-On by failing to address them in her Opposition. (*Compare* Mot. at 21-22, with Opp.).

In the face of these undisputed facts, Plaintiff has provided no evidence from which a reasonable jury could conclude that Defendants' stated reasons—retaliation and dishonesty—were false and that gender played any role in the termination decision.

3

**ARGUMENT**

## I.    PLAINTIFF'S DISCRIMINATION CLAIMS FAIL AS A MATTER OF LAW

### A.  Plaintiff Fails to Raise an Inference of Gender Discrimination

Plaintiff's Opposition underscores her failure to establish a *prima facie* claim of gender discrimination. At the summary judgment stage, the question is not whether Plaintiff can speculate about alternative narratives, but whether she has produced *evidence* from which a reasonable jury could find in her favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986). She has not.

#### i.    Plaintiff <u>Admits</u> She Was Terminated Because She Retaliated Against Richards, Not Because of Richards' Bullying Complaint

Plaintiff acknowledges that the Company did not consider termination until *after* they learned about her retaliatory call to Bronstein. (56.1 Counterstatement ¶¶ 435-37, 489). According to Plaintiff's testimony: (i) in their January 6 meeting, Owens told Plaintiff she would not have to meet with HR about Richards' bullying complaints, he did not want Plaintiff "walking on eggshells," and if Plaintiff acknowledged an email he would send her about the matter, it would be "closed"; and (ii) when Plaintiff tried to explain that Richards mischaracterized her misconduct, Balducci responded that Plaintiff's treatment of Richards was not her concern. (*Id*.) According to Bronstein's handwritten notes of their call, Plaintiff told him, "HR is not telling me I'm in jeopardy." (Ex. 23, at CBS 105).

#### ii.    Plaintiff Cannot Identify Any Appropriate Comparators

Plaintiff's comparator theory fails because she identifies no male employee who is "similarly situated to [her] in all material respects" who was treated more favorably. *Goldzweig v. Consol. Edison Co. of N.Y., Inc*., No. 25-0089-CV, 2026 WL 21005, at \*2 (2d Cir. Jan. 5, 2026) (citing *Ruiz v. County of Rockland*, 609 F.3d 486, 493-94 (2d Cir. 2010)). No alleged comparator engaged in conduct that bears a "reasonably close resemblance [to] the facts and circumstances"

4

of her case. *Abdul-Hakeem v. Parkinson*, 523 F. App'x 19, 21 (2d Cir. 2013); *see also Herrnson v. Hoffman*, No. 19-CV-7110 (JPO), 2023 WL 2647603, at *3 (S.D.N.Y. Mar. 27, 2023) ("[P]laintiff and the comparator must have engaged in the same or similar misconduct.").

Plaintiff identifies six purported male comparators—Gavshon, Rosen, Radutzky, Bar-On, Levine, and Richman[2]—but admits none were similarly situated in all material respects: none engaged in retaliation, and she does not know whether any were dishonest in an investigation as she was. Her claim that male employees accused of harassment or other inappropriate conduct were treated differently cannot defeat summary judgment because it is undisputed that Plaintiff was terminated for retaliation and dishonesty during the investigation, not harassment or any of the other conduct described in Richards' complaint. Courts consistently hold that employees who lie during investigations are not similarly situated to those who do not, since dishonesty is a material distinction that independently justifies discipline. *See, e.g.*, *Diggs v. Niagara Mohawk Power Corp.*, No. 14-CV-244, 2016 WL 1465402, at *5 (N.D.N.Y. Apr. 14, 2016), *aff'd*, 691 F. App'x 41 (2d Cir. 2017); *Rodriguez v. Long Island Am. Water, Inc.*, No. 12-cv-2970(JFB)(ARL), 2014 WL 4805021, at *9 (E.D.N.Y. Sept. 26, 2014). These concessions alone disqualify the six men as appropriate comparators, and there are several additional reasons why none qualifies:

