UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

ALEXANDRA POOLOS,                      :
                                       :
                    Plaintiff,         :      23-CV-08896 (GHW) (HJR)
                                       :
        - against -                    :      **DEFENDANTS' RESPONSE TO**
                                       :      **PLAINTIFF'S RULE 56.1**
PARAMOUNT GLOBAL, CBS                  :      **COUNTERSTATEMENT**
BROADCASTING INC., and CBS NEWS INC., :
                                       :
                    Defendants.        :
                                       :
------------------------------------------------------------------- x

Defendants Paramount Global, CBS Broadcasting Inc., and CBS News Inc. ("CBS" or the

"Company") (collectively, "Defendants") hereby submit their Response to Plaintiff Alexandra

Poolos' ("Plaintiff" or "Poolos") Rule 56.1 Counter Statement[1]:

208.    Per a stipulation agreement between Defendants and Plaintiff, for the purposes of

summary judgment and trial in this case, Paramount Global, CBS Broadcasting, Inc., and CBS

News, Inc. were joint and/or single employers of Plaintiff. (Iadevaia Decl., Ex. UUU)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that the explicit purpose

of this stipulation was to avoid substantially burdensome discovery sought by Plaintiff and was

limited solely to this case. (Iadevaia Decl., Ex. UUU, at ¶¶ 1-2). In any event, this paragraph is

immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of

material fact.

209.    Owens was a leader responsible for 60 Minutes since 2008. (Owens Dep. 38:20-

25) Simon joined the show's leadership team in 2019. (Simon Dep. 12:2-15)

---

[1] To the extent Defendants do not dispute Plaintiff's counterstatement of facts, Defendants present these facts as
undisputed in the light most favorable to Poolos for purposes of summary judgment, and expressly reserve the right
to challenge such facts at any future proceeding.

**DEFENDANTS' RESPONSE:** Undisputed that Owens worked at *60 Minutes* since 2008 and that he made the decision to promote Simon to Executive Editor in 2019. Further responding, Owens was not Executive Producer until 2019, and did not have authority to terminate the employment of Producers until that time. Defendants' incorporate by reference their 56.1 ¶¶ 144, 155. The remainder of this paragraph is unsupported by the record evidence to which Poolos cites, and it should be disregarded. In any event, this paragraph fails to raise a genuine dispute of material fact.

210.    Between 2008 and 2018, Owens served as the Executive Editor of <u>60 Minutes</u>. (Owens Dep. 13:9-15, 38:20-25)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment including because any events occurring while Owens was Executive Editor are well outside any applicable statute of limitations.

211.    As the Executive Editor, Owens was second in charge of the show. (Owens Dep. 74:2-15) He was directly responsible for supervising the Associate Producers, which included Poolos at the time. (Owens Dep. 74:2-15, 75:8-13)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment including because any events occurring while Owens was Executive Editor are well outside any applicable statute of limitations.

212.    In addition, Owens was responsible for airing stories each week, assisting with writing promotional materials, and responding to Producer's editorial concerns and personnel related-matters. (Owens Dep. 74:2-15, 77:25-78:11)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment including because any events occurring while Owens was Executive Editor are well outside any applicable statute of limitations.

213. In February 2019, Defendants promoted Owens to Executive Producer of 60 Minutes. (Owens Dep. 13:9-14:2, 14:14-17)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

214. In this role, Owens was responsible for broadcasting 60 Minutes episodes each week, including the journalism involved, research, writing, approving stories, screening stories, editing, and ensuring stories were accurate and fair. (Owens Dep. 15:23-16:12)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

215. As Executive Producer, producers, correspondents, the Executive Editor, and other senior staff reported directly to Owens. (Owens Dep. 16:20-17:14) Owens was also responsible for weighing in on hiring, firings, and promotions. (Owens Dep. 16:13-19)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that Owens was not Executive Producer until 2019, and did not have authority to fire Producers until 2019. Defendants' incorporate by reference their 56.1 ¶¶ 144, 155. After Owens became Executive Producer in 2019, Owens testified that he ultimately makes the decision who gets hired, fired, and promoted. (Owens Dep. 16:13-19). In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

216. Simon joined 60 Minutes in 1999 or 2000. (Simon Dep. 12:2-4)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

217.    In April 2019, Defendants appointed Simon as Executive Editor of 60 Minutes. (Simon Dep. 12:7-13) As Executive Editor, Simon reported directly to Owens. (Simon Dep. 12:16-22) Simon was the "number two" person in charge at 60 Minutes. (Owens Dep. 17:12-14; Iadevaia Decl., Ex. PPP)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that Owens made the decision to appoint Simon as Executive Editor, making her the "number two" as *60 Minutes*. In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

218.    Simon was responsible for approving and vetting stories for the show and managing the show's operations. (Simon Dep. 13:8-21) Simon was also responsible for overseeing 60 Minutes' Associate Producers. (Id.)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

219.    In April 2025, Owens resigned from 60 Minutes. (Ali Bianco, *Head of "60 Minutes"* Exits *After Saying He Is Losing Independence*, N.Y. TIMES, Apr. 22, 2025, https://www.nytimes.com/2025/04/22/business/media/cbs-60-minutes-trump-bill-owens.html)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

### Poolos's Background and Employment with CBS

220.    Poolos is an accomplished, award-winning Producer with a 29 year-long career in journalism. (Iadevaia Decl., Ex. P ¶ 3)

4

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff was not terminated for performance. Plaintiff's self-serving characterization of herself consists of improper argument and opinion, rather than statements of fact, is not supported by the record evidence to which she cites, and should be disregarded.

221.   Poolos received a B.A. with honors in History from Wesleyan University in 1997. (Poolos Decl. ¶ 2; Iadevaia Decl., Ex. VVV; id. Ex. P ¶ 2)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff was not terminated for performance.

222.   After graduating, Poolos received a Bollinger Fellowship to study political science at Columbia University Graduate School of Journalism, receiving an M.A. in 2006.  (Poolos Decl. ¶ 3; Iadevaia Decl., Ex. VVV; id. Ex. P ¶ 2)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff was not terminated for performance.

223.   During her career, Poolos reported stories all over the world, including the United States, the former Yugoslavia, Rwanda, Russia, Iran, Japan, Gabon, Kenya, China, and Nigeria. (Poolos Decl. ¶ 4; Stahl Dep. 73:21-74:6; Iadevaia Decl., Ex. VVV; id. Ex. P ¶ 3)

**DEFENDANTS' RESPONSE:** Plaintiff's self-serving characterization of herself consists of improper argument and opinion, rather than statements of fact, is unsupported by record evidence, and should be disregarded. In any event, this paragraph is undisputed as it is immaterial

5

to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff was not terminated for performance.

224.    Poolos has reported from war zones, police states, natural disaster sites, and, generally, the world's most dangerous places. (Poolos Decl. ¶ 5; Iadevaia Decl., Ex. VVV; id. Ex. P ¶ 3)

**DEFENDANTS' RESPONSE:** Plaintiff's self-serving characterization of herself consists of improper argument and opinion, rather than statements of fact, is unsupported by record evidence, and should be disregarded. In any event, this paragraph is undisputed as it is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff was not terminated for performance.

225.    Before joining CBS News, Poolos worked as a Correspondent, Reporter, Editor, and Producer for prominent media organizations, include ng Newsday, Radio Free Europe/Radio Liberty, Frontline/World, WNYC, and CNN. (Poolos Decl. ¶ 6; Iadevaia Decl., Ex. VVV; id. Ex. P ¶ 4)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff was not terminated for performance.

226.    Poolos has also reported for The Wall Street Journal, The Christian Science Monitor, ABC News, and the American Prospect.  (Poolos Decl. ¶ 7; Iadevaia Decl., Ex. VVV; id. Ex. P ¶ 4)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff was not terminated for performance.

227.    At Radio Free Europe/Radio Liberty in Prague, Poolos worked as a Correspondent and Editor, reporting news for an audience of 26 million that included coverage of the Kosovo conflict and the fall of Slobodan Milosevic.  (Poolos Decl. ¶ 7; Iadevaia Decl., Ex. VVV; id. Ex. P ¶ 5)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff was not terminated for performance.

228.    Poolos also worked for the Wall Street Journal from Brussels, where she reported news and analysis on the Balkans and expansion of the European Union.  (Poolos Decl. ¶ 7; Iadevaia Decl., Ex. VVV; id. Ex. P ¶ 6)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff was not terminated for performance.

229.    Poolos was the Managing Editor of Women's eNews, an award-winning nonprofit news service. (Poolos Decl. ¶ 7; Iadevaia Decl., Ex. VVV; id. Ex. P ¶ 7)

**DEFENDANTS' RESPONSE:** Plaintiff's self-serving characterization of herself consists of improper argument and opinion, rather than statements of fact, is unsupported by record evidence, and should be disregarded. In any event, this paragraph is undisputed as it is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff was not terminated for performance.

230.    Poolos was a Reporter and Producer for Frontline/World, a national public television series that focused on international issues, including covering countries and cultures rarely seen on American television. (Poolos Decl. ¶ 7; Iadevaia Decl., Ex. VVV; id. Ex. P ¶ 8)

**DEFENDANTS' RESPONSE:** Plaintiff's self-serving characterization of herself consists of improper argument and opinion, rather than statements of fact, is unsupported by record evidence, and should be disregarded. In any event, this paragraph is undisputed as it is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff was not terminated for performance.

231.    At CNN, Poolos was an Editorial Producer for Anderson Cooper 360 ("AC360") and CNN International. (Poolos Decl. ¶ 8; Iadevaia Decl., Ex. VVV; id. Ex. P ¶ 9)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff was not terminated for performance.

232.    Before joining CBS, Poolos received prestigious awards for her work, including two Emmy awards and two Peabody awards. (Poolos Decl. ¶ 6; Iadevaia Decl., Ex. VVV; id. Ex. P ¶ 10)

**DEFENDANTS' RESPONSE:** Plaintiff's self-serving characterization of herself consists of improper argument and opinion, rather than statements of fact, is unsupported by record evidence, and should be disregarded. In any event, this paragraph is undisputed as it is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff was not terminated for performance.

<u>Poolos's Successful Career at CBS</u>

233.    Plaintiff joined Defendants as an Associate Producer for <u>60 Minutes</u> in October 2011. (Poolos Dep. 62:21-24, 65:8-10; Iadevaia Decl., Ex. VVV; id. Ex. P ¶ 16)

**DEFENDANTS' RESPONSE:** Undisputed.

234.    Poolos's work at 60 Minutes took her around the world to provide in-depth, and often exclusive, news coverage of significant events. (Iadevaia Decl., Ex. P ¶ 18; Stahl Dep. 62:4-6, 73:21-74:18)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

235.    Correspondent Lesley Stahl ("Stahl") testified that she was "very happy with [Poolos's] performance" as an AP. (Stahl Dep. 62:4-6)

**DEFENDANTS' RESPONSE:**  Undisputed that Stahl was very happy with Poolos' performance as an Associate Producer. Disputed that Stahl's assessment remained the same after Poolos became Producer in 2018, as Stahl believed Poolos' "scripting was a different story" that "script writing continued to need work" and that "[t]here were occasional issues" where "she was difficult to work with, with the crews, sometimes the editors." (Stahl Dep. 65:14; 69:17-19; 81:3–5).

236.    After working as an Associate Producer for more than six years, in May 2018, Defendants promoted Poolos to Producer – a rare achievement at 60 Minutes where there is little upward mobility for Associate Producers and Producers. (Poolos Decl. ¶ 9; Bar-On Dep. 21:6-23; 23:14-24:4; Stahl Dep. 63:14-64:5; Iadevaia Decl., Ex. P ¶ 17)

**DEFENDANTS' RESPONSE:** Undisputed that Poolos was promoted to Producer at *60 Minutes* in May 2018, with the clarification that Owens ultimately made the decision to promote Poolos to Producer. (Pl. Depo. 71:18-24; Owens Depo. 131:3-9; Stahl Dep. 63:14-22 ("Bill Owens came to me and said he wanted to do that, and I said fine."); *See also* Plaintiff's Response admitting Paragraph 8 of Defendants' Rule 56.1 Statement). The remainder of this paragraph consists of improper argument and opinion, rather than statements of fact, is unsupported by record evidence,

9

and should be disregarded. In any event, the remainder of this paragraph is undisputed as it is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff was not terminated for performance.

237.    Stahl testified that she could not identify anyone on her team, other than Poolos, who was promoted from Associate Producer to Producer. (Stahl Dep. 63:14-64:5) Further, that Stahl "liked [Poolos's] story ideas" that Poolos "was excellent at what [Stahl] consider[ed] a very important part of the job, which is [] trying to get people to give [60 Minutes] interviews." (Stahl Dep. 65:25-66:10)

**DEFENDANTS' RESPONSE:** Undisputed that Stahl could not identify at her deposition anyone on her team, other than Poolos, who was promoted from Associate Producer to Producer. It is further undisputed that Stahl thought positively of some of Poolos' work as a Producer. Further responding, Stahl also believed Poolos' "scripting was a different story" that "script writing continued to need work" and that "[t]here were occasional issues" where "she was difficult to work with, with the crews, sometimes the editors." (Stahl Dep. 65:14; 69:17-19; 81:3–5). In any event, this paragraph immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff was not terminated for performance.

238.    Poolos's work at 60 Minutes included investigations and in-depth news stories about survivors of Boko Haram (a portrait of a group of young women who survived kidnapping by Boko Haram and who returned to school after years of captivity); female soccer players in Iran; China's real estate market; mobile money in Kenya; the Russian activist group Pussy Riot; transgender health issues; and the Paris terror attacks. (Poolos Decl. ¶ 10; Iadevaia Decl., Ex. VVV; id. Ex. P ¶ 18; Stahl Dep. 64:14-65:3, 70:24-71:10, 71:24-72:4)

10

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that Poolos' work on the female soccer players in Iran (2016), China's real estate market (2013; produced by Shachar Bar-On), mobile money in Kenya (2015; produced by Shachar Bar-On), the Russian activity group Pussy Riot (2013; produced by Shachar Bar-On), and the Paris terror attacks (2015) were stories she worked while she was an Associate Producer. In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff was not terminated for performance.

239.    Poolos broke significant news on several occasions, including an investigation into Russian agent Maria Butina ("Butina"), who was accused of trying to influence United States policies for the Kremlin. (Poolos Decl. ¶ 10; Stahl Dep. 74:4-18; Iadevaia Decl., Ex. P ¶ 19) Poolos was able to achieve unprecedented access for the segment and secured an exclusive on camera interview of Butina while she was in federal prison. (Poolos Decl. ¶ 10; Iadevaia Decl., Ex. P ¶ 19) Before the Butina interview, on information and belief, 60 Minutes had not been able to report from a federal prison for over a decade.  (Poolos Decl. ¶ 10; Iadevaia Decl., Ex. VVV; id. Ex. P ¶ 19)

**DEFENDANTS' RESPONSE:** Plaintiff's self-serving characterization of herself consists of improper argument and opinion, rather than statements of fact, is unsupported by record evidence, and should be disregarded. In any event, this paragraph is undisputed as it is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff was not terminated for performance. Further responding, Plaintiff's work on the story on Russian agent Maria Butina was fraught with interpersonal conflict, ultimately resulting in both Associate Producers who worked on the story, Sarah Turcotte and Will Croxton, complaining to management about Plaintiff's mistreatment of them. Defendants

11

incorporate by reference the 56.1 ¶¶ 24-27. Plaintiff admitted that Turcotte requested to switch teams and work with another Producer and to being aware of Croxton's complaint following her attempt to remove him as the primary Associate Producer on the Butina story. (*See* Plaintiff's response admitting Paragraphs 25 through 27 of Defendants' Rule 56.1 Statement).

240.    On multiple occasions, Poolos produced interviews with Russian opposition leader Alexey Navalny ("Navalny"), which included securing (i) in 2017, Navalny's first major, televised interview with an American journalist in Russia and (ii) in 2020, his first televised interview in Germany after surviving a poisoning using the chemical weapon Novichok. (Poolos Decl. ¶ 11; Iadevaia Decl., Ex. VVV; id. Ex. P ¶ 20)

**DEFENDANTS' RESPONSE:** Plaintiff's self-serving characterization of herself consists of improper argument and opinion, rather than statements of fact, is unsupported by record evidence, and should be disregarded. In any event, this paragraph is undisputed as it is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff was not terminated for performance.

241.    For the 2020 Navalny interview, Poolos successfully traveled with Stahl to Germany at a time when the country had blocked all travelers from the United States due to Covid restrictions. (Poolos Decl. ¶ 11; Iadevaia Decl., Ex. P ¶ 20)

**DEFENDANTS' RESPONSE:** Plaintiff's self-serving characterization of herself consists of improper argument and opinion, rather than statements of fact, is unsupported by record evidence, and should be disregarded. In any event, this paragraph is undisputed as it is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff was not terminated for performance.

242.    Poolos regularly received positive feedback regarding her performance. (Poolos Decl. ¶ 12; Iadevaia Decl., Ex. P ¶ 21) For example, on multiple occasions, former Executive Producer of 60 Minutes Jeff Fager ("Fager") complimented her work. (Poolos Decl. ¶ 13; Iadevaia Decl., Ex. P ¶ 22)

**DEFENDANTS' RESPONSE:** Undisputed that former Executive Producer of *60 Minutes*, Jeff Fager ("Fager"), complimented Plaintiff's work as an Associate Producer prior to Fager's termination. (*See* Plaintiff's response admitting Paragraphs 191 through 193 of Defendants' Rule 56.1 Statement). The remainder of this paragraph consists of improper argument and opinion, rather than statements of fact, is unsupported by record evidence, should be disregarded, and is disputed. While Plaintiff occasionally received positive feedback at *60 Minutes*, it is undisputed that Owens expressed concerns to Poolos about her productivity and inability to meet the minimum production standard of four to five stories per season, and that Simon expressed concerns to Plaintiff regarding her lack of productivity, Poolos' "temperament or work style," and her "top-down" rigid "treatment of her APs." (Zuckerman Decl., Ex. 1, Pl. Tr. 77:5-12; 130:9-15; Ex. 2, Owens Tr. 72:5-25; 139:20-140:2; Simon Dep. 146:14-150:14). In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff was not terminated for performance.

243.    In 2013, after 60 Minutes aired her first co-produced story, Fager wrote to the team responsible for the story, including Poolos: "That was another incredible story.  I loved it.  What a year you've have had."  (Poolos Decl. ¶ 13; Iadevaia Decl., Ex. P ¶ 22)

**DEFENDANTS' RESPONSE**: This paragraph is unsupported by any record evidence and should be disregarded pursuant to Local Rule 56.1(d), including because it purports to cite to an unverified EEOC Charge, which is inadmissible, as well as Poolos's self-serving account of

13

alleged out of court statements offered for the truth of the matter asserted. In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

244.    Fager told Poolos that her story about Iran in November 2016 was "terrific" and said it was one of the "best pieces" from Iran in the show's history. (Poolos Decl. ¶ 13; Iadevaia Decl., Ex. CCC at Pl. 000198; id. Ex. P ¶ 22)

**DEFENDANTS' RESPONSE**: This paragraph is unsupported by any record evidence and should be disregarded pursuant to Local Rule 56.1(d), including because it purports to cite to an unverified EEOC Charge, which is inadmissible, as well as Poolos's self-serving account of alleged out of court statements offered for the truth of the matter asserted. In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

245.    After promoting Poolos in or around 2018, Fager told her that he had no doubt she would be a "great" Producer. (Poolos Decl. ¶ 14; Iadevaia Decl., Ex. P ¶ 22)

**DEFENDANTS' RESPONSE**: This paragraph is unsupported by any record evidence and should be disregarded pursuant to Local Rule 56.1(d), including because it purports to cite to an unverified EEOC Charge, which is inadmissible, as well as Poolos's self-serving account of alleged out of court statements offered for the truth of the matter asserted. Further responding, Owens ultimately made the decision to promote Poolos to Producer. (Pl. Depo. 71:18-24; Owens Depo. 131:3-9; Stahl Dep. 63:14-22 ("Bill Owens came to me and said he wanted to do that, and I said fine."); *See also* Plaintiff's Response admitting Paragraph 8 of Defendants' Rule 56.1 Statement). In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

14

246.     Stahl told Poolos that she "trusted" Poolos's news judgment, one of the highest compliments a Producer can receive from a Correspondent.  (Poolos Decl. ¶ 15; Iadevaia Decl., Ex. P ¶ 23)

**DEFENDANTS' RESPONSE:** This paragraph is unsupported by any record evidence and should be disregarded pursuant to Local Rule 56.1(d), including because it purports to cite to an unverified EEOC Charge, which is inadmissible, as well as Poolos's self-serving account of alleged out of court statements offered for the truth of the matter asserted. Further responding, Stahl testified that she did not recall making the statement alleged. (Stahl 74:25-75:3). In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

247.     Stahl also said that Poolos produced some of her favorite stories of her career, including the segment about "The Chibok Girls," and described Poolos's investigation for the Butina story as "fantastic" and a "classic" 60 Minutes story. (Poolos Decl. ¶ 21; Iadevaia Decl., Ex. P ¶ 23)

**DEFENDANTS' RESPONSE:** This paragraph is unsupported by any record evidence and should be disregarded pursuant to Local Rule 56.1(d), including because it purports to cite to an unverified EEOC Charge, which is inadmissible, as well as Poolos's self-serving account of alleged out of court statements offered for the truth of the matter asserted. Further responding, Stahl testified that she did not recall making the statement alleged. (Stahl Dep. 75:6-10). In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

248.     Stahl testified that both of Poolos's Navalny stories were "very" successful and commended Poolos for "persuad[ing] [Navalny's] wife to participate," that Poolos "organized a

great shoot," and that it was one of Poolos's "wonderful stories" that Poolos brought her. (Stahl Dep. 64:25-65:3, 71:14-23)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that Stahl also testified that Poolos' "scripting" on the Navalny story "was a different story" and that she "didn't think that she was at that point quite as adept at that as a producer would have been." (Stahl Dep. 65:14-20). In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

249.    Stahl also complimented other stories Poolos helped produce. (Stahl Dep. 74:4-18) For example, Stahl testified that Poolos "brought great stories to the team and then as a producer, stories [Stahl] loved doing." (Stahl Dep. 65:25-66:14)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification Stahl believed Poolos' "scripting was a different story" that "script writing continued to need work" and that "[t]here were occasional issues" where "she was difficult to work with, with the crews, sometimes the editors." (Stahl Dep. 65:14; 69:17-19; 81:3–5). In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

250.    The former Executive Producer for 60 Minutes, Owens , also praised Poolos's work. (Owens Dep. 131:17-132:6) Owens supported Poolos's promotion to Producer in 2018 based in part on her "body of work," including good work on a story in Iran. (Owens Dep. 131:17-132:6)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that Owens expressed concerns to Poolos about her productivity and inability to meet the minimum production standard of four to five stories per season after she was promoted to Producer. (Zuckerman Decl., Ex. 1, Pl. Tr. 77:5-12; 130:9-15; Ex. 2, Owens Tr. 72:5-25; 139:20-140:2). Further responding, Owens

ultimately made the decision to promote Poolos to Producer in 2018. (Pl. Depo. 71:18-24; Owens Depo. 131:3-9; Stahl Dep. 63:14-22 ("Bill Owens came to me and said he wanted to do that, and I said fine."); *See also* Plaintiff's Response admitting Paragraph 8 of Defendants' Rule 56.1 Statement). The remainder of this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

251.    After the first screening of the story "Revolution in Iran," which Poolos produced, Owens told a room full of 60 Minutes employees that Poolos should be "commended for all the challenges she overcame in producing [the] great story." (Poolos Decl. ¶ 16; (Iadevaia Decl., Ex. CCC at Pl. 000197; id. Ex. P ¶ 24)

**DEFENDANTS' RESPONSE:** Undisputed that Poolos produced a story called "Revolution in Iran" and that Owens thought it was a good story, with the clarification that the story was produced by Poolos in 2016 for *60 Minutes Sports* when she was still an Associate Producer. (Owens Dep. 129:17-19; 132:2-6; 144:17-20). The remainder of this paragraph is unsupported by any record evidence and should be disregarded pursuant to Local Rule 56.1(d), including because it purports to cite to an unverified EEOC Charge, which is inadmissible, as well as Poolos's self-serving account of alleged out of court statements offered for the truth of the matter asserted. In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

252.    In 2019, Owens told Poolos that she regularly "swung for the fences" and that he admired her tenacity and ambition in pursuing important stories.  (Poolos Decl. ¶ 17; Iadevaia Decl., Ex. P ¶ 25) Owens also testified that he "compliment[ed] [Poolos] about [how] she took big swings on stories." (Owens Dep: 145:14-21)

17

**DEFENDANTS' RESPONSE:** The first sentence in this paragraph is unsupported by any record evidence and should be disregarded pursuant to Local Rule 56.1(d), including because it purports to cite to an unverified EEOC Charge, which is inadmissible, as well as Poolos's self-serving account of alleged out of court statements offered for the truth of the matter asserted. The second sentence is undisputed, with the clarification that Owens testified in full that: "I think – the one thing I can remember complimenting Alex about was she took big swings on stories, which is good, but that she needed to do more. And a diversity of stories would be helpful to her because you need to be able to do more than one thing at a time." (Owens Dep. 145:16-21). In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

253.    In 2020, at the final screening of "Putin's Public Enemy," another story that Poolos produced, Owens told her that the piece was excellent and flawlessly delivered despite the many production challenges. (Poolos Decl. ¶ 18; Iadevaia Decl., Ex. P ¶ 26)

**DEFENDANTS' RESPONSE:** This paragraph is unsupported by any record evidence and should be disregarded pursuant to Local Rule 56.1(d), including because it purports to cite to an unverified EEOC Charge, which is inadmissible, as well as Poolos's self-serving account of alleged out of court statements offered for the truth of the matter asserted. In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

254.    Owens's written review of Poolos's performance in 2021 read,

> Alex, [i]t is fair to say that you tackled the two stories, with the highest degree of difficulty, this year. Brava. I think that you grew as a journalist this year and that experience is invaluable. You and I have laughed about this, but doing a diversity of stories can be very good for your soul. It will also help you do more pieces. Not everything needs to be the 'Pentagon Papers' . . . you can have a little fun! You and Collette have the potential to

be a terrific team. I've witnessed that up close. Thank you for the composure and professionalism that you have shown over these past months. Please take a much deserved break.

(Iadevaia Decl., Ex. SSS; Owens Dep. 148:6-149:3)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that Poolos' 2021 performance review was delivered in June 2021. In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

255.    While discussing that review with Poolos, Owens told her that she frequently produced the hardest stories at the show, that her work was excellent, that she performed at a high-level, and that she needed minimal supervision. (Poolos Decl. ¶ 19; Iadevaia Decl., Ex. P ¶ 27; Owens Dep. 148:6-149:22)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. This paragraph is unsupported by any record evidence and should be disregarded pursuant to Local Rule 56.1(d), including because it purports to cite to an unverified EEOC Charge, which is inadmissible, as well as Poolos's self-serving account of alleged out of court statements offered for the truth of the matter asserted. Further responding, when asked at his deposition what feedback he gave Poolos at her performance evaluation after the 2020/2021 *60 Minutes* season, Owens testified: ""I think – the one thing I can remember complimenting Alex about was she took big swings on stories, which is good, but that she needed to do more. And a diversity of stories would be helpful to her because you need to be able to do more than one thing at a time." (Owens Dep. 145:16-21). Further, when asked whether he thought this feedback was positive, negative or something else, Owens testified: "Somewhere in the middle." (Owens Dep. 145:22-25).

19

256.    Simon, the current Executive Producer of 60 Minutes, was highly complementary of Poolos's work, including on the Iran story and her stories about Navalny and Butina. (Simon Dep. 153:13-154:12, 154:22-155:1)

**DEFENDANTS' RESPONSE:** Undisputed that Simon thought the women soccer players in Iran, the Navalny and Butina stories were good stories, with the clarification that Simon had discussions with Poolos regarding her lack of productivity, Poolos' "temperament or work style," and her "top-down" rigid "treatment of her APs." (Simon Dep. 146:14-150:14). In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

257.    Poolos also received praise for being collegial and collaborative. (Poolos Decl. ¶ 20; Iadevaia Decl., Ex. P ¶ 30) For example, Owens told her on several occasions that he liked her as a person and that she was relatable and down-to-earth. (Poolos Decl. ¶ 20; Iadevaia Decl., Ex. P ¶ 30) Stahl told Poolos that her upbeat personality made working together easy. (Poolos Decl. ¶ 20; Iadevaia Decl., Ex. P ¶ 30)

**DEFENDANTS' RESPONSE:** Undisputed that Owens liked Poolos as a person. The remaining allegations in this paragraph are unsupported by any record evidence and should be disregarded pursuant to Local Rule 56.1(d), including because it purports rely on an argumentative, self-serving EEOC Charge contradicted by record evidence, as well as Poolos's self-serving account of alleged out of court statements offered for the truth of the matter asserted.   Further responding, this paragraph is contradicted by copious documentary and testimonial evidence in the record that Poolos' interactions with her colleagues at 60 Minutes were plagued by interpersonal conflict resulting in numerous colleagues complaining about her mistreatment of them. Defendants incorporate by reference the 56.1 ¶¶ 23-39, 51-52, 56-58, 78).

258.    Poolos's work at 60 Minutes has received numerous awards and other recognition including a Gracie Award for "The Chibok Girls" in 2020; an Emmy Award for Outstanding Business and Economic Reporting in a News Magazine for "China's Real Estate Bubble" in 2014; two Emmy nominations for Outstanding Edited Interview and Outstanding Writing for "Putin's Public Enemy" in 2021; an Emmy nomination for Outstanding Edited Interview for "The Challenger" in 2018; and an Emmy nomination for Outstanding Business and Economic Reporting News Magazine for "The Future of Money" in 2015. (Poolos Decl. ¶ 21; Iadevaia Decl., Ex. VVV; id. Ex. P ¶ 31)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that Poolos shares these awards and recognitions with the Correspondent, Producers, Associate Producers, and staff who worked on these stories.

<u>Poolos's Employment Agreement</u>

259.    During Poolos's tenure, CBS Producers typically worked under the terms of a written employment contract, and Poolos worked under such a contract between 2011 and 2022. (Owens Dep. 136:24-137:5; Poolos Decl. ¶ 22)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that *60 Minutes* producers typically work under the terms of a written employment contract, and that Poolos worked under the terms of multiple such contracts between 2011 and 2022.

260.    CBS (and its predecessor companies) agreed to numerous contract extensions with Poolos after her original contract expired. (Poolos Decl. ¶ 22; Iadevaia Decl., Ex. P ¶ 33)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that Plaintiff's Staff Agreements were entered into with CBS New Inc.

261.    Most recently, Defendants decided to offer her a renewed contract, with a raise, effective from May 30, 2021, for a period of three years until May 25, 2024 (the "Agreement"). (Poolos Decl. ¶ 28; Owens Dep. 137:6-17, 138:21-139:15; Ex. 42, ¶ 2(a))

**DEFENDANTS' RESPONSE**: Undisputed, with the clarification that Owens made the decision to renew Plaintiff's contract. (Owens Dep. 137:6-17, 138:21-139:9). Further responding, the "term of this Agreement" commenced May 30, 2021, and was to continue "unless sooner terminated, through and including May 25, 2025" and her contract set forth various ways in which it could be "sooner terminated." (Ex. 42, ¶¶ 2(a), 2(b), 2(c), 9).

262.    The Agreement provided that if CBS fired Poolos without cause, Poolos was entitled to severance. (Iadevaia Decl., Ex. TTT ¶ 2(c)) Specifically, Paragraph 2(c) of the Agreement states that CBS "shall pay": "the greater of: (i) the balance of the total weekly compensation due Artist, if any, through the termination date, which shall be calculated commencing from the date CBS no longer requires the performance of Artist's services hereunder; or (ii) severance in accordance with subparagraph 22.(c)." (Id.) Paragraph 22(c) of the Agreement, in turn, provides that "[s]everance payments, if any, shall be in accordance with CBS policy as it may be in effect from time to time and all requirements thereof." (Id. ¶ 22(c))

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that Poolos would have been entitled to severance "in the event this Agreement is terminated by CBS for any reason other than as set forth in paragraph 9" which further provided that "[i]f [Poolos] at any time breaches any provision of this Agreement, or at any time is unable, fails, neglects or refuses to perform fully any one or more of Artist's obligations" then "Artist shall not receive any severance of any other termination payment" (Ex. 42, ¶¶ 2(b)-(c), 9).

263.    The Agreement specified that Poolos would not be entitled to severance if she breached any provision of the Agreement, failed to perform her obligations, or was incapacitated. (Id. ¶ 9)

**DEFENDANTS' RESPONSE:**  Undisputed, with the clarification that Poolos explicitly agreed in Paragraph 4(d) to perform her employment duties "in full compliance" with CBS's "Business Practices Statement and Personnel Policies," and any revisions or additions thereto. (*See* Plaintiff's Response admitting Paragraph 202 of Defendants' Rule 56.1 Statement).

264.    Even though CBS fired Poolos (as described below) and none of these circumstances occurred, CBS has refused to pay her severance. (Poolos Decl. ¶ 86 ; Poolos Dep. 215:22-216:13; Balducci Dep. 102:16-104:11; Dkt. 35 ¶ 59)

**DEFENDANTS' RESPONSE:** Undisputed that Poolos was fired and that she was not pay severance. Plaintiff also "admit[s] that the Company determined that Plaintiff violated Company policies." (See Plaintiff's response admitted Paragraph 203 of the Defendants' Rule 56.1 Statement). The remainder of this paragraph is unsupported by the record evidence to which Poolos cites, and it should be disregarded. Further responding, Poolos' unsupported allegations in this paragraph are disputed. Plaintiff violated the Business Conduct Statement's "Speaking-Up & Non-Retaliation Policy," which prohibits employees from retaliating against individuals who complain about harassment or "[b]ullying or abusive conduct (regardless of whether the person is in a protected category)." (Zuckerman Decl., Ex. 43, at CBS-000136-139, 000144). Poolos also violated the BCS's requirement to respond truthfully during investigations and to not "withhold relevant information or attempt to mislead or misdirect any investigation;" and she violated the BCS' anti-bullying provisions. (Zuckerman Decl., Ex. 43, at CBS-00144, 00177). These violations provided ample grounds for the Company to terminate Poolos' Staff Agreement pursuant to its

23

terms and decline to provide Poolos with any severance pay, in accordance with Paragraph 2(c) of the Staff Agreement. (Zuckerman Decl., Ex. 32, at CBS007887; *see also* Plaintiff's Response admitting Paragraphs 205-206 of Defendants' Rule 56.1 Statement).

<u>Human Resources/Employee Relations/Legal</u>

265.    CBS employment matters are handled across three groups, including Human Resources ("HR"), Employee Relations ("ER"), and Legal. (<u>See</u> Glasgow Dep. 30:19-31:7, 34:9-23)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

266.    The HR function at CBS News focused on, among other things, addressing employee concerns and complaints and coaching leaders on management and organizational issues. (Glasgow Dep. 23:17-24:5)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

267.    HR also conducts investigations into employee complaints. (Glasgow Dep. 34:6-16)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

268.    The ER team was a centralized group of resources available to help alleviate bandwidth concerns for HR business partners as needed, including when something "was going to[] [be] particularly complex and burdensome." (Balducci Dep. 88:24-89:12; <u>see also</u> Glasgow Dep. 30:13-18)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

269.    ER reported through the head of CBS's employment law group. (Glasgow Dep. 31:14-20)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

270.    ER was also involved when HR conducted investigations. (Balducci Dep. 89:13-20; Glasgow Dep: 30:24-31:10) ER is more likely to be involved in an employee investigation if there is a "clear policy violation." (Balducci Dep. 90:15-23)

**DEFENDANTS' RESPONSE:** Undisputed that ER can be involved when HR conducts investigation, and that a "clear policy violation" is "one of the factors" considered when ER is involved. (Balducci 88:24-90:23). Further responding, Balducci testified that other factors include "bandwidth and availability of schedules" whether the investigation a "managerial issue" and whether the investigation is "complex and the HR business partner does not have time." (Balducci 88:24-90:23). In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

271.    Renne Balducci ("Balducci") has worked for Defendants and their predecessors for over 17 years. (Balducci Dep. 70:11-14)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

272.    Balducci left CBS in around 2017 for another job but rejoined the Company in March 2020 as Vice President HR CBS News. (Balducci Dep. 71:4-8, 111:8-16) Balducci remained in the CBS News group until summer 2022. (Balducci Dep. 71:4-8)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

273.    Around 2021, Balducci began reporting to Senior Vice President of HR Cynthia Glasgow ("Glasgow") and reported to Glasgow for the remainder of her time in CBS News. (Glasgow Dep. 20:16-25, 104:3-12; Balducci Dep. 72:8-12)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

274.    In Balducci's CBS News role, she provided day-to-day support for a 24/7 news team. (Balducci Dep. 79:19-22) Balducci had oversight of approximately 600 employees. (Balducci Dep. 83:21-84:5) Among the shows Balducci supported were 60 Minutes, 48 Hours, CBS This Morning, The Evening News, and Sunday Morning Show. (Balducci Dep. 84:12-85:4; Glasgow Dep. 21:8-16)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

275.    During Balducci's time at Defendants, she conducted more than 20 investigations into employee complaints and often worked with ER. (Balducci Dep. 30:8-15, 90:24-92:1)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

276.    During Balducci's time at CBS News, she estimated that she was involved in at least 15 instances where corrective action was taken. (Balducci Dep. 92:2-16) Those corrective actions included counseling, warnings, warning letters, and coaching. (Balducci Dep. 92:17-93:2)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

277.    Glasgow worked at Defendants and their predecessors for 21 years. (Glasgow Dep. 17:10-13) Glasgow left CBS in late April or early May 2023. (Glasgow Dep. 11:10-16)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

278.    From 2021 until when Glasgow left Defendants in 2023, she was Senior Vice President of HR for CBS News, CBS TV stations, CBS News, and CBS News Digital. (Glasgow Dep. 11:10-16, 17:21-18:12)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

279.    During her last two years at CBS, Glasgow reported to Executive Vice President of HR for Paramount. (Glasgow Dep. 18:10-14) During that period, Glasgow had several direct reports, including CBS News Vice President Balducci. (Glasgow Dep. 20:16-25)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

280.    During the 2021 to 2023 period, Glasgow conducted or participated in investigations involving harassment, bullying, discrimination, employee theft, conflicts of interest, and retaliation. (Glasgow Dep. 29:4-30:3; 37:6-18)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

281.    During the 2021 to 2023 period, Glasgow and/or her team were involved in administering disciplinary actions within the groups they oversaw, including dismissals, suspensions, and written or verbal warnings. (Glasgow Dep. 38:17-39:3) Typically, HR would

27

make disciplinary recommendations or give guidance for managers and leaders. (Glasgow Dep. 43:13-17)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

282.   According to Glasgow, decisions regarding whether to offer employees severance were typically made by business leaders, with input from HR and, "probably," Legal. (Glasgow Dep. 82:14-19)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

<u>Applicable Polices/Procedures/Practices</u>

283.   Defendants' Non-Discrimination Policy, which "appl[ies] to and cover[s] all applicants, employees, interns (whether paid or unpaid), contractors, temporary workers, vendors and any other individuals conducting business or providing services at CBS, regardless of immigration status, and prohibit[s] harassment, discrimination and retaliation whether engaged in by fellow employees, by a supervisor or manager or by someone not directly connected to CBS (e.g., an outside vendor, consultant, or customer)" provides that "[a]ny reported allegations of harassment, discrimination or retaliation will be investigated fairly, immediately, thoroughly and impartially by the Human Resources Department, the Paramount Employee Relations Department, Paramount's Compliance Department, or another appropriate party in a manner that provides all parties appropriate due process and reaches conclusions based on the evidence collected." (Iadevaia Decl., Ex. WWW at CBS-007099-CBS-007101)

**DEFENDANTS' RESPONSE:**  This paragraph is unsupported by the record evidence to which Poolos cites and it should be disregarded. The Iadevaia Declaration does not include an Exhibit WWW or the document to which it purports to cite. In any event, this paragraph is

28

immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

284.    The Non-Discrimination Policy states that the investigation will include review of evidence collected, including emails and text messages. (Iadevaia Decl., Ex. XXX at CBS 000182)

**DEFENDANTS' RESPONSE:** This paragraph is unsupported by the record evidence to which Poolos cites and it should be disregarded.  The Non-Discrimination Policy, revised May 5, 2022, provides: "As part of its investigation, Paramount will review relevant documents (if any), which *may* include without limitation e-mails and text messages." (Iadevaia Decl., Ex. XXX at CBS 000182) (emphasis added). In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

285.    Additionally, the investigation includes interviews with the parties involved, review of documents, and interviews with individuals who may have observed the alleged conduct or may have other relevant knowledge.  (Iadevaia Decl., Ex. XXX at CBS 000182)

**DEFENDANTS' RESPONSE:**  Undisputed, with the clarification that these are items that an investigation, conducted pursuant to the Discrimination Policy, as revised May 2, 2022, "may include" (Iadevaia Decl., Ex. XXX at CBS 000182). In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

286.    The investigation procedures described in Defendants' Non-Discrimination Policy apply to other workplace investigations, including investigations into employee misconduct, not only those involving discrimination. (Balducci Dep. 134:11-136:9; Glasgow Dep. 124:10-125:16)

**DEFENDANTS' RESPONSE:** This paragraph is unsupported by the record evidence to which Poolos cites and it should be disregarded. At Balducci Dep. 134:11-136:9, Ms. Balducci is testifying about a document from 2019, whereas the Non-Discrimination policy at Ex. XXX is

from May 2022. Moreover, Ms. Balducci testified extensively that investigation procedures are "wide ranging" "depends what the complaint is" "really depends on the situation" and "all depending on the circumstance that's before me." (Balducci Dep. 24:25-36:12). Similarly, Ms. Glasgow testified that "a similar process to this…may have been followed" but that the "investigative process would really depend on what the complaint was and what the issue was." (Glasgow Dep. 124:18-25). In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

287.    Under Defendants' Non-Discrimination Policy, Defendants may issue corrective action for misconduct related to discrimination or retaliation, including training, referral to counseling, monitoring of the offender, and disciplinary measures such as warnings, reprimands, withholding of a promotion or pay increase, prospective wage reduction, demotion, reassignment, temporary suspension without pay, or termination. (Iadevaia Decl., Ex. XXX at CBS 000182) Many of these corrective actions—such as training, counseling referrals, monitoring, warnings, reprimands, and withholding of promotions or pay increases—are also available to HR and managers for misconduct unrelated to discrimination. (Balducci Dep. 143:9–146:13)

**DEFENDANTS' RESPONSE:** Undisputed that Plaintiff recites various forms of "responsive action" referenced in a Non-Discrimination and Anti-Harassment Policy revised as of May 2, 2022, and that some of those "responsive actions" could be utilized by HR outside of the discrimination context. (Ex. XXX at CBS 000184). Dispute the implication that other forms of responsive action were appropriate in Plaintiff's case involving retaliation. (Balducci Dep. 122:2-13; 144:17-145:5; 297:6-16; 367:14-368:2). In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

288.   The law firm Proskauer provided training on HR investigations, including training materials, in November 2019. (Iadevaia Decl., Ex. YYY; Roderick Dep. 53:8-56:6) Michael Roderick, ER Vice President, testified that the Proskauer training was a comprehensive review on how to conduct investigations. (Roderick Dep. 53:8-24)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. Further responding, the Proskauer training deck from 2019 was guidance from a third party law firm and is not considered Company policy. (Ex. YYY).

289.   Those training materials list "personal relationships of witnesses" as a "key fact[]" to be elicited during investigations. (Iadevaia Decl., Ex. YYY at CBS 009330)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

290.   The training materials also emphasize that investigations should be "impartial, fair & respectful," and include "[c]onclusions based on evidence." (Iadevaia Decl., Ex. YYY at CBS 009309)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that this paragraph cites from the "Hallmarks of a Good Investigation." Ex. YYY at CBS 009309). In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

291.   Additionally, that investigations need to be thorough, that investigators should "[p]ursue all contradictions that may emerge in witness accounts," and should "[c]onsider all relevant documents." (Iadevaia Decl., Ex. YYY at CBS 009311)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that this paragraph cites from the "Hallmarks of a Good Investigation." Ex. YYY at CBS 009309-11). In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

292.    According to Glasgow, as part of her team's investigations, it was important to act quickly and keep employee complaints confidential, instruct everyone involved in the investigation to keep it confidential, and to ensure the investigation gathered accurate information. (Glasgow Dep. 46:9-48:7, 49:22-25)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that Glasgow repeatedly responded that "the process could vary depending on the circumstances" (Glasgow Dep. 46:9-48:7, 49:22-25). In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

293.    Glasgow testified that subject of a complaint is supposed to be told to keep the complaint confidential. (Glasgow Dep. 67:10-25) That instruction would "be conveyed in whatever way in the moment felt the most effective." (Glasgow Dep. 69:6-10)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that Glasgow repeatedly responded to Plaintiff's counsel's questions that these investigation procedures would depend on the facts and circumstances of the investigation. In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

294.    Glasgow testified that it was probably typical to ask the person who was the subject of a complaint if there are any documents that would be relevant to an investigation. (Glasgow Dep. 52:10-14)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that Glasgow repeatedly responded to Plaintiff's counsel's questions that these investigation procedures would depend on the facts and circumstances of the investigation. In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

295.    According to Glasgow, when employees had behavior concerns, managers could suggest training, conduct coaching, or do other things to address poor leadership or poor management. (Glasgow Dep. 59:14-25)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that Glasgow repeatedly responded to Plaintiff's counsel's questions that these investigation procedures would depend on the facts and circumstances of the investigation. In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

60 Minutes Hires Richards as an Associate Producer

296.    In October 2020, Collette Richards ("Richards") joined CBS as an Associate Producer for 60 Minutes on Poolos and Stahl's team. (Richards Dep. 13:25-14:11)

**DEFENDANTS' RESPONSE:** Undisputed.

297.    CNN Producer and former 60 Minutes employee Scott Bronstein ("Bronstein") had specifically recommended Richards for the 60 Minutes Associate Producer job, including by repeatedly calling Poolos when Richards was interviewing at 60 Minutes with a different Producer to tell Poolos that he thought Richards was a better fit for her than the other Producer.  (Poolos Dep. 80:15-82:14; Bronstein Dep. 101:7-11, 105:25-106:4, 147:14-148:6; Richards Dep. 45:12-21; Iadevaia Decl., Ex. R at Bronstein 000001-03; id. Ex. ZZZ at CBS-007143)

**DEFENDANTS' RESPONSE:** Undisputed that Bronstein was a CNN Producer and former 60 Minutes employee, that he served as a reference for Richards when she was interviewing for the *60 Minutes* Associate Producer position, and that he spoke with Poolos during the recruiting process. The remaining assertions in this paragraph are disputed, unsupported by the record evidence to which Plaintiff cites and should be disregarded. Defendants incorporate by reference their 56.1 ¶¶ 41-43. In any event, the remaining assertions are immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

<u>Poolos's Concerns about Richards's Performance and Conduct</u>

298.    Poolos began supervising Richards in or around October 2020 when Richards was a new Associate Producer. (Iadevaia Decl., Ex. P ¶ 45; Poolos Dep. 79:17-80:3)

**DEFENDANTS' RESPONSE:** Undisputed.

299.    Poolos had serious concerns about Richards's performance beginning in 2021. (Iadevaia Decl., Ex. P ¶ 47); Poolos Decl. ¶ 34)

**DEFENDANTS' RESPONSE:** This paragraph is unsupported by any record evidence and should be disregarded pursuant to Local Rule 56.1(d), including because it purports rely on an argumentative, self-serving EEOC Charge contradicted by record evidence, as well as Poolos's "sham affidavit" that contradicts her prior deposition testimony and established evidence in the record. Defendants incorporate by reference their 56.1 ¶¶ 46-59.

300.    Richards frequently made significant errors in fact-checking and often fought back when Poolos provided her constructive feedback, including insisting that important facts were correct when they were not and, as Richards admitted, "lash[ing] out" at Poolos when she did not immediately approve of Richards's ideas. (Iadevaia Decl., Ex. P ¶ 48)

34

**DEFENDANTS' RESPONSE:** This paragraph is unsupported by any record evidence and should be disregarded pursuant to Local Rule 56.1(d), including because it purports to cite to a self-serving, unverified EEOC Charge, which is inadmissible. In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. Defendants incorporate by reference their 56.1 ¶¶ 46-59.

301.    Richards also failed to show attention to detail in several aspects of her work, including copy-editing her work. (Iadevaia Decl., Ex. P ¶ 48; Richards Dep. 130:7-131:10, 133:23-134:2)

**DEFENDANTS' RESPONSE:** Undisputed that Richards acknowledged that Poolos raised an issue to her regarding her copyediting in November/December 2021. The remainder of this paragraph, including that Richards failed to show attention to detail in several aspects of her work is unsupported by the record evidence to which Poolos cites, including because it purports rely on an argumentative, self-serving EEOC Charge contradicted by record evidence, and should be disregarded. In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. Defendants incorporate by reference their 56.1 ¶¶ 46-59.

302.    On several occasions, Richards also failed to complete important tasks such as securing necessary footage for a segment, handling the acquisition of third-party material, managing logistics for shoots, and conducting background interviews. (Iadevaia Decl., Ex. P ¶ 49; Poolos Dep. 104:12-105:4)

**DEFENDANTS' RESPONSE:** Undisputed that Richards made a mistake concerning the delivery of footage, which Poolos characterized as not a big deal. (Poolos Dep. 106:4-20). The remainder of this paragraph is unsupported by the record evidence to which Poolos cites including

35

because it purports rely on an argumentative, self-serving EEOC Charge contradicted by record evidence, and should be disregarded. In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. Defendants incorporate by reference their 56.1 ¶¶ 46-59.

303.    As described below, Richards also failed to manage the application process for international travel for several 60 Minutes employees and then went out of town for a week before the holidays, which required Poolos to cancel her own holiday plans to address the problem. (Poolos Decl. ¶ 35; Iadevaia Decl., Ex. P ¶ 49; Richards Dep. 137:17-139:9)

**DEFENDANTS' RESPONSE**: Undisputed that Poolos went to the passport office to renew Stahl's passport. The remainder of this paragraph is unsupported by the record evidence to which Poolos cites, including because it purports rely on an argumentative, self-serving EEOC Charge contradicted by record evidence, and should be disregarded. Further answering, prior to this lawsuit, Poolos consistently blamed Broadcast Associate Wren Wilson for failing to renew Stahl's passport, stating: "This is a BA [Broadcast Associate] job….this is her [Wren Woodson's] job, is to keep track of Lesley's passport." (Dkt. 300-32, Ex. FF, Tr. 13:8-14:7). Richards confirmed that this was "not something that I believe would be my job." (Richards Dep. 139:10-13). Further responding, Plaintiff told Richards in a recorded phone conversation on December 23, 2021 that she cancelled her holiday plans to visit her parents in Cleveland because "my parents were like, you know what just don't come right now at all, they're like a little worried about Covid and us getting on a plane." (Ex. KK, "Dunlavin Dr 5.m4a" beginning at 11:30). In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. Defendants incorporate by reference their 56.1 ¶¶ 46-59.

<u>Problems Worsen in December 2021</u>

304.    In late December 2021, Poolos was unable to accommodate Richards's request to leave town during a critical period at the show, when <u>60 Minutes</u> was planning to air a story about Trevor Noah ("Noah") on or about Sunday, December 19, 2021.  (Iadevaia Decl., Ex. P ¶ 56)

**DEFENDANTS' RESPONSE**: Undisputed that Poolos did not initially accommodate Richards' request to travel in late December 2021 for the holidays, and that 60 Minutes planned to air a story on Trevor Noah on or about Sunday, December 19, 2021. The remainder of this paragraph is unsupported by the record evidence to which Poolos cites, including because it purports rely on an argumentative, self-serving EEOC Charge contradicted by record evidence, and should be disregarded. In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. Defendants incorporate by reference their 56.1 ¶¶ 46-59.

305.    Stahl interviewed Noah for the segment and Poolos produced the story. (Stahl Dep. 71:11-23, 86:2-8) Richards repeatedly asked Poolos for time off to drive her dog home on the Saturday before the Noah story aired or the day the show actually aired on Sunday.  (Iadevaia Decl., Ex. CCC at Pl. 000204; Poolos Dep. 100:7-100:14; Richards Dep. 177:24-181:13)

**DEFENDANTS' RESPONSE**: Undisputed that Stahl interviewed Noah for the segment, Poolos produced the story, and that Poolos did not initially accommodate Richards' request to travel in late December 2021 for the holidays. The remainder of this paragraph is unsupported by the record evidence to which Poolos cites, including because it purports rely on an argumentative, self-serving EEOC Charge contradicted by record evidence, and should be disregarded. In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. Defendants incorporate by reference their 56.1 ¶¶ 46-59.

37

306.    Poolos told Richards that leaving then was not feasible and a highly unusual request at 60 Minutes because she proposed traveling on important days for producing the show and correcting any factual errors in the broadcast that might need to be addressed. (Iadevaia Decl., Ex. P ¶ 58); id. Ex. CCC at Pl. 000204) When Stahl learned of Richards's request, she told Poolos it was outrageous. (Poolos Decl. ¶ 37)

**DEFENDANTS' RESPONSE**: The paragraph is unsupported by the record evidence to which Poolos cites, including because it purports rely on an argumentative, self-serving EEOC Charge contradicted by record evidence, and should be disregarded. Additionally, Poolos cites to Ex. CCC, which purports to be Poolos' handwritten notes from 2016 (years before Richards worked at *60 Minutes*), and does not support any statement in this paragraph. In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. Defendants incorporate by reference their 56.1 ¶¶ 46-59.

307.    Poolos offered as a compromise that Richards instead travel during the week after the show aired, even though this would have required Poolos to complete Richards's work on another story, in an attempt to resolve the issue.  Richards rejected her suggestion because her husband was not able to travel on those days. (Iadevaia Decl., Ex. P ¶ 60; Richards Dep. 181:21-182:3)

**DEFENDANTS' RESPONSE**: Undisputed that Poolos suggested that Richards travel on Monday or Tuesday, and that Richards was unable to because her husband needed to work on those working days. The remainder of this paragraph is unsupported by the record evidence to which Poolos cites, including because it purports rely on an argumentative, self-serving EEOC Charge contradicted by record evidence, and should be disregarded. In any event, this paragraph is

immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. Defendants incorporate by reference their 56.1 ¶¶ 46-59.

308. When Richards asked again to take the time off, which she had done several times, and Poolos said she could not because it would interfere with preparing the story for broadcast and addressing concerns post-broadcast, Richards became upset. (Iadevaia Decl., Ex. P ¶ 61; Poolos Dep. 100:7-100:14; Richards Dep. 177:24-181:13)

**DEFENDANTS' RESPONSE**: Undisputed that Richards asked for time off for her wedding in May 2021 and to travel home for the holidays in late December 2021. Also undisputed that Richards was upset by a phone call with Poolos in December 2021 where they discussed Richards traveling and, further responding, Richards testified that Poolos yelled at her during that call. (Richards Dep. 174:9-175:14). Poolos later admitted to yelling at Richards in her interview with Balducci, after initially denying ever yelling at Richards. (Ex. 26, Tr. 31:3-33:12; 29:19-21). The remainder of this paragraph is unsupported by the record evidence to which Poolos cites, including because it purports rely on an argumentative, self-serving EEOC Charge contradicted by record evidence, and should be disregarded. In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. Defendants incorporate by reference their 56.1 ¶¶ 46-59.

309. Under the circumstances, including Richards's relentless requests, her erratic behavior, and her inflexibility, Poolos believed that she had no choice but to agree that Richards could travel on the day she demanded to do so. (Iadevaia Decl., Ex. P ¶ 61; Richards Dep. 180:23-181:13)

**DEFENDANTS' RESPONSE**: Undisputed that Poolos eventually approved Richards traveling home for the holidays. The remainder of this paragraph is unsupported by the record

39

evidence to which Poolos cites, including because it purports rely on an argumentative, self-serving EEOC Charge contradicted by record evidence, and should be disregarded. In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. Defendants incorporate by reference their 56.1 ¶¶ 46-59.

310.    Richards left town on the day before the Noah story aired. (Iadevaia Decl., Ex. P ¶ 62; Poolos Dep. 100:7-101:4; Richards Dep. 177:24-181:13)

**DEFENDANTS' RESPONSE**: Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

311.    Poolos also suggested that they plan to discuss Richards's job performance and how to move forward after the holidays. (Poolos Decl. ¶ 43; Poolos Dep. 100:7-101:4)

**DEFENDANTS' RESPONSE**: Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

312.    Poolos encouraged Richards to advocate for herself and told her that if she felt that working with Poolos was not a good fit, she could speak to Simon about working on another team at 60 Minutes and would not be penalized.  (Poolos Decl. ¶ 39; Poolos Dep. 100:7-101:4)

**DEFENDANTS' RESPONSE**: This paragraph is unsupported by the record evidence to which Poolos cites, including because it purports rely on an argumentative, self-serving EEOC Charge contradicted by record evidence, and should be disregarded, and because the deposition testimony cited does not support her factual assertions. In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. Defendants incorporate by reference their 56.1 ¶¶ 46-59.

313.    After Richards left for vacation, Poolos discovered an error for an upcoming story. (Iadevaia Decl., Ex. P ¶ 63)

**DEFENDANTS' RESPONSE**: This paragraph is unsupported by the record evidence to which Poolos cites, including because it purports to including because it purports rely on an argumentative, self-serving EEOC Charge contradicted by record evidence, and should be disregarded. In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. Defendants incorporate by reference their 56.1 ¶¶ 46-59.

314.    Stahl and her team members required visas to travel to Russia for a story, but after Richards left, Richards told her that Stahl's passport needed to be renewed. (Iadevaia Decl., Ex. P ¶ 63; Richards Dep. 137:17-139:9) Richards knew about the issue with Stahl's passport for weeks but had not alerted Poolos. (Poolos Decl. ¶ 36)

**DEFENDANTS' RESPONSE**: Undisputed that that Stahl's passport was expired. The remainder of this paragraph is unsupported by the record evidence to which Poolos cites, including because it purports rely on an argumentative, self-serving EEOC Charge contradicted by record evidence, and should be disregarded. Further answering, prior to this lawsuit, Poolos consistently blamed Broadcast Associate Wren Wilson for failing to renew Stahl's passport, stating: "This is a BA [Broadcast Associate] job….this is her [Wren Woodson's] job, is to keep track of Lesley's passport." (Dkt. 300-32, Ex. FF, Tr. 13:8-14:7). Richards confirmed that this was "not something that I believe would be my job" and that "[w]e didn't have a planned trip" to Russia. (Richards Dep. 138:25-139:13). In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. Defendants incorporate by reference their 56.1 ¶¶ 46-59.

315.    Without a passport, Stahl would not get the visa she needed, and obtaining the visa was a core responsibility of an Associate Producer that Richards did not handle before leaving for vacation. (Iadevaia Decl., Ex. P ¶ 63; Richards Dep. 18:23-20:4)

**DEFENDANTS' RESPONSE**: Undisputed that that Stahl's passport was expired. The remainder of this paragraph is unsupported by the record evidence to which Poolos cites, including because it purports rely on an argumentative, self-serving EEOC Charge contradicted by record evidence, and should be disregarded. Further answering, prior to this lawsuit, Poolos consistently blamed Broadcast Associate Wren Wilson for failing to renew Stahl's passport, stating: "This is a BA [Broadcast Associate] job….this is her [Wren Woodson's] job, is to keep track of Lesley's passport." (Dkt. 300-32, Ex. FF, Tr. 13:8-14:7). Richards confirmed that this was "not something that I believe would be my job" and that "[w]e didn't have a planned trip" to Russia. (Richards Dep. 138:25-139:13). In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. Defendants incorporate by reference their 56.1 ¶¶ 46-59.

316.    As a result of Richards's oversight, Poolos was forced to cancel her own vacation plans to renew Stahl's passport. (Iadevaia Decl., Ex. P ¶ 63; Richards Dep. 137:17-139:9)

**DEFENDANTS' RESPONSE**: Undisputed that Poolos went to the passport office to renew Stahl's passport. The remainder of this paragraph is unsupported by the record evidence to which Poolos cites, including because it purports to rely on argumentative, self-serving EEOC Charge contradicted by record evidence, and should be disregarded. Further answering, prior to this lawsuit, Poolos consistently blamed Broadcast Associate Wren Wilson for failing to renew Stahl's passport, stating: "This is a BA [Broadcast Associate] job….this is her [Wren Woodson's] job, is to keep track of Lesley's passport." (Dkt. 300-32, Ex. FF, Tr. 13:8-14:7). Richards confirmed

that this was "not something that I believe would be my job." (Richards Dep. 139:10-13). Further responding, Plaintiff told Richards in a recorded phone conversation on December 23, 2021 that she cancelled her holiday plans to visit her parents in Cleveland because "my parents were like, you know what just don't come right now at all, they're like a little worried about Covid and us getting on a plane." (Ex. KK, "Dunlavin Dr 5.m4a" beginning at 11:30). In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. Defendants incorporate by reference their 56.1 ¶¶ 46-59.

317.    Following the Noah segment, when Richards and Poolos were working together on another story with a tight deadline, Poolos asked Richards to copy edit her background interviews more carefully than she had previously so that she could give them to Stahl as research for the story. (Iadevaia Decl., Ex. P ¶ 64; Richards Dep. 131:2-23)

**DEFENDANTS' RESPONSE**: Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

318.    Richards began to complain that Poolos was not treating her well after Poolos asked her to do her job. (Iadevaia Decl., Ex. P ¶¶ 64-65; Richards Dep. 131:2-23)

**DEFENDANTS' RESPONSE**: Undisputed that Richards complained to Poolos on December 31, 2021, informing her directly: "I am not well or ok with how I am being treated." (Zuckerman Decl., Richards Tr. 260:2-20; Ex. 17, at CBS-007772).

319.    In response, Poolos offered Richards additional support, including extending the deadlines and suggesting that she have Wren Woodson, Stahl's Broadcast Associate, assist Richards, so that Richards felt less stressed.  (Iadevaia Decl., Ex. P ¶ 65; id. Ex. AAAA; Richards Dep. 264:25-266:13)

**DEFENDANTS' RESPONSE**: Undisputed and, further responding, in response to Richards' complaint, Poolos responded: "I'm sorry you feel that way. I'm not sure how I am mistreating you. So please do spell it out for me." (Ex. AAAA).

320.    Shortly thereafter, for a few days, Richards stopped working, and in late December 2021, Richards failed to respond to Poolos's requests for Richards to complete her work, hand over her draft work for Poolos to complete, or otherwise communicate with Poolos.  (Iadevaia Decl., Ex. P ¶ 66; Poolos Dep. 116:16-117:15)

**DEFENDANTS' RESPONSE**: Disputed that Richards stopped working for a few days, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. Further responding, Simon approved Richards telling Poolos that she needed to take a break on the evening of Friday, December 31, 2021 (New Years Eve), telling Richards "absolutely, set the boundaries, and it's NY Eve," (Zuckerman Reply Decl., Ex. 1 at CBS-8106). After telling Poolos she need a break, Richards thereafter emailed Poolos in the early morning of Monday, January 3 (a Company holiday), and exchanged numerous emails with Poolos concerning their work. (Zuckerman Reply Decl., Ex. 2 at CBS-2955-2966).

321.    At the time, Richards and Poolos had an exclusive interview with an American hostage recently released from a prison in Myanmar, which was scheduled for early January 2022. (Iadevaia Decl., Ex. P ¶ 67)

**DEFENDANTS' RESPONSE**: Undisputed, with the clarification that that the interview was scheduled for January 7, 2022. (Zuckerman Reply Decl., Ex. 2 at CBS-2955-2966). In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

44

322.    Richards and Poolos were on a deadline and behind schedule to submit materials to Stahl for review before the interview, and Richards's insubordination jeopardized this important story. (Iadevaia Decl., Ex. P ¶ 67)

**DEFENDANTS' RESPONSE**: This paragraph is unsupported by any record evidence, including because it purports to rely on an argumentative, self-serving EEOC Charge contradicted by record evidence, and should be disregarded. Disputed that Richards engaged in insubordination, as Simon approved Richards telling Poolos that she needed to take a break on the evening of Friday, December 31, 2021 (New Years Eve) telling Richards "absolutely, set the boundaries, and it's NY Eve," (Zuckerman Reply Decl., Ex. 1 at CBS-8106). In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

323.    Others raised concerns about Richards's performance, including multiple outside parties who made complaints to senior management and another Producer about Richards's volatile temper and lack of professionalism. (Poolos Decl. ¶ 40; Poolos Dep. 250:7-251:22; Simon Dep. 165:1-168:13) Indeed, a vendor threatened to pull his client out of an interview and all of his clients from appearing on 60 Minutes based on his communications with Richards. (Poolos Dep. 250:16-251:2) Nobody notified HR about those concerns.  (Poolos Decl. ¶ 40; Simon Dep. 168:14-168:21; Balducci Dep. 206:19-207:16)

**DEFENDANTS' RESPONSE**: Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. This paragraph is unsupported by any record evidence, including because it purports rely on an argumentative, self-serving EEOC Charge contradicted by record evidence, and should be disregarded. and should be disregarded, and because the deposition testimony cited does not support the allegations asserted. Further responding, Simon testified that the a publicist expressed confusion as to why a piece was

being transitioned from Poolos to another producer, and denied that the publicist called Richards "unprofessional." (Simon Dep. 165:1-167:23).

Poolos Contacts Scott Bronstein About Her Concerns

324.    Poolos did not immediately report her concerns about Richards to management. (Iadevaia Decl., Ex. P ¶ 68; Poolos Dep. 118:15-119:4)

**DEFENDANTS' RESPONSE**: Undisputed that Poolos did not report any concerns about Richards to management until January 5, 2022, after learning of Richards' HR complaint against her. Defendants incorporate by reference their 56.1 ¶¶ 49-50, which have been admitted.

325.    Poolos did not want to bother Executive Editor Simon during her vacation and was worried that if she reported Richards's conduct to Stahl, CBS would take disciplinary action against Richards. (Iadevaia Decl., Ex. P ¶ 68; Poolos Dep. 118:15-119:4)

**DEFENDANTS' RESPONSE**: This paragraph is unsupported by any record evidence, including because it purports rely on an argumentative, self-serving EEOC Charge contradicted by record evidence, and should be disregarded, and because the deposition testimony cited does not support the allegations asserted. In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

326.    Instead, Poolos reached out to CNN producer Bronstein. (Iadevaia Decl., Ex. P ¶ 69; Poolos Dep. 116:23-117:21; Bronstein Dep. 183:22-184:8)

**DEFENDANTS' RESPONSE**: Undisputed. Further responding, less than fifteen minutes after Richards emailed Poolos "I am not well or ok with how I am being treated," Poolos texted Bronstein asking to speak for the first time, writing, "Just want to run something past you confidentially." Defendants incorporate by reference their 56.1 ¶¶ 58-59, which have been admitted.

327.    Bronstein and Richards worked together at CNN for more than three years and were close friends. (Richards Dep. 26:8-11, 30:10-16; Bronstein Dep. 95:21-97:11, 114:9-20; Poolos Dep. 82:8-14)

**DEFENDANTS' RESPONSE:** Undisputed that Bronstein and Richards worked together at CNN for approximately three years. Disputed that the two are "close" friends.  Richards testified that Bronstein was a "work friend" and "mentor" and that they have not socialized outside of work. Bronstein testified that he has not seen Richards in person since she left CNN (with the possible exception of seeing her at a funeral for a colleague). (Richards Dep. 111:16-112:3; Bronstein Dep. 111:22-24). In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

328.    Poolos had sought Bronstein's advice over the holiday break about how to have a better professional relationship with Richards because they were good friends and Poolos knew Bronstein could give advice in Richards's best interest. (Poolos Decl. ¶ 44; Poolos Dep. 118:15-119:4; Bronstein Dep. 183:22-186:23; Iadevaia Decl., Ex. R at Bronstein 000004-000005)

**DEFENDANTS' RESPONSE**:  Undisputed that Poolos contacted Bronstein beginning on December 31, 2021 and through January 5, 2022. Disputed as to the reason Poolos claims she contacted Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 59-60. Further responding, Poolos admitted to Balducci during her January 8, 2022 interview that she reached out to Bronstein because she was "upset."  More specifically, Poolos said "I didn't trash talk her. I was upset … And I was upset, I'm not going to tell you I wasn't upset, of course I was upset. But I did not like go into it with some trash talking thing." (Ex. 26, 57:25-58:12).   Poolos also eventually acknowledged the consequences of her actions and her guilt after she was caught, saying: "The

47

thing I kept saying to my husband was, did I hurt another human being? Have I hurt someone?" (Ex. 26, 51:8-10).

329.   Poolos exchanged text messages with Bronstein but was unable to speak with him over the holidays. (Poolos Dep. 118:15-119:4; Bronstein Dep. 183:22-186:23; Iadevaia Decl., Ex. R at Bronstein 000004-000005)

**DEFENDANTS' RESPONSE:** Undisputed. Defendants incorporate by reference their 56.1 ¶¶ 59-60.

330.   Poolos sent a text message to Bronstein on December 31, 2021, that read: "Hi Scott, I hope this finds you well. Wondering if you have a few minutes to chat." (Iadevaia Decl., Ex. R at Bronstein 000004; Bronstein Dep. 183:22-184:8)

**DEFENDANTS' RESPONSE:** Undisputed. Defendants incorporate by reference their 56.1 ¶¶ 59-60.

331.   A few hours later, Bronstein responded, "Hi Alex – great to hear from you! Today not so good. Is it urgent? What about next week? Or on the weekend possibly – tho is busy wkend." (Iadevaia Decl., Ex. R at Bronstein 000004; Bronstein Dep. 184:9-16)

**DEFENDANTS' RESPONSE:** Undisputed. Defendants incorporate by reference their 56.1 ¶¶ 59-60.

332.   Poolos replied, "Hi!! Not at all urgent. Thank you for writing back. Next week is fine. Just want to run something past you confidentially." (Iadevaia Decl., Ex. R at Bronstein 000004; Bronstein Dep. 184:21-185:6)

**DEFENDANTS' RESPONSE:** Undisputed. Defendants incorporate by reference their 56.1 ¶¶ 59-60.

333.    Bronstein wrote back, "Ok sure lets talk next week. Monday may be good after morning meets and day settles." (Iadevaia Decl., Ex. R at Bronstein 000004-000005; Bronstein Dep. 185:7-12)

**DEFENDANTS' RESPONSE:** Undisputed. Defendants incorporate by reference their 56.1 ¶¶ 59-60.

334.    Poolos answered, "Perfect!! Happy New Year!" (Iadevaia Decl., Ex. R at Bronstein 000005) Bronstein responded, "Happy New Year!!" (Iadevaia Decl., Ex. R at Bronstein 000005).

**DEFENDANTS' RESPONSE:** Undisputed. Defendants incorporate by reference their 56.1 ¶¶ 59-60.

335.    Poolos next contacted Bronstein on January 4, 2022, when she wrote, "Is it too late for you?" (Iadevaia Decl., Ex. R at Bronstein 000005; Bronstein Dep. 183:22-186:23)

**DEFENDANTS' RESPONSE:** Undisputed. Defendants incorporate by reference their 56.1 ¶¶ 59-60.

336.    Bronstein replied "Hi yes kinda late. Been long day. Have family over now. Talk later?" (Iadevaia Decl., Ex. R at Bronstein 000005; Bronstein Dep. 185:13-18, 186:6-15) Poolos then wrote "Yes of course. Sorry! Don't want to impose." (Iadevaia Decl., Ex. R at Bronstein 000005; Bronstein Dep. 186:6-15)

**DEFENDANTS' RESPONSE:** Undisputed. Defendants incorporate by reference their 56.1 ¶¶ 59-60.

<u>Poolos Contacts Management about Her Concerns</u>

337.    Before learning about Richards's complaint on January 5, 2022, Poolos attempted to raise concerns about Richards to management. (Iadevaia Decl., Ex. P ¶ 50); <u>id.</u> Ex. S; <u>id.</u> Ex. T; Poolos Dep. 119:9-14; Simon Dep. 222:17-223:16; Balducci Dep. 255:23-256:24, 257:7-258:20)

**DEFENDANTS' RESPONSE**: Undisputed that before Owens and Simon met with Poolos on January 5, 2022 to discuss Richards' HR Complaint, Poolos emailed Simon on January 3, 2022 to discuss Richards. Further responding, Poolos contacted Simon after Richards had complained directly to Poolos, writing "I am not well or okay with how I am being treated." (Zuckerman Decl., Ex. 4, Richards Tr. 260:2- 20; Ex. 17, at CBS-007772).

338.    On January 3, 2022, Poolos reached out to Executive Editor Simon to discuss her concerns about Richards. (Iadevaia Decl., Ex. P ¶ 51; id. Ex. S; id. Ex. T; Poolos Dep. 119:9-14; Simon Dep. 222:17-223:16; Balducci Dep. 255:23-256:24, 257:7-258:20)

**DEFENDANTS' RESPONSE**: Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

339.    Simon stated she was too busy to discuss the concerns that day but promised to speak to Poolos by phone the following day on January 4, 2022. (Iadevaia Decl., Ex. P ¶ 51; Simon Dep. 222:17-224:5)

**DEFENDANTS' RESPONSE**:  Undisputed that Simon told Poolos "I'm running around today, in and out of appoints, but will have more time to talk tomorrow." (Simon Dep. 223:17-19). Plaintiff's characterization of Simon's response is unsupported opinion and should be disregarded, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

340.    On January 4, 2022, Simon cancelled the scheduled call and told Poolos that Simon needed to speak to both Poolos and Owens. (Iadevaia Decl., Ex. P ¶ 51; Simon Dep. 222:17-224:5)

**DEFENDANTS' RESPONSE**: Undisputed that Simon spoke to Poolos the following day so that Owens and Simon could "talk to her together." (Simon 224:4-5). Plaintiff's characterization that Simon "cancelled" a "scheduled call" is improper argument, opinion, and unsupported by

record evidence and should be disregarded. Defendants incorporate by reference their 56.1 ¶ 61-64. In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

Richards Complains about Poolos

341.    Richards never raised concerns about Poolos to Simon, Owens, or HR before December 17, 2021, when she contacted HR and Simon. (Simon Dep. 169:3-15, 175:17-176:9, 181:8-183:2; Owens Dep. 191:13-25; Balducci Dep. 189:3-190:8, 208:6-209:19)

**DEFENDANTS' RESPONSE**: Undisputed, with the clarification that Richards first emailed HR on December 16, 2021.

342.    After Richards raised concerns to Simon, Simon contacted Owens and HR. (Simon Dep. 175:22- 176:9)

**DEFENDANTS' RESPONSE**: Undisputed.

343.    Owens, Simon, and/or Balducci had never previously discussed Poolos before mid-December 2021. (Balducci Dep. 180:3-9; Simon Dep. 185:25-186:7)

**DEFENDANTS' RESPONSE**: This paragraph should be disregarded as unsupported by the record evidence to which Plaintiff cites. Owens and Simon regularly discussed Poolos as well as the other Producers.

344.    There was never any concern about Poolos's job performance. (Balducci Dep. 195:4-25)

**DEFENDANTS' RESPONSE**: Undisputed that no one raised a concern to Balducci in HR regarding Poolos' job performance. The remainder of this paragraph that there was never any concern about Poolos' job performance is unsupported by the record evidence to which Poolos cites and should be disregarded. Further responding, Owens expressed concerns to Poolos about

her productivity and inability to meet the minimum production standard of four to five stories per season. (Zuckerman Decl., Ex. 1, Pl. Tr. 77:5-12; 130:9-15; Ex. 2, Owens Tr. 72:5-25; 139:20-140:2). Simon raised concerns to Poolos regarding her lack of productivity, Poolos' "temperament or work style," and her "top-down" rigid "treatment of her APs." (Simon Dep. 146:14-150:14). In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

Richards's Complaints Have No Merit

345.    HR requested that Richards submit a written complaint about Poolos. (Richards Dep. 219:10-13)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that Richards had already verbally complained about Poolos and HR asked Richards to submit a written version. Defendants incorporate by reference their 56.1 ¶¶ 51-57.

346.    Richards submitted a written complaint about Poolos to HR on December 30, 2021 and Simon on December 31, 2021. (Richards Dep. 218:22-219:6; Simon Dep. 197:8-198:8; Iadevaia Decl., Ex. BBBB)

**DEFENDANTS' RESPONSE:** Undisputed.

347.    Richards's written complaint about Poolos dated December 30, 2021 makes several allegations against Poolos. (Iadevaia Decl., Ex. U)

**DEFENDANTS' RESPONSE:** Undisputed.

348.    Many of Richards's complaints were about the difficulty of working at 60 Minutes rather than complaints about Poolos's behavior, including allegations that Poolos "assign[ed] [Richards] intense workloads to accomplish in unreasonable timelines, often over weekends and holidays;" that Poolos told her "to call, text and email colleagues and sources until they pick up the phone or answer;" and that Poolos was "uncompromising about logistics and other people's

52

schedules." (Iadevaia Decl., Ex. U at CBS 007775) It is not uncommon for CBS News and <u>60 Minutes</u> employees to work long hours, including on weekends and holidays, to complete tasks in short windows, nor to diligently follow up with colleagues and sources. (Stahl Dep. 35:15-36:16, 107:12-110:7; Bar-On Dep. 61:21-62:13; Simon Dep. 199:9-201:15; Owens Dep. 82:9-84:12) <u>60 Minutes</u> is a 24/7 news organization. (Balducci Dep. 77:5-15; 221:5-13)

**DEFENDANTS' RESPONSE:** Undisputed that this paragraph contains selective quotations from Richards' written complaint and selections from deposition testimony that support that employees sometimes work long hours, weekends and holidays and that 60 Minutes is a 24/7 news organization. Plaintiff's characterization of Richards' complaint is disputed, argumentative, and not supported the record evidence to which Plaintiff cites, and it should be disregarded, but is immaterial because Defendants' decision to terminate Poolos' employment was not based on Richards' written complaint and was instead based upon Defendants' conclusion that Poolos retaliated and was dishonest and misleading during the investigation. (Balducci Dep. 360:6-16; 360:22-361:22; Owens 204:6-206:11). Defendants incorporate by reference their 56.1 ¶¶ 88, 98,104, 106-114. This paragraph fails to raise a genuine dispute of material fact.

349.    Richards alleged that Poolos sent her several text messages on the day of Richards's bridal shower concerning an issue with a cameraman not uploading footage from a shoot and instead sending it via overnight mail. (Iadevaia Decl., Ex. U at CBS 007776-007785)

**DEFENDANTS' RESPONSE:** Undisputed that one of Richards' complaints about Plaintiff was that she sent her text messages on the day of Richards' bridal shower.

350.    But as Richards acknowledged, Poolos had previously addressed the same issue with Richards and told Richards that she should not sign off on a cameraman delaying sending

footage without speaking to Poolos first. (Iadevaia Decl., Ex. U at CBS 007777-7778; Richards Dep. 153:13-154:6; Poolos Dep. 105:21-107:10)

**DEFENDANTS' RESPONSE:** Undisputed that Richards testified that Plaintiff previously raised "similar" issues, but the remainder of this paragraph is disputed, argumentative, and not supported by the record evidence to which Plaintiff cites, and should be disregarded, but it is immaterial because Defendants' decision to terminate Poolos' employment was not based on the issues described in Richards' written complaint and was instead based upon Defendants' conclusion that Poolos retaliated and was dishonest and misleading during the investigation. (Balducci Dep. 360:6-16; 360:22-361:22; Owens 204:6-206:11). Defendants incorporate by reference their 56.1 ¶¶ 88, 98,104, 106-114. This paragraph fails to raise a genuine dispute of material fact.

351.     Moreover, Owens had specifically required that the footage be included in the piece before the next screening, a fact Richards knew. (Poolos Decl. ¶ 42)

**DEFENDANTS' RESPONSE:** This paragraph is argumentative, not supported by the record evidence to which Plaintiff cites, and should be disregarded, but it is immaterial because Defendants' decision to terminate Poolos' employment was not based on the issues described in Richards' written complaint and was instead based upon Defendants' conclusion that Poolos retaliated and was dishonest and misleading during the investigation. (Balducci Dep. 360:6-16; 360:22-361:22; Owens 204:6-206:11). Defendants incorporate by reference their 56.1 ¶¶ 88, 98,104, 106-114. This paragraph fails to raise a genuine dispute of material fact.

352.     Had the footage been sent by mail, Poolos and Richards would have missed the deadline, and Owens would have been upset. (Poolos Decl. ¶ 42)

**DEFENDANTS' RESPONSE:** This paragraph is argumentative, not supported by the record evidence to which Plaintiff cites, and should be disregarded, but it is immaterial because Defendants' decision to terminate Poolos' employment was not based on the issues described in Richards' written complaint and was instead based upon Defendants' conclusion that Poolos retaliated and was dishonest and misleading during the investigation. (Balducci Dep. 360:6-16; 360:22-361:22; Owens 204:6-206:11). Defendants incorporate by reference their 56.1 ¶¶ 88, 98,104, 106-114. This paragraph fails to raise a genuine dispute of material fact.

353.    Richards alleged that Poolos told her "There are no boundaries. If I need you, I need you." (Iadevaia Decl., Ex. U at CBS 007785) Poolos did not say that. (Poolos Dep. 110:13-16)

**DEFENDANTS' RESPONSE:** Undisputed that Richards' complained that Plaintiff told her "There are no boundaries. If I need you, I need you, but whether Plaintiff said this is immaterial because Defendants' decision to terminate Poolos' employment was not based on the issues described in Richards' written complaint and was instead based upon Defendants' conclusion that Poolos retaliated and was dishonest and misleading during the investigation. (Balducci Dep. 360:6-16; 360:22-361:22; Owens 204:6-206:11). Defendants incorporate by reference their 56.1 ¶¶ 88, 98,104, 106-108, 111. This paragraph fails to raise a genuine dispute of material fact.

354.    Richards alleged that Poolos "constantly" "leverage[d] [Richards's] wedding time at [her] as an immediate threat" by raising the possibility that the story Poolos and Richards were currently working on could air the weekend of Richards's wedding. (Iadevaia Decl., Ex. U at CBS 007785)

**DEFENDANTS' RESPONSE:** Undisputed that Richards' written complaint states that Plaintiff would "leverage the wedding time at me as an immediate threat and then walk it back," but immaterial because Defendants' decision to terminate Poolos' employment was not based on

the issues described in Richards' written complaint and was instead based upon Defendants' conclusion that Poolos retaliated and was dishonest and misleading during the investigation. (Balducci Dep. 360:6-16; 360:22-361:22; Owens 204:6-206:11). Defendants incorporate by reference their 56.1 ¶¶ 88, 98,104, 106-108, 111. This paragraph fails to raise a genuine dispute of material fact.

355.    Richards wrote that Poolos would ask her what she would do if the story were to air that weekend, then Poolos would say that Poolos would tell Simon when the time was right and tell Richards not to worry about it. (Iadevaia Decl., Ex. U at CBS 007785) The story involved highly sensitive material, was reviewed at the highest levels of Defendants' management, and Stahl repeatedly pushed to air the story as soon as possible. (Poolos Decl. ¶ 42)

**DEFENDANTS' RESPONSE:** Undisputed that Richards' written complaint states that "[o]n countless occasions, during the lead up to the airing of our Transgender Healthcare story, Alex would bring up in phone calls with me that there is a possibility the story could air on May 9, the weekend of my wedding," and that Plaintiff "would go on these long rants of 'what if' scenarios, but immaterial because Defendants' decision to terminate Poolos' employment was not based on the issues described in Richards' written complaint and was instead based upon Defendants' conclusion that Poolos retaliated and was dishonest and misleading during the investigation. (Balducci Dep. 360:6-16; 360:22-361:22; Owens 204:6-206:11). Defendants incorporate by reference their 56.1 ¶¶ 88, 98,104, 106-108, 111. This paragraph fails to raise a genuine dispute of material fact.

356.    Richards alleged that on April 22, 2021, Poolos yelled at her about her wedding date. (Iadevaia Decl., Ex. U at CBS 007786) Poolos denies that she yelled at Richards. (Poolos Decl. ¶ 38)

**DEFENDANTS' RESPONSE:** Undisputed that Richards' written complaint states that Plaintiff "screamed" at her, but immaterial because Defendants' decision to terminate Poolos' employment was not based on the issues described in Richards' written complaint and was instead based upon Defendants' conclusion that Poolos retaliated and was dishonest and misleading during the investigation. (Balducci Dep. 360:6-16; 360:22-361:22; Owens 204:6-206:11). Defendants incorporate by reference their 56.1 ¶¶ 88, 98,104, 106-108, 111. This paragraph fails to raise a genuine dispute of material fact.

357.    On April 22, 2021, Poolos contacted Simon about Richards's wedding and asked if she should speak to Stahl about it. (Iadevaia Decl., Ex. TT at Pl. 000259) Simon responded, "Not yet! Let me sort things out first." (Iadevaia Decl., Ex. TT at Pl. 000259)

**DEFENDANTS' RESPONSE:** Undisputed that this document purports to be a screen shot of an April 22, 2021 text between Plaintiff and Simon, but immaterial because Defendants' decision to terminate Poolos' employment was not based on the issues described in Richards' written complaint and was instead based upon Defendants' conclusion that Poolos retaliated and was dishonest and misleading during the investigation. (Balducci Dep. 360:6-16; 360:22-361:22; Owens 204:6-206:11). Defendants incorporate by reference their 56.1 ¶¶ 88, 98,104, 106-108, 111. This paragraph fails to raise a genuine dispute of material fact.

358.    Poolos asked to delay the broadcast date for the story so that Richards could take time off for the wedding, which Richards ultimately did. (Iadevaia Decl., Ex. P ¶ 54; id. Ex. TT; Poolos Dep. 111:9-114:8; Richards Dep. 211:22-212:12, 216:24-217:4; Simon Dep. 205:16-207:15)

**DEFENDANTS' RESPONSE:** Undisputed that Richards did not work on her wedding day and that Simon testified that Plaintiff told her it would be helpful if the story did not run the

weekend of Richards' wedding and Richards said she would keep it in mind as they figured out an air date, but immaterial because Defendants' decision to terminate Poolos' employment was not based on the issues described in Richards' written complaint and was instead based upon Defendants' conclusion that Poolos retaliated and was dishonest and misleading during the investigation. (Balducci Dep. 360:6-16; 360:22-361:22; Owens 204:6-206:11). Defendants incorporate by reference their 56.1 ¶¶ 88, 98,104, 106-108, 111. This paragraph fails to raise a genuine dispute of material fact.

359.    As a result of delaying the story, Poolos ensured that CBS did not replace Richards with another Associate Producer, even though protecting Richards might have jeopardized Poolos's relationship with Stahl. (Iadevaia Decl., Ex. P ¶ 54; Poolos Dep. 111:20-113:20)

**DEFENDANTS' RESPONSE:** This paragraph is not supported by the record evidence to which Plaintiff cites, and should be disregarded, but Plaintiff's characterization of how the story was scheduled to air is immaterial because Defendants' decision to terminate Poolos' employment was not based on the issues described in Richards' written complaint and was instead based upon Defendants' conclusion that Poolos retaliated and was dishonest and misleading during the investigation. (Balducci Dep. 360:6-16; 360:22-361:22; Owens 204:6-206:11). Defendants incorporate by reference their 56.1 ¶¶ 88, 98,104, 106-108, 111. This paragraph fails to raise a genuine dispute of material fact.

360.    Richards alleged that Poolos engaged in "controlling behavior" and "fully [took] away [her] agency" during an interaction that took place on December 16. (Iadevaia Decl., Ex. U at CBS 007787)

**DEFENDANTS' RESPONSE:** Undisputed that Richards' written complaint states "controlling behavior and fully taking away my agency" and describes how Richards believed

Plaintiff did that, but immaterial because Defendants' decision to terminate Poolos' employment was not based on the issues described in Richards' written complaint and was instead based upon Defendants' conclusion that Poolos retaliated and was dishonest and misleading during the investigation. (Balducci Dep. 360:6-16; 360:22-361:22; Owens 204:6-206:11). Defendants incorporate by reference their 56.1 ¶¶ 88, 98,104, 106-108, 111. This paragraph fails to raise a genuine dispute of material fact.

361.    According to Richards, she and Poolos spoke on the phone on December 16 about Richards's need to drive to Atlanta during the weekend of December 18-19, the same weekend that a piece Poolos and Richards had done was airing. (Iadevaia Decl., Ex. U at CBS 007787)

**DEFENDANTS' RESPONSE:** Undisputed that Richards' written complaint describes a telephone conversation with Plaintiff, but immaterial because Defendants' decision to terminate Poolos' employment was not based on the issues described in Richards' written complaint and was instead based upon Defendants' conclusion that Poolos retaliated and was dishonest and misleading during the investigation. (Balducci Dep. 360:6-16; 360:22-361:22; Owens 204:6-206:11). Defendants incorporate by reference their 56.1 ¶¶ 88, 98,104, 106-108, 111. This paragraph fails to raise a genuine dispute of material fact.

362.    Poolos purportedly yelled at Richards about her needing to be in the car during the weekend. (Iadevaia Decl., Ex. U at CBS 007787)

**DEFENDANTS' RESPONSE:** Undisputed that Richards' written complaint states that Plaintiff began screaming at her on this call, but immaterial because Defendants' decision to terminate Poolos' employment was not based on the issues described in Richards' written complaint and was instead based upon Defendants' conclusion that Poolos retaliated and was dishonest and misleading during the investigation. (Balducci Dep. 360:6-16; 360:22-361:22;

Owens 204:6-206:11). Defendants incorporate by reference their 56.1 ¶¶ 88, 98,104, 106-108, 111. This paragraph fails to raise a genuine dispute of material fact.

363.    When Richards questioned how Poolos spoke to her and said she wanted to speak to Poolos after the story aired, Poolos told Richards that if their partnership did not work out, Richards could go to Simon and Poolos would support her. (Iadevaia Decl., Ex. U at CBS 007787; Plaintiff's Response to Paragraph 15)

**DEFENDANTS' RESPONSE:** Undisputed that Richards' complaint states that Plaintiff told her "[i]f it doesn't work out with me you can go to Tanya and I will support you in that," but immaterial because Defendants' decision to terminate Poolos' employment was not based on the issues described in Richards' written complaint and was instead based upon Defendants' conclusion that Poolos retaliated and was dishonest and misleading during the investigation. (Balducci Dep. 360:6-16; 360:22-361:22; Owens 204:6-206:11). Defendants incorporate by reference their 56.1 ¶¶ 88, 98,104, 106-108, 111. This paragraph fails to raise a genuine dispute of material fact.

364.    Richards claimed that Poolos's offer to support her in a request to switch teams was an attempt to take away her ability to request to switch teams. (Iadevaia Decl., Ex. U at CBS 007785) Richards contacted Simon the next day and requested to switch teams. (See Plaintiff's Response to Paragraph 42; Richards Dep. 177:16-23)

**DEFENDANTS' RESPONSE:** This paragraph is not supported by the record evidence to which Plaintiff cites, and should be disregarded, but Plaintiff's characterization Richards' claim regarding the subject of Richards switching teams is immaterial because Defendants' decision to terminate Poolos' employment was not based on the issues described in Richards' written complaint and was instead based upon Defendants' conclusion that Poolos retaliated and was

dishonest and misleading during the investigation. (Balducci Dep. 360:6-16; 360:22-361:22; Owens 204:6-206:11). Defendants incorporate by reference their 56.1 ¶¶ 88, 98,104, 106-108, 111. This paragraph fails to raise a genuine dispute of material fact.

365.    Contrary to Richards's description of events, Poolos had repeatedly told Richards that it was not feasible for her to travel on the requested dates, and Richards became upset. (See Plaintiff's Response to Paragraph 11)

**DEFENDANTS' RESPONSE:** This paragraph is not supported by the record evidence to which Plaintiff cites, and should be disregarded, but immaterial because Defendants' decision to terminate Poolos' employment was not based on the issues described in Richards' written complaint and was instead based upon Defendants' conclusion that Poolos retaliated and was dishonest and misleading during the investigation. (Balducci Dep. 360:6-16; 360:22-361:22; Owens 204:6-206:11). Defendants incorporate by reference their 56.1 ¶¶ 88, 98,104, 106-108, 111. This paragraph fails to raise a genuine dispute of material fact.

366.    Richards wanted to drive her dog to Georgia during a critical period before the story aired. (Poolos Decl. ¶ 37; Poolos Dep. 100:7-101:4)

**DEFENDANTS' RESPONSE:** This paragraph is not supported by the record evidence to which Plaintiff cites, and should be disregarded, but what Plaintiff may have told Richards about driving her dog home is immaterial because Defendants' decision to terminate Poolos' employment was not based on the issues described in Richards' written complaint and was instead based upon Defendants' conclusion that Poolos retaliated and was dishonest and misleading during the investigation. (Balducci Dep. 360:6-16; 360:22-361:22; Owens 204:6-206:11). Defendants incorporate by reference their 56.1 ¶¶ 88, 98,104, 106-108, 111. This paragraph fails to raise a genuine dispute of material fact.

367.    Poolos offered her several workable days the following week, but Richards declined, explaining that her husband could only travel that weekend because of his job. (Poolos Decl. ¶ 37)

**DEFENDANTS' RESPONSE:** This paragraph is not supported by the record evidence to which Plaintiff cites, and should be disregarded, but immaterial because Defendants' decision to terminate Poolos' employment was not based on the issues described in Richards' written complaint and was instead based upon Defendants' conclusion that Poolos retaliated and was dishonest and misleading during the investigation. (Balducci Dep. 360:6-16; 360:22-361:22; Owens 204:6-206:11). Defendants incorporate by reference their 56.1 ¶¶ 88, 98,104, 106-108, 111. This paragraph fails to raise a genuine dispute of material fact.

368.    Because of Richards's insistence and erratic behavior, Poolos ultimately conceded, and Richards traveled the weekend the story aired. (See Plaintiff's Response to Paragraphs 12-13)

**DEFENDANTS' RESPONSE:** This paragraph is not supported by the record evidence to which Plaintiff cites, and should be disregarded, but immaterial because Defendants' decision to terminate Poolos' employment was not based on the issues described in Richards' written complaint and was instead based upon Defendants' conclusion that Poolos engaged in retaliation and was dishonest and misleading during the investigation. (Balducci Dep. 360:6-16; 360:22-361:22; Owens 204:6-206:11). Defendants incorporate by reference their 56.1 ¶¶ 88, 98,104, 106-108, 111. This paragraph fails to raise a genuine dispute of material fact.

369.    While Richards complained that Poolos was a "bully," on several occasions, Richards expressed appreciation for Poolos's support. (Richards Dep. 208:12-209:20; Iadevaia Decl., Ex. P ¶ 53; id. Ex. CCCC; id. Ex. DDDD at Pl. 000185)

**DEFENDANTS' RESPONSE:** Undisputed that Richards complained that Plaintiff was a "bully," and that the exhibits referred to in this paragraph purport to be texts Richards sent to Plaintiff, but immaterial because Defendants' decision to terminate Poolos' employment was not based on the issues described in Richards' written complaint and was instead based upon Defendants' conclusion that Poolos retaliated and was dishonest and misleading during the investigation. (Balducci Dep. 360:6-16; 360:22-361:22; Owens 204:6-206:11). Defendants incorporate by reference their 56.1 ¶¶ 88, 98,104, 106-108, 111. This paragraph fails to raise a genuine dispute of material fact.

370. For example, Poolos expressed concern about Richards's health when she became ill, telling her to stop working and offering to help her make an appointment with her doctor. (Richards Dep. 208:12-209:20; Iadevaia Decl., Ex. P ¶ 53; id. Exs. CCCC, DDDD) Richards sent a text message to Poolos thanking Poolos for "having [her] back" and, on another occasion, wrote, "Thank you for your support!" (Richards Dep. 208:12-209:20; Iadevaia Decl., Ex. P ¶ 53; id. Exs. CCCC, DDDD)

**DEFENDANTS' RESPONSE:** Undisputed that this paragraph quotes texts Richards purportedly sent to Plaintiff, but immaterial because Defendants' decision to terminate Poolos' employment was not based on the issues described in Richards' written complaint and was instead based upon Defendants' conclusion that Poolos retaliated and was dishonest and misleading during the investigation. (Balducci Dep. 360:6-16; 360:22-361:22; Owens 204:6-206:11). Defendants incorporate by reference their 56.1 ¶¶ 88, 98,104, 106-108, 111. This paragraph fails to raise a genuine dispute of material fact.

371. Poolos also defended Richards on multiple occasions, including making complaints on her behalf to other departments (even though Poolos later learned that Richards was criticizing

other departments while failing to complete her own work). (Iadevaia Decl., Ex. P ¶ 53; id. Ex. EEEE at Pl. 001769, 1773; Poolos Dep. 90:2-12)

**DEFENDANTS' RESPONSE:**

372.    Richards secretly recorded at least ten phone calls with Poolos from December 21, 2022 to January 6, 2023 (Iadevaia Decl., Ex. V; id. Ex. W; id. Ex. X; id. Ex. Y; id. Ex. Z; id. Ex. AA; id. Ex. BB; id. Ex. CC; id. Ex. DD; id. Ex. EE; id. Ex. FF; id. Ex. GG; id. Ex. HH; id. Ex. II; id. Ex. JJ; id. Ex. KK; id. Ex. LL; id. Ex. MM; id. Ex. NN; id. Ex. OO; id. Ex. PP])

**DEFENDANTS' RESPONSE:** Undisputed that Richards recorded conversations with Poolos, but immaterial because these conversations had nothing to do with the termination of Plaintiff's employment.

373.    In none of those recordings does Poolos demean Richards or yell at her as Richards alleges in her complaint against Poolos. (Id.) To the contrary, Poolos was supportive and professional in her interactions with Richards in each of these recordings. (Id.)

**DEFENDANTS' RESPONSE:** Undisputed that Richards recorded conversations with Poolos, but Plaintiff's characterization of those conversations is not supported by the record evidence to which Plaintiff cites, and should be disregarded, but immaterial because these conversations had nothing to do with the termination of Plaintiff's employment.

374.    Eight out of the ten recordings produced occurred prior to January 5, 2026, when Poolos learned of Richards's complaints about her. (See Pl. Resp. 56.1 ¶ 52; Iadevaia Decl., Ex. V; Poolos Decl. ¶ 57)

**DEFENDANTS' RESPONSE:** Undisputed that Richards recorded conversations with Poolos and that Plaintiff was told about Richards' complaints on January 5, 2022, but immaterial because these conversations had nothing to do with the termination of Plaintiff's employment.

375.    No one asked Richards during the investigation if she had any recordings concerning her allegations against Poolos. (Balducci Dep. 415:4-12) Defendants did not produce the recordings until after Richards's first deposition. (Iadevaia Decl. ¶ 5)

**DEFENDANTS' RESPONSE:** Undisputed that Defendants did not know that Richards had recorded conversations with Plaintiff and produced those records after they became aware of the recordings on the first day of Richards' deposition.

<u>Owens and Simon Solicit Negative Information About Poolos</u>

376.    Immediately after learning about Richards's complaint on December 17, Simon told Owens. (Simon Dep. 174:15-20; Owens Dep. 191:13-25)

**DEFENDANTS' RESPONSE:**

377.    Owens asked Simon to find out if there were other complaints against Poolos. (Simon Dep. 184:2-21)

**DEFENDANTS' RESPONSE:** Undisputed that Owens asked Simon about past complaints against Plaintiff. Plaintiff's mischaracterization of Simon's testimony is disputed, improper argument and opinion, rather than statements of fact, is unsupported by record evidence, and should be disregarded. (Simon Dep. 184:2-21).

378.    Simon, before reporting Richards's complaint to HR, next contacted Claudia Weinstein ("Weinstein"), the Executive Story Editor of <u>60 Minutes</u>. (Simon Dep. 14:15-20; 181:8-182:19, 187:17-188:4; Iadevaia Decl., Ex. BBBB; <u>id.</u> Ex. FFFF)

**DEFENDANTS' RESPONSE:** Undisputed that Claudia Weinstein is the Executive Story Editor of *60 Minutes*. The remainder of this paragraph is disputed, unsupported by the record evidence to which Plaintiff cites, but immaterial. After Richards had already gone directly to HR on December 16, 2021, Simon reported Richards' complaint to HR on December 17, 2021 at 2:40

p.m. and reached out to Weinstein later that evening at 7:41 p.m. (Zuckerman Reply Decl., Ex. 3, at CBS-2296; Ex. 13; Ex. BBB). Defendants incorporate by reference their 56.1 ¶¶ 51-51.

379.    Poolos did not report to Weinstein and Weinstein had no supervisory authority over 60 Minutes producers, including Poolos. (Simon Dep. 15:4-12, 156:22-157:2)

**DEFENDANTS' RESPONSE:** Undisputed the Poolos did not report to Weinstein. Disputed that Weinstein had no supervisory authority over Plaintiff. Simon testified that Weinstein did have "supervisory responsibility" over Plaintiff including "in an editorial sense, as part of the vetting process, and reading all of her transcript and being able to support changes and alterations and issues of fairness." (Simon Tr. 156:22-157:2). Similarly, Owens testified that Weinstein "works closely with each team. So she works with the associate producers, she works with the producers, she works with me and Tanya." (Owens Dep. 18:16-18). Further, Simon reached out to Weinstein "because I was wondering whether this was something that had happened before, and Claudia seemed to be in a position to know. Partly I was so troubled by it, but no other reason than that." (Simon Dep. 188:10-15). In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

380.    Richards's complaint was purportedly required to be kept confidential, but Simon disclosed the complaint to Weinstein despite having no work reason to do so. (Simon Dep. 181:8-182:19, 188:5-189:4; Iadevaia Decl., Ex. BBB; id. Ex. FFFF)

**DEFENDANTS' RESPONSE**: Disputed that Simon was required to keep Richards's complaint confidential from Weinstein or lacked a reason to consult with her. Company policy provides that complaints are kept confidential to the extent reasonably possible and consistent with the need to determine the truth. The Global Business Conduct Statement provides: "Throughout such investigations, [the Company] will make reasonable, practical and consistent efforts to

66

maintain confidentiality in line with our obligations and the need to determine the truth, and the Company will take appropriate corrective action where necessary." (Ex. 43, at CBS 177; Ex. 30).

381.    Simon continued to communicate with Weinstein about the Richards complaint against Poolos into early January 2022. (Simon Dep. 231:4-232:23; Iadevaia Decl., Ex. FFFF)

**DEFENDANTS' RESPONSE**: Undisputed that Simon sought follow-up information from Weinstein consistent with determining the truth.

382.    Simon contacted Weinstein multiple times to ask about any prior concerns about Poolos. (Simon Dep. 183:22-184:21, 229:6-16; Iadevaia Decl., Ex. BBB; id. Ex. FFFF)

**DEFENDANTS' RESPONSE**: Undisputed that Simon sought follow-up information from Weinstein consistent with determining the truth.

383.    Simon did not have firsthand knowledge of any prior concern that Weinstein raised. (Simon Dep. 184:22-187:16)

**DEFENDANTS' RESPONSE**: Undisputed that Simon had not received complaints directly to her about Poolos, with the clarification that Simon testified that she "had heard about instances" including "I heard that she lost her temper and yelled at an associate producer in Iran on the soccer story. I heard that a soundman said that she's the only producer he wouldn't work with anymore because she yelled at him in front of his children and he thought that it was humiliating. I heard about the HR -- not HR, sorry --the rights and clearances situation. I clearly heard about Sarah Turcotte." (Simon Dep. 186:11-20).

384.    Simon did not investigate whether the information Weinstein shared was accurate or not. (Simon Dep. 177:3-180:13, 230:7-231:3; Iadevaia Decl., Ex. BBB at CBS 008093)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial. Further responding, Balducci interviewed Weinstein as part of her investigation. Defendants incorporate by reference their 56.1 ¶ 105.

385.    Either Owens or Simon told Balducci about two supposed prior concerns. (Balducci Dep. 272:18-273:20)

**DEFENDANTS' RESPONSE:** Undisputed.

386.    Simon did not tell Balducci that she learned about the two supposed prior concerns from Weinstein.  (Balducci Dep. 274:11-14)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

387.    Balducci did not investigate or substantiate the two supposed prior concerns. (Balducci Dep. 273:21-274:10, 384:3-20)

**DEFENDANTS' RESPONSE:**  Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because it is undisputed that Plaintiff was not terminated for those past complaints or the original complaint Richards made to HR, and that termination was not considered until the Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81. Balducci also interviewed Weinstein as part of her investigation. Defendants incorporate by reference their 56.1 ¶ 105.

388.    In Balducci's summary of the investigation, she references two prior concerns about Poolos that Owens or Simon told her about after Richards made her complaint. (Iadevaia Decl., Ex. O)

**DEFENDANTS' RESPONSE:** Undisputed.

68

389.    One of the purported prior concerns involved an employee named Sarah Turcotte ("Turcotte"). (Iadevaia Decl., Ex. O) Balducci did not know Turcotte or anything about the circumstances related to her. (Balducci Dep. 384:3-20)

**DEFENDANTS' RESPONSE:** Undisputed that at the time of her deposition, Balducci could not recall the details of Turcotte's past complaint, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because it is undisputed that Plaintiff was not terminated for those past complaints or the original complaint Richards made to HR, and that termination was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81.

390.    Balducci misspelled that Turcotte's name in her summary.  (Iadevaia Decl., Ex. O)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because it is undisputed that Plaintiff was not terminated for those past complaints or the original complaint Richards made to HR, and that termination was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81.

<u>No One Told Poolos About Richards's Complaint for More Than Three Weeks</u>

391.    No one told Poolos about the complaint until Owens and Simon did on January 5, 2022, more than three weeks after Richards contacted Simon and HR. (Poolos Dep. 120:15-123:9; Owens Dep. 285:24-288:2; Simon Dep. 174:12-20, 212:19-213:10, 227:22-228:19; Iadevaia Decl., Ex. VV; <u>id.</u> Ex. P ¶ 36)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial. Richards contacted Simon and HR on December 17, 2021 and January 5, 2022 is less than three weeks later. Further responding while Richards was scheduled for her initial interview with HR on December 17, 2021, she "asked

69

to push it to next week" because "she has a piece airing this week and has too much on her plate right now." (Zuckerman Reply Decl., Ex. 3, at CBS-2296). Richards then submitted her written complaint on December 30, 2021. Defendants incorporate by reference their 56.1 ¶¶ 51-55.

392. Nor did anyone seek Poolos's response to the complaint or conduct alleged in the complaint until January 5, 2022. (Poolos Dep. 120:15-123:9; Owens Dep. 285:24-288:2; Simon Dep. 174:12-20, 212:19-213:10, 227:22-228:19; Iadevaia Decl., Ex. VV)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

393. On December 31, Simon told Richards she could take time off without consulting or notifying Poolos (Richards's manager) or Stahl (the Correspondent Poolos and Richards worked with). (Simon Dep. 216:6-218:16; Balducci Dep. 252:20-255:17; Iadevaia Decl., Ex. JJJJ)

**DEFENDANTS' RESPONSE:** Undisputed that Simon approved Richards telling Poolos that she needed to take a break on the evening of Friday, December 31, 2021 (New Years Eve), telling Richards "absolutely, set the boundaries, and it's NY Eve," (Zuckerman Reply Decl., Ex. 1, at CBS-8106). The remaining assertions in this paragraph are disputed, unsupported, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

394. Richards and Poolos had a shoot planned for early January 2022. (Simon Dep. 218:5-9; Richards Dep. 135:6-17)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that that the interview was scheduled for January 7, 2022. (Zuckerman Reply Decl., at Ex. 2, CBS-2955-2966). In any

70

event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

395.    During the three-week interim, HR spoke to Richards and also coordinated with Owens and Simon, but Defendants did not conduct an investigation. (Balducci Dep. 240:20-242:23, 243:13-245:21, 261:15-263:12)

**DEFENDANTS' RESPONSE:** Undisputed that HR spoke to Richards, Owens and Simon.  The remaining assertions in this paragraph are disputed, improper argument, unsupported by the record evidence, and should be disregarded.  Defendants incorporate by reference their 56.1 ¶¶ 54-57, 61-64, 75-78.

396.    In response to the complaint, Defendants concluded that there was no need for Human Resources to be directly involved. (Balducci Dep. 261:15-263:12)

**DEFENDANTS' RESPONSE:** This paragraph is disputed, improper argument, unsupported by the record evidence, and should be disregarded.  Defendants incorporate by reference their 56.1 ¶¶ 54-57, 61-64, 75-78.

397.    Balducci believed that this was simply a dispute between two employees. (Balducci Dep. 205:15-206:18, 218:13-221:4, 250:3-23, 262:8-263:12)

**DEFENDANTS' RESPONSE:** Undisputed that Balducci believed this was a managerial issue, that was properly handled – with guidance from HR -- between Owens, Simon, Poolos and Richards, and that a more formal investigation was not warranted until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81.

398.    Nor did Richards accuse Poolos of conduct that rose to the level of a legal violation. (Simon Dep. 174:3-11)

**DEFENDANTS' RESPONSE:** This paragraph is improper argument and legal opinion, rather than statements of fact, and should be disregarded. In any event, this paragraph is undisputed as it is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

399.    Balducci, Owens, and Simon agreed that Owens and Simon would meet with Poolos on January 5, 2022 to discuss Richards's complaint. (Simon Dep. 225:16-228:10; Balducci Dep. 262:8-263:12)

**DEFENDANTS' RESPONSE:** Undipusted.

400.    Balducci, Owens, and Simon agreed that the January 5, 2022 meeting was not disciplinary. (Balducci Dep. 262:8-263:12, 283:23-285:3)

**DEFENDANTS' RESPONSE:** Undipusted, with the clarification that Balducci testified that Owens and Simon were taking "corrective action…by coaching her" but that coaching is not disciplinary. (Balducci Dep 283:23-285:3)

401.    No disciplinary action was taken against Poolos in connection with Richards's December 2021 complaint against Poolos. (Balducci Dep. 262:8-263:12, 283:23-285:3)

**DEFENDANTS' RESPONSE:** Undisputed.

<u>Owens and Simon Meet with Poolos on January 5, 2022</u>

402.    During a virtual meeting on January 5, 2022, Owens and Simon told Poolos that Richards had complained about her. (Poolos Dep. 120:15-123:9; Owens Dep. 285:24-288:2; Simon Dep. 227:22-228:19; Iadevaia Decl., Ex. VV)

**DEFENDANTS' RESPONSE:** Undisputed.

403.    Owens and Simon told Poolos that Richards had asserted that Poolos "bull[ied]" and "hector[ed]" Richards, that Poolos did not have "boundaries," and that the work situation between Poolos and Richards was untenable. (Poolos Dep. 120:15-123:9; Simon Dep. 162:4-21)

**DEFENDANTS' RESPONSE:** Undisputed.

404.    After Owens and Simon advised Poolos of Richards's complaint, Poolos asked whether she could meet with HR. (Iadevaia Decl., Ex. P ¶ 93; Poolos Dep. 122:19-123:5)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. (Owens Dep. 295:6-12; Simon 237:17-23).

405.    Owens told Poolos not to meet with HR. (Iadevaia Decl., Ex. P ¶ 93; Poolos Dep. 122:19-123:5)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. (Owens Dep. 295:6-12; Simon Dep. 237:17-23).

406.    Defendants assert in their Position Statement that HR investigated Richards's December 2021 complaint and that Owens and Simon issued a verbal warning to Poolos during the January 5, 2022 meeting. (Iadevaia Decl., Ex. XX at CBS 000047-000048, 000050) But as set forth above, Balducci, Owens, and Simon determined that there was no reason for Poolos to meet with HR, no investigation took place, and no disciplinary action was forthcoming. (Plaintiff Response to Paragraphs 79-85)

**DEFENDANTS' RESPONSE:** Plaintiff's characterization of the Position Statement is improper argument, opinion, and should be disregarded as unsupported. Undisputed that Owens and Simon met with Poolos on January 5, 2022 regarding Richards' HR Complaint, and that

Balducci understood this meeting to be coaching, which is a form of corrective action, but not disciplinary. Further undisputed that no disciplinary was considered in response to Richards' original complaint. (Balducci Dep 283:23-285:3).

407. At no time did Owens or Simon tell Poolos that Richards's complaint or the contents of the January 5 meeting were to be kept confidential. (Iadevaia Decl., Ex. P ¶¶ 90-92; Poolos Dep. 154:24-155:16, 166:20-170:6; Simon Dep. 236:3-18)

**DEFENDANTS' RESPONSE:** Disputed. Owens told Poolos that she should not discuss Richards' complaint with anyone. (Owens Dep. 294:6-9). Further responding, Poolos regularly underwent mandatory training on the Business Conduct Statement including its "Speaking-Up & Non-Retaliation Policy," which prohibits employees from retaliating against individuals who complain about harassment or "[b]ullying or abusive conduct (regardless of whether the person is in a protected category)." Defendants incorporate by reference their 56.1 ¶¶ 204-205.

408. At no time did Owens or Simon direct Poolos not to retaliate in response to Richards's complaint. (Iadevaia Decl., Ex. P ¶ 92)

**DEFENDANTS' RESPONSE:** This paragraph is disputed and should be disregarded as it is unsupported by record evidence. (Owens Dep. 294:6-9). Further responding, Poolos regularly underwent mandatory training on the Business Conduct Statement including its "Speaking-Up & Non-Retaliation Policy," which prohibits employees from retaliating against individuals who complain about harassment or "[b]ullying or abusive conduct (regardless of whether the person is in a protected category)." Defendants incorporate by reference their 56.1 ¶¶ 204-205.

409. If an HR or ER employee had met with Poolos as part of an investigation, that employee would have instructed Poolos not to retaliate or share information about the complaint. (Balducci Dep. 141:19-142:9; Roderick Dep. 96:13-98:20)

**DEFENDANTS' RESPONSE:** This paragraph is improper argument, opinion, and speculation, rather than statements of fact, and should be disregarded. In any event, this paragraph is undisputed as it is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

410.    At no point during the January 5, 2022 meeting did Owens or Simon raise concerns that there had been similar allegations against Poolos in the past.  (Simon Dep. 242:4-7; Iadevaia Decl., Ex. HHHH)

**DEFENDANTS' RESPONSE:** Undiputsed, with the clarification that Owens met with Poolos about past complaints against Poolos the following day, January 6, 2022.

411.    During the call on January 5, 2022, Poolos raised that she had concerns about Richards's performance and that Richards would not take no for an answer when making extraordinary requests for personal accommodations. (Poolos Dep. 120:15-123:6)

**DEFENDANTS' RESPONSE:** Undisputed.

412.    Specifically, Poolos said that Richards wanted to work a 9 to 5, Monday through Friday schedule which was not possible at 60 Minutes and that Poolos had to help Richards on a lot of things, including logistics. (Owens Dep. 290:18-291:11)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that Poolos' description of Richards is not supported by any record evidence. Defendants incorporate by reference their 56.1 ¶¶ 46-50. As Owens' testified about his view of Richards' work, "I think she's terrific. And her producer, her current producer, Shari Finkelstein, is one of the very best producers in the history of *60 Minutes*, and she would tell you that Collette is one of her best associate producers ever." (Owens Dep. 157:16-22; Simon Dep. 164:14-16).

413.   In response, Owens expressed that he was deeply troubled by Poolos's performance assessment of Richards and agreed with her concerns. (Iadevaia Decl., Ex. P ¶ 71; Poolos Dep. 120:15-123:6)

**DEFENDANTS' RESPONSE:** Undiputed that Owens expressed that if what Plaintiff said was in fact "true" then they needed to "help her get better." Disputed that Owens said he was "troubled," nor did he agree with Plaintiff's assessment. (Owens Dep. 292:6-14; Owens Dep. 157:16-22).

Defendants Knew that Poolos Was in Contact with Bronstein

414.   After Defendants decided not to discipline Poolos in connection with Richards's original complaint, Richards was "scared" and skeptical of Poolos's ability to continue working with her. (Richards Dep. 287:7-288:4, 314:23-315:20, 391:19-392:11)

**DEFENDANTS' RESPONSE:** Undipusted.

415.   On January 5, 2022, before Poolos and Bronstein spoke, Richards sent an email to Balducci that read "Hi, Renee. I have a kind of bizarre update to share with you. Please let me know if you have a moment sometime." (Iadevaia Decl., Ex. IIII; Richards Dep. 281:15-22; 283:15-22)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.  Further responding, on January 5, 2022, before Poolos call Bronstein, Poolos called Richards and informed her that she was aware of Richards' HR complaint and that now Owens had heard her side of the story. Defendants incorporate by referenced their 56.1 ¶ 65. (Richards Dep. 282:3-14).

416.   Before Poolos's call with Bronstein, Bronstein told Richards that Poolos was sending him text messages.  (Richards Dep. 329:25-330:14, 331:17-332:5)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. Richards testified that she learned on January 6, 2022 that Plaintiff had reached out to Bronstein. (Richards Dep. 269:25-270:7). This paragraph is also unsupported by the record evidence to which Plaintiff cites and should be disregarded.

417.    Before Poolos's call with Bronstein, Richards told Balducci that Poolos had contacted Bronstein. (Iadevaia Decl., Ex. Q at 2:1-7; id. Ex. QQ; Richards Dep. 392:23-393:11; Balducci Dep. 413:11-414:2, 416:3-417:13) Balducci did not include in her investigation summary any suggestion that she knew before the call between Poolos and Bronstein on January 5, 2022 took place that Poolos had tried to contact Bronstein. (See generally Iadevaia Decl., Ex. O)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. Richards testified that she learned on January 6, 2022 that Plaintiff had reached out to Bronstein. (Richards Dep. 269:25-270:7). Balducci learned about the call for the first time the following morning on January 7, 2022. (Balducci Dep. 420:6-12). Defendants incorporate by reference their 56.1 ¶¶ 82-83. This paragraph is also unsupported by the record evidence to which Plaintiff cites and should be disregarded.

418.    No one at Defendants, including Balducci, warned or directed Poolos not to communicate with Bronstein before her call with him on January 5, 2022. (Poolos Decl. ¶ 52; Balducci Dep. 424:22-425:15).

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. Owens told Poolos that she should not discuss Richards' complaint with anyone. (Owens Dep. 294:6-9). Further responding, Poolos regularly underwent mandatory training on the Business Conduct Statement

including its "Speaking-Up & Non-Retaliation Policy," which prohibits employees from retaliating against individuals who complain about harassment or "[b]ullying or abusive conduct (regardless of whether the person is in a protected category)." Defendants incorporate by reference their 56.1 ¶¶ 204-205.

419.    No one tried to stop Poolos from contacting Bronstein before her call with him on January 5, 2022. (Poolos Decl. ¶ 53; Balducci Dep. 424:22-425:15)

**DEFENDANTS' RESPONSE:** This paragraph is improper argument, opinion, and speculation and should be disregarded. In any event, this paragraph is undisputed as it is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. Further responding, Owens told Poolos that she should not discuss Richards' complaint with anyone. (Owens Dep. 294:6-9). Further responding, Poolos regularly underwent mandatory training on the Business Conduct Statement including its "Speaking-Up & Non-Retaliation Policy," which prohibits employees from retaliating against individuals who complain about harassment or "[b]ullying or abusive conduct (regardless of whether the person is in a protected category)." Defendants incorporate by reference their 56.1 ¶¶ 204-205.

### Poolos and Bronstein Speak by Phone on January 5, 2022

420.    On January 5, 2022, Bronstein initiated contact with Poolos. (Iadevaia Decl., Ex. R at Bronstein 000005; Bronstein Dep. 186:20-187:9)

**DEFENDANTS' RESPONSE:** Undisputed that Bronstein sent the first text on January 5, 2022, with the clarification that he was responding to Plaintiff's outreach and texts to him over the prior several days. Defendants incorporate by reference their 56.1 ¶¶ 58-60.

421.    Bronstein sent Poolos a text message that read, "Hi maybe later this afternoon can work?" (Iadevaia Decl., Ex. R at Bronstein 000005; Bronstein Dep. 186:20-187:9)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that he was responding to Plaintiff's outreach and texts to him over the prior several days. Defendants incorporate by reference their 56.1 ¶¶ 58-60.

422. Poolos responded, "Yes totally." (Iadevaia Decl., Ex. R at Bronstein 000005; Bronstein Dep. 188:5-13)

**DEFENDANTS' RESPONSE:** Undisputed. Further responding, Plaintiff's "Yes totally" text was sent at 1:06 p.m. – likely during (or very shortly after) her January 5, 2022 meeting at 12:30 p.m. with Owens and Simon where they informed her of Richards' HR complaint. (*Compare* Ex. R; Ex. 20). Poolos testified that the meeting lasted approximately one hour. Defendants' incorporate by reference 56.1 ¶ 62.

423. A few hours later, Bronstein responded, "Hi want to talk?" (Pl. Resp. 56.1 ¶¶ 60, 66, 72; Iadevaia Decl., Ex. R at Bronstein 000005; Bronstein Dep. 188:5-13)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that Bronstein responded a little over fours hours later at 5:38 p.m., and then Poolos called Bronstein. Defendants' incorporate by reference 56.1 ¶ 66.

424. Bronstein and Poolos spoke for 17 minutes on January 5, 2022. (Pl. Resp. 56.1 ¶¶ 60; Bronstein Dep. 105:25-106:4, 114:9-17, 186:20-186:23; Iadevaia Decl., Ex. UU)

**DEFENDANTS' RESPONSE:** Undipusted.

425. During the call, Poolos told Bronstein that she was hoping to get his advice, but that things had "escalated." (Poolos Dep. 134:7-16; Iadevaia Decl., Ex. SS at 22:7-23:8)

**DEFENDANTS' RESPONSE:** Undipusted that Poolos told Bronstein she "wanted to talk before" (Ex. 23, at CBS 102) and that Poolos testified "I don't remember exactly what I told him

but that it was something to the effect of things have escalated, she's gone to management, or something like that." (Poolos Dep. 135:15-21).

426.    Poolos told Bronstein she could not be seen as maligning Richards, and Bronstein encouraged Poolos to speak openly with him and said that nothing Poolos could say about Richards would malign Richards to him. (Poolos Dep. 137:21-138:20; Iadevaia Decl., Ex. SS at 20:2-13)

**DEFENDANTS' RESPONSE:** Undipusted that Plaintiff told Bronstein "Please don't tell anyone" "could look bad" "But I can't have this affect my work history." (*See* Bronstein's handwritten notes at Ex. 23). Plaintiff's self-serving characterization of what she told Bronstein is otherwise disputed, unsupported by record evidence, and should be disregarded. Defendants' incorporate by reference 56.1 ¶¶ 66-71.

427.    Poolos kept the substance of Richards's complaint private and told Bronstein that she believed Richards was unhappy with her. (Iadevaia Decl., Ex. SS at 20:14-21; Poolos Decl. ¶ 46) She said that she was hopeful she and Richards could turn the situation around, get back to a good place, and be a great team again. (Poolos Dep. 137:21-138:20; Iadevaia Decl., Ex. SS at 20:14-21)

**DEFENDANTS' RESPONSE:** Undisputed that Plaintiff's did not get into the specific details of Richards' complaints, that she told Bronstein "I need to do a reset" "it will blow over" "Things are good with me and Lesley. She likes Collette too." (*See* Bronstein's handwritten notes at Ex. 23). Plaintiff's self-serving characterization of what she told Bronstein is otherwise disputed, unsupported by record evidence, and should be disregarded. Defendants' incorporate by reference 56.1 ¶¶ 66-71.

428.    Poolos told Bronstein she wanted to continue working with Richards, but that the decision would ultimately be up to Richards if she changed teams. (Poolos Dep. 137:21-138:20; Iadevaia Decl., Ex. SS at 20:2-13)

**DEFENDANTS' RESPONSE:** Undisputed the Poolos told Bronstein "I need to do a reset" "it will blow over" and that Richards "can always go work with someone else. I told her that [a] month ago." (*See* Bronstein's handwritten notes at Ex. 23). Plaintiff's self-serving characterization of what she told Bronstein is otherwise disputed, unsupported by record evidence, and should be disregarded. Defendants' incorporate by reference 56.1 ¶¶ 66-71.

429.    Further, that there would be no consequences for Richards at work if she wanted to work with someone else. (Poolos Decl. ¶ 46) She said that Stahl loved Richards, and Richards would be in a good place whether she changed teams or not. (Poolos Dep. 137:21-138:20; Iadevaia Decl., Ex. SS at 21:12-18)

**DEFENDANTS' RESPONSE:** Undisputed the Poolos told Bronstein that Richards "can always go work with someone else. I told her that [a] month ago" and that "Things are good with me and Lesley. She likes Collette too." (*See* Bronstein's handwritten notes at Ex. 23). Plaintiff's self-serving characterization of what she told Bronstein is otherwise disputed, unsupported by record evidence, and should be disregarded. Defendants' incorporate by reference 56.1 ¶¶ 66-71.

430.    Poolos told Bronstein that she believed Richards was struggling to adapt to the challenging environment of 60 Minutes, which was different than CNN, and that Richards's working fully remotely with Poolos as her only colleague was likely isolating for Richards. (Poolos Dep. 136:9-19 Iadevaia Decl., Ex. SS at 20:22-21:11; Poolos Decl. ¶ 47) Poolos expressed sympathy for how unusual it was for Richards to be working remotely for so long. (Poolos Decl. ¶ 47)

**DEFENDANTS' RESPONSE:** Undisputed the Poolos told Bronstein that Richard "is really struggling to do her job" and that "I know it's been really hard for Collette at home, isolated. Know has been hard for her" and that Poolos "maybe didn't get how bad was affecting Collette" and that "She's a good person. But she is really struggling with her work." (*See* Bronstein's handwritten notes at Ex. 23). Plaintiff's self-serving characterization of what she told Bronstein is otherwise disputed, unsupported by record evidence, and should be disregarded. Defendants' incorporate by reference 56.1 ¶¶ 66-71.

431.    Bronstein asked Poolos to let him know what he could do to help and offered to give Poolos advice if necessary. (Poolos Dep. 137:21-138:20; Iadevaia Decl., Ex. SS at 21:19-23)

**DEFENDANTS' RESPONSE:** Plaintiff's self-serving characterization of her call to Bronstein is disputed, unsupported by record evidence, and should be disregarded. Defendants' incorporate by reference 56.1 ¶¶ 66-71. (Bronstein 240:10-17).

### Owens Meets With Poolos on January 6, 2022

432.    Poolos spoke with Owens about Richards December 2021 Complaint for a second time on January 6, 2022. (Poolos Dep. 144:11-17; Owens Dep. 296:11-297:20)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that Owens also spoke with Plaintiff about her prior instances of inappropriate interactions with others in the workplace. Defendants' incorporate by reference 56.1 ¶¶ 75-78.

433.    Owens asked for more information about Richards's performance, and Poolos told Owens that Richards had not participated in training that 60 Minutes offered for its new Associate Producers. (Iadevaia Decl., Ex. P ¶ 72; Poolos Dep. 140:2-141:5)

**DEFENDANTS' RESPONSE:** Undipusted that in response to Owens meeting with Plaintiff a second time to discuss Richards' HR Complaint and Plaintiff's prior instances of

82

inappropriate interactions with others in the workplace, Poolos once again shared concerns about Richards' performance. The remaining assertions in this paragraph are disputed, unsupported by record evidence, and should be disregarded. Defendants' incorporate by reference 56.1 ¶¶ 75-78.

434.    Owens said that Richards's decision was unacceptable and asked Poolos to begin documenting Richards's performance problems. (Iadevaia Decl., Ex. P ¶ 72; Poolos Dep. 140:2-141:5)

**DEFENDANTS' RESPONSE:** Disputed, unsupported by record evidence and should be disregarded, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. Defendants' incorporate by reference 56.1 ¶¶ 75-78.

435.    Also, during the same discussion on or about January 6, 2022, Owens told Poolos that she would not have to meet with HR about Richards's complaint, that he did not want Poolos "walking on eggshells," and that Richards had made a complaint because she wanted to change teams. (Iadevaia Decl., Ex. P ¶ 73)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. Defendants' incorporate by reference 56.1 ¶¶ 75-78.

436.    Owens also dismissed Richards's complaint as "a millennial issue." (Iadevaia Decl., Ex. P ¶ 73; Poolos Dep. 120:15-123:5)

**DEFENDANTS' RESPONSE:**  Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. Defendants' incorporate by reference 56.1 ¶¶ 75-78. (Owens Dep. 158:14-24). Further responding, the record evidence shows that it was Plaintiff who frequently referred to Richards' age.  Owens testified "[t]he one that I can remember most vividly is that [Plaintiff] called her a millennial…" (Owens Dep. 158:14-

24). Plaintiff told Balducci in her recorded interview: "She's somebody who's like 20 years younger than me." (Ex. 26, at 59:23-25). Plaintiff told Bronstein: "I think it's generational. More common [in] her generation to go to HR." (Ex. 23, at CBS 105).

437.    Owens told Poolos that he was aware of prior concerns raised about Poolos and that he would be sending her an email concerning their discussion. (Poolos Dep. 165:19-166:12) He encouraged Poolos to simply acknowledge that she understood what he was saying in his email to prevent Richards's complaint from becoming an investigation and the matter would be closed. (Poolos Dep. 148:2-10, 165:19-166:12)

**DEFENDANTS' RESPONSE:**  Undisputed.

<u>Owens January 6, 2022 Email to Poolos</u>

438.    Owens then sent Poolos an email that read:

> Alex, Thanks for chatting again with me today, and thank you for your insights and concerns about your partnership with Collette. I hear you, they are noted and please come to me with anything further. As you and I discussed, tone and the[] way our colleagues feel around us is critically important. We talked extensively about Colette's complaint about your tone and manner, as well as at least one other instance from your time at 60 when this came up, and you have assured me that it won't be a problem going forward. As managers, we are responsible for great journalism and an healthy work environment. Thanks again for all the time we have spent talking this through and your commitment to a productive and collaborative second half of the season.

(Poolos Dep. 144:11-146:7; Owens Dep. 282:23-283:16; Iadevaia Decl., Ex. N)

**DEFENDANTS' RESPONSE**: Undisputed.

439.    In accordance with Owens's instructions described above, Poolos responded "[t]hank you for this. completely understand. And thank for all your time talking this through." (Iadevaia Decl., Ex. N; Poolos Dep. 165:19-166:12)

**DEFENDANTS' RESPONSE**: Undisputed.

<u>Events on January 7, 2022</u>

440.    Richards called Balducci on the morning of January 7, 2022 and told Balducci her purported understanding of the January 5 call between Poolos and Bronstein. (Richards Dep. 311:14-312:18; Balducci Dep. 288:14-289:13)

**DEFENDANTS' RESPONSE**: Undisputed. The usage of the word "purported" should be disregarded as improper argument and opinion.

441.    Richards secretly recorded the January 7 call with Balducci. (Richards Dep. 313:13-20)

**DEFENDANTS' RESPONSE**: Undisputed.

442.    After Balducci told Richards she was unable to talk long, Richards said "Okay. So I wanted to tell you that, immediately -- remember the person I was telling you that – at CNN?" and Balducci responded "Yes, yes. She was reaching out to[], yes." (Iadevaia Decl., Ex. Q at 2:1-7; id. Ex. QQ)

**DEFENDANTS' RESPONSE**: Undisputed.

443.    Richards then described Bronstein as her "friend" and set forth her purported understanding of the call between Poolos and Bronstein. (Iadevaia Decl., Ex. Q at 2:8-3:23; id. Ex. QQ)

**DEFENDANTS' RESPONSE**: Undisputed that Richards described Bronstein as a "colleague and superior at CNN, who I consider a friend now." The usage of the word "purported" should be disregarded as improper argument and opinion.

444.    Balducci asked Richards what else went on in the conversation between Poolos and Bronstein, and Richards said she would "see from [her] notes." (Iadevaia Decl., Ex. Q at 3:6-9; id. Ex. QQ)

85

**DEFENDANTS' RESPONSE**: Undisputed.

445.   Richards is no longer in possession of those notes. (Richards Dep. 316:22-317:20)

**DEFENDANTS' RESPONSE**: Undisputed that Richards testified that she did not remember having notes and does not have notes, but immaterial. (Richards Dep. 316:22-317:20)

446.   Richards then said that Bronstein had said to Poolos: "Well, Collette – We've never had problems with Collette. She's beloved at CNN. And you couldn't ruin her career someplace else because she is so beloved." (Iadevaia Decl., Ex. Q at 3:13-23; id. Ex. QQ)

**DEFENDANTS' RESPONSE**: Undisputed.

447.   According to Richards, Poolos responded that she was not trying to ruin Richards's career by coming to him and telling him this. (Iadevaia Decl., Ex. Q at 3:13-23; Id. Ex. QQ)

**DEFENDANTS' RESPONSE**: Undisputed.

448.   Balducci then instructed Richards to contact Owens and say "Bill, you know, I'm sorry to bother you. I've been having conversations with Renee Balducci. Something – I received some information last night, and you know, Renee Balducci suggested that I reach out to you directly." (Iadevaia Decl., Ex. Q at 3:24 -4:11; id. Ex. QQ)

**DEFENDANTS' RESPONSE**: Undisputed.

449.   Balducci then coached Richards to try to keep emotion out of it and simply tell Owens that she had had been having ongoing issues with her manger, that Richards discussed them with Balducci and Simon, and that Richards understood Balducci and Simon would address the concerns with Poolos and that Richards should give Poolos the benefit of the doubt and move forward. (Iadevaia Decl., Ex. Q at 4:13-5:4; id. Ex. QQ)

**DEFENDANTS' RESPONSE**: Plaintiff's characterization of the recorded phone call is inaccurate here and should be disregard.  (Ex. Q at 4:13-5:4). In any event, it is undisputed as it is

86

immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff was not terminated for performance.

450.    Balducci told Richards that Owens had spoken with Poolos and directed her on how to proceed and said that she wanted Richards to let Owens know the call between Poolos and Bronstein had happened. (Iadevaia Decl., Ex. Q at 5:6-20, 3:24-4:11; id. Ex. QQ)

**DEFENDANTS' RESPONSE**: Undisputed, with the clarification that Balducci also let Richards know that she would be reaching out to Owens herself that day.

451.    Balducci told Richards to say that she felt "uncomfortable" and that she didn't feel "safe." (Iadevaia Decl., Ex. Q at 5:22-5:24, 3:24-4:11; id. Ex. QQ)

**DEFENDANTS' RESPONSE**: Plaintiff's characterization of the recorded phone call is inaccurate here and should be disregard. (Ex. Q). In any event, it is undisputed that upon Richards expressing her concerns to Balducci, including that "I feel incredibly uncomfortable," "I don't feel okay" "I don't want to be in this position at all" and so Balducci told her to relay those concerns to Owens.

452.    Richards then said for the first time in the call that she felt uncomfortable. (Iadevaia Decl., Ex. Q at 5:25-6:1; id. Ex. QQ) Balducci immediately reiterated the language about feeling unsafe. (Iadevaia Decl., Ex. Q at 6:2, 3:24 -4:11, id. Ex. QQ)

**DEFENDANTS' RESPONSE**: Plaintiff's characterization of the recorded phone call is inaccurate here, argumentative, and should be disregard. (Ex. Q).  In any event, it is undisputed that upon Richards expressing her concerns to Balducci, including that "I feel incredibly uncomfortable," "I don't feel okay" "I don't want to be in this position at all" and so Balducci told her to relay those concerns to Owens.

453.    Balducci continued to instruct Richards on what to tell Owens, including telling Richards to give Owens Bronstein's name, and to tell Owens "the fact that [Bronstein] was so caught off guard they called you immediately to share it." (Iadevaia Decl., Ex. Q at 6:23-7, 3:24-4:11) Richards had not told Balducci that Bronstein was caught off guard. (Balducci Dep. 444:7-446:4)

**DEFENDANTS' RESPONSE**: Plaintiff's characterization of the recorded phone call is disputed as inaccurate, argumentative, and should be disregard. Richards' description of Bronstein's reaction is consistent with being caught of guard. (Ex. Q, at 3: 13-23).

454.    Richards told Balducci "This is who [Poolos] is," and Balducci responded "Right." (Iadevaia Decl., Ex. Q at 7:8-15 [Pl. 003011-3023] (Iadevaia Decl., Ex. Q at 3:24-4:11; id. Ex. QQ) Balducci then asked if Richards was comfortable working Poolos, and Richards responded "No." (Iadevaia Decl., Ex. Q at 7:18-20, 3:24-4:11; id. Ex. QQ)

**DEFENDANTS' RESPONSE**: Undisputed.

455.    Before the end of the call, Richards described what they had discussed as "urgent" and "pretty big," and Balducci called it "pretty disappointing." (Iadevaia Decl., Ex. Q at 8:23-9:3)

**DEFENDANTS' RESPONSE**: Undisputed.

456.    Bronstein testified that he considered himself a friend, a mentor to Richards, and her confidant in connection with the concerns she had about Poolos. (Bronstein Dep. 95:21-24, 114:9-20, 147:14-19, 149:9-24; Richards Dep. 26:8-11, 30:10-16; Poolos Dep. 80:15-82:14, 127:3-9; Iadevaia Decl., Ex. R at Bronstein 000003)

**DEFENDANTS' RESPONSE**: Undisputed that Bronstein testified that he considered Richards a friend, and that he was a mentor to Richards. The remaining assertion that Bronstein testified that he was her confidant in connection with the concerns she had about Poolos is

disputed, unsupported by his testimony to which Plaintiff cites, argumentative opinion, and should be disregarded. Defendants incorporate by reference their 56.1 ¶ 41.

457.    On January 7, 2022, Owens asked to speak with Poolos. (Poolos Dep. 166:20-23)

**DEFENDANTS' RESPONSE**: Undipusted.

458.    During a call, Owens asked Poolos if she had called Bronstein and "trash[ed]" Richards. (Poolos Dep. 166:20-167:23; Owens Dep. 203:24-204:11)

**DEFENDANTS' RESPONSE**: Undisputed.

459.    Poolos told Owens that she had spoken to Bronstein on January 5, 2022, but denied retaliating against Richards.  (Poolos Dep. 166:20-170:12; Owens Dep. 203:24-204:11)

**DEFENDANTS' RESPONSE**: Undisputed, with the clarification that Plaintiff at first denied doing so, but after Owens said, "Alex, he's got notes." Plaintiff then admitted to calling him. (Owens Dep. 204 6-11).

460.    Poolos explained that she had reached out to Bronstein before she had learned about Richards's HR complaint for advice about how to handle the problems she was having with Richards. (Iadevaia Decl., Ex. P ¶ 38; Poolos Dep. 166:20-170:12)

**DEFENDANTS' RESPONSE**: Undisputed, with the clarification while Plaintiff first texted Bronstein on December 31, 2022 (after Richards complained directly to her), she did not call Bronstein until after learning of Richards' HR complaint. Defendants' incorporate by reference 56.1 ¶¶ 59-66.

<u>Defendants Place Poolos on Administrative Leave</u>

461.    On the same day, on January 7, 2022, Balducci reached out to Poolos about Richards's complaint for the first time and informed Poolos that CBS was suspending her and that her job was on the line.  (Iadevaia Decl., Ex. P ¶ 39; id. Ex. SS at 68:15-69:4)

89

**DEFENDANTS' RESPONSE:** Undisputed that Balducci spoke with Plaintiff on the evening of January 7, 2022 and informed her that she was being placed on paid administrative leave pending an investigation into these new allegations. Disputed that Balducci was reaching out about Richards' original HR complaint (for the first time). Defendants' incorporate by reference 56.1 ¶¶ 83-89.

462.    Owens made the decision to place Poolos on administrative leave. (Owens Dep. 218:7-12; Balducci Dep. 324:7-325:5, 327:2-10)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that Owens agreed with Balducci's recommendation and that it was a paid administrative leave. Defendants' incorporate by reference 56.1 ¶¶ 89.

463.    Balducci recommended Owens place Poolos on administrative leave.  (Owens Dep. 216:15-19; Balducci Dep. 324:7-325:5, 327:2-6)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that it was a paid administrative leave. Defendants' incorporate by reference 56.1 ¶¶ 89.

464.    The purported purpose of placing Poolos on administrative leave was to separate Poolos and Richards and allow Richards to continue to work.  (Balducci Dep. 327:2-329:23)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification Balducci testified that "the gravity of this potential situation was enough for everybody to agree they needed to be separated." (Balducci 327:14-17).

465.    Owens testified that he felt Poolos "deserved to be put on leave" because it appeared that Poolos had lied to him. (Owens Dep. 218:7-25)

**DEFENDANTS' RESPONSE:** Undisputed.

466.    Balducci refused to tell Poolos why she was being suspended. (Poolos Dep. 174:11-175:3; Iadevaia Decl., Ex. P ¶ 99)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. Defendants' incorporate by reference 56.1 ¶¶ 88-89.

467.    When Poolos asked whether the decision related to her communication with Bronstein, Balducci said this was not the reason.  (Poolos Dep. 174:11-175:3; Iadevaia Decl., Ex. P ¶ 99)

**DEFENDANTS' RESPONSE:** Undisputed that Plaintiff did state unprompted that she spoke to Bronstein. (Ex. 28, at CBS 7829). The remaining assertions in this paragraph are disputed, unsupported and should be disregarded. Defendants' incorporate by reference 56.1 ¶¶ 88-89.

468.    Simon was part of the discussion about placing Poolos on administrative leave. (Simon Dep. 253:2-253:7, 255:16-24)

**DEFENDANTS' RESPONSE:** Undiputsed, with the clarification that Simon did not made the decision.

469.    Simon testified that Poolos was placed on leave because Owens had instructed Poolos not to disparage Richards and then, in violation of Owens's directive, Poolos disparaged Richards to Bronstein.  (Simon Dep. 253:8-254:7, 255:10-15)

**DEFENDANTS' RESPONSE:** Undisputed that Poolos disparaged Richards to Bronstein. The remainder of this paragraph should be disregarded because it is unsupported and mischaracterization of Simon's testimony, but immaterial including because Simon did not make the decision to place Plaintiff on paid administrative leave, and because she was not involved in

the termination decision. Owens told Poolos that she should not discuss Richards' complaint with anyone. (Owens Dep. 294:6-9). Defendants' incorporate by reference 56.1 ¶¶ 88-89.

470.    Poolos had never been given the instruction that Simon references nor did she disobey Owens's directive. (Poolos Decl. ¶ 75)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. Owens told Poolos that she should not discuss Richards' complaint with anyone. (Owens Dep. 294:6-9). This paragraph should also be disregarded as unsupported.

471.    Balducci has conducted numerous investigations while working for Defendants. (Balducci Dep. 26:4-18)

**DEFENDANTS' RESPONSE:** Undipusted.

472.    Other than Poolos, Balducci could only recall two other instances while supporting CBS News where Defendants placed an employee on administrative leave while she conducted an investigation. (Balducci Dep. 94:5-13)

**DEFENDANTS' RESPONSE:** Undipusted that Balducci could only recall two other specific examples at her deposition from the two-year period she supported CBS News, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. (Balducci Dep. 69:13-71:8).

a.    Balducci testified that a male employee in a Special Events Group was accused of sexual harassment against a female employee in 2021, and he was placed on administrative leave and ultimately terminated. (Balducci Dep. 41:9-42:11) Specifically, the male employee was alleged to have touched his female subordinate without her consent, and Balducci and the management involved determined that they should not continue to work together while the

claims were investigated. (Balducci Dep. 42:18-44:18) Balducci testified that the male employee was not warned before being placed on administrative leave because the allegations against him were so egregious and the touching was a significant violation. (Balducci Dep. 52:9-15)

        b.     Balducci testified that a different male employee was accused of sexual harassment by multiple women, who alleged he made harassing comments and on one occasion, touched someone. (Balducci Dep. 46:24-47:24) That male employee had been warned and trained in response to the first complaint against him, and then was placed on administrative leave after the second complaint. (Balducci Dep. 46:24-48:25)

**DEFENDANTS' RESPONSE:** Undiputed that Balducci could only recall these two specific examples at her deposition from the two-year period she supported CBS News, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. (Balducci Dep. 69:13-71:8).

473.    Except for Poolos, Balducci has never recommended placing a Paramount employee on administrative leave unless that employee was accused of sexual misconduct. (Balducci Dep. 70:21-71:3, 94:5-13, 331:5-17)

**DEFENDANTS' RESPONSE:** Undiputed that Balducci could only recall these two specific examples at her deposition from the two-year period she supported CBS News. The remaining assertions in this paragraph are unsupported and should be disregarded, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. (Balducci Dep. 69:13-71:8).

474.    As Executive Producer, beyond Poolos, there was never another instance in which Owens placed another employee on administrative leave. (Owens Dep. 216:15-22) Simon testified

that during her time as Executive Editor, Poolos is the only <u>60 Minutes</u> employee to be placed on administrative leave. (Simon Dep. 286:22-287:9)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that Plaintiff was placed on paid administrative leave, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

475.    During Owens's time as Executive Editor, the only time employees were placed on administrative leave involved a correspondent and producer who were responsible for a news piece that aired, which included numerous inaccuracies. (Owens Dep. 216:15-217:22)

**DEFENDANTS' RESPONSE:** Undisputed that Owens testified that was the only instance he recalled and to which he had knowledge of as Executive Editor, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because ,as Executive Editor, Owens did not have authority over Producers.

476.    Following those employees' administrative leave, Defendants reinstated them. (Owens Dep. 216:15-218:6)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

<u>Human Resources' Investigation</u>

477.    Between January 7 and February 3, 2022, Balducci investigated concerns that Richards raised about Poolos's phone call with Bronstein. (Balducci Dep. 262:2-7; Iadevaia Decl., Ex. KKKK)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that the Company informed Plaintiff on February 2, 2022 that it had concluded its investigation and scheduled time to speak the next day.

94

478.    As part of Balducci's investigation, she spoke to Richards on January 7, Bronstein on January 7, and Poolos on January 8, 2022. (Iadevaia Decl., Ex. O at CBS 007829; Balducci Dep. 288:14-289:16, 309:13-19, 334:14-24) Balducci also had short conversations with Stahl and Jack Weingart to ensure that they did not discuss the ongoing investigation. (Balducci Dep. 343:17-344:5)

**DEFENDANTS' RESPONSE:** Undisputed that Balducci interviewed the individuals identified above, with the clarification that Balducci also was in regular communication with Owens and Simon (and had other written communications with the witnesses listed above on additional dates). Defendants incorporate by referenced their 56.1 ¶¶ 90-111.

479.    Balducci and Poolos spoke for an hour or more on or about January 8, 2022. (Poolos Dep. 176:5-11; Balducci Dep. 338:2-338:5; Iadevaia Decl., Ex. SS; Iadevaia Decl., Ex. GGG)

**DEFENDANTS' RESPONSE:** Undiputsed, with the clarification that Balducci interviewed Poolos for over 70 minutes, as shown in the recording.

A.    Investigation

480.    Before Balducci had completed her investigation, Owens believed that Poolos had violated Defendants' policies. (Iadevaia Decl., Ex. WW; Balducci Dep. 318:3-320:23)

**DEFENDANTS' RESPONSE:** Disputed, Owens said there was no "final determination" at this point, but that it "seemed to me from the information that Ms. Balducci shared that I had been lied to." (Owen Dep. 215:3-11)). While it appeared that Poolos had lied to him, Owens waited for the results of the investigation before making a decision. (Owen Dep 218:23-220:14).

481.    Before speaking to Poolos or completing her investigation, Balducci had already determined that Poolos had engaged in retaliation. (Iadevaia Decl., Ex. WW; Balducci Dep. 318:3-320:23)

**DEFENDANTS' RESPONSE:**

482.    On January 7, 2022, before Balducci had ever communicated with Poolos about this matter, Balducci sent a text message to Owens and Simon. (Iadevaia Decl., Ex. WW; Balducci Dep. 318:3-320:23)

**DEFENDANTS' RESPONSE:** Undisputed.

483.    Balducci's text message stated, in part, "Al[e]x actions reflect horrendous judgement [and] amount to retaliation in my [point of view]. We'll need to take swift action. . . but in the meantime, I think you get [C]ollette's full story, then get to [A]l[e]x, raise with her and let her know she crossed a line and needs to cease trash and talking about [A]l[e]x immediately" (Iadevaia Decl., Ex. WW; Balducci Dep. 318:3-320:23)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that Balducci was giving her "assessment at the time…based on the information that I had" and that "[a]n investigation followed." (Balducci Dep. 319:2-13).

484.    This was Balducci's first communication with Owens and/or Simon about the phone call between Poolos and Bronstein. (Balducci Dep. 317:11-318:2)

**DEFENDANTS' RESPONSE:** Undisputed.

485.    When Poolos described her concerns about Richards's performance during her interview with Balducci, Balducci ignored them or defended Richards. (Iadevaia Decl., Ex. P ¶ 95; id. Ex. SS at 46:1-49:2, 60:14-61:8)

**DEFENDANTS' RESPONSE:** Disputed. Balducci documented Plaintiff's concerns about Richards' job performance in her investigatory notes. (Ex. 28, CBS-7831-7833). Further responding, while Richards' job performance is immaterial to the investigation into Plaintiff's retaliation, Plaintiff's comments regarding Richards' job performance were relevant insofar as they

were similar to what Bronstein told Balducci about the phone call as documented in his notes (and Plaintiff's reflexive tendency to disparage Richards' performance in response to a complaint about Plaintiff's behavior) (Defendants incorporate by reference their 56.1 ¶ 64, 69, 93).

486.    For example, in response to Poolos's statements that she offered Richards extra help and more time to improve her copy editing, Balducci criticized Poolos for having done so via email and stated that she expected managers to have those discussions over the phone. (Iadevaia Decl., Ex. P ¶ 95; id. Ex. SS at 60:14-61:8)

**DEFENDANTS' RESPONSE:** Disputed. Plaintiff's characterization of her interview is improper argument, opinion and unsupported by the record evidence to which she cites and should be disregarded.  Balducci's comment that "you've got to take somethings off of email or text" was not in response to the statement Poolos claims she made. (Ex. 26, 60:23-21).

487.    When Poolos attempted to explain that Richards frequently got upset and emotional when Poolos could not accommodate her personal demands and raised concerns about Richards's tone, Balducci dismissed those concerns and told Poolos Richards's complaint was not "so much about a tone" and was instead "more of a pattern of you know, of yelling at her . . ." (Iadevaia Decl., Ex. SS at 46:1-47:13; id. Ex. GGG)

**DEFENDANTS' RESPONSE:**

488.    Poolos denied yelling at Richards, but Balducci cut her off to repeat that Richards had represented that yelling was often the way Poolos communicated. (Iadevaia Decl., Ex. SS at 47:14-48:2; id. Ex. GGG)

**DEFENDANTS' RESPONSE:** Undisputed that Poolos denied yelling at Richards at first, stating "I've never yelled at her" and then later admitted during the interview to yelling at Richards, stating "I did yell at her one time that I can remember." (Ex. 26, at 29:20-33:12). Plaintiff's

characterization of her interview is improper argument, opinion and unsupported by the record evidence to which she cites and should be disregarded.

489.   When Poolos attempted to explain that Richards's characterization was inaccurate, Balducci again cut her off and said the "yelling thing" was "not [her] concern." (Iadevaia Decl., Ex. SS at 48:3-49:2; id. Ex. GGG)

**DEFENDANTS' RESPONSE:** Undisputed that Richards' complaint about Plaintiff's yelling was not the focus of the investigation into Plaintiff's retaliation.  (Ex. 26, at 48:21-49:8). Plaintiff's characterization of her interview is improper argument, opinion and unsupported by the record evidence to which she cites and should be disregarded.

490.   Furthermore, Balducci scolded Poolos for not calling her when Poolos learned about Richards's complaint. (Iadevaia Decl., Ex. SS at 50:12-17; id. Ex. GGG)

**DEFENDANTS' RESPONSE:** Undisputed that Balducci said that the "better thing for you to have done, honestly, would have literally been [to] call[] me. Like if you needed to talk to anyone to be like, what's going on, I need to make heads or tails of this."  (Ex. 50:12-18). Plaintiff's characterization of her interview is improper argument, opinion and unsupported by the record evidence to which she cites and should be disregarded.

491.   As Poolos told Balducci, she had wanted to call Balducci, but Simon and Owens had specifically instructed her not to do so. (Iadevaia Decl., Ex. P ¶ 97; id. Ex. SS at 50:12-51:3; id. Ex. GGG; Poolos Dep. 196:9-17)

**DEFENDANTS' RESPONSE:**  Disputed.  Poolos told Balducci, "I did say to Bill and Tanya, what's the next step, should I be reaching out to Renee, what should I do?  And Bill said, I don't know, let me call her and find out what she wants to do. So, that's why I didn't reach out to

you." (Ex. 26, at 50:23-51:3). Plaintiff's characterization of her interview is improper argument, opinion and unsupported by the record evidence to which she cites and should be disregarded.

492.    Poolos repeatedly offered email communications and text messages to counter Richards's false statements, including messages that demonstrated that Poolos cared about Richards's well-being and health. (Iadevaia Decl., Ex. DDDD)

**DEFENDANTS' RESPONSE:**  Disputed. Nowhere in the transcript of her recorded interview (or anywhere else) did Plaintiff offer any email communications or text messages. (Ex. 26). Plaintiff's characterization of her interview is improper argument, opinion and unsupported by the record evidence to which she cites and should be disregarded.

493.    CBS, including Balducci, however, refused to consider evidence from Poolos. (Iadevaia Decl., Ex. P ¶ 98)

**DEFENDANTS' RESPONSE:** Disputed. Nowhere in the transcript of her recorded interview (or anywhere else) did Plaintiff offer any email communications or text messages. (Ex. 26). Plaintiff's characterization of her interview is improper argument, opinion and unsupported by the record evidence to which she cites and should be disregarded.

494.    Balducci not only considered Bronstein's notes and text messages when firing Poolos, she primarily relied on them in discrediting Poolos's version of events and recommending Poolos's firing. (Balducci Dep. 367:6-368:22)

**DEFENDANTS' RESPONSE:**  Undisputed the Balducci relied on Bronstein's notes, text messages, and phone records. Dispute the implication that is all she relied upon. Defendants incorporate by reference their 56.1 ¶¶ 83-108.

495.    Balducci described Bronstein as a "neutral and professional third-party" based on her "assumption" that he is a "respected journalist." (Balducci Dep. 360:6-16; 361:23-362:12)

**DEFENDANTS' RESPONSE:** Undisputed that Bronstein is a third-party and respected journalist. Plaintiff's characterization of Balducci's testimony is selective, improper argument, opinion and unsupported by the record evidence to which she cites ,and should be disregarded.

496.    Balducci also sent a text message to Bronstein in which she described him as "incredible." (Iadevaia Decl., Ex. LLLL at Bronstein 000007) Balducci testified that she views Bronstein as a "whistleblower" who "[put] himself on the line to give [CBS] information so [CBS] can ensure [it has] the best workplace possible." (Balducci Dep. 358:25-359:17)

**DEFENDANTS' RESPONSE:** Undisputed that Balducci texted Bronstein "incredible. I appreciate the transparency & trust so much" after he agreed to send her the information she requested. (Ex. LLLL). Further undisputed that Balducci believes in good faith that Bronstein put himself on the line to give CBS information so CBS can ensure it has the best workplace possible.

497.    No one at CBS ever looked into the relationship between Richards and Bronstein. (Balducci Dep. 362:13-21; Owens Dep. 310:15-311:14)

**DEFENDANTS' RESPONSE:** Disputed. The relationship between Richards and Bronstein, including that they were work friends and that Bronstein was her former supervisor and mentor were well known to both Balducci, Owens and others. Ex. 28 (Balducci's investigatory notes refer to Bronstein as "Collette's former manager at CNN and her reference for her *60 minutes* position"); Ex. Q, at 2 (Richards herself told Balducci on January 7, 2022, that Bronstein was her "colleague and superior at CNN, who I consider a friend now.").

498.    Balducci maintained that such an inquiry was not necessary and that Bronstein's relationship with Richards had no bearing on her determination concerning his neutrality. (Iadevaia Decl., Ex. YYY at CBS 009330; Balducci Dep. 362:13-21)

**DEFENDANTS' RESPONSE:** Plaintiff's characterization of Balducci's testimony is improper argument, opinion and unsupported by the record evidence to which she cites and should be disregarded. The relationship between Richards and Bronstein, including that they were former colleagues, friends, and that Bronstein was her supervisor and referral, was well known to both Balducci and Owens. Ex. 28 (Balducci's investigatory notes refer to Bronstein as "Collette's former manager at CNN and her reference for her *60 minutes* position"); Ex. Q, at 2 (Richards herself told Balducci on January 7, 2022, that Bronstein was her "colleague and superior at CNN, who I consider a friend now."). In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

B.    Deleted Evidence

499.    Since Poolos's firing, witnesses, including Balducci, Richards and Bronstein, deleted communications between and among them about Poolos. (Richards Dep. 69:24-70:8; Bronstein Dep. 118:22-120:8)

**DEFENDANTS' RESPONSE:** Undisputed that Richards does not have any text messages with Balducci or Richards about Poolos on her personal phone. The remainder of this paragraph is unsupported by the record evidence to which Poolos cites, including because: Richards testified that she did not remember communicating via text with Bronstein regarding her concerns about Plaintiff or Plaintiff's retaliatory call with Bronstein, and did *not* exchange any text messages with Bronstein about this lawsuit or the termination of Plaintiff's employment. (Richards Dep. 66:19-68:9; 69:6-19; 197:2-11). Richards also testified that she *did not recall* exchanging texts with Balducci *about Plaintiff* on her personal phone or work phone. (Richards Dep. 66:19-12, 74:17-22, 77:22-25). Balducci testified that she did not recall ever sending or receiving text messages with Richards and did not delete any text messages with Richards. (Balducci Dep. 9:25-10:3;

101

11:14-12:3). Bronstein testified that he did not exchange any text messages with Richards regarding this lawsuit and never affirmatively deleted any text messages he had with Richards, (Bronstein Dep. 75:2-6; 119:20-120:2), and that he did not exchange any text messages with Balducci other than the one that was produced in this case and did not delete any text messages with Balducci (Bronstein Dep. 75:16-76:15). (See also Dkt. Nos. 316, 317). In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

500.    Balducci testified that she did not delete any messages with Richards or Bronstein and that she turned over all such text messages to counsel. (Balducci Dep. 8:23-12:3, 354:17-356:4) Yet CBS did not produce texts that Balducci undisputedly sent and received from her device, including messages with Richards (Richards Dep. 66:10-12, 74:17-22, 371:24-377:2) and with Bronstein. (Iadevaia Decl., Ex. LLLL)

**DEFENDANTS' RESPONSE:**  Undisputed that Balducci did not delete any messages with Richards or Bronstein and that she turned over all such text messages to counsel. The remainder of this paragraph is unsupported by the record evidence to which Poolos cites, including because: Richards testified that she *did not recall* exchanging texts with Balducci *about Plaintiff* on her personal phone or work phone. (Richards Dep. 66:19-12, 74:17-22, 77:22-25). Balducci testified that she did not recall ever sending or receiving text messages with Richards and did not delete any text messages with Richards. (Balducci Dep. 9:25-10:3; 11:14-12:3). Bronstein testified that he did not exchange any text messages with Balducci other than the one that was produced in this case and did not delete any text messages with Balducci (Bronstein Dep. 75:16-76:15). (See also Dkt. Nos. 316, 317). In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

501.    Richards testified that she sent text messages about Poolos to Owens and Simon, but Defendants have not produced those text messages. (Richards Dep. 66:16-70:3, 100:24-102:21, 329:25-330:14, 331:17-332:5)

**DEFENDANTS' RESPONSE:**  Disputed, but immaterial, and unsupported by the record evidence to which Poolos cites. Richards testified that she communicated with Owens and Simon about Poolos, but did *not* testify that those communications were via text, nor was she asked the subject matter or time frame of the communications, or even whether they had any relevance to the claims in this case. (Richards Dep. 65:5-66:12; 72:9-12; 73:8-74:16). (See Dkt. Nos. 316, 317). In any event, this paragraph fails to raise a genuine dispute of material fact.

502.    Neither Richards nor Bronstein still possess text messages, and Richards testified that text messages she exchanged with Bronstein between fall 2021 and January 2022 were deleted. (Richards Dep. 69:24-70:8, 197:7-22; Bronstein Dep. 118:22-120:8)

**DEFENDANTS' RESPONSE:** Undisputed that neither Richards nor Bronstein still possess any relevant text messages with each other from the period between fall 2021 and January 2022, but immaterial. The remainder of this paragraph is unsupported by the record evidence to which Poolos cites, including because Richards testified that she did not remember communicating via text with Bronstein regarding her concerns about Plaintiff or Plaintiff's retaliatory call with Bronstein, and did *not* exchange any text messages with Bronstein about this lawsuit or the termination of Plaintiff's employment. (Richards Dep. 66:19-68:9; 69:6-19; 197:2-11). Bronstein testified that he did not exchange any text messages with Richards regarding this lawsuit and never affirmatively deleted any text messages he had with Richards,  (Bronstein Dep. 75:2-6; 119:20-120:2). (See Dkt. Nos. 316, 317). In any event, this paragraph fails to raise a genuine dispute of material fact.

503.    Richards also testified to exchanging written messages with Bronstein over the encrypted messaging application Signal in February 2024. (Richards Dep. 94:5-97:18)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that none of the February 2024 messages using the message application Signal were about Poolos (Richards Dep. 94:2-96:23), but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

504.    Defendants have produced neither text messages nor Signal messages between Richards and Bronstein. (Iadevaia Decl.¶ 7)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that none of the February 2024 messages using the message application Signal were about Poolos (Richards Dep. 94:2-96:23), but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

C.    Timing

505.    The policies and practices mandate that investigators conduct investigations promptly. (Iadevaia Decl., Ex. WWW at CBS 007101)

**DEFENDANTS' RESPONSE:** This paragraph is unsupported by the record evidence to which Poolos cites and it should be disregarded. The Iadevaia Declaration does not include an Exhibit WWW or the document to which it purports to cite. In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

506.    It took weeks for anyone to contact Poolos after Richards told HR and management that she was having trouble with Poolos. (Balducci Dep. 208:6-19; Poolos Decl.; Poolos Dep. 154:24-155:16, 166:20-170:6; Simon Dep. 236:3-18)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial. At Balducci's suggestion, on January 5, 2022, Owens and Simon met with Poolos to discuss the written HR complaint against Poolos that Richards filed on December 30, 2021. Defendants incorporate by reference their 56.1 ¶¶ 55, 61-63. In any event, this paragraph fails to raise a genuine dispute of material fact.

507.    Indeed, Owens believed that due to the "serious nature" of Richards's complaint, both Simon and an HR representative spoke to Poolos in December 2021. (Owens Dep. 194:13-195:25) They did not. (Poolos Decl. ¶ 57)

**DEFENDANTS' RESPONSE:** Undisputed that Owens incorrectly believed Simon and an HR representative spoke to Poolos in December 2021, with the clarification that Owens and Simon met with Poolos on January 5, 2022 to discuss the written HR Complaint against Poolos that Richards filed on December 30, 2021, and that, as of January 6, 2022, the Company considered Richards' HR complaint addressed by the counseling provided to Poolos and therefore closed. Defendants incorporate by reference their 56.1 ¶¶ 55, 61-63, 79. In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

508.    After Richards's disparagement complaint to Balducci, Defendants took nearly a month to conduct their so-called investigation. (Iadevaia Decl., Ex. XXX at CBS 000182)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial. Owens and Simon met with Poolos on January 5, 2022 to discuss the written HR Complaint against Poolos that Richards filed on December 30, 2021, Owens met with Poolos again on January 6, 2022 and, as of January 6, 2022, the Company considered Richards' HR complaint addressed by the counseling Owens and Simon provided to Poolos and therefore closed, and the investigation that concluded on February 3, 2022 was the investigation into Poolos' retaliatory call to Bronstein on January 5, 2022, which

105

Defendants first learned of on January 7, 2022. Defendants incorporate by reference their 56.1 ¶¶ 55, 61-63, 76, 78, 79, 83, 85-111. In any event, this paragraph fails to raise a genuine dispute of material fact.

509.    After the January 8 call between Balducci and Poolos, Balducci told Poolos by email dated January 9, 2022 that she would "reconnect" with her the following week. (Iadevaia Decl., Ex. YY)

**DEFENDANTS' RESPONSE:** Undisputed.

510.    After the January 9, 2022, email, however, Balducci had no contact with Poolos until February 3, 2022, when CBS fired her.  (Iadevaia Decl., Ex. P ¶¶ 41-42)

**DEFENDANTS' RESPONSE:**  Undisputed, but immaterial, and fails to raise a genuine dispute of material fact.

511.    There was no explanation for the delay and CBS never gave Poolos another opportunity to respond to the allegations and purported evidence against her. (Iadevaia Decl., Ex. P ¶ 102)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial, with the clarification that Balducci explained in her January 9, 2022 email that Balducci offered time to Poolos on a Saturday "to hear your side of the story," their call lasted 70 minutes, and Balducci explained that she needed additional time to investigate, which included interviews with others. Defendants incorporate by reference their 56.1 ¶ 90. This paragraph it fails to raise a genuine dispute of material fact.

512.    In an email to Balducci on January 8, 2022, Poolos requested that the matter be escalated to Balducci's supervisor Glasgow. (Iadevaia Decl., Ex. YY)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial. This paragraph fails to raise a genuine dispute of material fact.

513.    On January 9, 2022, Balducci responded that Glasgow was aware of Poolos's circumstances and copied Glasgow on the email. (Iadevaia Decl., Ex. YY)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial. This paragraph fails to raise a genuine dispute of material fact.

514.    That same day, on January 9, 2022, Poolos asked again to speak to Glasgow, who was now part of the email exchange. (Iadevaia Decl., Ex. MMMM)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial. This paragraph fails to raise a genuine dispute of material fact.

515.    Glasgow ignored her and never replied to her. (Iadevaia Decl., Ex. P ¶ 103; Glasgow Dep. 170:22-24)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial, with the clarification that Glasgow also did not speak with Richards. (Glasgow Dep. 170:22-171:3). This paragraph is immaterial to fails to raise a genuine dispute of material fact.

516.    Balducci's determination about key facts was false. Balducci incorrectly wrote in her investigation notes that Poolos contacted Bronstein first on January 5 and did not realize that was false until her deposition. (Iadevaia Decl., Ex. O; Balducci Dep. 374:12-375:12, 380:20-381:14)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial, with the clarification that Balducci correctly wrote in her investigation timeline that Poolos first contacted Bronstein on December 31, 2021 and that, on January 5, 2022, Poolos called Bronstein after Bronstein responded to Poolos's request to talk by offering to talk that day. (Iadevaia Decl., Ex. O; Balducci Dep. 375:2-20; 381:8-382:4). Defendants incorporate by reference their 56.1 ¶¶ 58-60, 66. This paragraph fails to raise a genuine dispute of material fact.

107

517. Moreover, Poolos candidly told Owens and Balducci throughout the investigation that she had spoken to Bronstein about Richards and that she had contacted him before she was aware of Richards's complaint. (Iadevaia Decl., Ex. P ¶ 105; id. Ex. NNNN; Owens Dep. 203:13-204:11)

**DEFENDANTS' RESPONSE:** Undisputed that Poolos eventually told Owens and Balducci that she spoke to Bronstein about Richards and that she first contacted Bronstein before she was aware of Richards' complaint. Immaterial because during their January 6, 2022 meeting, Poolos failed to tell Owens that she had spoken with Bronstein about Richards the prior evening, in their January 7, 2022 call Poolos misleadingly told Owens that she had spoken with Bronstein before she ever knew that Richards had gone to HR and falsely denied disparaging Richards in any way in her conversation with Bronstein, and in Poolos' January 8, 2022 recorded call with Balducci, Poolos falsely denied saying anything to Bronstein about Richards' performance and intimated that Bronstein had called her, such as saying: "and you know, my husband said, after all of this, he was like, don't you think the timing's kind of suspicious that he couldn't talk to you and then all of the sudden *he calls you* at the end of the day on Tuesday?" Defendants incorporate by reference their 56.1 ¶¶ 76, 77, 88, 90, 91, 94, 95, 98. This paragraph fails to raise a genuine dispute of material fact.

518. If Balducci had spoken to Poolos a second time, she would have understood that Poolos had not misrepresented the sequence of the events. (Iadevaia Decl., Ex. P ¶ 105)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial, because Defendants honestly believed that Poolos misrepresented the sequence of events by misleadingly telling Owens on January 7, 2022 that Poolos had spoken with Bronstein before she ever knew that Richards had gone to HR and intimating to Balducci on January 8, 2022 that Bronstein had called her.

Defendants incorporate by reference their 56.1 ¶¶ 88, 90, 91, 98. This paragraph fails to raise a genuine dispute of material fact.

519.    At the conclusion of Balducci's investigation, she recommended to Owens that he decide to fire Poolos. (Balducci Dep. 364:2-10)

**DEFENDANTS' RESPONSE:** Undisputed.

<u>Defendants Fire Plaintiff</u>

520.    On or about February 3, 2022, Owens and Balducci told Poolos that CBS was firing her effective immediately.  (Poolos Dep. 179:3-18)

**DEFENDANTS' RESPONSE:** Undisputed.

521.    During the firing meeting on February 3, 2022, Owens and Balducci tried to pressure Poolos into resigning. (Poolos Dep. 181:11-18; Owens Dep. 228:12-229:4; Poolos Decl. ¶ 82; Iadevaia Decl., Ex. P ¶ 42)

**DEFENDANTS' RESPONSE:** Undisputed that Owens asked Poolos if she would like to say that she was resigning, but disputed that she was pressured. (Owens Dep. 228:14-229:4). This paragraph is immaterial and fails to raise a genuine dispute of material fact.

522.    As an enticement to resign, Balducci proposed that Poolos write an email that Balducci would approve to say good-bye to Senior Producers. (Iadevaia Decl., Ex. P ¶ 107); Poolos Decl. ¶ 82)

**DEFENDANTS' RESPONSE:** Undisputed that Poolos was offered the opportunity to resign, but disputed that she was "enticed" to resign. (Owens Dep. 228:14-229:4). This paragraph is immaterial as it fails to raise a genuine dispute of material fact.

523.    Owens said it would be "much better" for Poolos if she resigned and that she should listen to Balducci. (Iadevaia Decl., Ex. P ¶ 107; Poolos Decl. ¶ 82)

109

**DEFENDANTS' RESPONSE:** Undisputed that Poolos was offered the opportunity to resign, with the clarification that Owens was not asked at his deposition if he said it would be "much better" for Poolos if she resigned. (Owens Dep. 228:14-229:4). This paragraph is immaterial as it fails to raise a genuine dispute of material fact.

524.    Poolos asked for a day to consider the suggestion, but Balducci refused and set a 4:00 p.m. deadline that same day.  (Iadevaia Decl., Ex. P ¶ 10; Poolos Decl. ¶ 82)

**DEFENDANTS' RESPONSE:** Undisputed that Poolos was offered the opportunity to resign. but immaterial because Poolos did not resign. (Poolos Dep. 181:11-18; Owens Dep. 228:14-229:4) This paragraph fails to raise a genuine dispute of material fact.

525.    Poolos did not agree to resign. (Poolos Dep. 181:11-18; Owens Dep. 228:12-229:4; Poolos Decl. ¶ 82)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial. This paragraph fails to raise a genuine dispute of material fact.

526.    After Defendants had fired Poolos, she received a text message from Stahl.  Stahl texted Plaintiff to express "the affection and respect EVERYONE feels" for Poolos, "especially [Stahl]." (Iadevaia Decl., Ex. OOOO)

**DEFENDANTS' RESPONSE:** Undisputed that Stahl sent this message, but immaterial because Stahl agreed with Owens' decision to terminate Plaintiff's employment. Defendants incorporate by reference their 56.1 ¶ 110. This paragraph fails to raise a genuine dispute of material fact.

<u>The Purported Reasons for Firing Poolos</u>

527.    After the firing meeting, on February 3, 2022, Poolos received a memorandum stating that Defendants had fired her because Defendants purportedly substantiated her policy

110

violations. (Iadevaia Decl., Ex. AAA) The letter did not specify which policy violations were the basis for Poolos's firing. (Iadevaia Decl., Ex. AAA)

**DEFENDANTS' RESPONSE:** Undisputed that Poolos received a closure letter on February 3, 2022. Plaintiff's characterization of that closure letter is improper argument, opinion, unsupported and should be disregarded. (Ex. 30, 31, 32).

528.    Poolos also received a letter stating that following Balducci's investigation, Defendants substantiated policy violations, including by purportedly retaliating against Richards after she complained; by discussing Richards's complaints with others; and by not being truthful. (Iadevaia Decl., Ex. PPPP)

**DEFENDANTS' RESPONSE:** Undisputed that this letter was sent to Poolos Defendants were not required to explain. This paragraph fails to raise a genuine dispute of material fact.

529.    Owens made the decision to fire Poolos. (Owens Dep. 315:13-22)

**DEFENDANTS' RESPONSE:** Undisputed**.**

530.    Owens purportedly made the decision to fire Poolos because she retaliated against Richards for making a complaint and because Poolos supposedly lied to him.  (Owens Dep. 227:7-21, 308:23-309:9)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that these were the actual, not purported reasons. Defendants incorporate by reference their 56.1 ¶¶ 61-114

531.    Balducci, following her investigation, was part of discussions about whether to fire Poolos and believed that she should be fired. (Balducci Dep. 364:2-10, 365:7-12)

**DEFENDANTS' RESPONSE:** Undisputed.

A.    <u>Poolos Did Not Retaliate Against Richards</u>

532.    Poolos did not engage in retaliatory conduct against Richards. (Poolos Decl. ¶ 54; Iadevaia Decl., Ex. P ¶ 74)

**DEFENDANTS' RESPONSE:** Disputed, and directly contradicted by Poolos' admission at her deposition that she told Bronstein Richards was "struggling" at *60 Minutes*, that things had "escalated," that Richards had "gone to management," and that Poolos had in fact spoken negatively about Richards' job performance to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 73, 74. Poolos cannot create a genuine issue of material fact by contradicting her deposition testimony.

533.    Poolos planned to call Bronstein before she was aware of the Richards December 2021 Complaint. (Poolos Dep. 114:21-115:1; Poolos Decl. ¶ 54; Iadevaia Decl., Ex. P ¶ 105)

**DEFENDANTS' RESPONSE:**  Undisputed, but immaterial because Poolos' original purpose when she first contacted Bronstein in December 2021 is irrelevant to Defendants' decision, which was based on Poolos' January 5, 2022 conversation with Bronstein and Defendants' investigation of that conversation.. Defendants incorporate by reference their 56.1 ¶¶ 61-114. This paragraph fails to raise a genuine dispute of material fact.

534.    Poolos's purpose in calling Bronstein was not to sabotage or do harm to Richards. (See Poolos Dep. 116:23-117:21; Poolos Decl. ¶ 55)

**DEFENDANTS' RESPONSE:**  Disputed, but immaterial because Poolos' original purpose when she first contacted Bronstein in December 2021 is irrelevant to Defendants' decision, which was based on Poolos' January 5, 2022 conversation with Bronstein and Defendants' investigation of that conversation.. Defendants incorporate by reference their 56.1 ¶¶ 61-114. This paragraph fails to raise a genuine dispute of material fact.

112

535.   Poolos believed that speaking to Bronstein would be a good way to deal with the problems she was having with Richards without jeopardizing Richards's job.  (See Poolos Dep. 116:23-117:21; Poolos Decl. ¶ 55)

**DEFENDANTS' RESPONSE:**   Disputed, but immaterial because Poolos' original purpose when she first contacted Bronstein in December 2021 is irrelevant to Defendants' decision, which was based on Poolos' January 5, 2022 conversation with Bronstein and Defendants' investigation of that conversation. Defendants incorporate by reference their 56.1 ¶¶ 61-114. This paragraph fails to raise a genuine dispute of material fact.

536.   Bronstein did not work for Defendants at the time and had no control over Richards's employment. (Poolos Decl. ¶ 55; See Balducci 359:5-16; Poolos Dep. 157:25-158:4)

**DEFENDANTS' RESPONSE:**   Undisputed, but immaterial. This paragraph fails to raise a genuine dispute of material fact.

537.   No one asserted that Poolos's call to Bronstein constituted unlawful retaliation. (See Simon Dep. 172:19-173:18, 174:3-11; Poolos Decl. ¶ 83)

**DEFENDANTS' RESPONSE:**   Disputed, but immaterial, and unsupported by the record evidence to which Poolos cites, so it should be disregarded. Simon testified that she did not recall Richards using the words "unlawful discrimination." (Simon Dep. 172:19-173:18, 174:3-11.) Defendants determined that Poolos' call to Bronstein constituted retaliation in violation of Defendants policies. Defendants incorporate by reference their 56.1 ¶¶ 61-114. This paragraph fails to raise a genuine dispute of material fact.

538.   As Owens acknowledged, it would be nonsensical for Poolos to attempt to retaliate against Richards through Bronstein when she knew that Richards and Bronstein were close friends frequently in contact with each other, Bronstein had told her on multiple occasions that he adored

113

Richards, and Bronstein had served as Richards's primary reference for her job. (Poolos Decl. ¶ 49; Poolos Dep. 127:3-9, 167:14-168:22; Bronstein Dep. at 149:9-24; Iadevaia Decl., Ex. R at Bronstein 000003)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial. This paragraph contains improper argument and opinion unsupported by the record evidence to which Poolos cites, so it should be disregarded. Poolos does not cite to any testimony by Owens in which Owens "acknowledged" the above statements. Defendants incorporate by reference their 56.1 ¶¶ 61-114. This paragraph fails to raise a genuine dispute of material fact.

539.    Poolos denies that she disparaged Richards during her call with Bronstein. (Poolos Decl. ¶ 49; Poolos Dep. 170:7-25)

**DEFENDANTS' RESPONSE:** Disputed, and directly contradicted by Poolos' admission at her deposition that she told Bronstein Richards was "struggling" at *60 Minutes*, that things had "escalated," that Richards had "gone to management," and that Poolos had in fact spoken negatively about Richards' job performance to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 73, 74. Poolos cannot create a genuine issue of material fact by contradicting her deposition testimony.

540.    Poolos denies that she criticized Richards for speaking to HR. (Poolos Decl. ¶ 49; Poolos Dep. 130:7-12, 134:22-25, 135:11-14)

**DEFENDANTS' RESPONSE:** Disputed, and directly contradicted by Poolos' admission at her deposition that she told Bronstein Richards was "struggling" at *60 Minutes*, that things had "escalated," that Richards had "gone to management," and that Poolos had in fact spoken negatively about Richards' job performance to Bronstein. Defendants incorporate by reference

114

their 56.1 ¶¶ 73, 74. Poolos cannot create a genuine issue of material fact by contradicting her deposition testimony.

541.    While Poolos was certainly frustrated with Richards's conduct and her effort, Poolos also spoke positively about Richards, saying that she was well-liked and well-respected by other employees, including Stahl, and expressed sympathy for Richards over her difficulties in adjusting to 60 Minutes. (Poolos Dep. 137:21-138:20)

**DEFENDANTS' RESPONSE:**  Disputed, but immaterial because whether Poolos also spoke positively about Richards is irrelevant in light of Poolos' admission at her deposition that she told Bronstein Richards was "struggling" at *60 Minutes*, that things had "escalated," that Richards had "gone to management," and that Poolos had in fact spoken negatively about Richards' job performance to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 73, 74. This paragraph fails to raise a genuine dispute of material fact.

542.    Poolos told Bronstein that she hoped to continue working together with Richards and that Richards would have the choice of what she wanted to do. (Poolos Decl. ¶ 50; Poolos Dep. 137:21-138:20)

**DEFENDANTS' RESPONSE:**  Disputed, but immaterial because whether Poolos also told Bronstein that she hoped to continue working with Richards and that Richards would have a choice is irrelevant in light of Poolos' admission at her deposition that she told Bronstein Richards was "struggling" at *60 Minutes*, that things had "escalated," that Richards had "gone to management," and that Poolos had in fact spoken negatively about Richards' job performance to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 73, 74. This paragraph fails to raise a genuine dispute of material fact.

115

543.    Poolos discouraged Stahl from retaliating against Richards. (Poolos Decl. ¶ 79; Poolos Dep. 164:15-165:14)

**DEFENDANTS' RESPONSE:**  Disputed, but immaterial, because whether Poolos ever discouraged Stahl from retaliating against Richards is irrelevant to the fact that Defendants determined that Poolos retaliated against Richards in Poolos' January 5, 2022 conversation with Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 61-108. In any event, Stahl testified that she did not recall ever telling Poolos that Stahl wanted Richards off of her team and had no memory of Poolos ever discouraging Stahl from taking steps to remove Richards from her team. (Stahl Dep. 126:6-127:6; 128:2-7). This paragraph fails to raise a genuine dispute of material fact.

544.    On or about January 5, 2022, Poolos told Stahl about Richards's complaint. (Poolos Decl. ¶ 77)

**DEFENDANTS' RESPONSE:**  Disputed, but immaterial because how Stahl learned about Richards' complaint is irrelevant to the fact that Defendants determined that Poolos retaliated against Richards in Poolos' January 5, 2022 conversation with Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 61-108. In any event, Stahl testified that she had no recollection of discussing Richards' complaint about Poolos with Poolos. (Stahl Dep. 119:19-25; 120:12-22; 123:13-20; 128:2-7). This paragraph fails to raise a genuine dispute of material fact.

545.    In response, Stahl stated that she was "outraged," and that Richards should have spoken to her first before raising concerns outside of the team. (Poolos Decl. ¶ 77; Poolos Dep. 156:20-157:24; Stahl Dep. 123:6-19; Simon Dep. 244:13-16)

**DEFENDANTS' RESPONSE:**  Disputed, but immaterial because how Stahl allegedly felt about Richards' complaint is irrelevant to the fact that Defendants determined that Poolos retaliated against Richards in Poolos' January 5, 2022 conversation with Bronstein. Defendants incorporate

116

by reference their 56.1 ¶¶ 61-114. In any event, Stahl replied "never" when asked if she told Poolos she was outraged about something related to Richards and testified that she did not recall talking to Poolos about how she felt about Richards' complaint. (Stahl Dep. 123:2-20). This paragraph fails to raise a genuine dispute of material fact.

546.    Stahl told Poolos that she wanted to "get rid of" Richards and remove Richards from her team. (Poolos Dep. 164:15-165:14; Poolos Decl. ¶ 78) Poolos, however, advised Stahl not to remove Richards because it might be perceived as retaliatory and that they should instead allow the process to proceed. (Poolos Decl. ¶ 79; Poolos Dep. 164:15-165:14)

**DEFENDANTS' RESPONSE:**  Disputed, and unsupported by the record evidence to which Poolos cites, but immaterial because how Stahl allegedly felt about Richards' complaint is irrelevant to the fact that Defendants determined that Poolos retaliated against Richards in Poolos' January 5, 2022 conversation with Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 61-114. In any event, Stahl testified that she did not recall ever telling Poolos that Stahl wanted Richards off of her team and Stahl had no recollection of discussing Richards' complaint about Poolos with Poolos. (Stahl Dep. 119:19-25; 120:12-22; 123:13-20; 126:6-127:6; 128:2-7). This paragraph fails to raise a genuine dispute of material fact.

547.    Stahl also said that she "respected" Poolos for not having formally complained about her former supervisor, male Producer Bar-On, and, instead, had "focus[ed] on [her] work." (Poolos Decl. ¶ 80; Poolos Dep. 37:10-18)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial, because any assertion regarding how Stahl allegedly felt about Poolos not complaining about Bar-On is irrelevant to the fact that Defendants determined that Poolos retaliated against Richards in Poolos' January 5, 2022 conversation with Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 61-114. In any

117

event, Stahl testified that she did not recall saying this to Poolos. (Stahl 127:7-17). This paragraph fails to raise a genuine dispute of material fact.

548.    In finding that Poolos retaliated against Richards during the January 5, 2022 phone call, Owens and Balducci relied exclusively on the statements and notes of Bronstein. (Balducci Dep. 371:5-13; Owens Dep. 308:23-310:14)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial, with the clarification that Defendants' decision to terminate Poolos' employment was also based upon Defendants' conclusion that Poolos retaliated and was dishonest and misleading during the investigation. (Balducci Dep. 360:6-16; 360:22-361:22; Owens 204:6-206:11). Defendants incorporate by reference their 56.1 ¶¶ 88, 98,104, 106-114. This paragraph fails to raise a genuine dispute of material fact.

549.    Defendants credited Bronstein, a man, over Poolos. (Owens Dep. 205:14-23, 211:20-212:5; see Balducci Dep. 358:25-359:17, 360:5-16, 361:23-362:12, 371:5-13) Poolos, a woman, had worked for 60 Minutes for over ten years. (Iadevaia Decl., Ex. P ¶¶ 1, 108; Poolos Dep. 62:21-24)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial because Defendants credited Bronstein because they considered Bronstein to be a neutral third party, and discredited Poolos retaliated and because she was dishonest and misleading during the investigation. (Balducci Dep. 360:6-16; 360:22-361:22; Owens 204:6-206:11). Defendants incorporate by reference their 56.1 ¶¶ 88, 98,104, 106-114. This paragraph is argumentative and conclusory, should be disregarded pursuant to Local Rule 56.1(d), and fails to raise a genuine dispute of material fact.

550.    Bronstein had previously worked for 60 Minutes. (Bronstein Dep. 36:7-20, Balducci Dep. 315:9-13)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial and fails to raise a genuine dispute of material fact.

551.    60 Minutes had fired Bronstein from the show. (Bronstein Dep. 51:8-17, 52:16-24, 61:4-11; Richards Dep. 44:12-22)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial and fails to raise a genuine dispute of material fact. (Owens Dep. 207:11-22; Bronstein Dep. 60:12-61:3).

552.    When Poolos asked Balducci why no one followed up with her about the investigation, Balducci said that there was no reason to do so because she had spoken to Bronstein. (Poolos Decl. ¶ 71; Iadevaia Decl., Ex. P ¶ 104)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial, because Balducci interviewed Poolos on January 8, 2022 to get her side of the story in a call lasted 70 minutes. Defendants incorporate by reference their 56.1 ¶ 90. This paragraph it fails to raise a genuine dispute of material fact.

553.    CBS never showed Poolos the notes that Bronstein provided to Balducci. (Poolos Decl. ¶ 71; Iadevaia Decl., Ex. P ¶ 104)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial, because Poolos does not allege that she asked to see the notes that Bronstein provided to Balducci, and Balducci confronted Poolos with direct quotes from Bronstein's recounting of the conversation. Defendants incorporate by reference their 56.1 ¶ 99. This paragraph it fails to raise a genuine dispute of material fact.

554.    No one asked Poolos whether she had her own notes reflecting her conversation and communications with Bronstein.  (Poolos Decl. ¶ 71; Balducci Dep. 351:7-23; Owens Dep. 223:18-22)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial, because Poolos does not allege that she had her own notes reflecting her conversation and communications with Bronstein and has never produced any such notes. This paragraph it fails to raise a genuine dispute of material fact.

555.   Owens testified that he spoke to Bronstein after firing Poolos. (Owens 208:7-12) According to Owens, Bronstein reached out to him, and they discussed Poolos's January 5, 2022 phone call with Richards, including that "it didn't make sense, there was no logic around it, and why would [Poolos] have acted that way." (Owens Dep. 212:12-6) Owens also claimed that Bronstein told him that he had never communicated with Poolos prior to the January 5 call. (Owens Dep. 210:24-6) Bronstein denied ever speaking to Owens about Poolos. (Bronstein Dep. 76:6-78:4)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial, because Owens testified that he spoke with Bronstein after Poolos employment had been terminated, so any such conversation could not have played any role in the decision to terminate Poolos' employment. (Owens Dep. 208:7-209:19). This paragraph it fails to raise a genuine dispute of material fact.

B.    Defendants Asserted that Poolos Received a Warning and Disobeyed Owens's Directive

556.   Owens testified that it was "significant to [him] that [Poolos] reached out to . . . Bronstein after she had received . . . our conversation and an email and she acknowledged it." (Owens Dep. 222:24-223:10) Poolos received Owens's email and acknowledged it on January 6, 2022, the day after she spoke to Bronstein. (See Pl. 56.1 ¶¶ 438-439)

**DEFENDANTS' RESPONSE:**  Undisputed, and unsupported by the record evidence to which Poolos cites, but immaterial because Defendants' decision was based on Poolos' January 5, 2022 conversation with Bronstein and Defendants' investigation of that conversation.. Defendants

120

incorporate by reference their 56.1 ¶¶ 61-114. This paragraph fails to raise a genuine dispute of material fact.

557.    According to Simon, Owens told her that Poolos had been fired because she called Bronstein after the matter was closed. (Simon Dep. 305:6-15, 318:9-319:5; see also Simon Dep. 253:8-19 ("My recollection was that [Poolos] had been told to not disparage [Richards], that she had then disparaged [Richards].  And that, in their view, was retaliation.  And she had disobeyed something [Owens] had told her, and that she hadn't been truthful about either what she said or the timeline. . . .))

**DEFENDANTS' RESPONSE:** Undisputed, and unsupported by the record evidence to which Poolos cites, but immaterial because Defendants' decision was based on Poolos' January 5, 2022 conversation with Bronstein and Defendants' investigation of that conversation. Defendants incorporate by reference their 56.1 ¶¶ 61-114. This paragraph fails to raise a genuine dispute of material fact

C.    Poolos Did Not Lie

558.    CBS accused Poolos of lying during the investigation, but the February 3, 2022 report sent to her about her firing did not provide a single example of Poolos being untruthful during the investigation.  (Iadevaia Decl., Ex. KKKK)

**DEFENDANTS' RESPONSE:** Undisputed that the February 3, 2022 letter did not provide example of Poolos being untruthful, but immaterial because Defendants' concluded that Poolos retaliated and was dishonest and misleading during the investigation. (Balducci Dep. 360:6-16; 360:22-361:22; Owens 204:6-206:11). Defendants incorporate by reference their 56.1 ¶¶ 88, 98,104, 106-114. This paragraph fails to raise a genuine dispute of material fact.

559.    Owens testified that during Poolos's tenure at 60 Minutes, which spanned more than a decade, he was not aware of any other time in which Poolos had lied nor was he told of any such occurrence beyond the events in connection with the Bronstein phone call.  (Owens Dep. 207:3-10)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial**.** This paragraph fails to raise a genuine dispute of material fact.

560.    Owens and Balducci testified that Poolos purportedly lied about the contents of the call between her and Bronstein on January 5, 2022. (Owens Dep. 205:14 -206:11, 211:20-212:19; Balducci 367:10-368:2, 367:23-369:12)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that Defendants concluded that Poolos retaliated and was dishonest and misleading. Defendants incorporate by reference their 56.1 ¶¶ 88, 98,104, 106-114. This paragraph fails to raise a genuine dispute of material fact.

561.    Specifically, they accused Poolos of lying based on her denial that she disparaged Richards during the Bronstein call. (Owens Dep. 203:13-205:2; Balducci Dep. 369:5-12)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that during her conversation with Owens, Poolos misleadingly claimed that she had spoken with Bronstein before she ever knew that Richards had gone to HR, and in her recorded conversation with Balducci, Poolos intimated that Bronstein had called her, which was not true.  Defendants incorporate by reference their 56.1 ¶¶ 88, 98,104, 106-114. This paragraph fails to raise a genuine dispute of material fact.

562.    Plaintiff did not lie about what she said to Bronstein. (Def. Ex. 26, at CBS007991, CBS008010; Poolos Decl. ¶ 65)

**DEFENDANTS' RESPONSE:** Disputed, and directly contradicted by Poolos' admission at her deposition that she told Bronstein Richards was "struggling" at *60 Minutes*, that things had "escalated," that Richards had "gone to management," and that Poolos had in fact spoken negatively about Richards' job performance to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 73, 74. Poolos cannot create a genuine issue of material fact by contradicting her deposition testimony.

563.    Owens relied only on Bronstein's notes in making his determination that Poolos lied about disparaging Richards. (Owens Dep. 211:20-212:5)

**DEFENDANTS' RESPONSE:** Undisputed that Owens relied on Bronstein's notes, with the clarification that Owens also relied on Balducci's recommendation following her investigation, which included speaking with Bronstein and Poolos. Defendants incorporate by reference their 56.1 ¶¶ 87, 88, 90-109). This paragraph fails to raise a genuine dispute of material fact.

564.    Balducci also claimed that Poolos lied about disparaging Richards based on nothing but Bronstein's notes and her phone call with Bronstein. (Balducci Dep. 305:9-309:17)

**DEFENDANTS' RESPONSE:** Undisputed that Balducci relied on Bronstein's notes and her conversation with Bronstein, with the clarification that Balducci's investigation also included speaking with others, including Owens and Poolos, and a review of the timeline of events as described by Poolos against the materials sent by Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 87, 88, 90-109). This paragraph fails to raise a genuine dispute of material fact.

565.    Owens also asserted that Poolos lied to him about whether she had a phone call at all with Bronstein. (Owens Dep. 203:25-204:23; Balducci Dep. 302:20-22, 303:10-15, 305:9-306:2, 367:6-368:2; 368:11-369:23)

**DEFENDANTS' RESPONSE:**

123

566.    Owens testified that, during a call with Poolos on January 7, 2022, he asked her, "Did you call Scott Bronstein and trash Collette [Richards]?"  (Owens Dep. 203:25-204:11)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial because Defendants' concluded that Poolos retaliated and was dishonest and misleading in several ways during the investigation. (Balducci Dep. 360:6-16; 360:22-361:22; Owens 204:6-206:11). Defendants incorporate by reference their 56.1 ¶¶ 88, 98,104, 106-114. This paragraph fails to raise a genuine dispute of material fact.

567.    Owens further testified that Poolos responded, "No, why would I do that."  (Owens Dep. 203:25-204:11)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial because Defendants' concluded that Poolos retaliated and was dishonest and misleading in several ways during the investigation. (Balducci Dep. 360:6-16; 360:22-361:22; Owens 204:6-206:11). Defendants incorporate by reference their 56.1 ¶¶ 88, 98,104, 106-114. This paragraph fails to raise a genuine dispute of material fact..

568.    Poolos did not deny that she spoke to Bronstein.  (Poolos Decl. ¶ 64) She denied that she "trashed" Richards. (Poolos Decl. ¶ 64)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial because Defendants' concluded that Poolos retaliated and was dishonest and misleading in several ways during the investigation. (Balducci Dep. 360:6-16; 360:22-361:22; Owens 204:6-206:11). Defendants incorporate by reference their 56.1 ¶¶ 88, 98,104, 106-114. This paragraph fails to raise a genuine dispute of material fact

569.    Owens himself admitted that Poolos told him that she spoke to Bronstein but did not disparage Richards. (Owens Dep. 203:13-204:11)

124

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that Poolos also misleadingly claimed that she had spoken with Bronstein before she ever knew that Richards had gone to HR, and Defendants' concluded that Poolos retaliated and was dishonest and misleading in several ways during the investigation. (Balducci Dep. 360:6-16; 360:22-361:22; Owens 204:6-206:11). Defendants incorporate by reference their 56.1 ¶¶ 88, 98,104, 106-114. This paragraph fails to raise a genuine dispute of material fact.

570.    Owens sent a text message to Balducci and Simon shortly after speaking with Poolos on January 7, 2022. (Iadevaia Decl., Ex. WW; see Owens Dep. 302:16-303:16, 304:21-305:18) In the text message, Owens notified Balducci and Simon that he had phone calls with both Richards and Poolos concerning Poolos's call with Bronstein. (Iadevaia Decl., Ex. WW; Owens Dep. 304:21-305:18)

**DEFENDANTS' RESPONSE:** Undisputed that Owens sent this text message.

571.    Nowhere in the text message does Owens say that Poolos lied to him about having spoken to Bronstein on January 5, 2022. (Iadevaia Decl., Ex. WW; see Owens Dep. 305:25-306:6)

**DEFENDANTS' RESPONSE:** Undisputed that Owens sent this text message, with the clarification Owens also spoke with Balducci as part of the investigation. Defendants incorporate by reference their 56.1 ¶ 105. (See also Balducci Dep. 302:15-19; 303:10-15.)

572.    To the contrary, Owens's text message states that Poolos did speak to Bronstein on January 5, 2022. (Iadevaia Decl., Ex. WW)

**DEFENDANTS' RESPONSE:** Undisputed that Owens sent this text, with the clarification Owens also spoke with Balducci as part of the investigation. Defendants incorporate by reference their 56.1 ¶ 105. (See also Balducci Dep. 302:15-19; 303:10-15.) Further, this

125

paragraph is argumentative, conclusory, and unsupported by the record evidence Plaintiff cites and should be disregarded pursuant to Local Rule 56.1(d).

573.    Balducci's summary of the investigation states nothing about Poolos denying that the phone call with Bronstein happened.  (Iadevaia Decl., Ex. O)

**DEFENDANTS' RESPONSE:** Undisputed that Balducci wrote this summary, but immaterial because Defendants' decision to terminate Poolos' employment was based upon Defendants' conclusion that Poolos retaliated and was dishonest and misleading during the investigation. (Balducci Dep. 360:6-16; 360:22-361:22; Owens 204:6-206:11). Defendants incorporate by reference their 56.1 ¶¶ 88, 98,104, 106-114. This paragraph fails to raise a genuine dispute of material fact.

574.    Balducci testified that Poolos's purported lie about having the call with Bronstein was not significant because Poolos admitted to having the call in the same discussion when she purportedly initially lied.  (Balducci Dep. 305:9-307:4, 377:6-378:3)

**DEFENDANTS' RESPONSE:** This paragraph is unsupported by the record evidence Plaintiff cites and should be disregarded pursuant to Local Rule 56.1(d). In particular, Balducci did not testify that Poolos' lie about having the call with Bronstein was "not significant." (Balducci Dep. 305:9-307:4, 377:6-378:3) Defendants concluded that Poolos retaliated and was dishonest and misleading in several ways during the investigation. (Balducci Dep. 360:6-16; 360:22-361:22; Owens 204:6-206:11). Defendants incorporate by reference their 56.1 ¶¶ 88, 98,104, 106-114. This paragraph fails to raise a genuine dispute of material fact.

575.    Balducci identified additional purported lies. (Balducci Dep. 305:9-307:4, 377:6-378:3)

**DEFENDANTS' RESPONSE:** Undisputed.

576. Balducci testified that the "main lie[s]" were "who reached out to who" and when that happened.  (Balducci Dep. 305:16-307:4)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that this paragraph selectively cites Balducci's testimony, but is immaterial because Balducci testified that Poolos telling Owens that she did not talk to Bronstein was not the "main lie," and Defendants' concluded that Poolos retaliated and was dishonest and misleading in several ways during the investigation. (Balducci Dep. 360:6-16; 360:22-361:22; Owens 204:6-206:11). Defendants incorporate by reference their 56.1 ¶¶ 88, 98,104, 106-114. This paragraph fails to raise a genuine dispute of material fact.

577. Balducci asserted that Poolos "misrepresented" to Balducci and Owens that Bronstein called Poolos when in fact it was the reverse. (Balducci Dep. 307:18-308:16, 368:11-369:23)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that Defendants concluded that Poolos retaliated and was dishonest and misleading in several ways during the investigation. (Balducci Dep. 360:6-16; 360:22-361:22; Owens 204:6-206:11). Defendants incorporate by reference their 56.1 ¶¶ 88, 98,104, 106-114. This paragraph fails to raise a genuine dispute of material fact.

578. Bronstein did, via text, initiate communication with Poolos on January 5, 2022. (Bronstein Dep. 186:20-187:9; Iadevaia Decl., Ex. R at Bronstein 000005; id. Ex. XX at CBS 000110)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that Bronstein was responding to Poolos' request to speak with him, which Poolos initiated. (Bronstein Dep. 183:22-

127

184:16; 186:6-187:9; 188:5-18.) Defendants incorporate by reference their 56.1 ¶¶ 58-60, 66. This paragraph fails to raise a genuine dispute of material fact.

579.   In the interview, Poolos did not tell Balducci that Bronstein called her. (See generally Iadevaia Decl., Ex. SS)

**DEFENDANTS' RESPONSE:**   Undisputed that Poolos did not specifically state that Bronstein called her, but immaterial because, in the recorded conversation, Poolos intimated that Bronstein had called her, such as saying: "And you know, my husband said, after all of this, he was like, don't you think the timing's kind of suspicious that he couldn't talk to you and then all of the sudden *he calls you* at the end of the day on Tuesday?" and Balducci believed that Poolos tried to mislead her to believe that Poolos did not initiate the call to Bronstein, when in fact she did. Defendants incorporate by reference their 56.1 ¶¶ 98, 102-104. This paragraph fails to raise a genuine dispute of material fact.

580.   When asked why Balducci thought whether Poolos answered a call from Bronstein as opposed to placing the call was significant, Balducci testified that it "goes to credibility," that "it goes to [Poolos's] intent," that Poolos was "signaling her intention," and that it tells her that Poolos has "something she wants to hide." (Balducci Dep. 341:5-342:19)

**DEFENDANTS' RESPONSE:**   Undisputed, but immaterial, with the clarification that this paragraph selectively cites Balducci's deposition testimony. Defendants concluded that Poolos retaliated and was dishonest and misleading in several ways during the investigation. (Balducci Dep. 360:6-16; 360:22-361:22; Owens 204:6-206:11). Defendants incorporate by reference their 56.1 ¶¶ 88, 98,104, 106-108-114. This paragraph fails to raise a genuine dispute of material fact.

581.   Balducci also asserted that Poolos misrepresented the timing of the call with Bronstein making it seem as though it had occurred a long time ago. (Balducci Dep. 305:16-307:4)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial, with the clarification that this paragraph selectively cites Balducci's deposition testimony. Defendants concluded that Poolos was dishonest and misleading in several ways during the investigation. (Balducci Dep. 360:6-16; 360:22-361:22; Owens 204:6-206:11). Defendants incorporate by reference their 56.1 ¶¶ 88, 98,104, 106-108-114. This paragraph fails to raise a genuine dispute of material fact.

582.    In the text Owens sent to Balducci and Simon on January 7, 2022, he states that Poolos told him she had spoken to Bronstein on January 5, 2022. (Iadevaia Decl., Ex. WW) This was the actual day of the phone call between them. (Iadevaia Decl., Ex. WW; Balducci Dep. 338:15-18, 339:8-17)

**DEFENDANTS' RESPONSE:** Undisputed that Owens sent this text, but immaterial. Defendants concluded that Poolos retaliated and was dishonest and misleading in several ways during the investigation. (Balducci Dep. 360:6-16; 360:22-361:22; Owens 204:6-206:11). Defendants incorporate by reference their 56.1 ¶¶ 88, 98,104, 106-108-114. This paragraph fails to raise a genuine dispute of material fact.

D.    <u>Poolos Was Not Instructed to Keep the Complaints Against Her Confidential</u>

583.    CBS also asserts in the February 3, 2022 letter that Poolos violated CBS policy by discussing Richards's complaint with others. (Iadevaia, Decl., Ex. XX at CBS 0000116)

**DEFENDANTS' RESPONSE:**  Undisputed that Defendants sent this letter to Poolos. (See also Iadevaia Decl. Ex. AAA.)

584.    Poolos had not been instructed to and was not aware of any obligation to maintain confidentiality with respect to Richards's complaint. (Poolos Decl. ¶ 66; Poolos Dep. 154:24-155:16)

129

**DEFENDANTS' RESPONSE:** Disputed, because Owens testified he did tell Poolos she should not discuss Richards' HR complaint with anyone (Owens Dep. 298:21-299:6), but immaterial because Poolos' failure to keep Richards' complaint confidential was not the basis for the decision to terminate Poolos' employment, which decision was based on Poolos' January 5, 2022 conversation with Bronstein and Defendants' investigation of that conversation. (Balducci Dep. 370:17-371:4.) Defendants incorporate by reference their 56.1 ¶¶ 61-114. This paragraph fails to raise a genuine dispute of material fact. In addition, Poolos read the company's anti-harassment policy and the global standards of business conduct. (Pl. Dep. 55:14-20).The Investigation section of the non-discrimination and anti-harassment policy states that "confidentiality will be maintained throughout the process," and that was applicable to any investigations of misconduct, including those beyond the nondiscrimination policy. (Balducci Dep. 131:3-132:3;140:24-142:7.)

585.    As set forth above, on or about January 5, 2022, Simon and Owens told Poolos about Richards's complaint and Poolos had a follow up meeting with Owens the next day on or about January 6 about Richards's concerns. (Pl. 56.1 ¶¶ 402, 432)

**DEFENDANTS' RESPONSE:** Undisputed.

586.    At no time during either of those discussions did Simon or Owens tell Poolos not to communicate with others about Richards's concerns. (Poolos Decl. ¶ 62; Poolos Dep. 154:24-155:16, 166:20-170:6; Simon Dep. 236:3-18; Iadevaia Decl., Ex. N)

**DEFENDANTS' RESPONSE:** Disputed, because Owens told Poolos not to discuss Colette's complaint with anyone at their January 5, 2022 meeting (Owens Dep. 298:21-299:6), but immaterial because Poolos' failure to keep Richards' complaint confidential was not the basis for the decision to terminate Poolos' employment, which decision was based on Poolos' January 5,

130

2022 conversation with Bronstein and Defendants' investigation of that conversation. (Balducci Dep. 370:17-371:4.) Defendants incorporate by reference their 56.1 ¶¶ 61-114. This paragraph fails to raise a genuine dispute of material fact.

587.    To the contrary, on or about January 6, 2022, Poolos told Owens that she had discussed Richards's complaint with Stahl. (Poolos Decl. ¶ 61; Iadevaia Decl., Ex. P ¶ 91) Far from criticizing her, Owens expressed his support for Poolos doing so, stating that it was "the right thing to do" for Poolos to tell Stahl and that he had intended to tell her to do so. (Poolos Decl. ¶ 61; Iadevaia Decl., Ex. P ¶ 91)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial, because the fact that Poolos discussed Richards' complaint with Stahl was not the basis for the decision to terminate Poolos' employment, which decision was based on Poolos' January 5, 2022 conversation with Bronstein and Defendants' investigation of that conversation. (Balducci Dep. 370:17-371:4.) Defendants incorporate by reference their 56.1 ¶¶ 61-114. This paragraph fails to raise a genuine dispute of material fact.

588.    HR also did not provide any guidance to Poolos about Richards's concerns on January 5 and 6, 2022, including, but not limited to, directions about what Poolos could disclose to others. (Poolos Decl. ¶ 63) Poolos heard nothing from HR until late in the day on January 7, 2022, after she spoke to Bronstein. (Balducci Dep. 348:23-349:3; Poolos Decl. ¶ 63)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial, because Poolos' disclosure of Richards' complaints, standing alone, was not the basis for the decision to terminate Poolos' employment, which decision was based on Poolos' January 5, 2022 conversation with Bronstein and Defendants' investigation of that conversation. (Balducci Dep. 370:17-371:4.) Defendants

incorporate by reference their 56.1 ¶¶ 61-114. This paragraph fails to raise a genuine dispute of material fact.

589.    On January 5, 2022, at the end of her conversation with Owens and Simon, Poolos specifically asked if she could speak to HR. (Poolos Decl. ¶ 58; Poolos Dep. 122:19-123:5, 196:9-17)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial, because, even if Poolos had spoken with Balducci or anyone in HR, Balducci and Defendants had no idea that Poolos was reaching out to Bronstein before January 7, so could not have given Poolos any guidance about communicating with Bronstein. (Balducci Dep. 450:3-13.)

590.    Owens told her not to reach out to HR and he would get back to her. (Poolos Decl. ¶ 59; Poolos Dep. 122:19-123:5, 196:9-17)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial, because, even if Poolos had spoken with Balducci or anyone in HR, Balducci and Defendants had no idea that Poolos was reaching out to Bronstein before January 7, so could not have given Poolos any guidance about communicating with Bronstein. (Balducci Dep. 450:3-13.)

591.    Simon herself did not keep the complaint confidential by discussing it with Weinstein. (Simon Dep. 182:16:183:2; Iadevaia Decl., Ex. BBB)

**DEFENDANTS' RESPONSE:**  Undisputed, but immaterial because Poolos' disclosure of Richards' complaints, standing alone, was not the basis for the decision to terminate Poolos' employment, which decision was based on Poolos' January 5, 2022 retaliatory conversation with Bronstein and Defendants' investigation of that conversation. (Balducci Dep. 370:17-371:4.) Defendants incorporate by reference their 56.1 ¶¶ 61-114. This paragraph fails to raise a genuine dispute of material fact.

132

592.    No one testified that Poolos's purported violation of the confidentiality policy was a basis for firing her. (Poolos Decl. ¶ 88)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial. This paragraph fails to raise a genuine dispute of material fact.

593.    Balducci testified that Poolos was not fired due to the confidentiality policy. (Balducci Dep. 370:17-371:4)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial. This paragraph fails to raise a genuine dispute of material fact.

Defendants' Discriminatory Standards

594.    Defendants did not accuse Poolos of unlawful harassment, discrimination, or retaliation. (Poolos Decl. ¶ 83)

**DEFENDANTS' RESPONSE:** Undisputed that Defendants did not accuse Poolos of violating any law regarding harassment, discrimination or retaliation, but immaterial because the decision to terminate Poolos' termination was based upon her retaliatory conduct in her January 5, 2022 conversation with Bronstein, and for being misleading and dishonest during the investigation of that conduct. Defendants incorporate by reference their 56.1 ¶¶ 61-114. This paragraph fails to raise a genuine dispute of material fact.

595.    During Owens's tenure as Executive Editor between 2008 and January 2019, male 60 Minutes employees were accused of misconduct, including, but not limited to, unlawful harassment, discrimination, and retaliation. (See Pl. 56.1 ¶¶ 671-711, 724-734, 774-829; Owens Dep. 13:9-15, 38:20-25)

**DEFENDANTS' RESPONSE:** Undisputed that during Owen's tenure as Executive Editor both male and female employees were accused of misconduct. Further responding, Owens was not

133

Executive Producer until 2019, and did not have authority to terminate the employment of Producers until that time. Defendants incorporate by reference their 56.1 ¶¶ 144, 155.

596.    Since Owens became Executive Producer in 2019, Defendants have not fired any employees "for cause" other than Poolos. (Owens Dep. 229:15-230:2)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. This paragraph should be disregarded as argument, opinion, and unsupported by the record evidence to which Plaintiff cites. Defendants incorporate by reference their 56.1 ¶ 185-186.

597.    Balducci testified that for the groups she has overseen, including all of CBS News, Defendants have fired only a few employees for cause as cause is a high standard. (Balducci Dep. 59:19-23)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

598.    Balducci testified that for cause firings she was involved in included circumstances in which employees were found to have engaged in illegal conduct, including stealing from Defendants and sexual harassment. (Balducci Dep. 45:2-46:23, 59:19-60:25)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that Balducci was asked about a two-year period and, at her deposition, she could specifically recall two or three instances, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

599.    Glasgow testified about a handful of instances in which employees were fired for violating company policies, including situations involving repeated damage to company equipment despite prior counseling; sexual harassment; and engaging in intimidation and yelling,

134

where there were multiple complaints against the employee and potentially prior complaints. (Glasgow Dep. 78:13-79:17, 81:11-19)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

600.    Glasgow could recall only one instance between 2021 and 2023 in which an employee was fired for purportedly violating CBS's anti-retaliation policy, and that individual was Poolos. (Glasgow Dep. 79:18-22)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. Plaintiff's characterization of Glasgow's testimony is improper argument, opinion, unsupported and should be disregarded.

601.    Glasgow testified that there were numerous situations in which employees were discharged but still paid out for the remainder of their contractual term. (Glasgow Dep. 88:20-22, 90:19-25, 91:23-92:9)

**DEFENDANTS' RESPONSE:** Disputed, Glasgow testified there were many times were someone was paid but not actively performing services for the company. (Glasgow 90:19-25). Plaintiff's characterization of Glasgow's testimony is improper argument, opinion, unsupported and should be disregarded. In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

CBS's Long History of Sexism and Sexual Misconduct

A.    Press Coverage Exposes Deep Problems of Sexual Harassment and Gender Discrimination

602.    Several publications, including The New Yorker magazine, The New York Times, and The Washington Post, exposed the sexual harassment and gender discrimination that CBS permitted to fester unabated for decades.  (See Iadevaia Decl., Ex. QQQ)

135

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact. This paragraph should be disregarded because Plaintiff cites no admissible record evidence and instead relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge. Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802. Defendants incorporate by reference their 56.1 ¶¶ 11, 190-193.

603.    According to the press coverage, from the highest levels of the company, male executives and senior managers, including the former CEO of CBS Les Moonves and the former Executive Producer of 60 Minutes Fager, ran the network in open defiance of the anti-discrimination laws and CBS's anti-discrimination policy, acting as if they were above the law. (See Iadevaia Decl., Ex. QQQ)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact. This paragraph should be disregarded because Plaintiff cites no admissible record evidence and instead relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge. Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802. Defendants incorporate by reference their 56.1 ¶¶ 11, 190-193.

604.    The New Yorker magazine detailed the gender-based toxic culture at CBS through two articles in July and September 2018. (Iadevaia Decl., Ex. QQQ at CBS 009399-9408; Ronan Farrow, *As Leslie Moonves Negotiates His Exit from CBS, Six Women Raise New Assault and Harassment Claims*, THE NEW YORKER, Sept. 9, 2018, https://www.newyorker.com/news/news-

desk/as-leslie-moonves-negotiates-his-exit-from-cbs-women-raise-new-assault-and-harassment-claims.)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact. This paragraph should be disregarded because Plaintiff cites no admissible record evidence and instead relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge. Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802. Defendants incorporate by reference their 56.1 ¶¶ 11, 190-193.

605.    As The New Yorker's July 2018 article stated, "[30] current and former employees of CBS [said] that such behavior [against women] extended from Moonves to important parts of the corporation, including CBS News and '60 Minutes.'" (Iadevaia Decl., Ex. QQQ at CBS 009400)

**DEFENDANTS' RESPONSE:** Undisputed that Plaintiff quotes a 2018 press report, disputed as the truth of the underlying assertions, but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact. This paragraph should be disregarded because Plaintiff cites no admissible record evidence and instead relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge (including because the assertions do not involve *60 Minutes* employees). Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802. Defendants incorporate by reference their 56.1 ¶¶ 11, 190-193.

606.    The New Yorker magazine's July 2018 article stated that four women "described forcible touching or kissing during business meetings"; two claimed that "Moonves physically

137

intimidated them or threatened to derail their careers"; and that several women said that Moonves "became cold or hostile after they rejected his advances, and that they believed their careers suffered as a result." (Iadevaia Decl., Ex. QQQ at CBS 009400)

**DEFENDANTS' RESPONSE:** Undisputed that Plaintiff quotes a 2018 press report, disputed as the truth of the underlying assertions, but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact. This paragraph should be disregarded because Plaintiff cites no admissible record evidence and instead relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge (including because the assertions do not involve *60 Minutes* employees). Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802. Defendants incorporate by reference their 56.1 ¶¶ 11, 190-193.

607.    That same article reported: "During Moonves's tenure, men at CBS News who were accused of sexual misconduct were promoted, even as the company paid settlements to women with complaints." (Iadevaia Decl., Ex. QQQ at CBS 009400)

**DEFENDANTS' RESPONSE:** Undisputed that Plaintiff quotes a 2018 press report, disputed as the truth of the underlying assertions, but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact. This paragraph should be disregarded because Plaintiff cites no admissible record evidence and instead relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge (including because the assertions do not involve *60 Minutes* employees). Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802. Defendants incorporate by reference their 56.1 ¶¶ 11, 190-193.

608.     On December 17, 2018, CBS's board of directors released a statement that said Moonves had breached his employment contract and would not receive a severance package valued at $120 million following the completion of a months-long investigation. Lex Haris, *CBS Board Says Les Moonves Will Not Receive $120 Million Severance*, CBS NEWS (Dec. 17, 2018), https://www.cbsnews.com/news/cbs-board-says-les-moonves-will-not-receive-120-million-severance/.

**DEFENDANTS' RESPONSE:** Undisputed. Similar to Plaintiff, Moonves was not paid severance where he was terminated "for cause" including for his "violation of Company polices and breach of his employment contract, as well as his willful failure to cooperate fully with the Company's investigation" including, specifically, by misleading investigators.

609.     Before the articles in The New Yorker, CBS had already been forced to fire Charlie Rose ("Rose") in 2017. (Iadevaia Decl., Ex. RRRR at FOIL G000766-110824 000199, FOIL G000766-110824 000232) Rose had served as co-anchor of CBS This Morning since 2012 and a correspondent for 60 Minutes.  (Id.)

**DEFENDANTS' RESPONSE:** Undisputed that CBS decided to fire Charlie Rose and that he had previously served as a co-anchor of CBS This Morning and a guest contributing correspondent for *60 Minutes*, but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact.

610.     It was well-known that sexual harassment and other forms of sexism were commonplace at 60 Minutes during the period Don Hewitt ("Hewitt") was the show's Executive Producer. (Poolos Decl. ¶ 111; Iadevaia Decl., Ex. QQQ at 9411)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact. This paragraph

139

should be disregarded because Plaintiff cites no admissible record evidence and instead relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge including because Don Hewitt left *60 Minutes* in 2004—more than *seven* years before Plaintiff ever worked for *60 Minutes* and *18 years* prior to her termination. Fed. R. Evid. 602, 801, 802. Defendants incorporate by reference their 56.1 ¶¶ 1, 111-113).

611.    A female employee accused Hewitt of repeatedly sexual assaulting her around the same time as Hewitt dismissed Meredith Vieira in 1991 allegedly due to her gender.  (Iadevaia Decl., Ex. QQQ at 009417) According to The New York Times, CBS paid the employee a settlement of over $5 million in the years following the accusation. (Iadevaia Decl., Ex. QQQ at 009417)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact. This paragraph should be disregarded because Plaintiff cites no admissible record evidence and instead relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge including because Don Hewitt left *60 Minutes* in 2004—more than *seven* years before Plaintiff ever worked for *60 Minutes* and *18 years* prior to her termination. Fed. R. Evid. 602, 801, 802. Defendants incorporate by reference their 56.1 ¶¶ 1, 111-113).

612.    Fager, who ultimately spent 36 years at CBS, replaced Hewitt as Executive Producer of 60 Minutes in 2004. (Iadevaia Decl., Ex. QQQ at 009417).

**DEFENDANTS' RESPONSE:** Undisputed that Fager became Executive Producer of *60 Minutes* in 2004. This remainder of the assertions in this paragraph should be disregarded because

Plaintiff cites no admissible record evidence and instead relies on out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge including because Don Hewitt left *60 Minutes* in 2004—more than _seven_ years before Plaintiff ever worked for *60 Minutes* and _18 years_ prior to her termination. Fed. R. Evid. 602, 801, 802. Defendants incorporate by reference their 56.1 ¶¶ 1, 111-113).

613.    In September 2018, CBS fired Fager amid similar allegations of sexual harassment and misconduct as had faced Hewitt. (Iadevaia Decl., Ex. QQQ at 009417; id. Ex. RRRR FOIL G000766-110824 000232)

**DEFENDANTS' RESPONSE:** Undisputed that Fager was fired in September 2018. The remainder of this paragraph should be disregarded because Plaintiff cites no admissible record evidence and instead relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge including because Hewitt left *60 Minutes* in 2004—more than _seven_ years before Plaintiff ever worked for *60 Minutes* and _18 years_ prior to her termination. Fed. R. Evid. 602, 801, 802. Defendants incorporate by reference their 56.1 ¶¶ 1, 11, 111-113190-193).

614.    CBS attributed the termination of Fager's employment to a threatening text message that he had sent to a national correspondent for CBS News who was covering allegations against him of sexual misconduct. (Owens Dep. 109:8-110:7; Simon Dep. 314:5-315:9)

**DEFENDANTS' RESPONSE:** Undisputed that Fager was terminated for retaliation. (Dkt. 30 at 190; Zuckerman Decl., Ex. 2, Owens Tr. 14:3-5; 109:8-110:15; Ex. 3, Simon Tr. 27:24-28:15). In particular, Fager sent a threatening text message to a CBS News reporter outside of *60 Minutes* in response to allegations made against Fager about inappropriate workplace conduct.

(Zuckerman Decl., Ex. 2, Owens Tr. 109:8-110:15; Ex. 3, Simon Tr. 28:10-15). Disputed as to Plaintiff's characterization.

615.    The message read: "If you repeat these false accusations without any of your own reporting to back them up, you will be responsible for harming me. Be careful. There are people who lost their jobs trying to harm me and if you pass on these damaging claims without your own reporting to back them up that will become a serious problem." (*Fired "60 Minutes" boss warned CBS News reporter: "There are people who've lost their jobs trying to harm me"*, CBS NEWS (Sept. 12, 2018), https://www.cbsnews.com/news/fired-60-minutes-boss-jeff-fager-warned-cbs-news-reporter-there-are-people-whove-lost-their-jobs-trying-to-harm-me/) According to CBS, Fager was fired for violating company policy. (Id.)

**DEFENDANTS' RESPONSE:** Undisputed that Fager was terminated for retaliation, which violates Company policy. (Dkt. 30 at 190; Zuckerman Decl., Ex. 2, Owens Tr. 14:3-5; 109:8-110:15; Ex. 3, Simon Tr. 27:24-28:15). In particular, Fager sent a threatening text message to a CBS News reporter outside of *60 Minutes* in response to allegations made against Fager about inappropriate workplace conduct. The remaining assertions in this paragraph should be disregarded because Plaintiff cites no admissible record evidence and instead relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge (including because the assertions do not involve 60 Minutes employees). Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802. Defendants incorporate by reference their 56.1 ¶¶ 11, 190-193.

616.    But alongside Fager's text message, the same article in The New Yorker magazine that exposed Moonves's mistreatment of women had also reported that "[n]ineteen current and

142

former employees told [the magazine] that Jeff Fager . . . allowed harassment in the [news] division." (Iadevaia Decl., Ex. QQQ at CBS 009400)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact. This paragraph should be disregarded because Plaintiff cites no admissible record evidence and instead relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge. Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802. Defendants incorporate by reference their 56.1 ¶¶ 11, 190-193.

617.    Additionally, "[s]ix former employees told [the magazine] that Fager, while inebriated at company parties, would touch employees in ways that made them uncomfortable." (Iadevaia Decl., Ex. QQQ at CBS 009406)

618.    Moreover, The New Yorker reported that Fager protected other men "accused of misconduct, including men who reported to him." (Iadevaia Decl., Ex. QQQ at CBS 009406) According to the New York Times, the draft report stated that "Mr. Fager had behaved inappropriately with colleagues in several instances." (Id.)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact. This paragraph should be disregarded because Plaintiff cites no admissible record evidence and instead relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge. Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802. Defendants incorporate by reference their 56.1 ¶¶ 11, 190-193.

619.    On July 25, 2018, a reporter from <u>The New Yorker</u> emailed Moonves, Schwartz, and Chris Ender. (Iadevaia Decl., Ex. SSSS) In that email, the reporter provided a list of "facts concerning [] Fager." (<u>Id.</u>) Those facts include multiple allegations against Fager of sexual harassment and unwanted touching from former CBS employees." (<u>Id.</u>; Pl. 56.1 ¶ 617)

**DEFENDANTS' RESPONSE:** Undisputed that a reporter for the *New Yorker* emailed Moonves, Schwartz, and Eder (all non-*60 Minutes* employees) on July 25, 2018, but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact. This paragraph should be disregarded because Plaintiff cites no admissible record evidence and instead relies on argument, opinion, and out-of-court statements by a reporter offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge. Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802. Defendants incorporate by reference their 56.1 ¶¶ 11, 190-193.

B.    <u>The New York Attorney General's Investigation into Defendants' Conduct</u>

620.    Following the public accusations of sexual harassment at <u>60 Minutes</u> in or around 2018, the Civil Rights Bureau of the Office of the New York State Attorney General ("AG's Office") interviewed current and former CBS employees and opened an investigation into CBS's compliance with New York State Human Rights Law, N.Y. Exec. L. § 296 <u>et seq.</u>, and New York City Human Rights Law, N.Y.C. Admin. Code § 8-107. (Iadevaia Decl., Ex. RRRR at FOIL G000766-110824 000232)

**DEFENDANTS' RESPONSE:** Undisputed that the NY AG's office interviewed current and former CBS employees as part of a 2018 investigation. Plaintiff's characterization that this investigation was focused on 60 Minutes is disputed as improper argument, opinion, unsupported by record evidence, and should be disregarded. In any event, this paragraph is immaterial to

Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact.

621.    In that investigation, the AG's Office "received and reviewed over 5,000 pages of relevant documents that [CBS] produced and interviewed approximately a dozen witnesses." (Iadevaia Decl., Ex. RRRR at FOIL G000766-110824 000232-233)

**DEFENDANTS' RESPONSE:** Undisputed, immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact.

622.    As part of the AG's Office's investigation, the agency issued an Assurance of Discontinuance outlining its findings.  (Iadevaia Decl., Ex. RRRR at FOIL G000766-110824 000199)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact.

623.    The AG's Office found that "CBS and Moonves were aware of and concealed the fact that (1) a criminal sexual assault complaint was filed with the Los Angeles Police Department ("LAPD") against Moonves; (2) a separate allegation of potential sexual misconduct by Moonves was threatened to be publicly revealed; and (3) journalists at multiple major media outlets were developing stories concerning these accusations against Moonves as well as other allegations of harassment." (Iadevaia Decl., Ex. RRRR at ¶ 2)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact.

624.    The AG's Office determined that CBS violated the Martin Act and Executive Law § 63(12) by, inter alia, covering up accusations against Moonves. (Iadevaia Decl., Ex. RRRR at ¶¶

145

4-6) Further, that "Moonves and other top CBS executives were actively seeking to conceal and suppress allegations that Moonves himself had engaged in sexual misconduct." (Id. ¶ 7)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact.

625.    On or about November 2, 2022, the AG's Office announced that it had secured a settlement of $30.5 million from CBS and Moonves for concealing sexual assault allegations against Moonves, misleading investors about those allegations, and insider trading.  (Iadevaia Decl., Ex. RRRR at FOIL G000766-110824 000199-000235; Iadevaia Decl., Ex. RRRR at ¶ 70 [FOIL G000766-11082])

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact.

626.    As part of the AG's Office's Assurance of Discontinuance, the agency issued several conclusions regarding CBS's coverup of sexual assault allegations against Moonves, including that CBS and the other respondents "persistently suppressed and concealed material information from investors . . . . " (Id. ¶ 70)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that there were no "other respondents," but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact.

627.    Incorporated into the AG's Office's Assurance of Discontinuance was a letter agreement dated September 25, 2020, by and between CBS and the Civil Rights Bureau of the [AG's Office] (the "CRB Agreement"). (Id. ¶ 74(a); Id. at FOIL G000766-110824 000231-235)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact.

628.     The CRB Agreement provided additional details about the AG's Office's findings regarding CBS. According to the CRB Agreement, the AG's Office found that CBS employees had made sexual harassment complaints against Moonves, Rose, and Fager. (Iadevaia Decl., Ex. RRRR at FOIL G000766-110824 000232) The CRB Agreement also said that some employees complained that "certain executives protected each other against complaints; that harassers were promoted after complaints were made; that women who refused to sleep with [] Moonves or other executives lost career opportunities; and that employees who complained about sexual harassment were retaliated against. (Id.)

629.     According to the CRB Agreement,

> the "[AG's Office] investigation revealed systemic problems with CBS's then-existing Human Resources [] structure and its responses to allegations of sexual harassment. On several occasions, supervisors and managers failed to immediately report or act on sexual harassment complaints. Further, in several cases, CBS relied on mere warnings or executive coaching for those accused of sexual harassment, even where the accusations were found by CBS to be credible. As a result, numerous employees reported that they continued to experience harassment and retaliation by the colleagues and/or supervisors about whom they filed complaints.

(Id. at FOIL G000766-110824 000233)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact. The CRB Agreement further provided that: "Since our investigation began, CBS has taken steps to ensure future compliance with the law…It terminated Mr. Moonves, Mr. Fager and others…[and] [i]t made numerous changes to it HR functions, including revising its EEO Policy…and creating an 'employee relations' team to assist HR" (Ex. RRRR, at FOIL G000766-110824 000232)

147

630.    As part of the CBR Agreement, CBS was required to "make bi-annual reports for the next three years, beginning from the date of this letter agreement, about any complaints related to sexual harassment and gender-based discrimination and the status of the resulting investigations." (Id. at FOIL G000766-110824 000234) Defendants also represented that they took steps to prevent harassment and gender-based discrimination, including purportedly revising policies and developing trainings for HR investigations. (Id. at FOIL G000766-110824 000233)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact. Further answering, the bi-annual reports between September 2020 and March 2023, the only *60 Minutes* employees referenced in the reports are Alexandra Poolos and Shachar Bar-On. The CRB Agreement further provided that: "Since our investigation began, CBS has taken steps to ensure future compliance with the law…It terminated Mr. Moonves, Mr. Fager and others…[and] [i]t made numerous changes to it HR functions, including revising its EEO Policy…and creating an 'employee relations' team to assist HR" (Ex. RRRR, at FOIL G000766-110824 000232)

631.    Under the agreement with the Attorney General's Office, CBS also agreed to provide any current "trainings related to . . . protocols for HR investigations" and any proposed material updates to such protocols. (Id. at FOIL G000766-110824 000233-000234)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact.

632.    The only training materials CBS provided the AG's Office was the Proskauer training, which included slides that listed "personal relationships of witnesses" as a "key fact[]" to be elicited. (Iadevaia Decl., Ex. YYY at CBS 009330; Supplemental Affidavit of Renee Balducci ¶ 3)

148

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact. As provided in the Supplemental Affidavit of Renee Balducci, the Proskauer training deck was the only document produced to the NY AG's office in response to their request for "protocols for HR investigations, including *guidance* on when and how the Employee Relations team will be deployed[.]" (Balducci Supp. Aff., ¶ 3) (emphasis added). Further responding, the Proskauer training deck from 2019 was guidance from a third party law firm and Plaintiff's selectively cites to a single slide referencing the "[h]allmarks of a good investigation."

<u>Defendants Applied Different Standards to Male Employees than Female Employees</u>

A.    <u>Michael Gavshon</u>

633.    It was well known that Michael Gavshon ("Gavshon"), a longtime male Producer for <u>60 Minutes</u>, was frequently abusive towards staff. (Poolos Decl. ¶¶ 112-116)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and abusiveness) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 150-164; Exs. 16, 24. (Owens Dep. 58:15-18).

634.    During the period Owens was Executive Producer of <u>60 Minutes</u> between February 2019 and 2025, Gavshon has reported to him. (Owens Dep. 13:9-14:2, 14:14-17, 48:23-49:6)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that Gavshon also reported to the Correspondent(s) he worked for.

149

635.    On or about September 26, 2019, Gavshon sent via text message an old photograph of himself and a friend urinating on a campfire to a female Associate Producer, Cassandra Vinograd ("Vinograd"). (Iadevaia Decl., Ex. III; id. Ex. JJJ; id. Ex. KKK)

**DEFENDANTS' RESPONSE:**    Undisputed, but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and abusiveness) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 150-164; Exs. 16, 24. After a thorough investigation led Roderick, the Company determined that Gavshon had meant to text a photo to his sister showing his childhood friend and Gavshon (*underage* at the time) urinating on their school notebooks in a campfire, as he had just returned from the funeral of that same childhood friend depicted in the picture. (Owens Dep. Tr. 50:12-52:14; 56:8-58:14; 63:4-14; Simon Dep. 324:19-326; Roderick Dep. 248:4-19; Ex. 45). Gavshon thereafter immediately apologized to his Associate Producer, texting her: "I am so sorry…I thought I sent that picture to my sister who went the [sic] funeral of my school friend…" and "So so sorry[.]." (*Id.*; Roderick Ex. 5, at 12). Gavshon then self-reported himself to Owens, Simon and HR the following day, "apologized profusely" and "didn't leave out any details." (Owens Dep. Tr. 56:8-58:14; 63:4-14; Simon Dep. 324:19-326; Ex. 45).

636.    Gavshon's penis was visible in the picture. (Owens Dep. 50:7-24; Simon Dep. 320:5-21; Iadevaia Decl., Ex. LLL ¶¶ 28, 32; Iadevaia Decl., Ex. MMM, id. Ex. JJJ, id. Ex. KKK, id. Ex. III)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact. After a thorough investigation led Roderick, the Company determined that Gavshon had meant to text a photo to his sister showing his childhood friend and Gavshon (_underage_ at the time) urinating on their school notebooks in a campfire, as he had just returned from the funeral of that same childhood friend depicted in the picture. (Owens Dep. Tr. 50:12-52:14; 56:8-58:14; 63:4-14; Simon Dep. 324:19-326; Roderick Dep. 248:4-19; Ex. 45). Gavshon thereafter immediately apologized to his Associate Producer, texting her: "I am so sorry…I thought I sent that picture to my sister who went the [sic] funeral of my school friend…" and "So so sorry[.]." (_Id._; Roderick Ex. 5, at 12). Gavshon then self-reported himself to Owens, Simon and HR the following day, "apologized profusely" and "didn't leave out any details." (Owens Dep. Tr. 56:8-58:14; 63:4-14; Simon Dep. 324:19-326; Ex. 45).

637.    On September 30, 2019, Vinograd sent an email to several CBS employees including Susan Zirinsky ("Zirinsky"), then the President of CBS News, and representatives from the Human Resources and Employee Relations departments, asking to speak about and show documentation of two "inappropriate, unprofessional, and upsetting events" that occurred at work. (Iadevaia Decl., Ex. KKK; Roderick Dep. 189:7-20, 193:12-19)

**DEFENDANTS' RESPONSE:**  Undisputed, but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and abusiveness) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 150-164; Exs. 16, 24. This same day, Gavshon self-

reported himself to Owens, Simon and HR, "apologized profusely" and "didn't leave out any details." (Owens Dep. Tr. 56:8-58:14; 63:4-14; Simon Dep. 324:19-326; Ex. 45).

638. Later that day, Vinograd spoke with Roderick and Matos, during which she told them about Gavshon sending her the inappropriate photograph and his explanation. (Iadevaia Decl., Ex. LLL ¶ 33; Iadevaia Decl., Ex. NNN)

**DEFENDANTS' RESPONSE:** Undisputed that Vinograd spoke with Roderick and Matos that day and told them about the inappropriate photograph. Disputed that Vinograd told them about Gavshon's explanation, and this assertion should be disregarded as it is unsupported by the record evidence to which Plaintiff cites, including inadmissible evidence (an unsworn and unverified court complaint), and instead relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge. Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802.

639. Vinograd reported Gavshon's excessive drinking and anger and provided HR a photograph of Gavshon passed out in her office as a result of drinking too much. (Owens Dep. 54:13-22; Roderick Dep. 173:8-16; Iadevaia Decl., Ex. LLL ¶¶ 25, 27, 33, 47, 55; Iadevaia Decl., Ex. NNN)

**DEFENDANTS' RESPONSE:** Undisputed that Vinograd complained that Gavshon had engaged in excessive drinking. The remaining allegations in this paragraph are disputed, unsupported by any record evidence, and should be disregarded. In any event, this paragraph is immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and abusiveness) and was not considered until Defendants learned of

152

her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 150-164; Exs. 16, 24.

640.    Owens spoke with HR and Zirinsky about Vinograd's complaint against Gavshon. (Owens Dep. 50:7-53:24)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact.

641.    Defendants did not suspend Gavshon for a single day even though there was photographic evidence that he engaged in inappropriate conduct and allegations of retaliation. (Owens Dep. 61:8-11; Roderick Dep. 181:2-6)

**DEFENDANTS' RESPONSE:** Disputed that there were any complaints that Gavshon had engaged in retaliation. This assertion by Plaintiff is improper argument, opinion, unsupported by the record evidence and should be disregarded. Further responding, Gavshon was removed from the office during the pendency of the investigation, and there were no allegations of retaliation against Gavshon. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 150-164; Exs. 16, 24. (Owens Dep. 54:9-12; 263:4-9; Roderick 179:14-19; Ex. Ex. 45; Ex. TTTT; Ex. 45).

642.    Defendants permitted Gavshon to continue working and advised Vinograd to stay home and avoid the workplace if she was uncomfortable working with Gavshon. (Iadevaia Decl., Ex. NNN; Iadevaia Decl., Ex. OOO; Iadevaia Decl., Ex. LLL ¶ 37)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and abusiveness) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants

153

incorporate by reference their 56.1 ¶¶ 79-81, 150-164; Exs. 16, 24. Further responding, Gavshon was removed from the office during the pendency of the investigation, and there were no allegations of retaliation against Gavshon. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 150-164; Exs. 16, 24. (Owens Dep. 54:9-12; 263:4-9; Roderick 179:14-19; Ex. Ex. 45; Ex. TTTT; Ex. 45).

643.    As a result, Vinograd had to stay home while Gavshon continued to work and interact with his colleagues as if nothing happened. (Iadevaia Decl., Ex. LLL ¶ 37)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and abusiveness) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 150-164; Exs. 16, 24. Further responding, Gavshon was removed from the office during the pendency of the investigation, and there were no allegations of retaliation against Gavshon. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 150-164; Exs. 16, 24. (Owens Dep. 54:9-12; 263:4-9; Roderick 179:14-19; Ex. Ex. 45; Ex. TTTT; Ex. 45).

644.    Additionally, Roderick told Vinograd to send a text message to Gavshon and tell him that she would be out sick for the rest of the week. (Iadevaia Decl., Ex. LLL ¶ 37)

**DEFENDANTS' RESPONSE:** Undisputed that Roderick separated Gavshon and Vinograd during the pendency of the investigation.

645.    Defendants essentially forced Vinograd to disappear from the workplace to harm her career and professional reputation. (Id. at ¶ 38)

154

**DEFENDANTS' RESPONSE:**  Disputed. Roderick separated Gavshon and Vinograd during the pendency of the investigation. Gavshon was then removed from the office during the pendency of the investigation, and there were no allegations of retaliation against Gavshon. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 150-164; Exs. 16, 24. (Owens Dep. 54:9-12; 263:4-9; Roderick 179:14-19; Ex. Ex. 45; Ex. TTTT; Ex. 45).

646.    Because of Defendants' lack of response to her concerns, Vinograd emailed Roderick again on October 2, 2019 and complained about Gavshon's sexual harassment: "I wanted to follow up on our conversation today during which I explained again the circumstances underlying the sexual harassment complaint (filed and detailed to you on Monday) and also expressed my surprise that I had been advised by HR and Compliance to say I'm sick and stay home from work - - with the result that I have effectively been suspended, while the person who harassed me (and for whom I have a photo proof of said harassment) is still at the office." (Id. ¶ 39; Iadevaia Decl., Ex. III ¶ 11; id. Ex. NNN)

**DEFENDANTS' RESPONSE:** Undisputed that Vinograd sent an email including that language. Disputed and unsupported as to Defendants' "lack of response to her concerns." Defendants incorporate by reference their 56.1 ¶¶ 79-81, 150-164; Exs. 16, 24. In any event this paragraph is immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact.

647.    In Vinograd's October 2, 2019 email to Roderick, she also said that she was "truly distressed to find [her]self in the situation of being ready, willing and able to work and yet not feeling comfortable to be in the same room as the person who was repeatedly drunk on the job and which culminated in [Gavshon] sending me a photograph of him and his penis." (Iadevaia Decl., Ex. LLL ¶ 39; Iadevaia Decl., Ex. NNN)

155

**DEFENDANTS' RESPONSE:** Undisputed that Vinograd sent this email and then Gavshon was removed from the office during the pendency of the investigation. In any event this paragraph is immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact.

648.    Vinograd returned to the office on October 8, 2019 because Roderick assured her that Gavshon would not be in the office during the alleged investigation. (Iadevaia Decl., Ex. LLL ¶ 42)

**DEFENDANTS' RESPONSE:** Undisputed that Gavshon was removed from the office during the pendency of the investigation and that Roderick informed Vinograd as such. Disputed as to the characterization of the investigation as "alleged" but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact. This paragraph should be disregarded because Plaintiff cites no admissible record evidence and instead relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge. Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802.

649.    Two days later, Gavshon called her. (Id.; Iadevaia Decl., Ex. TTTT)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact. Gavshon called the "*60 Minutes* line" and Vinograd answered. (Ex. TTTT; Roderick Dep. 239:12-21). This paragraph should be disregarded because Plaintiff cites no admissible record evidence and instead relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge. Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802.

156

650.    Vinograd felt terrified and not prepared for the nausea and anxiety from hearing Gavshon's voice. (Iadevaia Decl., Ex. LLL ¶ 42)

**DEFENDANTS' RESPONSE:** This paragraph should be disregarded because Plaintiff cites no admissible record evidence (an unsworn and unverified court complaint) and instead relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge. Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802. In any event this paragraph is immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact.

651.    Vinograd passed those concerns onto Roderick and Matos by email, stating that she "thought when [Roderick] said [Gavshon] would not be at the office during the pendency of the investigation meant/ensured [Vinograd] would not have to interact with him." (Iadevaia Decl., Ex. TTTT; id. Ex. LLL ¶ 42))

**DEFENDANTS' RESPONSE:** Undisputed that Vinograd emailed Roderick and Matos about this exchange, but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact. The remaining assertions in this paragraph should be disregarded because Plaintiff cites no admissible record evidence (an unsworn and unverified court complaint) and instead relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge. Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802.

652.    Roderick and Matos told Vinograd that Jose Andino ("Andino"), HR from NYC, would stop by her office to speak with her, but never did. (Id. at ¶ 43) Vinograd only spoke to Andino by phone when he informed Vinograd that CBS cleared Gavshon of any wrongdoing. (Id.)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and abusiveness) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 150-164; Exs. 16, 24, 45. This paragraph should be disregarded because Plaintiff cites no admissible record evidence (an unsworn and unverified court complaint) and instead relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge. Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802.

653.    On October 11, 2019, Roderick told Vinograd that HR conducted an investigation and concluded that Gavshon meant to send the photo to his sister and that it was a mistake that Vinograd received it. (Iadevaia Decl., Ex. LLL ¶ 44; see also id. Ex. LLLLL)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact.

654.    Defendants purportedly found that Gavshon drinks during events in question, but that CBS did not find Gavshon's drinking "excessive or that it impacted his work performance." (Id. at CBS 008453)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that the investigation found that during the events in question "specifically over dinner on a business trip in Hungary on or around September 19, 2019 and at lunch on Thursday September 26, 2019, we corroborated the Michael [Gavshon] had drinks at the referenced meals on the dates in question. However we did not determinate that his consumption was excessive on the dates in question. None of the witnesses

interviewed said that they had seen Michael drinking excessively during work hours or meals. Moreover, there was no corroborating evidence of impaired performance that would suggest Michael [Gavshon] was intoxicated while on duty." (Ex. 45).

655.    Defendants also "accept[ed] [Gavshon's] explanation that he sent [the] photo to [Vinograd] by accident. . . and believe[d] that [it] was an isolated incident with no malicious intent on the part of [Gavshon]." (Iadevaia Decl., Ex. JJJ; see also Roderick Dep. 257:17-258:4; Owens Dep. 58:5-14, 62:20-63:14; Iadevaia Decl., Ex. LLLLL)

**DEFENDANTS' RESPONSE**: Undisputed, but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact. After a thorough investigation led Roderick, the Company determined that Gavshon had meant to text a photo to his sister showing his childhood friend and Gavshon (underage at the time) urinating on their school notebooks in a campfire, as he had just returned from the funeral of that same childhood friend depicted in the picture. (Owens Dep. Tr. 50:12-52:14; 56:8-58:14; 63:4-14; Simon Dep. 324:19-326; Roderick Dep. 248:4-19; Ex. 45). Gavshon thereafter immediately apologized to his Associate Producer, texting her: "I am so sorry…I thought I sent that picture to my sister who went the [sic] funeral of my school friend…" and "So so sorry[.]." (Id.; Roderick Ex. 5, at 12). Gavshon then self-reported himself to Owens, Simon and HR the following day, "apologized profusely" and "didn't leave out any details." (Owens Dep. Tr. 56:8-58:14; 63:4-14; Simon Dep. 324:19-326; Ex. 45).

656.    Stahl told Poolos that Vinograd was fabricating the allegations against Gavshon to get "money." (Poolos Decl. ¶ 116; Poolos Dep. 36:12-25) Stahl also said she did not believe that Gavshon did anything wrong and that Vinograd was trying to destroy his career. (Poolos Decl. ¶ 116 ; Poolos Dep. 36:12-25)

**DEFENDANTS' RESPONSE**: Disputed, but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact. This paragraph should be disregarded as Plaintiff's deposition testimony contradicts her "sham affidavit" filed in opposition to summary judgment. (*Compare* Poolos Decl. ¶ 116 ; Poolos Dep. 36:12-25). Further, Stahl testified that she has never worked with Gavhson, does not know who complained about him, has no understanding of the allegations that were made against him, and that she did not make any of the statements Plaintiff claims in this paragraph or even words to the effect. (Stahl Dep. 53:5-20; 183:9-187:4).

657.    Owens could have taken disciplinary action against Gavshon in connection with Vinograd's complaint concerning the picture of Gavshon's penis and inappropriate drinking, but he chose not to do so. (Owens Dep. 271:5-15)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and abusiveness) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 150-164; Exs. 16, 24. Further responding, the investigation, which concluded in 2019, did not conclude that Gavshon had engaged in inappropriate drinking and determined that Gavshon had meant to text a photo to his sister showing his childhood friend and Gavshon (*underage* at the time) urinating on their school notebooks in a campfire, as he had just returned from the funeral of that same childhood friend depicted in the picture. (Owens Dep. Tr. 50:12-52:14; 56:8-58:14; 63:4-14; Simon Dep. 324:19-326; Roderick Dep. 248:4-19; Ex. 45).

160

658. Owens testified that Gavshon "is one of the best 60 Minutes producers of all time" and that he "would consider [Gavshon] a friend." (Owens Dep. 49:10-19) Owens also testified he "believed [] Gavshon to be telling the truth" about accidentally sending Vinograd the picture "because [Gavshon] was a long-time producer with a great record." (Owens Dep. 62:20-63:14)

**DEFENDANTS' RESPONSE:** The first sentence in this paragraph is undisputed, and the statement in the second sentence that Owens believed Gavshon was telling the truth is also undisputed. Dispute the insinuation that Owens only believed Gavshon was telling the truth because he was a long-time producer with a great record. (Owens Dep. Tr. 56:8-58:14; 63:4-14; 266:12-14).

659. Following the investigation concerning Gavshon's photo, CBS told Vinograd that it was her responsibility to work with Gavshon to "repair" their relationship. (Iadevaia Decl., Ex. LLL ¶ 48))

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact. As evidenced by the investigation closure letter to Vinograd, the Company proposed a "workplace mediation process" with an outside mediator "to restore your working relationship to a point where you feel comfortable working with [Gavshon], both in the Bureau and elsewhere." (Ex. 45; Roderick Dep. 264:8-14). The paragraph should be disregarded because Plaintiff cites no admissible record evidence (an unsworn and unverified court complaint) and instead relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge. Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802.

161

660.    Defendants failed to offer Vinograd guidance beyond the statement to work it out with Gavshon. (Iadevaia Decl., Ex. LLL ¶ 50))

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact. As evidenced by the investigation closure letter to Vinograd, the Company proposed a "workplace mediation process" with an outside mediator "to restore your working relationship to a point where you feel comfortable working with [Gavshon], both in the Bureau and elsewhere." (Ex. 45; Roderick Dep. 264:8-14). The paragraph should be disregarded because Plaintiff cites no admissible record evidence (an unsworn and unverified court complaint) and instead relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge. Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802.

661.    Vinograd alleged that after she made her gender discrimination and sexual harassment complaint, Gavshon retaliated against her, including that Gavshon stripped her of all work responsibilities. (Iadevaia Decl., Ex. LLL ¶¶ 49-55; Iadevaia Decl., Ex. OOO)

**DEFENDANTS' RESPONSE:** Disputed. Vinograd specifically requested to work for a different supervisor. As such, HR recommended to Owens that Vinograd not work with Gavshon anymore, and Owens accepted the recommendation. (Owens Dep. 59:11-20; 62:2-19). The paragraph should be disregarded because Plaintiff cites no admissible record evidence (an unsworn and unverified court complaint) and instead relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge. Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802.

662.    CBS failed to give Vinograd a single assignment and consistently excluded Vinograd from work meetings, calls and emails. (Iadevaia Decl., Ex. LLL ¶ 52)

**DEFENDANTS' RESPONSE:** Disputed. Vinograd specifically requested to work for a different supervisor. As such, HR recommended to Owens that Vinograd not work with Gavshon anymore, and Owens accepted the recommendation. (Owens Dep. 59:11-20; 62:2-19). The paragraph should be disregarded because Plaintiff cites no admissible record evidence (an unsworn and unverified court complaint) and instead relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge. Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802.

663.    Gavshon stopped sending Vinograd any information about ongoing 60 Minutes stories and removed her from segments she either originated or played a significant role in. (Id. ¶ 53)

**DEFENDANTS' RESPONSE:** Disputed. Vinograd specifically requested to work for a different supervisor. (CBS 008821). As such, HR recommended to Owens that Vinograd not work with Gavshon anymore, and Owens accepted the recommendation. (Owens Dep. 59:11-20; 62:2-19). The paragraph should be disregarded because Plaintiff cites no admissible record evidence (an unsworn and unverified court complaint) and instead relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge. Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802.

664.    Gavshon also started using two young women to perform some of Vinograd's stories. (Id. ¶ 55)

163

**DEFENDANTS' RESPONSE:** Disputed. The paragraph should be disregarded because Plaintiff cites no admissible record evidence (an unsworn and unverified court complaint) and instead relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge. Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802.

665. Vinograd filed a lawsuit against CBS alleging claims of gender discrimination and retaliation. (See Iadevaia Decl., Ex. LLL)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that Vinograd did not assert claims of retaliation by Gavshon.

666. Gavshon continues to work for Defendants. (Owens Dep. 48:9-11, 271:5-15; Simon Dep. 320:5-9)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that Gavshon works for *60 Minutes* and is employed by CBS News.

667. Defendants did not investigate Vinograd's allegations of retaliation contrary to their policy. (See Iadevaia Decl., Ex. JJJ; Roderick Dep. 177:8-10, 265:24-266:9; Owens Dep. 272:9-12)

**DEFENDANTS' RESPONSE**: Disputed. Vinograd never raised any retaliation complaint against Gavshon, did not raise concerns of retaliation by others until her complaint filed in New York state court, and the contents of the resulting investigation are privileged. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 150-164; Exs. 16, 24, 45.

668. Defendants took no disciplinary action against Gavshon in connection with Vinograd's allegations of misconduct. (Owens Dep. 271:13-15, Roderick Dep. 181:2-6)

164

**DEFENDANTS' RESPONSE:** Undisputed that Gavshon was not terminated, but immaterial to Defendants' motion for summary judgment because it does not raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and abusiveness) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 150-164; Exs. 16, 24.

669.    Ultimately, Vinograd resigned from 60 Minutes following her complaints of discrimination and retaliation. (Iadevaia Decl., Ex. UUUU ¶ 37; see also Owens Dep. 60:15-22, 62:20-63:3)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that Vinograd resigned after her complaint to take start a another job, and that she never raised any retaliation complaint against Gavshon. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 150-164; Exs. 16, 24, 45.

B.  Ira Rosen

670.    During Ira Rosen's tenure at 60 Minutes, he was a Producer and he reported to Fager and Owens. (Owens Dep. 256:9-10)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that Rosen did not report to Owens until he became Executive Producer in 2019. Defendants incorporate by reference their 56.1 ¶¶ 142-144.

671.    ███████ ████████ ("████████ worked for CBS from August 2014 to July 2016 as an AP and reported to Rosen. (Iadevaia Decl., Ex. VVVV ¶ 11; Iadevaia Decl., Ex. WWWW)

165

**DEFENDANTS' RESPONSE:** Undisputed that ▮▮▮▮▮ was employed from August 2014 until July 31, 2016 as an AP. Disputed that ▮▮▮▮▮ reported to Rosen during that entire timeframe. After ▮▮▮▮▮ complained in March 2016 that Rosen engaged in "unethical journalism" and made inappropriate comments, ▮▮▮▮▮ was offered the opportunity to switch teams and work with any of three Producers. (Ex. ZZZZ, at CBS 8491-8492, 8516-8518). ▮▮▮▮▮ began working for Producer Katherine Davis shortly thereafter and reported to Davis until her resignation in July 2016. (*Id*. at CBS 8491-8492). In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

672.    Rosen sexually harassed and discriminated against ▮▮▮▮▮ his former Associate Producer, throughout the course of her employment with Defendants. (See Iadevaia Decl., Ex. VVVV ¶¶ 19-28, 32-36, 38-42))

**DEFENDANTS' RESPONSE:** Undisputed that Rosen did not treat ▮▮▮▮▮ well, was dismissive and unprofessional. The remainder of the assertions in this paragraph are disputed but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-144. After a thorough investigation, the CBS Law Department was unable to substantiate ▮▮▮▮▮ claims, and the EEOC similarly dismissed that charge finding that "[b]ased upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes." (Zuckerman Reply Decl., Ex. 4, at CBS 8522; Ex. ZZZZ, at CBS CBS 8491-8492). This paragraph should be disregarded because Plaintiff relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge. Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802. Further

166

responding, despite that Plaintiff claims she was aware of ▓▓▓▓▓ complaint, Plaintiff disparaged ▓▓▓▓▓ to Richards in a recorded phone conversation on December 23, 2021. In particular, Poolos tells Richards: "▓▓▓▓ [▓▓▓▓▓ was *the worst*." (emphasis in original). (Ex. KK, "Dunlavin Dr 5.m4a" beginning at 0:30 seconds).

673.    Rosen also retaliated against ▓▓▓▓ for objecting to violations of CBS's ethical standards and later retaliated against her for filing an EEOC charge about his treatment of her. (See id. ¶¶ 13-15, 18-26, 28-53)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-144. This paragraph is unsupported by the record evidence to which Poolos cites, and it should be disregarded, including because ▓▓▓▓ did not allege that Rosen retaliated against her, and because ▓▓▓▓ did not work for or with Rosen at the time she filed an EEOC charge in June 2016. (Ex. ZZZZ; Ex. VVVV, at CBS 8457). This paragraph should also be disregarded because Plaintiff cites no admissible record evidence and instead relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge. Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802. After a thorough investigation, the CBS Law Department was unable to substantiate ▓▓▓▓ claims, and the EEOC similarly dismissed that charge finding that "[b]ased upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes." (Zuckerman Reply Decl., Ex. 4, at CBS 8522). Plaintiff admitted at her deposition that she does not know whether Rosen had been found by the Company to have engaged in retaliation (Poolos Dep. 197:11-198:17). Plaintiff

167

also admitted at her deposition that she does not know whether Rosen lied during the course of an investigation. (Poolos Dep. 197:11-198:9).

674.    During ████████ interview with Rosen and throughout her tenure, Rosen' frequently asked about whether she was planning on having additional children; he commented about other former women AP's reproductive choices, and made disparaging comments about women in the industry who had become pregnant; and she had to repeatedly assure him that she was not pregnant. (Id. ¶¶ 8, 13, 15, 18)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-144. This paragraph should also be disregarded because Plaintiff relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge. Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802.

675.    ████████ learned that Rosen made similar comments to another former AP. (Id. ¶ 14)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. Defendants incorporate by reference their 56.1 ¶¶ 142-144. This paragraph should also be disregarded because Plaintiff relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge. Such inadmissible hearsay (on hearsay) may not be considered on this motion. Fed. R. Evid. 602, 801, 802.

676.    According to ███████ Rosen "began a pattern of sexualized violence toward [her] soon after [she] began working at CBS." (Id. ¶ 19) For example, Rosen squeezed ███████ upper thigh during meetings "sometimes to the point of pain." (Id. ¶ 19) In November 2015, Rosen asked ███████ for a hug saying "I just need some touch."  (Id. ¶ 21) In February 2016, Rosen groped ███████ breast while sitting beside him on a couch editing a story. (Id. ¶ 22)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-144. This paragraph should also be disregarded because Plaintiff relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge. Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802.

677.    According to ███████ Rosen also regularly used sexual epithets when discussing female professionals such as "[m]ake sure you keep an eye on her, she is so dumb she would fuck up a wet-dream." (Id. ¶ 23) On another occasion, Rosen made a remark about a translator he learned was from Brazil that it "would explain the ass. An American woman wouldn't have an ass like that." (Id. ¶ 25)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-144. This paragraph should also be disregarded because Plaintiff relies on argument, opinion, and out-of-court statements offered for

the truth of the matter asserted, as to which Plaintiff lacks personal knowledge. Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802.

678.   Rosen also encouraged ▮▮▮▮▮ to "take advantage of [other employee's] sexual interest [in her] to advance the goals of [Defendants'] production team and [▮▮▮▮▮] career. (Id. ¶ 32) When ▮▮▮▮▮ was invited to have lunch with Charlie Rose about her ideas relating to Pakistan, Rosen told ▮▮▮▮▮ "Don't be naïve. [Charlie Rose] doesn't want to talk about Pakistan with you. He just wants to sleep with you." (Id. ¶ 33) On another occasion, Rosen told ▮▮▮▮▮ that Fager thought it was a good idea for ▮▮▮▮▮ to cover a story on former President Bill Clinton because she could "work" President Clinton and Rosen told ▮▮▮▮▮ to "be charming." (Id. ¶ 34)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-144. This paragraph should also be disregarded because Plaintiff relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge. Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802.

679.   According to ▮▮▮▮▮ Rosen made other inappropriate comments about women at 60 Minutes including that he would send his former AP to Owens when he needed something because "she is very pretty you know, so [Rosen] figured he would enjoy talking to her." (Id. ¶ 38)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-144. This paragraph should also be

170

disregarded because Plaintiff relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge. Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802.

680.    On another occasion, Rosen told ▉▉▉▉ that she needed to be more like Diane Sawyer because "when [Sawyer] was talking to a man it felt like she was fucking you with her eyes. And look where she is now." (Id. ¶ 41)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-144. This paragraph should also be disregarded because Plaintiff relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge. Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802.

681.    ▉▉▉▉ first raised her concerns about Rosen's flouting of CBS's journalistic standards to Executive Director of Recruitment and Development Alison Pepper ("Pepper") during ▉▉▉▉ performance review on March 14, 2016. (See id. ¶ 60) Pepper encouraged ▉▉▉▉ to speak to Owens. (See id. ¶ 60)

**DEFENDANTS' RESPONSE**: Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-144. (Ex. ZZZZ, at CBS 08491). This paragraph should also be disregarded because Plaintiff relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal

knowledge. Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802.

682.    ████████ then spoke with Owens on March 16, 2016, during which discussion ████████ told Owens about Rosen's harassing, discriminatory, and retaliatory behavior, and Owens asked ████████ to provide five or six examples in a written complaint. (Id. ¶ 61)

**DEFENDANTS' RESPONSE**: Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-144. During this discussion, ████████ raised concerns to Owens about her performance review and Rosen's editorial standards. (Ex. ZZZZ, at CBS 08491; Owens Dep. 245:8-22). This paragraph should also be disregarded because Plaintiff relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge. Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802.

683.    ████████ provided Owens with a written complaint the following day that included information about Rosen's retaliation and discrimination. (Id. ¶ 62) Thereafter, Owens and Fager met with ████████ to discuss her complaint. (Id. ¶ 63)

**DEFENDANTS' RESPONSE**: Undisputed that ████████ sent Owens a written complaint on March 17, 2016 alleging that Rosen engaged in "unethical journalism" and made inappropriate comments. Disputed that this complaint, which speaks for itself, raised any allegations of retaliation. (Ex. ZZZZ, at CBS 8516-8518; Owens Dep. 245:8-22). In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he

172

terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-144. This paragraph should also be disregarded because Plaintiff relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge. Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802.

684.    While Fager apologized for Rosen's behavior, he told ▮▮▮▮ that Pepper would place her on a new production team. They suggested that ▮▮▮▮ should be the one to tell Rosen that she was being taken off his team. (Id. ¶ 64) ▮▮▮▮ told them that she was afraid to because of Rosen's temper. (Id.)

**DEFENDANTS' RESPONSE**: Undisputed that Fager apologized to ▮▮▮▮ and that ▮▮▮▮ was offered the opportunity to switch teams and work with any of three Producers. (Ex. ZZZZ, at CBS 8491-8492, 8516-8518). ▮▮▮▮ began working for Producer Katherine Davis shortly thereafter. (*Id*. at CBS 8491-8492). The remaining assertions in this paragraph are disputed but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-144. This paragraph should also be disregarded because Plaintiff relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge. Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802.

685.    Defendants did not suspend Rosen upon learning of ▮▮▮▮ allegations against him. (Owens Dep. 216:15-217:5)

**DEFENDANTS' RESPONSE**: Undisputed that Fager did not suspend Rosen. Dispute any insinuation that Owens had the authority to suspend Rosen in 2016, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-144.

686.    On March 29, 2016, Owens, Fager, and Weinstein met with ▮▮▮▮ and for the first time during ▮▮▮▮ tenure, gave her negative feedback about her performance. (Iadevaia Decl., Ex. VVVV ¶¶ 65-67) According to ▮▮▮▮ those performance concerns were meritless. (Id.)

**DEFENDANTS' RESPONSE**: Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-144. This paragraph should also be disregarded because Plaintiff relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge. Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802.

687.    On March 31, 2016, ▮▮▮▮ emailed Pepper asking for an update on her new work assignment. (Id. ¶ 72) Pepper responded that it would likely be another month before Defendants placed ▮▮▮▮ on another team, leaving ▮▮▮▮ with little work (Id. ¶¶ 72-73)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-144. This paragraph should also be

174

disregarded because Plaintiff relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge. Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802.

688.    On April 6, 2016, Pepper called ▮▮▮▮ to her office and told her that ▮▮▮▮ was not allowed to talk about why she left Rosen's team because "it was upsetting" Rosen. (Id. ¶ 74)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-144 (Ex. ZZZZ). This paragraph should also be disregarded because Plaintiff relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge. Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802.

689.    ▮▮▮▮ contacted Defendants through counsel on April 14, 2016 and complained that she had been subjected to a hostile work environment based on her gender and her sex and that she had been retaliated against by Defendants' executives for raising violations of Defendants' ethical standards for journalists.  (Iadevaia Decl., Ex. XXXX)

**DEFENDANTS' RESPONSE**: Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-144.

690.    By email dated May 2, 2016, ▮▮▮▮ complained to Pepper. (Iadevaia Decl., Ex. YYYY at CBS 008527) ▮▮▮▮ explained to Pepper that some of stories were under Rosen's

name and that they were "very much [her] stories and [her] sources agreed to do this story because they trust [her]." (Id.) ██████ added that if she did not work on the story, the sources would go elsewhere. (Id.) ██████ reiterated that she would love to be able to work on the stories and that Andy Court ("Court") would consider having ██████ work on it with her with Court being the main producer and ██████ co-producing it. (Id.)

**DEFENDANTS' RESPONSE**: Undisputed that ██████ responded to Pepper's email on May 2, 2016. Plaintiff's characterization of this email is disputed, argumentative, and not supported the record evidence to which Plaintiff cites, and it should be disregarded. (Ex. YYYY). In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-144 (Ex. ZZZZ).

691.   The following day, Pepper told ██████ that Court had denied ever speaking to ██████ about a particular story in depth and to go meet with Fager or Owens to go over it. (Id. at CBS 008526)

**DEFENDANTS' RESPONSE**: Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-144.

692.   In response to Pepper's May 3, 2016 email, ██████ wrote that she suggested working under Court's supervision "because the three options [60 Minutes] presented [her] with are, to say the least, a demotion." (Id. at CBS 008526) ██████ also commented about working with Alan Goldberg, expressing concern because he had "a well-known reputation for being

176

verbally abusive" and that 60 Minutes' suggestion that she work for Alan "after enduring [Rosen's] sexual harassment and abusive behavior for almost two years is nothing short of retaliatory." (Id.)

**DEFENDANTS' RESPONSE**: Undisputed that Plaintiff quotes an email from May 3, 2016. Disputed as to the underlying assertion in this email, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-144 (Ex. ZZZZ).

693.    ▮▮▮▮ then filed a complaint with the EEOC in June 2016 alleging, in part, that Rosen had sexually harassed her and discriminated against her on the basis of her gender.  (Iadevaia Decl., Ex. VVVV) ▮▮▮▮ EEOC Charge detailed Rosen's above-described conduct. (Id.)

**DEFENDANTS' RESPONSE**: Undisputed that ▮▮▮▮ filed a charge with the EEOC on June 2016 alleging sex discrimination and harassment by Rosen. Disputed that the charge details all of the "above-described conduct." (Ex. VVVV). On January 1, 2017, the EEOC dismissed that charge finding that "[b]ased upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes." (Zuckerman Reply Decl., Ex. 4, at CBS 8522; Ex. ZZZZ).

694.    She further alleged that after she reported the discrimination, Defendants removed her from assignments and subjected her to baseless criticisms. (Iadevaia Decl., Ex. VVVV ¶¶ 1, 71-78))

**DEFENDANTS' RESPONSE**: Undisputed that ▮▮▮▮ filed a charge with the EEOC on June 2016. Disputed as to the underlying allegations, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once

Owens became Executive Producer and had the authority, he terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-144. (Ex. ZZZZ).

On January 1, 2017, the EEOC dismissed that charge finding that "[b]ased upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes." (Zuckerman Reply Decl., Ex. 4, at CBS 8522; Ex. ZZZZ). This paragraph should also be disregarded because Plaintiff relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge. Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802.

695.    On October 13, 2016, Defendants submitted a Position Statement to the EEOC regarding ▮▮▮▮▮▮ Charge of Discrimination. (Iadevaia Decl., Ex. ZZZZ)

**DEFENDANTS' RESPONSE**: Undisputed, with the clarification that the Position Statement was submitted on behalf of CBS Corporation, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-144. (Ex. ZZZZ).

696.    Throughout Defendants' Position Statement, Defendants made it clear that they credited Rosen, a man, over ▮▮▮▮▮▮ a woman. For example, in denying ▮▮▮▮▮▮ allegations, Defendants say that Rosen denied ever asking ▮▮▮▮▮▮ about her plans for children and childcare arrangement (Id. at CBS 008483); that Rosen "has no specific memory" of discussing a former AP's pregnancy issues with ▮▮▮▮▮▮ (Id.); that Rosen denied he had inappropriate physical contact with ▮▮▮▮▮▮ and that "he never put his hand on her thighs or breast" and that Rosen "identifies himself as an orthodox Jew" and it would be counter to his religious beliefs for him to touch []▮▮▮▮▮▮ in the manner alleged" (Id. at CBS 008485); that Rosen "denie[d] engaging in any

inappropriate sex talk with [] ▮▮▮▮▮ (Id.); and that Rosen "unequivocally denie[d] the allegations that he 'routinely used sexual epithets when discussing female assistants and other women'" (Id. at CBS 008486).

**DEFENDANTS' RESPONSE**: Undisputed that a position statement was filed on behalf of CBS Corporation, disputed as to Plaintiff's argumentative characterization of the position statement, which speaks for itself, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-144. (Ex. __ [EEOC Position Statement]). On January 1, 2017, the EEOC dismissed that charge finding that "[b]ased upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes." (Zuckerman Reply Decl., Ex. 4 , at CBS 8522; Ex. ZZZZ).

697.    On June 27, 2016, ▮▮▮▮▮ complained to Defendants through counsel that Rosen had retaliated against her because she had complained about discrimination and sexual harassment by CBS and Rosen in particular. (Iadevaia Decl., Ex. AAAAA) Specifically, ▮▮▮▮▮ counsel said that Defendants, including Rosen, retaliated against ▮▮▮▮▮ by "severely ostraciz[ing] her so that work colleagues whom would normally interact with her in the past, walk the other way, ignore her, look down at the ground, make faces at her, etc." (Id. at CBS 008528)

**DEFENDANTS' RESPONSE**: Undisputed that ▮▮▮▮▮ attorney emailed in-house counsel on June 27, 2016, disputed as to the underlying allegations and Plaintiff's argumentative characterization of that email, which speaks for itself, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he terminated Rosen's employment.

179

Defendants incorporate by reference their 56.1 ¶¶ 142-144. (Ex. ZZZZ). This paragraph should be disregarded as the evidence to which Plaintiff cites does not support the assertion that Rosen retaliated against her and, instead, blames the "the senior management at CBS/60Minutes."

698.    ███████ counsel also told Defendants that more recently, at a year-end party, "Rosen sat right next to [███████ and intimidated her." (Id.) Additionally, that Rosen's hostile conditions had existed for several weeks and were "making it impossible for [] ███████ to function at work in a productive and efficient manner." (Id.) ███████ counsel explained that the conduct of Rosen and other employees was "also retaliation against [] ███████ for complaining about the discrimination and sexual harassment by the company and its senior management, particularly [] Rosen." (Id.)

**DEFENDANTS' RESPONSE**: Undisputed that ███████ attorney emailed in-house counsel on June 27, 2016, disputed as to the underlying allegations and Plaintiff's argumentative characterization of that email, which speaks for itself, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-144. (Ex. ZZZZ).

699.    ███████ counsel concluded that "the work environment at 60 Minutes is so hostile, and combined with the poor junior level work assignments that [███████ [was] being given, it is very evidence that the 60 Minutes' senior management ha[d] constructively discharged her." (Id. at 008528-29)

**DEFENDANTS' RESPONSE**: Undisputed that ███████ attorney emailed in-house counsel on June 27, 2016, disputed as to the underlying allegations and Plaintiff's argumentative characterization of that email, which speaks for itself, but immaterial to Defendants' motion for

180

summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-144. (Ex. ZZZZ).

700.    Defendants did not take any disciplinary action, including suspending Rosen, at any point in time despite ████████ allegations of sexual harassment and retaliation. (Owens Dep. 257:6-15)

**DEFENDANTS' RESPONSE**: Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-144.

701.    On or about July 21, 2016, because of Rosen's unlawful conduct, including sexual harassment, race discrimination, retaliation based on her complaints of discrimination, harassment, and unethical conduct, and Defendants' failure to remedy the misconduct, ████████ resigned. (Iadevaia Decl., Ex.  WWWW) ████████ alleged that Defendants had subjected her to a constructive discharge. (Id.) ████████ sent her email about her resignation to Fager and Owens. (Id.)

**DEFENDANTS' RESPONSE**: Undisputed that ████████ submitted her resignation effective July 31, 2016 by email an email sent on July 21, 2016, disputed as to the underlying allegations and Plaintiff's argumentative characterization of that email, which speaks for itself, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-144. The

181

assertion in this paragraph that ██████ alleged that Rosen retaliated against her should be disregarded as the evidence to which Plaintiff cites does not support that assertion.

702.    Owens was also aware of ██████ complaints against Rosen, including ██████ complaints that Rosen sexually harassed her for years. (Iadevaia Decl., Ex. YYYY; Owens Dep. 247:11-15, 251:19-253:20) ██████ had reported to Owens at the time of ██████ EEOC filing. (Owens Dep. 256:2-8)

**DEFENDANTS' RESPONSE**: Undisputed that ██████ reported to Owens, and that he became aware of certain of ██████ complaints, disputed as to Plaintiff's argumentative characterization of Owens' knowledge, but immaterial but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-144. (Owens Dep. 245:2-247:10).

703.    Fager and Owens forwarded their email to in-house counsel for Defendants, Mark Engstrom ("Engstrom"). (Iadevaia Decl., Ex. YYY)

**DEFENDANTS' RESPONSE**: Undisputed that ██████ resignation email was escalated to in-house counsel, Engstrom, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-144.

704.    In response to ██████ email, Engstrom sent an email to ██████ counsel.  In that email, Engstrom asserted that Defendants "fully investigated" ██████ misconduct allegations and "ha[d] found no merit to any of her claims." (Iadevaia Decl., Ex. BBBBB)

182

**DEFENDANTS' RESPONSE**: Undisputed that the CBS Law Department investigated ▮▮▮▮ concerns, and that Engstrom emailed ▮▮▮▮ counsel on July 22, 2016. Disputed as to the underlying allegations and Plaintiff's argumentative characterization of that email, which speaks for itself, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-144. (Ex. ZZZZ).

705.    Not only did Defendants deny the allegations, but then it accused ▮▮▮▮ of misconduct, including that she was supposedly "abusive to other employees," "delegated her work excessively," and misrepresented facts to her colleagues." (Id.)

**DEFENDANTS' RESPONSE**: Undisputed that Engstrom emailed ▮▮▮▮ counsel on July 22, 2016. Disputed as to Plaintiff's argumentative characterization of that email, which speaks for itself, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-144. (Ex. ZZZZ). Further responding, despite that Plaintiff claims she was aware of ▮▮▮▮ complaint, Plaintiff disparaged ▮▮▮▮ to Richards in a recorded phone conversation on December 23, 2021. In particular, Poolos tells Richards: "▮▮▮▮ [▮▮▮▮ was *the worst*." (emphasis in original). (Ex. KK, "Dunlavin Dr 5.m4a" beginning at 0:30 seconds).

706.    Another former female Associate Producer, ▮▮▮▮ ▮▮▮▮ ("▮▮▮▮ reported to CBS in 2017 that Rosen sexually harassed her. (Iadevaia Decl., Ex. CCCCC; id. Ex. DDDDD; Owens Dep. 30:7-14, 33:20-34:7; Poolos Dep. 264:7-265:4, 369:6-14, 369:22-370:15)

**DEFENDANTS' RESPONSE**: Undisputed that ▮▮▮▮▮ is a former Associate Producer who worked for *60 Minutes* until approximately 2014, and that her counsel contacted Engstrom about Rosen in 2017. (Owens Dep. 33:16-19). The remaining assertions in this paragraph are disputed, unsupported by the record evidence to which Plaintiff cites and should be disregarded, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-144. This paragraph should also be disregarded because Plaintiff cites to inadmissible evidence, relying on argument, opinion, and protected settlement-related negotiations, which are under F.R.E 408.

707.    ▮▮▮▮▮ worked for CBS from approximately 2008 to 2014 as an Associate Producer and reported directly to Rosen and Owens. (Owens Dep. 33:16-19)

**DEFENDANTS' RESPONSE**: Undisputed, but  immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-144.

708.    CBS also retaliated against ▮▮▮▮▮ when she made complaints of discrimination involving Rosen. (Poolos Dep. 264:7-265:4, 369:6-14, 369:22-370:15) After ▮▮▮▮▮ made her complaints when she still worked for Defendants, Owens took away stories from ▮▮▮▮▮ and harassed her. (Poolos Dep. 369:22-370:15, 382:24-384:14) After she left Defendants, when there was a negative story about CBS News and 60 Minutes, Defendants' lawyers called ▮▮▮▮▮ to find out if she was leaking information. (Id.)

**DEFENDANTS' RESPONSE:** Undisputed that ▮▮▮▮▮ counsel contacted Engstrom in 2017. Disputed that ▮▮▮▮▮ complained when she still worked for *60 Minutes* until 2014, or

that Owens or the Company was aware of any complaints from ████████ during her employment. (Owens Dep. 33:8-34:24; Simon Dep. 137:4-18). The disputed argumentative assertions in this paragraph should be disregarded because as Plaintiff admits they are based solely on out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge. (Poolos Dep. 247:16-248:2; 264:7-265:7). Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802. In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-144. Further responding, the Court has already ruled in this case that any alleged complaints prior to January 1, 2015 are wholly irrelevant to this case—even under Rule 26's less stringent discovery standard permitting discovery of information "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26.

709.    Defendants claimed that ████████ claims were meritless because Rosen denied her allegations. (see Iadevaia Decl., Ex. DDDDD)

**DEFENDANTS' RESPONSE**: Disputed, but  immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-144.  This paragraph should be disregarded both because it is unsupported by the document to which Plaintiff cites, and because Plaintiff cites to inadmissible evidence, relying on argument, opinion, and protected settlement-related negotiations, which are inadmissible under F.R.E 408.

710.    ████████ resigned after enduring Rosen's discriminatory and retaliatory conduct. (Owens Dep. 34:18-22)

**DEFENDANTS' RESPONSE:** Disputed, but  immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-144. This paragraph should be disregarded because it is unsupported by the record evidence to which Plaintiff cites. As Owens testified, ████████ left voluntary to take a "[b]etter job." (Owens Dep. 34:18-22).

711.    Owens was aware of ████████ complaints of sexual harassment against Rosen by May 3, 2016, including that ████████ alleged Rosen touched her without her consent. (Owens Dep. 252:24-253:6, 256:11-15) Yet, Rosen remained at 60 Minutes for over two years after that. (Owens Dep. 253:17-20)

**DEFENDANTS' RESPONSE:** Undisputed that Rosen's employment at *60 Minutes* was terminated by Owens. The remainder of the assertions of this paragraph are disputed and unsupported, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-147. The disputed assertions in this paragraph should be disregarded because it is unsupported by the record evidence to which Plaintiff cites. (Owens Dep. 252:24-253:6, 256:11-257:15).

712.    Rosen remained employed at CBS until 2020. (Iadevaia Decl., Ex. HHH)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once

186

Owens became Executive Producer and had the authority, he terminated Rosen's employment in 2019. Defendants incorporate by reference their 56.1 ¶¶ 142-147. This paragraph should also be disregarded as it is argumentative, opinion, and unsupported by the record evidence to which Plaintiff cites.

713.    Owens claims that he told Rosen that he did not intend to renew his contract. (Owens Dep 27:19-28:8; 13:9-14:2, 14:14-17).

**DEFENDANTS' RESPONSE:** Undisputed that Rosen's employment was terminated by Owens. The remaining assertions in this paragraph are disputed and should be disregarded because it is unsupported by the record evidence to which Plaintiff cites. (Owens Dep 27:19-28:8; 13:9-14:2, 14:14-17).

714.    Owens testified that he decided to end Rosen's employment because, inter alia, Owens did not think Rosen "treated people well," including how he treated his former Associate Producers ████████ and ████████ (Owens Dep. 27:19-28:20, 28:24-31:3)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that once Owens became Executive Producer and had the authority, he terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-144.

715.    Owens allowed Rosen to remain on "pay or play" status between his last day of active employment, July 12, 2019, and the end of his contract on April 4, 2020. (Iadevaia Decl., Ex. HHH)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-144.  This paragraph should be disregarded

187

because it is unsupported by the record evidence to which Plaintiff cites. As Owens testified, he is not involved in the decision about whether to offer a departing *60 Minutes* employee severance, and is not familiar with "pay or play." (Owens Dep. 37:8-18).

716.    A "pay or play" status is when Defendants agree to pay an employee, even if the employee's services are not used. (Poolos Decl. ¶ 107; see also Iadevaia Decl., Ex. RR ¶¶ 2(d), 3(e) ("Nothing herein contained shall be deemed to obligate CBS to use Artist's services hereunder or to broadcast any program, and CBS shall have fully discharged its obligations hereunder by payment to Artist of any applicable compensation due Artist hereunder"); id. Ex. HHH)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he terminated Rosen's employment, and Rosen was not paid severance. Defendants incorporate by reference their 56.1 ¶¶ 142-147. This paragraph should be disregarded as its relies on argument, legal opinion, and is unsupported by the documents to which Plaintiff cites.

717.    Rosen thus was paid for almost nine months past the date Defendants notified him that his contract would not be renewed, during which time he was not performing work. (Iadevaia Decl., Ex. HHH; Owens Dep. 36:17-21)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because once Owens became Executive Producer and had the authority, he terminated Rosen's employment. Defendants incorporate by reference their 56.1 ¶¶ 142-144. This paragraph should be disregarded as its relies on argument, legal opinion, and no record evidence that supports Plaintiff's assertions. Defendants incorporate by reference their 56.1 ¶ 147; Ex. 10, at ¶ 28.

718.    Poolos was not offered any such arrangement. (Poolos Decl. ¶ 107)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. Further responding, because Owens had renewed Plaintiff's three-year contract on May 30, 2021, her contract would not have expired until May 25, 2024 (27+ months after her termination). (Ex. 42, at ¶ 2(a)). Defendants incorporate by reference their 56.1 ¶ 147; Ex. 10, at ¶ 28.

719.    Rosen's personnel records indicate that he left Defendants based on a "mutual resignation." (Iadevaia Decl., Ex. at CBS 008245)

**DEFENDANTS' RESPONSE**: Undisputed that a Employee Data Change Form from July 12, 2019 contains the words "mutual resignation." Disputed that Rosen resigned, as Owens terminated his employment. Defendants incorporate by reference their 56.1 ¶¶ 142-147.

720.    Additionally, another woman reported Rosen's and Fager's conduct to CBS's Legal department but the Legal department did not take her seriously. (Iadevaia Decl., Ex. QQQ at CBS 009407; id. Ex. DDDDD)

**DEFENDANTS' RESPONSE:** Undisputed that ████████ complained to CBS' Legal department in 2017 through counsel, years after her resignation, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because both Rosen and Fager were terminated. Defendants incorporate by reference their 56.1 ¶¶ 142-144; 191-193. The remaining assertions in this paragraph are unsupported to the documents to which Plaintiff cites, should be disregarded as relying on argument, opinion, and out-of-court statements (a press report) offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge, as well as protected settlement-related negotiations, which are inadmissible. Fed. R. Evid. 408, 602, 801, 802.

721.    Defendants coded Rosen's departure so that he was eligible for severance. (Iadevaia Decl., Ex. HHH) Defendants also designated Rosen as eligible for severance, which is not consistent with a for Cause firing. (Iadevaia Decl., Ex. HHH at CBS 008245; Balducci Dep. 58:11-15; Iadevaia Decl., Ex. TTT)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because after Owens terminated Rosen's employment, he was not paid severance. Defendants incorporate by reference their 56.1 ¶¶ 142-147; Ex. 10, at ¶ 28). This paragraph should be disregarded as it is argumentative, legal opinion, and the documents to which Plaintiff cites do not support her assertions.

C.    Michael Radutzky

722.    Michael Radutzky ("Radutzky") was a Producer and then Senior Producer at 60 Minutes.

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that Radutzky became a Senior Producer around 2006. Defendants incorporate by reference their 56.1 ¶¶ 148-155.

723.    Throughout Radutzky's employment, he reported directly to Fager. (Poolos Decl. ¶ 117; see Simon Dep. 48:8-10) During much of that this time, Owens was second in command of 60 Minutes. (Simon Dep. 38:15-20, 51:7-12; Owens Dep. 38:20-25, 74:2-25; see also Simon Dep. 12:2-4)

**DEFENDANTS' RESPONSE:** Undisputed that Radutzky reported to Fager, and that Owens became Executive Editor (the number two) in June 2008. Dispute the implication that Owens ever had authority over Radutzky's employment, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because both

Radutzky left *60 Minutes* years before Owens became Executive Producer and could terminate Radutzky's employment. Defendants incorporate by reference their 56.1 ¶¶ 148-155.

724.    A female Senior Producer at <u>60 Minutes</u>, Vicki ███████ ("███████ alleged that Michael Radutzky ("Radutzky"), a male Producer, threatened to throw furniture at her and twisted her arm behind her back, causing her to scream.  (Iadevaia Decl., Ex. QQQ at CBS 009409-009410; Simon Dep. 44:10-14, 45:17-46:2; Poolos Dep. 364:24-366:21; (Iadevaia Decl., Ex. QQQ at CBS 009406)

**DEFENDANTS' RESPONSE:** Undisputed the ███████ made allegations of inappropriate conduct about Radutzky. The remaining assertions in this paragraph are disputed and should be disregarded as unsupported by the evidence to which Plaintiff cites, and because Plaintiff relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge. Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802. In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because both ███████ and Radutzky left *60 Minutes* years before Owens became Executive Producer and could terminate Radutzky's employment, and because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff yelling and bullying) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 148-155; Exs. 16, 24. Plaintiff admitted at her deposition that she does not know whether Ratuzky had been found by the Company to have engaged in retaliation. (Poolos Dep. 197:11-198:17). Plaintiff also admitted at her deposition that she does not know whether Radutzky lied during the course of an investigation. (Poolos Dep. 197:11-198:9).

725.    Simon testified that she was aware that the Senior Producer's complaint involved allegations that Radutzky had thrown an object at ██████ who was responsible for booking stories and publishing at 60 Minutes. (Simon Dep. 43:18-44:1, 45:17-46:1)

**DEFENDANTS' RESPONSE:** Undisputed that Simon became aware that ██████ had made allegations against Radutzky. The underlying allegations in this paragraph are disputed and should be disregarded as unsupported by the evidence to which Plaintiff cites. Similar to Owens, Simon testified that she became aware the ██████ made a complaint after ██████ no longer worked at *60 Minutes* and that ██████ "complaint was written about somewhere that I might have read that. I didn't hear it from anyone specifically, that I remember." (Simon Dep. 45:12-16; 47:1-5). In any event, these assertions are immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because both Radutzky and ██████ left *60 Minutes* years before Owens became Executive Producer and could terminate Radutzky's employment. Defendants incorporate by reference their 56.1 ¶¶ 148-155.

726.    ██████ eventually resigned from Defendants following Radutzky's mistreatment. (Iadevaia Decl., Ex. UUUU ¶ 36)

**DEFENDANTS' RESPONSE:** Undisputed that ██████ voluntarily resigned effective October 20, 2015. (Ex. 10, ¶ 38). The remaining assertions in this paragraph are disputed and should be disregarded because Plaintiff cites no admissible record evidence and instead relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge. Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802. In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because both ██████ and Radutzky left *60 Minutes* years before Owens became Executive

192

Producer and could terminate Radutzky's employment, and because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff yelling and bullying) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 148-155; Exs. 16, 24.

727.    Stahl also testified that she was aware of allegations that Radutzky was abusive, including that he twisted ███████ arm or wrist, and that those concerns were reported to Fager. (Stahl Dep. 48:5-8, 48:16-49:5)

**DEFENDANTS' RESPONSE:** Undisputed that Stahl testified that she was aware of ███████ allegation. The remaining assertions in this paragraph are disputed and should be disregarded because they are unsupported by the record evidence to which Plaintiff cites. In particular, Stahl did not testify that concerns were reported to Fager. (Stahl Dep. 49:6-50:3). In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because both ███████ and Radutzky left *60 Minutes* years before Owens became Executive Producer and could terminate Radutzky's employment, and because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff yelling and bullying) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 148-155; Exs. 16, 24.

728.    Fager, then Executive Producer, was aware of the incident, stated he would address the matter with Radutzky directly, and told the female Producer not to inform HR. (Iadevaia Decl., Ex. QQQ at CBS 009406, 9409; Poolos Dep. 366:11-25)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because both Radutzky and ▮▮▮▮ left *60 Minutes* years before Owens became Executive Producer and could terminate Radutzky's employment. Defendants incorporate by reference their 56.1 ¶¶ 148-155. This paragraph should be disregarded as unsupported by the evidence to which Plaintiff cites, and because Plaintiff relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge. Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802.

729.    Fager then asked the female Producer to apologize to Radutzky. (Iadevaia Decl., Ex. QQQ at CBS 009410)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because both Radutzky and ▮▮▮▮ left *60 Minutes* years before Owens became Executive Producer and could terminate Radutzky's employment. Defendants incorporate by reference their 56.1 ¶¶ 148-155. This paragraph should be disregarded because Plaintiff cites no admissible record evidence and instead relies on argument, opinion, and out-of-court statements offered for the truth of the matter asserted, as to which Plaintiff lacks personal knowledge. Such inadmissible hearsay may not be considered on this motion. Fed. R. Evid. 602, 801, 802.

730.    Radutzky repeatedly yelled at his subordinates, including Simon, and was widely considered difficult to work with at 60 Minutes. (Simon Dep. 38:10-39:15, 41:19-42:16; 43:8-17; Owens Dep. 91:23-92:8, 93:15-22; Stahl Dep. 50:4-20))

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because

194

Radutzky left *60 Minutes* years before Owens became Executive Producer and could terminate Radutzky's employment, and because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff yelling) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 148-155; Exs. 16, 24.

731.    Owens also witnessed Radutzky raise his voice at Sam Hornblower, Michael Kaplan, editors and camera operators.  (Owens Dep. 91:23-92:15)

**DEFENDANTS' RESPONSE:** Undisputed that Owens witnessed Radutzky raise his voice to Sam Hornblower and Michael Kaplan. The remaining assertions in this paragraph are disputed and unsupported by the record evidence to which Plaintiff cites and should be disregarded. (Owens Dep. 91:23-92:15). In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Radutzky left *60 Minutes* years before Owens became Executive Producer and could terminate Radutzky's employment, and because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff yelling) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 148-155; Exs. 16, 24.

732.    In or around 2006, Simon complained to Patti Hassler ("Hassler"), then the Executive Editor of 60 Minutes, about Radutzky. (Simon Dep. 39:21-24, 40:8-19) Simon told Hassler that Radutzky had a temper, spoke to her inappropriately, and had no boundaries. (Simon Dep. 39:21-40:19)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because the

assertions in this paragraph are from 2006, <u>thirteen years</u> before Owens became Executive Producer (and years before he became Executive Editor) and could terminate Radutzky's employment, and because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff yelling and having no boundaries) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 148-155; Exs. 16, 24.

733.    It was well known at <u>60 Minutes</u> that Radutzky frequently had a suitcase with wheels on him that contained pills. (Simon Dep. 52:18-53:3; Poolos Decl. ¶ 117)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Radutzky left *60 Minutes* years before Owens became Executive Producer and could terminate Radutzky's employment, and because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's inappropriate conduct) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 148-155; Exs. 16, 24.

734.    CBS did not fire or otherwise discipline Radutzky for his blatant misconduct, including physical assault against a female employee. (Iadevaia Decl. ¶ 6)

**DEFENDANTS' RESPONSE:** This paragraph should be disregarded as it does not cite to any admissible record evidence. In any event, this paragraph is disputed and immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Radutzky left *60 Minutes* years before Owens became Executive Producer and could terminate Radutzky's employment, and because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including

196

allegations of Plaintiff's inappropriate conduct) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 148-155; Exs. 16, 24.

735.    In fact, CBS retained Radutzky in an influential and unique position at 60 Minutes as Senior Producer until 2018. (Owens Dep. 88:14-25, 89:14-90:17; Stahl Dep. 51:7-18) As a Senior Producer, Radutzky had his own unit at 60 Minutes with employees reporting to him and Fager assigned him "big stories," including the Sullenberger plane landing on the Hudson River and White House interviews. (Owens Dep. 89:14-90:17)

**DEFENDANTS' RESPONSE:** Undisputed that Radutzky had a "unique position" with his own unit at *60 Minutes* as a Senior Producer, materially different than the position Plaintiff held. The remaining assertions in this paragraph are undisputed but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Radutzky left *60 Minutes* years before Owens became Executive Producer and could terminate Radutzky's employment, and because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's inappropriate conduct) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 148-155; Exs. 16, 24.

736.    In December 2017, CBS offered Radutzky a voluntary buyout of his contract. (Iadevaia Decl., Ex. UUUU ¶ 35) Radutzky accepted and was paid $114,441.88. (Id.; 30(b)(6) Dep. 58:13-25)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because

Radutzky left *60 Minutes* years before Owens became Executive Producer and could terminate Radutzky's employment, and because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's abusive and inappropriate conduct) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 148-155; Exs. 16, 24. Further responding, Owens testified that he did not have anything to do with Radutzky's departure, does not know if it was voluntary or involuntary, and does not know why Radutzky left. (Owens Dep. 89:2-13).

D.    Shachar Bar-On

737.    As set forth below, Poolos's former male supervisor, 60 Minutes Producer Shachar Bar-On ("Bar-On"), emotionally abused and sexually harassed her for years. (See 56.1 ¶¶ 775-830) At the time, Poolos reported to Bar-On and Owens. (Poolos Dep. 66:14-23)

**DEFENDANTS' RESPONSE:** Undisputed that Bar-On was Plaintiff's supervisor before her promotion to Producer in May 2018 and that Poolos also reported to Owens. The remaining assertions in this paragraph are disputed and unsupported to the record evidence to which Plaintiff cites. Defendants incorporate by reference their 56.1 ¶¶ 5-7, 126-136. In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because it is undisputed that Bar-On has never been the subject of a retaliation complaint, has never been untruthful during the course of an investigation, and because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of emotional abuse and harassment by Plaintiff) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 5-7, 79-81, 126-136; Exs. 16, 24. Plaintiff admitted at her

198

deposition that she does not know whether Bar-On had ever been found by the Company to have engaged in retaliation (Poolos Dep. 197:11-198:17). Plaintiff also admitted at her deposition that she does not know whether Bar-On lied during the course of an investigation. (Poolos Dep. 197:11-198:9).

738.    Poolos complained about some of Bar-On's mistreatment. (Poolos Dep. 31:10-34:14)

**DEFENDANTS' RESPONSE:** Undisputed that Poolos met with Alison Pepper in January 2017 and claimed she had a difficult working relationship with Bar-On. (Zuckerman Decl., Ex. 1, Pl. Tr. 39:16-40:22). Because Poolos also secretly recorded this conversation, there is no dispute that Poolos never claimed Bar-On had sexually harassed her. (Zuckerman Decl., Ex. 1, Pl. Tr. 39:16-40:22). The remaining assertions in this paragraph are disputed and unsupported to the record evidence to which Plaintiff cites. Defendants incorporate by reference their 56.1 ¶¶ 5-7, 126-136). In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because it is undisputed that Bar-On has never been the subject of a retaliation complaint, has never been untruthful during the course of an investigation, and because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of emotional abuse and harassment by Plaintiff) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 5-7, 79-81, 126-136; Exs. 16, 24.

739.    However, CBS discouraged Poolos from raising additional complaints and Bar-On still works for CBS.  (Poolos Decl. ¶ 104; Bar-On Dep. 18:9-13; Poolos Dep. 33:21-34:14, 36:12-37:18)

**DEFENDANTS' RESPONSE:** Undisputed that Plaintiff did not raise any additional complaint about Bar-On after January 2017, and that Bar-On works for *60 Minutes*. The remaining assertions in this paragraph are disputed, unsupported to the record evidence to which Plaintiff cites, and should be disregarded. Defendants incorporate by reference their 56.1 ¶¶ 5-7, 126-136. In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because it is undisputed that Bar-On has never been the subject of a retaliation complaint, has never been untruthful during the course of an investigation, and because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of emotional abuse and harassment by Plaintiff) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 5-7, 79-81, 126-136; Exs. 16, 24.

E.    David Levine:

740.    David Levine ("Levine"), a man, was an Associate Producer for 60 Minutes. (Simon Dep. 103:14-18) In 2025, CBS promoted him to Producer for 60 Minutes following depositions in this matter.    (Owens Dep. 169:9-14; *About Us*, CBS NEWS, www.cbsnews.com/news/about-us-60-minutes/ (last visited Feb. 8, 2026))

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that Levine was promoted to Producer after Owens resigned in April 2025.

741.    While Levine was an Associate Producer at the time of Poolos's firing, 60 Minutes treated him as a solo Producer. (Poolos Decl. ¶ 118; Poolos Dep. 362:16-363:8, 363:21-364:5)

**DEFENDANTS' RESPONSE**: Undisputed that Levine was an Associate Producer at the time of Plaintiff's termination. The remaining assertions in this paragraph are disputed, including because Levine was an Associate Producer that reported to Simon (not Owens) and did not have

his own Associate Producer, but immaterial to immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. Defendants incorporate by reference their 56.1 ¶¶ 171-175.

742.    During Poolos's tenure, Levine reported to both Owens and Simon. (Simon Dep. 105:7-15)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. Defendants incorporate by reference their 56.1 ¶¶ 171-175. (Owens Tr. 170:15-16).

743.    Levine was abusive to his female producer Nichole Marks ("Marks") and to an assistant of one of 60 Minutes' correspondents. (Poolos Dep. 362:16-363:12) Levine was "known to be a guy who had a terrible temper and erupted on anyone and everyone." (Poolos Dep. 362:16-24)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and abusiveness) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 148-155; Exs. 16, 24. Further, there have been no complaints of retaliation against Levine, and Levine has never been accused or found to have been untruthful during any investigation. Defendants incorporate by reference their 56.1 ¶¶ 171-175. (Poolos Dep. 197:11-198:17).

744.    Several female employees have complained about Levine, including about his serious anger problems often directed at women. (Owens Dep. 170:20-172:7; Simon Dep. 105:19-116:12; Poolos Dep. 362:6-363:16)

**DEFENDANTS' RESPONSE:** Undisputed that a Correspondent (male) raised a concern about Levine losing his temper on a Broadcast Associate (female) on a shoot. The remaining assertions in this paragraph are disputed, unsupported by the record evidence to which Plaintiff cites and should be disregarded. (Owens Dep. 170:24-171:17). In any event, the remaining assertions are immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and abusiveness) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 148-155; Exs. 16, 24. Further, there have been no complaints of retaliation against Levine, and Levine has never been accused or found to have been untruthful during any investigation. Defendants incorporate by reference their 56.1 ¶¶ 171-175. (Poolos Dep. 197:11-198:17).

745.    Simon testified that after Defendants promoted her to Executive Editor, Owens told her about instances of Levine yelling and having outbursts directed toward other employees. (Simon Dep. 105:10-106:15)

**DEFENDANTS' RESPONSE:** Undisputed that Simon heard that Levine lost his temper on a shoot. The remaining assertions in this paragraph are disputed, unsupported by the record evidence to which Plaintiff cites and should be disregarded. (Simon Dep. 107:5-108:13; 110:9-21). In any event, the remaining assertions are immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in

her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and abusiveness) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 148-155; Exs. 16, 24. Further, there have been no complaints of retaliation against Levine, and Levine has never been accused or found to have been untruthful during any investigation. Defendants incorporate by reference their 56.1 ¶¶ 171-175. (Poolos Dep. 197:11-198:17).

746.    In or around 2023, Levine yelled at a junior female employee, and Owens spoke to Levine about it after a complaint was made. (Owens Dep. 170:20-172:7; Poolos Dep. 363:13-364:5)

**DEFENDANTS' RESPONSE:** Undisputed that a Correspondent (male) raised a concern about Levine losing his temper on a Broadcast Associate (female) on a shoot, and that Owens spoke to Levine about the incident. The remaining assertions in this paragraph are disputed, unsupported by the record evidence to which Plaintiff cites and should be disregarded. (Owens Dep. 170:24-171:17 Simon Dep. 107:5-108:13; 110:9-21).). In any event, the remaining assertions are immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and abusiveness) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 148-155; Exs. 16, 24. Further, there have been no complaints of retaliation against Levine, and Levine has never been accused or found to have been untruthful during any investigation. Defendants incorporate by reference their 56.1 ¶¶ 171-175. (Poolos Dep. 197:11-198:17).

747.    Multiple correspondents, including Sharon Alfonsi and Jon Wertheim, raised concerns about or confirmed Levine's anger problems.  (Simon Dep. 112:14-114:13; Owens Dep. 170:23-171:17, 179:16-180:14)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and abusiveness) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 148-155; Exs. 16, 24. Further, there have been no complaints of retaliation against Levine, and Levine has never been accused or found to have been untruthful during any investigation. Defendants incorporate by reference their 56.1 ¶¶ 171-175. (Poolos Dep. 197:11-198:17).

748.    Simon also spoke to Levine about his "outburst." (Simon Dep. 105:19-111:23)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and abusiveness) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 148-155; Exs. 16, 24. Further, there have been no complaints of retaliation against Levine, and Levine has never been accused or found to have been untruthful during any investigation. Defendants incorporate by reference their 56.1 ¶¶ 171-175. (Poolos Dep. 197:11-198:17).

204

749.    Levine told Simon and Owens that he was "dealing with" his anger issues by seeking therapy.  (Owens Dep. 171:9-17, 173:4-13, 174:17-175:2; Simon Dep. 108:6-13, 110:11-21)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and abusiveness) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 148-155; Exs. 16, 24. Further, there have been no complaints of retaliation against Levine, and Levine has never been accused or found to have been untruthful during any investigation. Defendants incorporate by reference their 56.1 ¶¶ 171-175. (Poolos Dep. 197:11-198:17).

750.    Because Levine was seeking therapy and dealing with his anger problem, Simon did not refer Levine to HR.  (Simon Dep. 109:12-19)

**DEFENDANTS' RESPONSE:** Undisputed that Simon did not refer Levine to HR. The remaining assertions in this paragraph are disputed, unsupported by the record evidence to which Plaintiff cites and should be disregarded. (Simon Dep. 109:12-19). In any event, the remaining assertions are immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and abusiveness) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 148-155; Exs. 16, 24. Further, there have been no complaints of retaliation against Levine, and Levine has

never been accused or found to have been untruthful during any investigation. Defendants incorporate by reference their 56.1 ¶¶ 171-175. (Poolos Dep. 197:11-198:17).

751.    Owens told Levine it was a "one-strike thing," meaning he had no more chances, and his abusive conduct could not happen again. (Owens Dep. 171:9-17)

**DEFENDANTS' RESPONSE:** Undisputed that Owens told Levine that losing his temper was a "one-strike thing." The remaining assertions in this paragraph are disputed, unsupported by the record evidence to which Plaintiff cites and should be disregarded. (Owens Dep. 170:24-171:17). In any event, the remaining assertions are immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and abusiveness) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 148-155; Exs. 16, 24. Further, there have been no complaints of retaliation against Levine, and Levine has never been accused or found to have been untruthful during any investigation. Defendants incorporate by reference their 56.1 ¶¶ 171-175. (Poolos Dep. 197:11-198:17).

752.    After the incident in 2023, there was at least one other instances involving Levine where he lost his temper and other employees complained about him. (Owens Dep. 171:18-172:20, 175:17-176:9)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and abusiveness) and

206

was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 148-155; Exs. 16, 24. Further, there have been no complaints of retaliation against Levine, and Levine has never been accused or found to have been untruthful during any investigation. Defendants incorporate by reference their 56.1 ¶¶ 171-175. (Poolos Dep. 197:11-198:17).  The assertions in this paragraph are also unsupported by the record evidence to which Plaintiff cites and should be disregarded.

753.    Defendants, however, took no action against Levine even though multiple complaints were made against him, including subsequent to the incident in 2023. (Owens Dep. 171:9-172:20, 174:17-176:9; Simon Dep. 105:19-116:12)

**DEFENDANTS' RESPONSE**: Undisputed that Levine was not terminated. The remaining assertions in this paragraph are disputed, unsupported by the record evidence to which Plaintiff cites and should be disregarded. In any event, the remaining assertions are immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and abusiveness) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 148-155; Exs. 16, 24. Further, there have been no complaints of retaliation against Levine, and Levine has never been accused or found to have been untruthful during any investigation. Defendants incorporate by reference their 56.1 ¶¶ 171-175. (Poolos Dep. 197:11-198:17).

754.    To the contrary, Owens and others have rewarded Levine.  For example, in 2021 and 2022, CBS allowed Levine to solo produce several stories, which is often the opportunity

207

offered to Associate Producers that management is considering for promotion to Producer. (Owens Dep. 169:9-170:14; Poolos Dep. 363:21-25; Poolos Decl. ¶ 118)

**DEFENDANTS' RESPONSE:** Undisputed that Levine produced some stories in 2021 and 2022. The remaining assertions in this paragraph are disputed, unsupported by the record evidence to which Plaintiff cites and should be disregarded. In any event, the remaining assertions are immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and abusiveness) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 148-155; Exs. 16, 24. Further, there have been no complaints of retaliation against Levine, and Levine has never been accused or found to have been untruthful during any investigation. Defendants incorporate by reference their 56.1 ¶¶ 171-175. (Poolos Dep. 197:11-198:17).

F.    Matthew Richman

755.    Matthew Richman ("Richman") is a Senior Editor responsible for supervising other Editors for 60 Minutes.  (Simon Dep. 80:15-19; Owens Dep. 162:9-20; Bar-On Dep. 190:17-191:3)

**DEFENDANTS' RESPONSE:** Undisputed.

756.    Richman reports directly to Owens. (Owens Dep. 16:25-17:8)

**DEFENDANTS' RESPONSE:** Undisputed that Richman reported to Owens.

757.    Richman was abusive to many 60 Minutes Producers. (Poolos Dep. 358:16-359:14) Richman sent abusive emails and repeatedly made inappropriate comments. (Id.)

**DEFENDANTS' RESPONSE:** Undisputed the a some of the Producers expressed frustration about the way Richman went about assigning them editors or when they did not get the

208

editor they wanted. (Simon Dep. 81:3-13; Owens Dep. 163:6-164:23). The remaining assertions in this paragraph are disputed, unsupported by the record evidence to which Plaintiff cites and should be disregarded. In any event, the remaining assertions are immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and abusiveness) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 148-155; Exs. 16, 24. Further, there have been no complaints of retaliation against Richman, and Richman has never been accused or found to have been untruthful during any investigation. Defendants incorporate by reference their 56.1 ¶¶ 181-184. (Poolos Dep. 197:11-198:17).

758.    Several Editors and Producers have raised concerns about Richman's behavior, including a female Producer who organized a group of Producers to make a complaint about Richman to Owens and Simon (Poolos Decl. ¶¶ 119-124; Poolos Dep. 358:16- 359:14; Simon Dep. 80:15-81:24, 91:6-92:25)

**DEFENDANTS' RESPONSE:** Undisputed the a some of the Producers expressed frustration about the way Richman went about assigning them editors or when they did not get the editor they wanted. (Simon Dep. 81:3-13; Owens Dep. 163:6-164:23). The remaining assertions in this paragraph are disputed, unsupported by the record evidence to which Plaintiff cites and should be disregarded. In any event, the remaining assertions are immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and abusiveness) and

209

was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 148-155; Exs. 16, 24. Further, there have been no complaints of retaliation against Richman, and Richman has never been accused or found to have been untruthful during any investigation. Defendants incorporate by reference their 56.1 ¶¶ 181-184. (Poolos Dep. 197:11-198:17).

759.    Poolos was part of a Zoom call in or around spring 2021 during which a group of at least 12 Producers complained about Richman's abusive conduct. (Poolos Decl. ¶ 121; Poolos Dep. 358:21-359:20; Simon Dep. 80:15-81:24, 91:2-92:25) Those complaints were raised to 60 Minutes management. (Poolos Decl. ¶ 122; Poolos Dep. 358:21-359:20; Simon Dep. 80:15-81:24, 91:2-92:25)

**DEFENDANTS' RESPONSE:** Undisputed the a some of the Producers expressed frustration about the way Richman went about assigning them editors or when they did not get the editor they wanted. (Simon Dep. 81:3-13; Owens Dep. 163:6-164:23). The remaining assertions in this paragraph are disputed, unsupported by the record evidence to which Plaintiff cites and should be disregarded. In any event, the remaining assertions are immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and abusiveness) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 148-155; Exs. 16, 24. Further, there have been no complaints of retaliation against Richman, and Richman has never been accused or found to have been untruthful during any investigation. Defendants incorporate by reference their 56.1 ¶¶ 181-184. (Poolos Dep. 197:11-198:17).

760.    The call was organized by Producer Ashley Velie. (Poolos Decl. ¶ 121)

**DEFENDANTS' RESPONSE:** Undisputed the a some of the Producers expressed frustration about the way Richman went about assigning them editors or when they did not get the editor they wanted. (Simon Dep. 81:3-13; Owens Dep. 163:6-164:23). The remaining assertions in this paragraph are disputed, unsupported by the record evidence to which Plaintiff cites and should be disregarded. In any event, the remaining assertions are immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and abusiveness) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 148-155; Exs. 16, 24. Further, there have been no complaints of retaliation against Richman, and Richman has never been accused or found to have been untruthful during any investigation. Defendants incorporate by reference their 56.1 ¶¶ 181-184. (Poolos Dep. 197:11-198:17).

761.    Thereafter, Poolos spoke with Simon and asked about managements response to group's complaints about Richman. (Poolos Dep. 358:21-359:14; Poolos Decl. ¶ 124) Simon told Poolos that her and Owens "weren't going to do anything because this was just Richman's personality." (Poolos Dep. 358:21-359:14; Poolos Decl. ¶ 124)

**DEFENDANTS' RESPONSE:** Undisputed the a some of the Producers expressed frustration about the way Richman went about assigning them editors or when they did not get the editor they wanted. (Simon Dep. 81:3-13; Owens Dep. 163:6-164:23). The remaining assertions in this paragraph are disputed, unsupported by the record evidence to which Plaintiff cites and should be disregarded. In any event, the remaining assertions are immaterial to Defendants' motion

for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and abusiveness) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 148-155; Exs. 16, 24. Further, there have been no complaints of retaliation against Richman, and Richman has never been accused or found to have been untruthful during any investigation. Defendants incorporate by reference their 56.1 ¶¶ 181-184. (Poolos Dep. 197:11-198:17).

762.    After the more than dozen Producers complained about Richman to senior management, there were additional complaints about Richman. (See Pl. 56.1 ¶¶ 764-767, 770-772; Simon Dep. 81:25-82:5)

**DEFENDANTS' RESPONSE:** Undisputed the a some of the Producers expressed frustration about the way Richman went about assigning them editors or when they did not get the editor they wanted. (Simon Dep. 81:3-13; Owens Dep. 163:6-164:23). The remaining assertions in this paragraph are disputed, unsupported by the record evidence to which Plaintiff cites and should be disregarded. In any event, the remaining assertions are immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and abusiveness) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 148-155; Exs. 16, 24. Further, there have been no complaints of retaliation against Richman, and Richman has never been accused or found to have

212

been untruthful during any investigation. Defendants incorporate by reference their 56.1 ¶¶ 181-184. (Poolos Dep. 197:11-198:17).

763.    One producer in particular, Shari Finklestein ("Finklestein"), complained to Simon because Richman had told editors they did not have to work with her and because Richman was abrasive and snippy when Finklestein requested an editor. (Simon Dep. 81:7-83:10)

**DEFENDANTS' RESPONSE:** Undisputed but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and abusiveness) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 148-155; Exs. 16, 24. Further, there have been no complaints of retaliation against Richman, and Richman has never been accused or found to have been untruthful during any investigation. Defendants incorporate by reference their 56.1 ¶¶ 181-184. (Poolos Dep. 197:11-198:17).

764.    Finklestein was concerned that Richman, a supervisor, had made disparaging comments about her in front of several employees.  (Simon Dep. 84:8-85:6)

**DEFENDANTS' RESPONSE:** Undisputed that Finkelstein was concerned that Richman told his editors that they didn't have to work with her because of her production process, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and abusiveness) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 148-155;

Exs. 16, 24. Further, there have been no complaints of retaliation against Richman, and Richman has never been accused or found to have been untruthful during any investigation. Defendants incorporate by reference their 56.1 ¶¶ 181-184. (Poolos Dep. 197:11-198:17).

765. Simon admitted that it was inappropriate for a supervisor to engage in such conduct. (Id.)

**DEFENDANTS' RESPONSE:** Undisputed that Simon thought it was inappropriate for Richman to tell his editors that they didn't have to work with Finkelstein because of her production process, that she spoke with Richman about the comment, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and abusiveness) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 148-155; Exs. 16, 24. Further, there have been no complaints of retaliation against Richman, and Richman has never been accused or found to have been untruthful during any investigation. Defendants incorporate by reference their 56.1 ¶¶ 181-184. (Poolos Dep. 197:11-198:17).

766. Simon testified that she informed Owens of Finklestein's complaints. (Simon Dep. 87:6-88:7)

**DEFENDANTS' RESPONSE:** Undisputed that Simon let Owens know about the comment and that she would speak with Richman. but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and abusiveness) and

was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 148-155; Exs. 16, 24. Further, there have been no complaints of retaliation against Richman, and Richman has never been accused or found to have been untruthful during any investigation. Defendants incorporate by reference their 56.1 ¶¶ 181-184. (Poolos Dep. 197:11-198:17).

767.    Simon later told Poolos that the Producers' complaints were unfair and that the Producers needed to account for his personality. (Poolos Decl. ¶ 124; Poolos Dep. 358:21-359:14)

**DEFENDANTS' RESPONSE:** Undisputed the a some of the Producers expressed frustration about the way Richman went about assigning them editors or when they did not get the editor they wanted. (Simon Dep. 81:3-13; Owens Dep. 163:6-164:23). The remaining assertions in this paragraph are disputed, unsupported by the record evidence to which Plaintiff cites and should be disregarded. In any event, the remaining assertions are immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and abusiveness) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 148-155; Exs. 16, 24. Further, there have been no complaints of retaliation against Richman, and Richman has never been accused or found to have been untruthful during any investigation. Defendants incorporate by reference their 56.1 ¶¶ 181-184. (Poolos Dep. 197:11-198:17).

768.    Simon testified that she had a conversation with Richman in response to the complaints, but Defendants took no further action against him, and he remains employed at the company.  (Simon Dep. 80:15-19, 93:12-18; Owens Dep. 162:9-20; Poolos Dep. 359:21-360:14)

215

**DEFENDANTS' RESPONSE:** Undisputed that Simon spoke with Richman and that he remains employed. The remaining assertions in this paragraph are disputed, unsupported by the record evidence to which Plaintiff cites and should be disregarded. In any event, the remaining assertions are immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and abusiveness) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 148-155; Exs. 16, 24. Further, there have been no complaints of retaliation against Richman, and Richman has never been accused or found to have been untruthful during any investigation. Defendants incorporate by reference their 56.1 ¶¶ 181-184. (Poolos Dep. 197:11-198:17).

769.    In 2024, another female 60 Minutes' employee, Kara Vaccaro, also complained about Richman.  Specifically, Vaccaro complained that he was abusive towards her.  (Simon Dep. 81:18-19, 89:7-90:8)

**DEFENDANTS' RESPONSE:** Undisputed that Vaccaro was one of the Producers who expressed frustration about the way Richman went about assigning them editors or when they did not get the editor they wanted. (Simon Dep. 81:3-13; Owens Dep. 163:6-164:23). The remaining assertions in this paragraph are disputed, unsupported by the record evidence to which Plaintiff cites and should be disregarded. In any event, the remaining assertions are immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and abusiveness) and was not considered until Defendants learned of her retaliatory call to Bronstein.

216

Defendants incorporate by reference their 56.1 ¶¶ 79-81, 148-155; Exs. 16, 24. Further, there have been no complaints of retaliation against Richman, and Richman has never been accused or found to have been untruthful during any investigation. Defendants incorporate by reference their 56.1 ¶¶ 181-184. (Poolos Dep. 197:11-198:17).

770.    Vaccaro raised her concerns after Finkelstein had complained and after the complaints by multiple producers.  (Simon Dep. 90:15-91:11)

**DEFENDANTS' RESPONSE:** Undisputed that Vaccaro was one of the Producers who expressed frustration about the way Richman went about assigning them editors or when they did not get the editor they wanted. (Simon Dep. 81:3-13; Owens Dep. 163:6-164:23). The remaining assertions in this paragraph are disputed, unsupported by the record evidence to which Plaintiff cites and should be disregarded. In any event, the remaining assertions are immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and abusiveness) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 148-155; Exs. 16, 24. Further, there have been no complaints of retaliation against Richman, and Richman has never been accused or found to have been untruthful during any investigation. Defendants incorporate by reference their 56.1 ¶¶ 181-184. (Poolos Dep. 197:11-198:17).

771.    In various text messages to Poolos, Bar-On commented on Richman's behavior. For example, on February 22, 2021, Bar-On texted Plaintiff that Richman "ha[d] been a total jerk to him." (Iadevaia Decl., Ex. EEEEE) On June 2, 2021, Bar-On wrote to Poolos "[w]ould be nice if they kept Richman in check too." (Iadevaia Decl., Ex. FFFFF)

217

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and abusiveness) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 148-155; Exs. 16, 24. Further, there have been no complaints of retaliation against Richman, and Richman has never been accused or found to have been untruthful during any investigation. Defendants incorporate by reference their 56.1 ¶¶ 181-184. (Poolos Dep. 197:11-198:17).

G.  Jeff Fager

772.    As discussed above, Fager was the Executive Producer of 60 Minutes from 2004 to September 2018, when, CBS fired Fager amid similar allegations of sexual harassment and misconduct. (Pl. 56.1 ¶¶ 612-619; Poolos Decl. ¶ 108) Fager was also the Chairman of CBS News from 2011 until 2015. (Iadevaia Decl., Ex. QQQ at CBS 009406)

**DEFENDANTS' RESPONSE:** Undisputed that Fager was formerly the Executive Producer of *60 Minutes* who Defendants fired in September 2018 for retaliation. Defendants incorporate by reference their 56.1 ¶¶ 191-193. The remaining assertions are undisputed but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

773.    Stahl testified that Fager yelled at her and that he probably sent her abusive emails. (Stahl Dep. 42:2-6, 55:22-56:6)

**DEFENDANTS' RESPONSE**: Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact

218

<u>Poolos Was Harassed and Abused by a Male Supervisor</u>

774.	During her employment at <u>60 Minutes</u>, Defendants forced Poolos to face sexual harassment. (Poolos Decl. ¶ 103; Iadevaia Decl., Ex. P ¶¶ 125(a), 130-142; Poolos Dep. 63:10-64:23, 320:22-321:8, 371:14-26, 376:8-378:21)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and harassment) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 125-136; 165-170; Exs. 16, 24. There have been no complaints of retaliation against Bar-On, and Bar-On has never been accused or found to have been untruthful during any investigation. Further, Plaintiff declined to be interviewed regarding her post-termination complaint about Bar-On and has since withdrawn her untimely sexual harassment claims against him. Defendants incorporate by reference their Rule 56.1 Statement ¶¶ 125–136 and 165–170. (Poolos Dep. 197:11–198:17; Zuckerman Reply Decl., Ex. 5).

775.	For example, when Poolos interviewed for her job at <u>60 Minutes</u>, sexual harassment was so commonplace that in her job interview with Stahl, Stahl asked Poolos if she would use her body to secure stories. (Poolos Decl. ¶ 103; Poolos Dep. 63:10-64:11; Stahl Dep. 207:13-23; Bar-On Dep. 129:12-130:8, 131:24-132:4)

**DEFENDANTS' RESPONSE:** Undisputed that Stahl made the comment in 2011, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. The remainder of this paragraph is improper argument, opinion, unsupported by the record and should be disregarded.

219

776.    On at least one occasion during Poolos's employment, Stahl instructed Poolos to use her "feminine charms" or to "flirt" to assist with a story. (Poolos Decl. ¶ 103; Poolos Dep. 64:12-23) Poolos has never heard a Correspondent suggest that a man use his body to get a story. (Poolos Decl. ¶ 103)

777.    Poolos worked for 60 Minutes Producer Bar-On from 2011 to 2017. (Iadevaia Decl., Ex. P ¶ 126; Poolos Dep. 62:21-24, 65:8-18; Bar-On Dep. 25:21-26:2)

**DEFENDANTS' RESPONSE:** Undisputed.

778.    Bar-On repeatedly subjected Poolos to emotional abuse and sexual harassment over the course of several years as documented in her contemporaneous notes. (Iadevaia Decl., Ex. P ¶ 127; id. Ex. CCC; id. Ex. DDD; id. Ex. EEE)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and harassment) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 125-136; 165-170; Exs. 16, 24. There have been no complaints of retaliation against Bar-On, and Bar-On has never been accused or found to have been untruthful during any investigation. Further, Plaintiff declined to be interviewed regarding her post-termination complaint about Bar-On and has since withdrawn her untimely sexual harassment claims against him. Defendants incorporate by reference their Rule 56.1 Statement ¶¶ 125–136 and 165–170. (Poolos Dep. 197:11–198:17; Ex. C; Zuckerman Reply Decl., Ex. 5)

779.    Bar-On regularly demeaned and insulted Poolos. (Iadevaia Decl., Ex. P ¶ 128)

220

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and harassment) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 125-136; 165-170; Exs. 16, 24. There have been no complaints of retaliation against Bar-On, and Bar-On has never been accused or found to have been untruthful during any investigation. Further, Plaintiff declined to be interviewed regarding her post-termination complaint about Bar-On and has since withdrawn her untimely sexual harassment claims against him. Defendants incorporate by reference their Rule 56.1 Statement ¶¶ 125–136 and 165–170. (Poolos Dep. 197:11–198:17; Ex. C; Zuckerman Reply Decl., Ex. 5)

780.    For example, Bar-On frequently yelled and, sometimes, screamed at Poolos and threatened to fire her. (Iadevaia Decl., Ex. P ¶ 128; Bar-On Dep. 295:17-297:7, 302:22-304:5, 332:8-18; Iadevaia Decl., Ex. CCC at Pl. 000199-202, Pl. 000216-18, Pl. 000234-36; Iadevaia Decl., Ex. EEE at Pl. 001574-75, Pl. 001578-80, Pl. 001582-84, Pl. 001589-91; Iadevaia Decl., Ex. FFF at 4:54-5:10; Iadevaia Decl., Ex. MMMMM at 5:1-22)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and harassment) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 125-136; 165-170; Exs. 16, 24. There have been no complaints of retaliation against Bar-On, and Bar-On has never been accused or found to have

been untruthful during any investigation. Further, Plaintiff declined to be interviewed regarding her post-termination complaint about Bar-On and has since withdrawn her untimely sexual harassment claims against him. Defendants incorporate by reference their Rule 56.1 Statement ¶¶ 125–136 and 165–170. (Poolos Dep. 197:11–198:17; Ex. C; Zuckerman Reply Decl., Ex. 5)

781.    Poolos tried repeatedly to stop the mistreatment, but Bar-On was sometimes hostile toward her and, on other occasions, he was dismissive. (Iadevaia Decl., Ex. P ¶ 129) For example:

a.    In September 2016, Bar-On blamed Poolos for his abusive conduct, claiming that he was trying to yell less frequently, but that Poolos kept causing problems (Iadevaia Decl., Ex. CCC at Pl. 000229-000230);

b.    On or about September 6, 2016, Bar-On accused Poolos of complaining constantly and said that she overreacted (Iadevaia Decl., Ex. P ¶ 129(c); Iadevaia Decl., Ex. CCC at Pl. 000216-000217);

c.    On or about September 28, 2016, after Bar-On yelled at Poolos, she began crying; he told her to "get over it" (Iadevaia Decl., Ex. CCC at Pl. 000240-000241); and

d.    When Poolos asked Bar-On to be more respectful in October 2016, he called her "snide." (Iadevaia Decl., Ex. P ¶ 129(e); Iadevaia Decl., Ex. CCC at Pl. 000247-000249)

e.    In March 2017, Bar-On said Poolos was "overreacting" and "being ridiculous" when Poolos broke down in tears in Bar-On's office in response to his angry and dismissive treatment. (Iadevaia Decl., Ex. EEE at Pl. 001594-001597)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and harassment) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 125-136; 165-170; Exs. 16, 24. There have been no complaints of retaliation against Bar-On, and Bar-On has never been accused or found to have been untruthful during any investigation. Further, Plaintiff declined to be interviewed regarding

her post-termination complaint about Bar-On and has since withdrawn her untimely sexual harassment claims against him. Defendants incorporate by reference their Rule 56.1 Statement ¶¶ 125–136 and 165–170. (Poolos Dep. 197:11–198:17; Ex. C; Zuckerman Reply Decl., Ex. 5)

782.    Bar-On acknowledged his abusive conduct towards Poolos. (Iadevaia Decl., Ex. P ¶ 130)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and harassment) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 125-136; 165-170; Exs. 16, 24. There have been no complaints of retaliation against Bar-On, and Bar-On has never been accused or found to have been untruthful during any investigation. Further, Plaintiff declined to be interviewed regarding her post-termination complaint about Bar-On and has since withdrawn her untimely sexual harassment claims against him. Defendants incorporate by reference their Rule 56.1 Statement ¶¶ 125–136 and 165–170. (Poolos Dep. 197:11–198:17; Ex. C; Zuckerman Reply Decl., Ex. 5)

783.    For example, on or about February 28, 2013, Bar-On wrote in the subject line of an email to Poolos that he was apologizing for his "outburst" because it "was uncalled for" and said he would "work on it."  (Iadevaia Decl., Ex. P ¶ 130; Iadevaia Decl., Ex. GGGGG)

**DEFENDANTS' RESPONSE:** Undisputed that Bar-On sent this email in February 2013 (9 years before Plaintiff's termination), but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact.

223

784.    Far from improving his treatment of Poolos, he continued to sexually harass and verbally abuse her. (Iadevaia Decl., Ex. P ¶ 130)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and harassment) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 125-136; 165-170; Exs. 16, 24. There have been no complaints of retaliation against Bar-On, and Bar-On has never been accused or found to have been untruthful during any investigation. Further, Plaintiff declined to be interviewed regarding her post-termination complaint about Bar-On and has since withdrawn her untimely sexual harassment claims against him. Defendants incorporate by reference their Rule 56.1 Statement ¶¶ 125–136 and 165–170.

785.    Bar-On tried to sabotage Poolos's work, regularly cutting her out of important communications and excluding her from meetings.  (Iadevaia Decl., Ex. P ¶ 131; Iadevaia Decl., Ex. CCC at Pl. 000201, Pl. 000244-248; Iadevaia Decl., Ex. EEE at Pl. 001574-001575)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and harassment) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 125-136; 165-170; Exs. 16, 24. There have been no complaints of retaliation against Bar-On, and Bar-On has never been accused or found to have

224

been untruthful during any investigation. Further, Plaintiff declined to be interviewed regarding her post-termination complaint about Bar-On and has since withdrawn her untimely sexual harassment claims against him. Defendants incorporate by reference their Rule 56.1 Statement ¶¶ 125–136 and 165–170. (Poolos Dep. 197:11–198:17; Ex. C; Zuckerman Reply Decl., Ex. 5)

786.    He also blocked Poolos from advancing at 60 Minutes, including by failing to properly give her co-producer credit for segments where she made substantial contributions. (Iadevaia Decl., Ex. P ¶ 131; id. Ex. CCC at Pl. 000221-000224)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and harassment) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 125-136; 165-170; Exs. 16, 24. There have been no complaints of retaliation against Bar-On, and Bar-On has never been accused or found to have been untruthful during any investigation. Further, Plaintiff declined to be interviewed regarding her post-termination complaint about Bar-On and has since withdrawn her untimely sexual harassment claims against him. Defendants incorporate by reference their Rule 56.1 Statement ¶¶ 125–136 and 165–170. (Poolos Dep. 197:11–198:17; Ex. C; Zuckerman Reply Decl., Ex. 5)

787.    Bar-On also pressured Poolos to accept blame for his errors even though she was not at fault for the problems. (Iadevaia Decl., Ex. P ¶ 131) Bar-On once told Poolos that he had blamed Poolos for issues with the delivery of a story to protect a male editor who was actually responsible. (Poolos Decl. ¶ 105)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and harassment) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 125-136; 165-170; Exs. 16, 24. There have been no complaints of retaliation against Bar-On, and Bar-On has never been accused or found to have been untruthful during any investigation. Further, Plaintiff declined to be interviewed regarding her post-termination complaint about Bar-On and has since withdrawn her untimely sexual harassment claims against him. Defendants incorporate by reference their Rule 56.1 Statement ¶¶ 125–136 and 165–170. (Poolos Dep. 197:11–198:17; Ex. C; Zuckerman Reply Decl., Ex. 5)

788.    Bar-On made sexist comments to Poolos. (Iadevaia Decl., Ex. P ¶ 132; Poolos Dep. 376:12-17)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and harassment) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 125-136; 165-170; Exs. 16, 24. There have been no complaints of retaliation against Bar-On, and Bar-On has never been accused or found to have been untruthful during any investigation. Further, Plaintiff declined to be interviewed regarding her post-termination complaint about Bar-On and has since withdrawn her untimely sexual

226

harassment claims against him. Defendants incorporate by reference their Rule 56.1 Statement ¶¶ 125–136 and 165–170. (Poolos Dep. 197:11–198:17; Ex. C; Zuckerman Reply Decl., Ex. 5)

789.    For example, he told her on several occasions that he would never hire a man as an Associate Producer because men were less likely to tolerate not getting credit for their work and women were more likely to be subordinate as compared to men.  (Iadevaia Decl., Ex. P ¶ 132) All of Bar-On's Associate Producers have been women. (Bar-On Dep. 18:23-20:18; Errata Sheet Page 19, Line 11)

**DEFENDANTS' RESPONSE:** Undisputed that Bar-On's Associate Producers have been women. The remaining assertions in this paragraph are disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and harassment) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 125-136; 165-170; Exs. 16, 24. There have been no complaints of retaliation against Bar-On, and Bar-On has never been accused or found to have been untruthful during any investigation. Further, Plaintiff declined to be interviewed regarding her post-termination complaint about Bar-On and has since withdrawn her untimely sexual harassment claims against him. Defendants incorporate by reference their Rule 56.1 Statement ¶¶ 125–136 and 165–170. (Poolos Dep. 197:11–198:17; Ex. C; Zuckerman Reply Decl., Ex. 5)

790.    Bar-On sexually harassed Poolos. (Iadevaia Decl., Ex. P ¶ 133) For example, during a work trip to Italy, Bar-On, who was intoxicated, hit on Poolos, and pressured her to come to his hotel room. (Iadevaia Decl., Ex. P ¶ 133; Poolos Dep. 376:12-17)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and harassment) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 125-136; 165-170; Exs. 16, 24. There have been no complaints of retaliation against Bar-On, and Bar-On has never been accused or found to have been untruthful during any investigation. Further, Plaintiff declined to be interviewed regarding her post-termination complaint about Bar-On and has since withdrawn her untimely sexual harassment claims against him. Defendants incorporate by reference their Rule 56.1 Statement ¶¶ 125–136 and 165–170. (Poolos Dep. 197:11–198:17; Ex. C; Zuckerman Reply Decl., Ex. 5)

791.    Bar-On regularly commented about Poolos's body and weight, encouraging her to "stay" at certain weights and telling her which clothes accentuated her body. (Iadevaia Decl., Ex. P ¶ 134; Poolos Dep. 376:12-18)   For example, on or about September 22, 2016, at the Emmy Awards ceremony, Bar-On commented on Poolos's dress and its fit and told Poolos that her shoes made her legs look good. (Iadevaia Decl., Ex. P ¶ 134; Iadevaia Decl., Ex. CCC at Pl. 000227; Poolos Dep. 376:12-18)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and harassment) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 125-136; 165-170; Exs. 16, 24. There have been no

complaints of retaliation against Bar-On, and Bar-On has never been accused or found to have been untruthful during any investigation. Further, Plaintiff declined to be interviewed regarding her post-termination complaint about Bar-On and has since withdrawn her untimely sexual harassment claims against him. Defendants incorporate by reference their Rule 56.1 Statement ¶¶ 125–136 and 165–170. (Poolos Dep. 197:11–198:17; Ex. C; Zuckerman Reply Decl., Ex. 5)

792.    Bar-On also made derogatory comments about the physical appearance of other women. (Iadevaia Decl., Ex. P ¶ 135) For example, he regularly mocked Stahl's face and body and referred to her as "disgusting" and a "see you next Tuesday" (which was a euphemism for "cunt"). (Iadevaia Decl., Ex. P ¶ 135)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and harassment) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 125-136; 165-170; Exs. 16, 24. There have been no complaints of retaliation against Bar-On, and Bar-On has never been accused or found to have been untruthful during any investigation. Further, Plaintiff declined to be interviewed regarding her post-termination complaint about Bar-On and has since withdrawn her untimely sexual harassment claims against him. Defendants incorporate by reference their Rule 56.1 Statement ¶¶ 125–136 and 165–170. (Poolos Dep. 197:11–198:17; Ex. C; Zuckerman Reply Decl., Ex. 5)

793.    Bar-On told Poolos on two occasions, including once in front of another employee, that he watched pornography on his work computer. (Iadevaia Decl., Ex. P ¶ 136; Poolos Dep. 377:22-378:21)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and harassment) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 125-136; 165-170; Exs. 16, 24. There have been no complaints of retaliation against Bar-On, and Bar-On has never been accused or found to have been untruthful during any investigation. Further, Plaintiff declined to be interviewed regarding her post-termination complaint about Bar-On and has since withdrawn her untimely sexual harassment claims against him. Defendants incorporate by reference their Rule 56.1 Statement ¶¶ 125–136 and 165–170. (Poolos Dep. 197:11–198:17; Ex. C; Zuckerman Reply Decl., Ex. 5)

794. Bar-On also told Poolos that he bought pornography off the street during a work trip to Washington, D.C. with Stahl. (Poolos Decl. ¶ 106; Poolos Dep. 376:12-17)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and harassment) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 125-136; 165-170; Exs. 16, 24. There have been no complaints of retaliation against Bar-On, and Bar-On has never been accused or found to have been untruthful during any investigation. Further, Plaintiff declined to be interviewed regarding her post-termination complaint about Bar-On and has since withdrawn her untimely sexual

harassment claims against him. Defendants incorporate by reference their Rule 56.1 Statement ¶¶ 125–136 and 165–170. (Poolos Dep. 197:11–198:17; Ex. C; Zuckerman Reply Decl., Ex. 5)

795.    Bar-On said to Poolos that he had been watching pornography on his work computer one night and was extremely anxious the next morning because Stahl asked to use his laptop at the airport, and he was unsure if he had closed the window with the pornography. (Iadevaia Decl., Ex. P ¶ 136)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and harassment) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 125-136; 165-170; Exs. 16, 24. There have been no complaints of retaliation against Bar-On, and Bar-On has never been accused or found to have been untruthful during any investigation. Further, Plaintiff declined to be interviewed regarding her post-termination complaint about Bar-On and has since withdrawn her untimely sexual harassment claims against him. Defendants incorporate by reference their Rule 56.1 Statement ¶¶ 125–136 and 165–170. (Poolos Dep. 197:11–198:17; Ex. C; Zuckerman Reply Decl., Ex. 5)

796.    Bar-On admitted that when Poolos was his AP, he had told Poolos that he had a pornographic DVD in his computer and was worried the pornography would become visible when Stahl asked to use his computer, but he testified that it was his personal computer rather than his work computer. (Bar-On Dep. 286:10-289:4)

**DEFENDANTS' RESPONSE:** Disputed as to Plaintiff's characterization of Bar-On's testimony about an incident from 18 years ago, which should be disregarded as improper argument,

opinion, and unsupported by the record evidence to which Plaintiff cites. (Bar-On Dep. 286:10-289:4).

797.    In March 2016, Poolos informed Bar-On that she was pregnant. (Iadevaia Decl., Ex. P ¶ 137; Poolos Dep. 320:22-321:8)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and harassment) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 125-136; 165-170; Exs. 16, 24. There have been no complaints of retaliation against Bar-On, and Bar-On has never been accused or found to have been untruthful during any investigation. Further, Plaintiff declined to be interviewed regarding her post-termination complaint about Bar-On and has since withdrawn her untimely sexual harassment claims against him. Defendants incorporate by reference their Rule 56.1 Statement ¶¶ 125–136 and 165–170. (Poolos Dep. 197:11–198:17; Ex. C; Zuckerman Reply Decl., Ex. 5).

798.    Bar-On responded that Poolos needed to make a major change if she had the baby, including quitting her job at 60 Minutes. (Iadevaia Decl., Ex. P ¶ 132; Poolos Dep. 320:22-321:8)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and harassment) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 125-136; 165-170; Exs. 16, 24. There have been no

232

complaints of retaliation against Bar-On, and Bar-On has never been accused or found to have been untruthful during any investigation. Further, Plaintiff declined to be interviewed regarding her post-termination complaint about Bar-On and has since withdrawn her untimely sexual harassment claims against him. Defendants incorporate by reference their Rule 56.1 Statement ¶¶ 125–136 and 165–170. (Poolos Dep. 197:11–198:17; Ex. C; Zuckerman Reply Decl., Ex. 5).

799.    Bar-On explained that it would be "impossible" for Poolos to keep working at 60 Minutes as a single mother and that she should move home with her parents in Cleveland or live with her brother in Seattle. (Iadevaia Decl., Ex. P ¶ 137; Poolos Dep. 320:22-321:8)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and harassment) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 125-136; 165-170; Exs. 16, 24. There have been no complaints of retaliation against Bar-On, and Bar-On has never been accused or found to have been untruthful during any investigation. Further, Plaintiff declined to be interviewed regarding her post-termination complaint about Bar-On and has since withdrawn her untimely sexual harassment claims against him. Defendants incorporate by reference their Rule 56.1 Statement ¶¶ 125–136 and 165–170. (Poolos Dep. 197:11–198:17; Ex. C; Zuckerman Reply Decl., Ex. 5)**.**

800.    Bar-On also said that at her age, Poolos should quit because she would probably never have another chance to be a mother.  (Iadevaia Decl., Ex. P ¶ 137; Iadevaia Decl., Ex. DDD at Pl. 000270-000271; Poolos Dep. 320:22-321:8)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and harassment) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 125-136; 165-170; Exs. 16, 24. There have been no complaints of retaliation against Bar-On, and Bar-On has never been accused or found to have been untruthful during any investigation. Further, Plaintiff declined to be interviewed regarding her post-termination complaint about Bar-On and has since withdrawn her untimely sexual harassment claims against him. Defendants incorporate by reference their Rule 56.1 Statement ¶¶ 125–136 and 165–170. (Poolos Dep. 197:11–198:17; Ex. C; Zuckerman Reply Decl., Ex. 5).

801.    Bar-On made inappropriate and vulgar sexual comments about women in front of Poolos. (Iadevaia Decl., Ex. P ¶ 138; id. Ex. CCC at Pl. 000193-194)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and harassment) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 125-136; 165-170; Exs. 16, 24. There have been no complaints of retaliation against Bar-On, and Bar-On has never been accused or found to have been untruthful during any investigation. Further, Plaintiff declined to be interviewed regarding her post-termination complaint about Bar-On and has since withdrawn her untimely sexual

harassment claims against him. Defendants incorporate by reference their Rule 56.1 Statement ¶¶ 125–136 and 165–170. (Poolos Dep. 197:11–198:17; Ex. C; Zuckerman Reply Decl., Ex. 5)**.**

802.    For example, on or about August 5, 2016, in response to a male employee's request to borrow his copy of a <u>Vanity Fair</u> featuring Margot Robbie on the cover, Bar-On made a joke about masturbation. (Iadevaia Decl., Ex. P ¶ 138; <u>id.</u> Ex. CCC at Pl. 000193-194)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and harassment) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 125-136; 165-170; Exs. 16, 24. There have been no complaints of retaliation against Bar-On, and Bar-On has never been accused or found to have been untruthful during any investigation. Further, Plaintiff declined to be interviewed regarding her post-termination complaint about Bar-On and has since withdrawn her untimely sexual harassment claims against him. Defendants incorporate by reference their Rule 56.1 Statement ¶¶ 125–136 and 165–170. (Poolos Dep. 197:11–198:17; Ex. C; Zuckerman Reply Decl., Ex. 5)

803.    Bar-On told the other employee that "yes," he could borrow the magazine, but not to return it with "sticky" pages. (Iadevaia Decl., Ex. P ¶ 138; <u>id.</u> Ex. CCC at Pl. 000193-194) The magazine was still in plastic and Bar-On also kept joking about how it was time to "take the wrapper off," meaning not wear a condom. (Iadevaia Decl., Ex. P ¶ 138)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards'

235

written HR complaint (including allegations of Plaintiff's yelling, bullying and harassment) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 125-136; 165-170; Exs. 16, 24. There have been no complaints of retaliation against Bar-On, and Bar-On has never been accused or found to have been untruthful during any investigation. Further, Plaintiff declined to be interviewed regarding her post-termination complaint about Bar-On and has since withdrawn her untimely sexual harassment claims against him. Defendants incorporate by reference their Rule 56.1 Statement ¶¶ 125–136 and 165–170. (Poolos Dep. 197:11–198:17; Ex. C; Zuckerman Reply Decl., Ex. 5).

804.    Poolos asked repeatedly for him to stop, but Bar-On refused. (Iadevaia Decl., Ex. P ¶ 138; Iadevaia Decl., Ex. CCC at Pl. 000193-194)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and harassment) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 125-136; 165-170; Exs. 16, 24. There have been no complaints of retaliation against Bar-On, and Bar-On has never been accused or found to have been untruthful during any investigation. Further, Plaintiff declined to be interviewed regarding her post-termination complaint about Bar-On and has since withdrawn her untimely sexual harassment claims against him. Defendants incorporate by reference their Rule 56.1 Statement ¶¶ 125–136 and 165–170. (Poolos Dep. 197:11–198:17; Ex. C; Zuckerman Reply Decl., Ex. 5)**.**

805.    On the same day that Bar-On made a joke about masturbation, August 5, 2016, Poolos told Bar-On that she wanted to have a more professional relationship and asked him to stop

yelling at her, threatening to fire her, and making inappropriate comments. (Iadevaia Decl., Ex. P ¶ 139; Iadevaia Decl., Ex. CCC at Pl. 000193-194) Bar-On responded that Poolos sounded "bitter." (Iadevaia Decl., Ex. P ¶ 139; id. Ex. CCC at Pl. 000193-194)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and harassment) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 125-136; 165-170; Exs. 16, 24. There have been no complaints of retaliation against Bar-On, and Bar-On has never been accused or found to have been untruthful during any investigation. Further, Plaintiff declined to be interviewed regarding her post-termination complaint about Bar-On and has since withdrawn her untimely sexual harassment claims against him. Defendants incorporate by reference their Rule 56.1 Statement ¶¶ 125–136 and 165–170. (Poolos Dep. 197:11–198:17; Ex. C; Zuckerman Reply Decl., Ex. 5).

806.    Also, on or about August 29, 2016, Bar-On and Producer Keith Sharman ("Sharman") joked in front of Poolos in Bar-On's office about actress Natalie Portman and her "little" body parts, plainly referencing her breasts. (Iadevaia Decl., Ex. P ¶ 140; id. Ex. CCC at Pl. 000205-000206; Poolos Dep. 376:8-377:17)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and harassment) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants

237

incorporate by reference their 56.1 ¶¶ 79-81, 125-136; 165-170; Exs. 16, 24. There have been no complaints of retaliation against Bar-On, and Bar-On has never been accused or found to have been untruthful during any investigation. Further, Plaintiff declined to be interviewed regarding her post-termination complaint about Bar-On and has since withdrawn her untimely sexual harassment claims against him. Defendants incorporate by reference their Rule 56.1 Statement ¶¶ 125–136 and 165–170. (Poolos Dep. 197:11–198:17; Ex. C; Zuckerman Reply Decl., Ex. 5).

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and harassment) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 125-136; 165-170; Exs. 16, 24. There have been no complaints of retaliation against Bar-On, and Bar-On has never been accused or found to have been untruthful during any investigation. Further, Plaintiff declined to be interviewed regarding her post-termination complaint about Bar-On and has since withdrawn her untimely sexual harassment claims against him. Defendants incorporate by reference their Rule 56.1 Statement ¶¶ 125–136 and 165–170. (Poolos Dep. 197:11–198:17; Ex. C; Zuckerman Reply Decl., Ex. 5).

807.    Bar-On and Sharman also talked about a story Sharman was working on about actor Nate Parker ("Parker") and covering up rape. (Iadevaia Decl., Ex. P ¶ 140; Iadevaia Decl., Ex. CCC at Pl. 000205-000206; Poolos Dep. 376:8-377:17; Bar-On Dep. 312:10-314:25)

**DEFENDANTS' RESPONSE:** Undisputed that Bar-On and Sharman spoke about Sharman's story, but immaterial. Plaintiff's characterization in the rest of this paragraph is unsupported by the record evidence and should be disregard.

808.   Bar-On repeatedly laughed about the story. (Iadevaia Decl., Ex. P ¶ 140; Iadevaia Decl., Ex. CCC at Pl. 000205-000206)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and harassment) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 125-136; 165-170; Exs. 16, 24. There have been no complaints of retaliation against Bar-On, and Bar-On has never been accused or found to have been untruthful during any investigation. Further, Plaintiff declined to be interviewed regarding her post-termination complaint about Bar-On and has since withdrawn her untimely sexual harassment claims against him. Defendants incorporate by reference their Rule 56.1 Statement ¶¶ 125–136 and 165–170. (Poolos Dep. 197:11–198:17; Ex. C; Zuckerman Reply Decl., Ex. 5).

809.   Poolos, who was uncomfortable, tried to change the topic, but Bar-On would not let her. (Iadevaia Decl., Ex. P ¶ 140; Iadevaia Decl., Ex. CCC at Pl. 000205-000206) At one point, Sharman said, "It's like we are in one of those bad CBS videos," meaning they were a textbook example of harassment and how not to behave. (Iadevaia Decl., Ex. P ¶ 140; Iadevaia Decl., Ex. CCC at Pl. 000205-000206)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and harassment) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants

incorporate by reference their 56.1 ¶¶ 79-81, 125-136; 165-170; Exs. 16, 24. There have been no complaints of retaliation against Bar-On, and Bar-On has never been accused or found to have been untruthful during any investigation. Further, Plaintiff declined to be interviewed regarding her post-termination complaint about Bar-On and has since withdrawn her untimely sexual harassment claims against him. Defendants incorporate by reference their Rule 56.1 Statement ¶¶ 125–136 and 165–170. (Poolos Dep. 197:11–198:17; Ex. C; Zuckerman Reply Decl., Ex. 5).

810.    In or around October 2016, Bar-On made a joke about rape. (Iadevaia Decl., Ex. P ¶ 141) In Poolos's office, Bar-On and she discussed multiple topics including Pussy Riot, a Russian feminist protest rock band, and Parker, the actor accused of raping a female student.  Bar-On joked about Parker saying, "talk about a Pussy Riot." (Iadevaia Decl., Ex. P ¶ 141; Iadevaia Decl., Ex. CCC at Pl. 000255-000256)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and harassment) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 125-136; 165-170; Exs. 16, 24. There have been no complaints of retaliation against Bar-On, and Bar-On has never been accused or found to have been untruthful during any investigation. Further, Plaintiff declined to be interviewed regarding her post-termination complaint about Bar-On and has since withdrawn her untimely sexual harassment claims against him. Defendants incorporate by reference their Rule 56.1 Statement ¶¶ 125–136 and 165–170. (Poolos Dep. 197:11–198:17; Ex. C; Zuckerman Reply Decl., Ex. 5).

811.    On or about March 7, 2017, Bar-On described to Poolos an interaction he had with Stahl when Stahl knocked on his office door, which was closed. (Iadevaia Decl., Ex. P ¶ 142)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and harassment) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 125-136; 165-170; Exs. 16, 24. There have been no complaints of retaliation against Bar-On, and Bar-On has never been accused or found to have been untruthful during any investigation. Further, Plaintiff declined to be interviewed regarding her post-termination complaint about Bar-On and has since withdrawn her untimely sexual harassment claims against him. Defendants incorporate by reference their Rule 56.1 Statement ¶¶ 125–136 and 165–170. (Poolos Dep. 197:11–198:17; Ex. C; Zuckerman Reply Decl., Ex. 5).

812.    When Bar-On met Stahl, Stahl asked him what he was doing with the door closed, and Bar-On joked to Poolos that he wanted to tell Stahl that he was in the office masturbating. (Iadevaia Decl., Ex. P ¶ 142; id. Ex. DDD at Pl. 000266-000268)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and harassment) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 125-136; 165-170; Exs. 16, 24. There have been no complaints of retaliation against Bar-On, and Bar-On has never been accused or found to have

been untruthful during any investigation. Further, Plaintiff declined to be interviewed regarding her post-termination complaint about Bar-On and has since withdrawn her untimely sexual harassment claims against him. Defendants incorporate by reference their Rule 56.1 Statement ¶¶ 125–136 and 165–170. (Poolos Dep. 197:11–198:17; Ex. C; Zuckerman Reply Decl., Ex. 5).

813.    Poolos told Bar-On that his comment made her uncomfortable.  (Iadevaia Decl., Ex. P ¶ 142; Iadevaia Decl., Ex. DDD at Pl. 000266-000268)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of Plaintiff's yelling, bullying and harassment) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 79-81, 125-136; 165-170; Exs. 16, 24. There have been no complaints of retaliation against Bar-On, and Bar-On has never been accused or found to have been untruthful during any investigation. Further, Plaintiff declined to be interviewed regarding her post-termination complaint about Bar-On and has since withdrawn her untimely sexual harassment claims against him. Defendants incorporate by reference their Rule 56.1 Statement ¶¶ 125–136 and 165–170. (Poolos Dep. 197:11–198:17; Ex. C; Zuckerman Reply Decl., Ex. 5).

<u>Defendants Ignored Poolos's Complaints</u>

814.    On or about January 13, 2017, Poolos complained about Bar-On's abusive behavior to Senior Producer Pepper, who acted as an assistant to Executive Producer Fager.  (Iadevaia Decl., Ex. P ¶ 143; Poolos Decl. ¶ 98; Iadevaia Decl., Ex. FFF; Iadevaia Decl., Ex. MMMMM; Stahl Dep. 173:16-22)

242

**DEFENDANTS' RESPONSE:** Undisputed that Poolos met with Allison Pepper on January 13, 2017 and complained about Bar-On. The remaining assertions in the paragraph are disputed and unsupported by the record evidence to which Plaintiff cites. Because Plaintiff secretly recorded the conversation, there is no genuine dispute as to what she said—including that she never mentioned Bar-On's abusive behavior. (Zuckerman Reply Decl., Ex. 5). In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because it is undisputed that Bar-On has never been the subject of a retaliation complaint, has never been untruthful during the course of an investigation, and because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of emotional abuse and harassment by Plaintiff) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 5-7, 79-81, 126-136; Exs. 16, 24. Plaintiff further admitted at her deposition that she does not know whether Bar-On had ever been found by the Company to have engaged in retaliation (Poolos Dep. 197:11-198:17). Plaintiff also admitted at her deposition that she does not know whether Bar-On lied during the course of an investigation. (Poolos Dep. 197:11-198:9).

815.    Poolos expressed that she was worried about speaking out against Bar-On because she was concerned that it would harm her career. (Iadevaia Decl., Ex. P ¶ 143; Iadevaia Decl., Ex. FFF at 12:35-13:04; Iadevaia Decl., Ex. MMMMM at 15:6-22)

**DEFENDANTS' RESPONSE:** Undisputed that Plaintiff told Pepper that she was worried "it's going to end up penalizing me down the line." Because Plaintiff secretly recorded the conversation, there is no genuine dispute as to what Pepper said in response—including assuring her that would not happen, that she would "find [her] a new producer right away" and that

243

switching around Producer/Associate Producer teams "happens all the time." (Zuckerman Reply Decl., Ex. 5). Pepper also said: "we will support you 100%" "you know, I mean like we have to protect you" "I just want to protect you. I mean and -- and that's and that's our priority is to protect the people that work for us." (Zuckerman Reply Decl., Ex. 5).

816.    Poolos also told Pepper that Bar-On's abuse was causing her hair to fall out, an unprecedented health issue that her doctor believed was caused by "acute stress." (Iadevaia Decl., Ex. FFF at 4:25-4:35; Iadevaia Decl., Ex. MMMMM at 4:3-10)

**DEFENDANTS' RESPONSE:** Undisputed that Plaintiff told Pepper that "acute stress" was causing her hair loss. The remainder of the assertions in this paragraph are disputed and unsupported by the record evidence to which Plaintiff cites. Because Plaintiff secretly recorded the conversation, there is no genuine dispute as to what Plaintiff told Pepper—including that she never mentioned abuse to Pepper and never blamed Bar-On for any hair loss. (Zuckerman Reply Decl., Ex. 5). In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. Defendants incorporate by reference their 56.1 ¶¶ 5-7, 79-81, 126-136

817.    For example, at the time, she had discovered several bald spots on her scalp. (Iadevaia Decl., Ex. P ¶ 144; Poolos Decl. ¶ 99; Iadevaia Decl., Ex. FFF at 4:25-4:35; Iadevaia Decl., Ex. MMMMM at 4:3-10; Iadevaia Decl., Ex. EEE at Pl. 001576, Pl. 001606)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. Defendants incorporate by reference their 56.1 ¶¶ 5-7, 79-81, 126-136.

818.    Pepper made excuses for Bar-On's misconduct and said that individuals become more comfortable with each other in the workplace after working together for many years, and

244

Poolos responded that yelling at your subordinates is not acceptable. (Iadevaia Decl., Ex. P ¶¶ 145-146; Iadevaia Decl., Ex. FFF at 13:04-13:51; Iadevaia Decl., Ex. MMMMM at 16:10-22)

**DEFENDANTS' RESPONSE:** Disputed. (Zuckerman Reply Decl., Ex. 5). In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because it is undisputed that Bar-On has never been the subject of a retaliation complaint, has never been untruthful during the course of an investigation, and because Plaintiff's admits that, in her case, termination was never considered in response to Richards' written HR complaint (including allegations of emotional abuse and harassment by Plaintiff) and was not considered until Defendants learned of her retaliatory call to Bronstein. Defendants incorporate by reference their 56.1 ¶¶ 5-7, 79-81, 126-136; Exs. 16, 24. Further responding, Poolos admitted to yelling at her subordinates, including Richards, and Jack Weingart, as well as members of the Rights team. Defendants incorporate by reference their 56.1 ¶¶ 28, 31, 38, 56. (Ex. 26, at CBS-007998-8001).

819.    Pepper threatened her and stated that Poolos could ask to transfer off the team. (Iadevaia Decl., Ex. P ¶ 146; Iadevaia Decl., Ex. FFF at 18:05-18:34; Iadevaia Decl., Ex. MMMMM at 24:12-24)

**DEFENDANTS' RESPONSE**: Disputed. Because Plaintiff secretly recorded the conversation, there is no genuine dispute as to what Pepper said—including that absolutely never threatened Plaintiff. (Zuckerman Reply Decl., Ex. 5). This paragraph should be disregarded because it is unsupported by the record evidence to which Plaintiff cites. In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. Defendants incorporate by reference their 56.1 ¶¶ 5-7, 79-81, 126-136.

820.    Poolos did not want to stop working with Stahl, who was at the time one of the most senior and well-respected Correspondents on the show, because she was worried that doing so would negatively affect her career, including by derailing her opportunity for a promotion. (Iadevaia Decl., Ex. P ¶ 146; Iadevaia Decl., Ex. FFF at 8:47-9:06; Iadevaia Decl., Ex. MMMMM at 9:20-10:4)

**DEFENDANTS' RESPONSE:** Undisputed that Plaintiff did not want to stop working with Stahl, and that she is one of the most senior and well-respected Correspondents on the show. Dispute the insinuation that Plaintiff would have had to stop working with Stahl. Because Plaintiff secretly recorded the conversation, there is no genuine dispute as to what Pepper said—including never said that Plaintiff would have to stop working for Stahl, and in fact Pepper discussed how Plaintiff would continue to work for Stahl. (Zuckerman Reply Decl., Ex. 5). In any event, this paragraph is immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact, including because Plaintiff was then promoted to Producer and continued to work for Stahl. Defendants incorporate by reference their 56.1 ¶¶ 5-7, 79-81, 126-136.

821.    Pepper shared Poolos's complaint with then-Executive Editor Owens, who later met with Poolos. (Iadevaia Decl., Ex. P ¶ 147; Poolos Dep. 38:19-39:2; Iadevaia Decl., Ex. EEE at Pl. 001609-001610)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. (Owens Dep. 238:6-239:3). Defendants incorporate by reference their 56.1 ¶¶ 5-7, 79-81, 126-136.

822.    During the meeting between Owens and Poolos, they discussed comments Bar-On had made in front of Owens, including that Bar-On did not care if Poolos "got [herself] killed" on assignment in Iran. (Iadevaia Decl., Ex. P ¶ 148; Poolos Dep. 41:3-42:11)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. (Owens Dep. 238:6-239:3). Defendants incorporate by reference their 56.1 ¶¶ 5-7, 79-81, 126-136.

823.    Owens told Poolos that he was not surprised by her complaints about Bar-On's behavior, since he had had his own experiences with Bar-On's "temper" and believed that Bar-On had a mood disorder.  (Iadevaia Decl., Ex. P ¶ 149; Poolos Dep. 41:3-22)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. (Owens Dep. 238:6-239:3). Defendants incorporate by reference their 56.1 ¶¶ 5-7, 79-81, 126-136.

824.    Owens said that Poolos could transfer to another team, but that she would be unable to continue working with Stahl as an Associate Producer.  (Iadevaia Decl., Ex. P ¶ 150; Poolos Dep. 41:3-22)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. (Owens Dep. 238:6-239:3). Defendants incorporate by reference their 56.1 ¶¶ 5-7, 79-81, 126-136.

825.    Owens also said that Poolos needed to tell Stahl directly that she wanted to transfer due to Bar-On's behavior. (Iadevaia Decl., Ex. P ¶ 150; Poolos Dep. 41:3-22) Owens placed the burden on Poolos to give up her role or have a difficult conversation with Stahl. (Iadevaia Decl., Ex. P ¶ 150; Poolos Dep. 41:3-22)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. (Owens Dep. 238:6-239:3). Defendants incorporate by reference their 56.1 ¶¶ 5-7, 79-81, 126-136.

247

826.    Owens did not offer any other options such as Owens's reporting Bar-On to HR or Owens's speaking to Bar-On or Stahl.  (Poolos Decl. ¶ 101; Poolos Dep. 41:3-22)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. (Owens Dep. 238:6-239:3). Defendants incorporate by reference their 56.1 ¶¶ 5-7, 79-81, 126-136.

827.    Neither Owens nor anyone else at defendants ever investigated Poolos's 2017 complaint against Bar-On. (Iadevaia Decl., Ex. P ¶ 151; Poolos Dep. 53:5-54:9) Bar-On was never placed on administrative leave. (Bar-On Dep. 298:15-299:4)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. (Owens Dep. 238:6-239:3). Defendants incorporate by reference their 56.1 ¶¶ 5-7, 79-81, 126-136.

828.    As set forth above, Stahl complimented Poolos for not formally raising her complaints about Bar-On. (Iadevaia Decl., Ex. P ¶ 152; Poolos Dep. 35:25-37:18)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. (Stahl Dep. 170:14-17). Defendants incorporate by reference their 56.1 ¶¶ 5-7, 79-81, 126-136.

829.    Bar-On's mistreatment of Poolos was widely known at <u>60 Minutes</u>. (Poolos Decl. ¶ 102; Iadevaia Decl., Ex. CCC at Pl. 000197) For example, after Poolos screened her first solo-produced story in 2013, Fager commented that she must feel good to be "unhinged" from Bar-On, alluding to his abusive behavior.  (Poolos Decl. ¶ 102; Iadevaia Decl., Ex. CCC at Pl. 000197)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial to Defendants' motion for summary judgment as it fails to raise a genuine dispute of material fact. Defendants incorporate by reference their 56.1 ¶¶ 5-7, 79-81, 126-136. (Stahl Dep. 170: 3-6) This paragraph should be

248

disregarded because it is argumentative opinion and unsupported by the evidence to which Plaintiff cites.

<u>Defendants' Purported Investigation of Plaintiff's Discrimination and Retaliation Claims</u>

830.    After Poolos was fired, she raised complaints of discrimination and retaliation to CBS through counsel, including complaints about discrimination in connection with her firing and about the harassment she faced from Bar-On. (Iadevaia Decl., Ex. XX at CBS 000052)

**DEFENDANTS' RESPONSE:** Undisputed, with the clarification that Plaintiff did not allege that Bar-On engaged in retaliation.

831.    CBS purportedly investigated those complaints. (Iadevaia Decl., Ex. XX at CBS 000052)

**DEFENDANTS' RESPONSE:**  Undisputed, with the clarification that Poolos admitted that CBS investigated her post-termination complaints. *See* Plaintiff's Response to Paragraph 129 of Defendants' 56.1 Statement, which states "[a]dmit that Defendants investigated Plaintiff's allegations concerning Bar-On."

832.    In its Position Statement, CBS represented that the investigation found that Bar-On was "very mild-mannered, timid, and professional" and Ms. Poolos was "abrasive, irrational, and often yelled at others." (Iadevaia Decl., Ex. XX at CBS 000052-000053).

**DEFENDANTS' RESPONSE:** Undisputed that the quoted statements appear in the Position Statement submitted to the EEOC. Further responding, it is undisputed that Plaintiff yelled at others on multiple occasions and this was known to the Company prior to her post-termination complaint. Defendants incorporate by reference their 56.1 ¶ 28, 30, 31, 38, 56-57, 92.

833.    CBS did not explain how Ms. Poolos's purported demeanor and/or behavior was relevant to an investigation of her complaints of discrimination and retaliation. (Iadevaia Decl., Ex. XX at CBS 000052-000053)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial because Poolos' complaints regarding Bar-On did not play any role in the termination of her employment, and so fails to raise a genuine dispute of material fact. Defendants incorporate by reference their 56.1 ¶ 127. Further responding, it is undisputed that Plaintiff yelled at others on multiple occasions and this was known to the Company prior to her post-termination complaint. Defendants incorporate by reference their 56.1 ¶ 28, 30, 31, 38, 56-57, 92.

834.    Moreover, as set forth above, many of the complaints Poolos raised related to Bar-On's treatment of her in private. (Pl. 56.1 ¶ 427; Poolos Decl. ¶ 97; Poolos Dep. 320:22-321:8, 376:12-18; Iadevaia Decl., Ex. CCC at Pl. 000227, Pl. 000255-000256; Iadevaia Decl., Ex. DDD at Pl. 000266-000268)

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial because Poolos' complaints regarding Bar-On did not play any role in the termination of her employment, and so fails to raise a genuine dispute of material fact. Defendants incorporate by reference their 56.1 ¶ 127.

835.    In finding that "the Company was unable to substantiate Ms. Poolos's allegations," CBS relied on the fact that the investigator "found credible Mr. Bar-On's explanations regarding Ms. Poolos's allegations," thereby again crediting a man's version of events over Poolos's. (Iadevaia Decl., Ex. XX at CBS 000053)

**DEFENDANTS' RESPONSE:** Undisputed that that the quoted statements appear in the Position Statement submitted to the EEOC, and that the Company was unable to substantiate Plaintiff's allegations. Further responding, the Company offered Plaintiff (through her counsel) the

opportunity to meet for an interview, but Plaintiff declined. Defendants incorporate by reference their 56.1 ¶ 131. The remainder of this paragraph is argumentative, conclusory, and unsupported by any record evidence, should be disregarded pursuant to Local Rule 56.1(d), and fails to raise a genuine dispute of material fact.

<u>CBS Retaliated Against Poolos</u>

836.    Defendants' adverse treatment of Poolos continued even after her firing.  (Iadevaia Ex. XX at CBS 000052-000053; Poolos Decl. ¶ 87; Poolos Dep. 252:7-254:6; Iadevaia Decl., Ex. HHHHH)

**DEFENDANTS' RESPONSE:** Disputed that Defendants engaged in any adverse treatment of Poolos after her firing, but immaterial, because it is argumentative, conclusory, and unsupported by any record evidence, should be disregarded pursuant to Local Rule 56.1(d), and fails to raise a genuine dispute of material fact. Defendants incorporate by reference their 56.1 ¶¶ 194–196 (Ex. 40; Zuckerman Reply Decl., Exs. 5, 6).

837.    During their purported investigation of Poolos's allegations after receiving notice of her intent to pursue legal claims against the company, Defendants intentionally sought to malign Poolos personally and professionally. (Iadevaia Ex. XX at CBS 000052-000053)

**DEFENDANTS' RESPONSE:** Undisputed that Defendants conducted an investigation into Poolos' post-termination complaints. Disputed that Defendants sought to malign Poolos, but immaterial, because this paragraph is argumentative, conclusory, and unsupported by any record evidence, should be disregarded pursuant to Local Rule 56.1(d), and fails to raise a genuine dispute of material fact. Defendants' incorporate by reference their 56.1 ¶¶ 125-136, 194-196. (Ex. 40; Ex. 41; Zuckerman Reply Decl., Exs. 5, 6). Further responding, Poolos testified at her deposition that she "wasn't privity to the investigation" and Plaintiff declined an offer, through her counsel, to be

251

interviewed as part the investigation into her post-termination complaint. (Plaintiff Dep. 26:5-27:23). Plaintiff also admitted at her deposition that she is not aware of any instance in which an employee lied during the course of any investigation. (Plaintiff Dep. 204:14-205:25).

838.    Defendants solicited negative information about Poolos from colleagues both within and outside of the company in an attempt to undermine her well-documented success and good reputation within her industry. (Poolos Decl. ¶ 89; Poolos Dep. 24:12-25:2; Iadevaia Decl., Ex. XX at CBS 000052-000053)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial, because it is argumentative, conclusory, unsupported by any record evidence, should be disregarded pursuant to Local Rule 56.1(d), and fails to raise a genuine dispute of material fact. Defendants' incorporate by reference their 56.1 ¶¶ 125-136, 194-196. (Ex. 40; Ex. 41; Zuckerman Reply Decl., Exs. 5, 6). Further responding, Poolos testified at her deposition that she "wasn't privity to the investigation" and Plaintiff declined an offer, through her counsel, to be interviewed as part the investigation into her post-termination complaint. (Plaintiff Dep. 26:5-27:23). Plaintiff also admitted at her deposition that she is not aware of any instance in which an employee lied during the course of any investigation. (Plaintiff Dep. 204:14-205:25).

839.    Defendants also attempted to dismiss Poolos's legitimate allegations of sexual harassment against her former supervisor Bar-On by soliciting positive statements about him and bolstering his own unfounded criticisms of Poolos. (Poolos Decl. ¶ 90; Iadevaia Decl., Ex. XX at CBS 000052-000053)

**DEFENDANTS' RESPONSE:** Disputed, but immaterial, because it is argumentative, conclusory, and unsupported by any record evidence, should be disregarded pursuant to Local Rule 56.1(d), and fails to raise a genuine dispute of material fact. Defendants' incorporate by reference

their 56.1 ¶¶ 125-136, 194-196. (Ex. 40; Ex. 41; Zuckerman Reply Decl., Exs. 6, 7; Ex. 40; Ex. 41). Further responding, Poolos testified at her deposition that she "wasn't privity to the investigation" and Plaintiff declined an offer, through her counsel, to be interviewed as part the investigation into her post-termination complaint. (Plaintiff Dep. 26:5-27:23). Plaintiff also admitted at her deposition that she is not aware of any instance in which an employee lied during the course of any investigation. (Plaintiff Dep. 204:14-205:25).

840.    Defendants did not approve Poolos's stories for consideration for industry awards after she made protected complaints about her firing. (Poolos Decl. ¶ 91; Poolos Dep. 252:7-254:6; Iadevaia Decl., Ex. HHHHH)

**DEFENDANTS' RESPONSE:** This paragraph is argumentative, conclusory, and not supported by the record evidence to which Plaintiff cites and should be disregarded pursuant to Local Rule 56.1(d), and is disputed but immaterial because it fails to raise a genuine dispute of material fact. Defendants incorporate by reference their 56.1 ¶¶ 194–196. Further responding, Owens and Simon both expressed dissatisfaction with the two stories Plaintiff produced in the season preceding her termination—long before Plaintiff raised her post-termination complaint. Zuckerman Reply Decl., Ex. 9;  Owens Dep. 143:11-23; 145:4-8; 149:9-10; 150:5-7; 151:22-25)

841.    This includes submitting a story for consideration for an Emmy award, which Defendants objected to doing in March 2022, purportedly due to budget. (Iadevaia, Decl., Ex. HHHHH) Throughout Plaintiff's employment at 60 Minutes, she is not aware of Defendants refusing to submit a story for Emmy consideration due to budgets.  (Poolos Decl. ¶ 91)

**DEFENDANTS' RESPONSE:** Undisputed that Sara Kuzmaov sent an email to Plaintiff with the subject line "Emmys," which stated "I checked, and unfortunately you're too late, where the budget is concerned. We're already over budget compared to last year, and more entries weren't

approved." (Iadevaia, Decl., Ex. HHHH.) Further responding, Owens and Simon both expressed dissatisfaction with the two stories Plaintiff produced in the season preceding her termination—long before Plaintiff raised her post-termination complaint. (Zuckerman Reply Decl., Ex. 9; Owens Dep. 143:11-23; 145:4-8; 149:9-10; 150:5-7; 151:22-25). The remainder of this paragraph is argumentative, conclusory, and not supported by the record evidence to which Plaintiff cites and should be disregarded pursuant to Local Rule 56.1(d), and is disputed but immaterial because it fails to raise a genuine dispute of material fact. Defendants incorporate by reference their 56.1 ¶¶ 194–196.

842.     In addition, Defendants stated that they would submit stories Poolos produced for a Front Page award on February 23, 2022. (Iadevaia, Decl., Ex. IIIII; Poolos Decl. ¶ 93) The employee at CBS responsible for making such submissions told Poolos that she would provide her with instructions for making the submission on February 23, 2022. (Id.) She never did so and, as a result, Poolos does not believe that her story was submitted for a Front Page award consideration.  (Poolos Decl. ¶ 94)

**DEFENDANTS' RESPONSE:** Undisputed that Sara Kuzmaov sent an email to Plaintiff stating "we'll be submitting 'Transgender Healthcare' for a Front Page Award." "I checked, and unfortunately you're too late, where the budget is concerned. We're already over budget compared to last year, and more entries weren't approved." (Iadevaia, Decl., Ex. IIIII). Further responding, Owens and Simon both expressed dissatisfaction with the two stories Plaintiff produced in the season preceding her termination—long before Plaintiff raised her post-termination complaint. (Zuckerman Reply Decl., Ex. 9; Owens Dep. 143:11-23; 145:4-8; 149:9-10; 150:5-7; 151:22-25). The remainder of this paragraph is argumentative, conclusory, and not supported by the record evidence to which Plaintiff cites and should be disregarded pursuant to Local Rule 56.1(d), and is

254

disputed but immaterial because it fails to raise a genuine dispute of material fact. Defendants incorporate by reference their 56.1 ¶¶ 194–196.

843.    Thereafter, however, Defendants did not give her a producer credit for the story in social media posts.  (Poolos Decl. ¶ 94)

**DEFENDANTS' RESPONSE:** Undisputed that Defendants did not mention Plaintiff in social media posts after the termination of her employment, with the clarification that Plaintiff was given producer credit for the "Wrongful Detainees" story that aired on February 27, 2022 and re-aired in June 2022. (Stahl Dep. 164:8-166:4; Zuckerman Reply Decl., Exs. 6, 7). Plaintiff's name appeared on the 60 Minutes "book" displayed at the beginning of each story as one of the Producers of the story, aired to millions of *60 Minutes* viewers. Stahl informed Poolos as such on February 26, 2022, writing "Hope you've heard that your name will appear on the book this Sunday on the [Wrongful Detainees] story as the co Producer w Shari." (Zuckerman Reply Decl., Exs. 6, 7). *See* Lesley Stahl, CBS News, *Wrongful Detainees: Americans unjustly held abroad by foreign governments* (published June 12, 2022) ("Produced by Shari Finkelstein and E. Alexandra Poolos. Associate producers, Collette Richards and Braden Cleveland Bergan. Broadcast associate, Wren Woodson. Edited by Peter M. Berman."); *see also* Lesley Stahl, CBS News, *Wrongful Detainees: Americans unjustly held abroad by foreign governments* ("Produced by Shari Finkelstein and E. Alexandra Poolos. Associate producers, Collette Richards and Braden Cleveland Bergan. Broadcast associate, Wren Woodson. Edited by Peter M. Berman."). *See also*:

255



https://www.paramountplus.com/shows/video/Qx2_Vq_Yan_9TdEjdcCFHKRVfU2nfO3L/?ftag=CNM-00-10abb6c (published February 27, 2022).



*Americans wrongfully detained by foreign governments*, YouTube, available at https://www.youtube.com/watch?v=FfPYlKXhVdI (published Jun 12, 2022).

Dated: New York, New York
      March 23, 2026

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By:    *Lyle S. Zuckerman*         
    Laura Sack
    Lyle S. Zuckerman
    Lisa Dayan
    Michael L. Lynch

 1251 Avenue of the Americas, 42nd Floor
New York, New York 10020
(212) 289-8230
laurasack@dwt.com
lylezuckerman@dwt.com
lisadayan@dwt.com
michaellynch@dwt.com
*Attorneys for Defendants Paramount Global,
CBS Broadcasting Inc., and CBS News Inc.*

257