- Radutzky and Rosen: Plaintiff admits that their alleged misconduct was judged by different decision-makers under different reporting structures long ago. For example, Plaintiff asserts that Radutzky and Rosen faced complaints in 2015 and 2016 respectively (*seven and six years before* Plaintiff's termination), and concedes that Owens was not then the Executive Producer and therefore had no authority to discharge them. Plaintiff further admits that Radutzky

---

[2] Plaintiff no longer identifies Will Croxton as a comparator and has never produced a shred of evidence that Croxton was even *accused* of improper conduct. The record suggests that Plaintiff initially included him as a comparator as reprisal for his complaint about how Plaintiff treated him while he was her Associate Producer in 2019.

left in early 2018 and that, shortly after becoming Executive Producer, Owens terminated Rosen's employment in 2019. As a result, neither can serve as an adequate comparator. *See Ruiz*, 609 F.3d at 493-94 (no *prima facie* inference of discrimination where comparator and plaintiff "both . . . lost their jobs, the most serious form of discipline").

- <u>Levine and Richman</u>: Neither was the subject of an HR complaint or investigation.[3] In addition, they served in different roles than Plaintiff: Levine was an Associate Producer with no direct reports, while Richman was a Senior Editor with numerous direct reports.

- <u>Gavshon</u>: A London Bureau Producer with more than 25 years of tenure whose Associate Producer complained in 2019 about a single inappropriate but inadvertent text; Gavshon immediately admitted the mistake and apologized—unlike Plaintiff, who denied wrongdoing and attempted to mislead the investigator.

- <u>Bar-On</u>: Plaintiff's time-barred, post-discharge harassment complaint against Bar-On does not allege that he retaliated against her. Critically, Plaintiff declined to be interviewed in the investigation about Bar-On, whereas Bar-On fully cooperated and was interviewed multiple times. Plaintiff abandoned her untimely harassment claim (regarding isolated and non-actionable comments Bar-On allegedly made in 2017) by not addressing it in her Opposition.[4] (Mot. 21–23.)

- <u>Jeff Fager</u>: His employment was terminated for retaliation—the same reason as Plaintiff—undercutting Plaintiff's claim that men at *60 Minutes* are treated differently than women.

---

[3] Plaintiff asserts that management failed to refer male employees to HR, disregarding the undisputed fact that here *Richards* went straight to HR to complain about Plaintiff, undermining her comparator theory. Employees who were not investigated—and thus never found to have retaliated or lied—are not comparable to Plaintiff, who did both.

[4] Where, as here "a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way," the Court may deem such a claim abandoned. *Cowan v. City of Mount Vernon*, 95 F. Supp. 3d 624, 645 (S.D.N.Y. 2015) (collecting cases); *see also Prosper v. Thomson Reuters Inc.*, No. 18-CV-2890, 2022 WL 814644, at *7 n.9 (S.D.N.Y. Mar. 2, 2022) (untimely state law claims for harassment and discrimination abandoned "because she failed to respond to Defendant's arguments about them").

Plaintiff's argument that Fager was treated better because he faced multiple employee complaints fails because it is undisputed that multiple employees complained about Plaintiff.

### iii.  Plaintiff Fails to Rebut the Same Actor Inference

Plaintiff failed to rebut the fact that the same decisionmaker—Owens—promoted her, and made the decision to discharge her months after renewing her contract. *See Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997) (when the same individual both hires and fires an employee within a relatively short period, an inference arises that discrimination was not the motivating factor). Owens also replaced Plaintiff with another woman, further undercutting any claim of gender bias. *See, e.g.*, *White v. Pacifica Found.*, 973 F. Supp. 2d 363, 381 (S.D.N.Y. 2013).

Accordingly, Plaintiff cannot establish a *prima facie* claim of gender discrimination.

### B.  Plaintiff Has Failed to Raise a Triable Issue of Pretext Sufficient to Overcome Summary Judgment

Even if Plaintiff could establish a *prima facie* case of gender discrimination, her claim still fails because she cannot establish that Defendants' legitimate, nondiscriminatory reasons for her termination are a mere pretext and that her gender was the real reason, and she cannot show that she was treated "less well" because of her gender.

Plaintiff advances two arguments in an effort to show pretext: (i) Defendants' explanations for her termination are "not credible," (Opp. at 23-25) and (ii) Defendants' purported failure to follow internal policies evidences bias. (Opp. at 25-28). Neither withstands scrutiny nor creates a triable issue of fact.

### i.  The Attacks on Defendants' Explanations for her Termination Are Meritless

Despite admitting that termination was not considered until *after* her retaliatory call to Bronstein, Plaintiff's pretext theory rests on two baseless assertions: that Defendants failed to stop her from contacting Bronstein and that they "distorted" the timeline.

7

First, Plaintiff remarkably attempts to place the blame for her own misconduct on the Company, claiming that Defendants knew Plaintiff was in touch with Bronstein before the January 5 retaliatory call but did not stop Plaintiff from calling Bronstein. Even if that was true, Defendants had no reason (or obligation) to anticipate that Plaintiff would disparage Richards to Bronstein, and Plaintiff does not contend otherwise. Whether Defendants might have prevented Plaintiff from engaging in retaliation is irrelevant where the record is unequivocal that Defendants reasonably believed that Plaintiff's (subsequent) retaliation and dishonesty warranted termination.

Second, Plaintiff's assertion that Defendants "distorted" the timeline to justify her termination is demonstrably false. The timeline has been consistent since Balducci's January 2022 investigation. Plaintiff does not identify any document showing a different sequence of events, and does not explain how any purported discrepancy undermines Defendants' conclusion that Plaintiff retaliated against Richards and was untruthful in the investigation. Unsupported accusations of fabrication do not establish pretext.

Critically, Plaintiff's argument ignores controlling law that a mistaken belief is not evidence of discriminatory intent. As the Second Circuit has repeatedly held, the "factual validity of the underlying imputation against the employee is not at issue"; rather, the question is "what '*motivated* the employer.'" *McPherson*, 457 F.3d at 216 (quoting *USPS Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983)). Even if Plaintiff disagrees with Defendants' conclusions, that does not establish pretext. Plaintiff offers no evidence that the decision-makers lacked an honest belief in the findings of the investigation, or that gender played a role in the termination decision.

### ii. *Plaintiff's "Failure to Follow Policy" Argument Is Utterly Baseless*

Plaintiff's second theory—that Defendants' alleged failure to follow their own policies shows bias—is meritless.

8

At the outset, Plaintiff cannot identify any policy that Defendants violated. Instead, she relies on a single PowerPoint slide from a 2019 presentation—almost three years before Plaintiff's termination—*prepared by an outside law firm*. The slide, titled "Hallmarks of a Good Investigation," is not Company policy, was not adopted as binding procedure, and does not impose investigative requirements. Plaintiff's attempt to transform a training slide into an enforceable policy is beyond a stretch.

Even setting that supposed defect aside, Defendants conducted a thorough investigation by interviewing relevant witnesses, including Plaintiff, reviewing Bronstein's contemporaneous notes and screen shots showing the timing of the call, and preparing a detailed investigation summary. That Plaintiff would have preferred a different outcome does not establish pretext.[5] Courts routinely reject efforts to second-guess the adequacy of an employer's investigation absent evidence that it was a sham or a cover for discrimination, which is wholly lacking here.

Plaintiff's reliance on alleged "procedural irregularities" fares no better. The supposed deviations she identifies—such as the absence of progressive discipline or the length of the investigation—are not required by any policy and do not suggest discriminatory intent. Treating the length of the investigation (from January 7, 2022, when Defendants first learned of the Bronstein call, to February 3, 2022, when Defendants communicated the results) as sufficient to defeat summary judgment would effectively require employers to rush workplace investigations to avoid liability—an untenable result. Conversely, if the investigation concluded more quickly, Plaintiff undoubtedly would cite Defendants' "rush to judgment" as evidence of discrimination.

---

[5] Plaintiff's assertion that Defendants credited Bronstein, a man, over a female employee selectively reinterprets the record. Balducci credited Richards, a woman, as well as Bronstein, and relied on the undisputed documentary evidence—Bronstein's notes and phone records—and the sequence of events. Owens relied on the recommendation of Balducci, a woman, and Simon and Stahl, both women, agreed with Owens's decision.

9

Importantly, Plaintiff again fails to confront the core legal point: even an imperfect investigation does not demonstrate pretext *unless* there is evidence that the employer did not honestly believe its stated reasons or evidence that discrimination actually motivated the decision. Plaintiff offers neither. Plaintiff's effort to relitigate the investigation is the type of collateral attack that this Circuit has deemed immaterial. *See, e.g.*, *Owens v. Centene Corp.*, No. 22-2765, 2023 WL 5970954, at *2 (2d Cir. Sept. 14, 2023) (affirming summary judgment where plaintiff "lied during two investigations," and although she "dispute[d] the accuracy of the reports" and the reports "might not have correctly memorialized the interviews," that did not show "that discrimination played a role in her termination") (citing *McPherson*, 457 F.3d at 216). Even taking Plaintiff's criticisms at face value, they do not establish that gender played any role in Owens' decision.

Ultimately, Plaintiff's Opposition amounts to speculation, disagreement with Defendants' judgment, and attempts to reframe the record. She offers no evidence that Defendants' reasons were false, and no evidence—direct or circumstantial—that gender played a role in the termination decision. Therefore, "summary judgment is appropriate in the face of [Defendants'] unrebutted evidence [of their nondiscriminatory motivation] because [Plaintiff] has produced no 'evidence that defendant's explanations were pretextual, nor any evidence that a discriminatory motive coexisted with the legitimate reasons supported by defendant's evidence.'" *Goldzweig*, 2026 WL 21005, at * 4 (citing *Bennett v. Health Mgmt. Sys., Inc.*, 92 A.D.3d 29, 46 (1st Dep't 2011)).

## II.   PLAINTIFF'S RETALIATION CLAIMS WERE NOT EXHAUSTED AND FAIL ON THEIR MERITS

Plaintiff failed to exhaust her administrative remedies for her post-termination Title VII retaliation claim because she did not include it in her January 2023 EEOC charge or amend that charge; the Court therefore lacks jurisdiction. (Mot. at 19; 56.1 ¶¶ 194–196). Furthermore, her

retaliation claims under Title VII, the NYSHRL, and the NYCHRL fail on the merits because she cannot show an adverse action or conduct reasonably likely to deter protected activity.

In a footnote, Plaintiff attempts to explain her failure to exhaust by asserting that her retaliation claim is based "in part" on conduct she "learned about after her EEOC filing." (Opp. at n.24). Yet, according to Plaintiff, the alleged retaliatory events occurred almost a year before her January 2023 EEOC filing and thus could have been raised in the Charge. In any event, none of the conduct amounts to an adverse employment action, or conduct that is "reasonably likely to deter a person from engaging in protected activity." *Goldzweig*, 2026 WL 21005, at * 4.

First, Plaintiff asserts—without evidence—that Defendants removed stories from awards consideration. (Opp. at 30). As previously noted, these allegations were made only "on information and belief" and are impermissibly vague. (Def. Br. 19). When asked what awards her stories should have been submitted for, she could not identify any. Instead, she testified that it "maybe" was the "New York Newswomen awards, I think." (Pl. Ex. A at 252:13–254:14). Now, for the first time, Plaintiff claims she was not submitted for an Emmy.[6] But Plaintiff knew, as of March 2022, that her stories were not going to be submitted for an Emmy, so she could have included that claim in her EEOC Charge. (56.1 Counterstatement ¶ 841). Further, failing to submit her stories for an Emmy would also have deprived the other principal contributors—including Stahl and Richards—of an award, making this claim preposterous on its face.

Moreover, Plaintiff does not identify admissible evidence that the unidentified individuals making awards submissions decisions were aware of her complaint, that their decision was made because of that complaint, or that failing to submit her story for an Emmy was materially adverse

---

[6] The Court should ignore Plaintiff's assertion regarding the Emmy because "[c]ourts in the Second Circuit are particularly reluctant to credit affidavit testimony that alleges critical, obviously material facts that were not mentioned at deposition, noting that such circumstances strongly suggest a sham affidavit." *Golden v. Merrill Lynch & Co.*, No. 06 Civ. 2970, 2007 WL 4299443, at *9 (S.D.N.Y. Dec. 6, 2007).

or would deter a person from engaging in protected conduct. *See Carr v. N.Y.C. Transit Auth.*, 76 F.4th 172, 180 (2d Cir. 2023) (*prima facie* retaliation requires a materially adverse action and causal connection).

Second, Plaintiff claims that Defendants conducted a "retaliatory investigation" in response to her February 25, 2022 post-termination complaint (against Bar-On). Once again, Plaintiff was aware of that investigation when she filed her EEOC Charge in January 2023 and did not include that claim, and failed to amend the charge to include it. Once Plaintiff made a complaint of alleged harassment, Defendants were legally obligated to investigate it, and meeting that obligation cannot possibly be retaliation, as it would not deter a person from engaging in protected activity. As Defendants explained, post-termination investigations/accusations "without more" do not constitute materially adverse action. *Robinson v. De Niro*, 739 F. Supp. 3d 33, 82, 116–17 (S.D.N.Y. 2023); *Johnson v. Summit Acquisitions, LLC*, No. 5:15-CV-1193, 2019 WL 1427273, at *7 (N.D.N.Y. Mar. 29, 2019). Plaintiff has no evidence that this investigation resulted in any materially adverse consequences, and her utter speculation that Defendants "solicited" negative information about her during that investigation does not create a triable issue sufficient to defeat summary judgment on her retaliation claim. *Robinson*, 739 F. Supp. 3d at 116–17 (rejecting that "the initiation of the investigation . . . on its own, can constitute an adverse employment action, even under the NYCHRL" where there was "no evidence that it was conducted in a manner to make other employees fear making a charge of discrimination").

Third, Plaintiff's new allegation—raised for the first time in her Opposition—that Defendants removed her story credit is false, underscoring its frivolous nature. Although Plaintiff worked on, but did not complete, a segment entitled "Wrongful Detainees" that aired on February 27, 2022—after her termination and her post-termination complaint—Simon approved granting

12

her producer credit and Stahl informed Plaintiff that *60 Minutes* gave her credit. (Zuckerman Reply Decl., Exs. 6-7). Moreover, if Plaintiff believed (erroneously) that she was denied credit, she could have claimed that in her EEOC Charge, but did not.

Accordingly, the Court should dismiss Plaintiff's retaliation claims in their entirety.

### III.   PLAINTIFF'S BREACH OF CONTRACT AND WAGE DEDUCTION CLAIMS FAIL AS A MATTER OF LAW

Plaintiff's NYLL and breach of contract claims fail because Plaintiff cannot establish an enforceable contractual right to severance. Plaintiff admits that Paragraph 9 of the Staff Agreement expressly bars severance if Plaintiff's employment is terminated for cause, which includes a termination for breach of CBS policies incorporated into the Staff Agreement.[7] (Def. Br. 23–26; 56.1 ¶¶ 199–206). Plaintiff's response is essentially that she disputes that she engaged in the underlying misconduct, but that contradicts her deposition testimony, in which Plaintiff admitted that she told Bronstein that Richards was "struggling," and that she spoke negatively about Richards to Bronstein—***after*** she had learned of Richards' HR complaint. (56.1, ¶¶ 73-74). Plaintiff "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Rivera v. Pratt (Quality Carton), LLC*, No. 7:23 CV 8018, 2026 WL 323035, at *5 (S.D.N.Y. Feb. 6, 2026) (citing *Crawford*, 758 F.3d at 482 (further citation omitted)).[8]

It is also undisputed that Plaintiff was dishonest and misleading during the investigation, in direct violation of company policies. She falsely told Owens that she spoke with Bronstein before learning of Richards' HR complaint and denied disparaging Richards. (*Id*. ¶¶ 87–88).

---

[7] Plaintiff admits that the Staff Agreement specified that she was not entitled to severance if she breached the Agreement. (56.1 Counterstatement, ¶ 263).

[8] *See also AB ex rel. EF v. Rhinebeck Cent. Sch. Dist.*, 361 F. Supp. 2d 312, 316 (S.D.N.Y. 2005) ("Faced with deposition testimony that contradicts an affidavit and a complaint, th[e] court must accept [plaintiff's] sworn testimony.").

13

Although Plaintiff texted Bronstein on December 31, 2021—before learning of the HR complaint—the retaliatory conversation occurred on January 5, 2022, *after* Owens and Simon informed her of that complaint. (*Id*. ¶¶ 58, 59, 61, 66–74). Plaintiff also lied to Balducci in her secretly-recorded conversation, denying that she criticized Richards and stating, "I never said anything [to Bronstein] about her performance"—but admitted at her deposition that she spoke negatively about Richards to Bronstein. (*Id*. ¶¶ 9, 93, 95). She further insinuated that Bronstein initiated the call, when in fact he was responding to Plaintiff's outreach. (*Id*. ¶ 98).

Where, as here, an employee admits to the underlying conduct that makes the employee ineligible for severance, there is no disputed issue of fact. *See, e.g.*, *Iqbal v. Teva Pharms. USA, Inc.*, No. 16 CV 3464, 2017 WL 6729190, at *8 (S.D.N.Y. Dec. 28, 2017), *aff'd*, 753 F. App'x 50 (2d Cir. 2018) (where plaintiff "was terminated because he was indisputably in violation of several policies . . . under the terms of the Severance Policy, no severance pay was due").

Finally, a plaintiff "cannot assert a statutory claim for wages under the Labor Law if [the plaintiff] has no enforceable contractual right to those wages." *Neu v. Amelia U.S. LLC*, 226 A.D.3d 515, 515 (1st Dep't 2024) (citation omitted). Since Plaintiff's testimony establishes that she violated CBS policy, both her NYLL and contract claims fail as a matter of law.

14

**CONCLUSION**

Defendants request that the Court grant their motion for summary judgment and award

costs and other further relief as the Court deems just and proper.

Dated: New York, New York
      March 23, 2026

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP


By:    *Lyle S. Zuckerman*
    Laura Sack
    Lyle S. Zuckerman
    Lisa Dayan
    Michael L. Lynch

 1251 Avenue of the Americas, 42nd Floor
New York, New York 10020
(212) 289-8230
laurasack@dwt.com
lylezuckerman@dwt.com
lisadayan@dwt.com
michaellynch@dwt.com

*Attorneys for Defendants Paramount Global,
CBS Broadcasting Inc., and CBS News Inc.*

15

## CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMITATIONS

I hereby certify that the word count of this reply memorandum of law complies with the word limits of Local Civil Rule 7.1(c), as modified by the Court's February 17, 2026 Order (Dkt. 308). According to the word-processing system used to prepare this memorandum of law, the total word count for all printed text exclusive of the material omitted under Local Civil Rule 7.1(c) is 4,475.

I certify under penalty of perjury that the foregoing is true and correct.

*Lyle S. Zuckerman*
Lyle S. Zuckerman

16